**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THE LITTLE TIKES COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 08 CV 1935 |
| v. | ) | |
| | ) | Hon. Joan B. Gottschall |
| KID STATION TOYS LTD. et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF KIDS STATION IN OPPOSITION TO REQUEST OF
LITTLE TIKES FOR A TEMPORARY RESTRAINING ORDER**

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................... 1

BACKGROUND ......................................................................................................... 4

   A.  Kids Station's Exclusive License for the Production of Little Tikes Electronic Toys ......... 4

   B.  The Parties' Performance Under the Agreement Prior to MGA's Purchase of
      Little Tikes .......................................................................................................... 6

   C.  MGA's Purchase of Little Tikes and Immediate Efforts to Disrupt the Agreement............ 6

   D.  MGA Ignores Kids Station's Rights and Sends the February 5, 2008 Termination
      Letter ................................................................................................................... 7

   E.  The Florida Litigation and Little Tikes' Shifting Positions ................................. 8

   F.  The Irreparable Harm to Kids Station Resulting from MGA's Wrongful Termination
      of the Agreement................................................................................................. 10

ARGUMENT ............................................................................................................ 11

   A.  Little Tikes Has Not Properly Terminated the License Agreement..................... 12

   B.  Kids Station Will Suffer Irreparable Harm If the Court Enters the Injunction Requested
      by Little Tikes .................................................................................................... 16

   C.  The Balance of Hardships and the Public Interest Both Weigh in Kids Station's Favor.... 18

CONCLUSION.......................................................................................................... 21

# TABLE OF AUTHORITIES

*Arcadia Health Serv., Inc. v. A. Health Care, Inc.*
   No. 96 C 8363, 1997 WL 24737, at *5 (N.D. Ill. Jan. 17, 1997) ........................................... 21

*Carlo C. Gelardi Corp. v. Miller Brewing Co.*
   421 F. Supp. 233, 236 (D.N.J. 1976) ................................................................................... 19

*Caterpillar, Inc. v. Jerryco Footware*
   880 F. Supp. 578, 593 (C.D. Ill. 1994) ............................................................................... 22

*Gateway E. Ry. Co. v. Terminal R.R. Ass'n*
   35 F.3d 1134, 1140 (7th Cir. 1994) ..................................................................................... 18

*Gold v. Ziff Communications*
   553 N.E.2d 404, 410 (Ill. App. Ct. 1989) ............................................................................ 18

*Kaczmarski v. Wheaton Sch. Dist.*
   No. 04 C 2976, 2004 WL 1093348, at *3 (N.D. Ill. May 4, 2004) ....................................... 12

*Northwest Bakery Distrib., Inc. v. George Weston Bakeries*
   No. 04 C 8233, 2005 WL 66044, at *4 (N.D. Ill. Jan. 11, 2005) ....................................... 2, 18

*Peter v. Stone Park Enters., LLC*
   No. 98 C 1160, 1999 WL 543210, at *2 (N.D. Ill. July 22, 1999) ....................................... 13

*Reinders Bros. v. Rain Bird E. Sales Corp.*
   627 F.2d 44, 53 & n.7 (7th Cir. 1980) ................................................................................. 18

*Roland Mach. v. Dresser Indus.*
   749 F.2d 380, 386 (7th Cir. 1984) ...................................................................................... 16

*SMC Corp. v. Lockjaw, LLC*
   481 F. Supp. 2d 918, 924 (N.D. Ill. 2007) ................................................................ 2, 16, 17

*Ty, Inc. v. Jones Group, Inc.*
   237 F.3d at 891, 895 (7th Circ. 2001) .................................................................................. 17

*World Triathlon Corp. v. Sports Ctr.*
   No. 904CV1594T24TBM, 2005 WL 3445526, at *4 (M.D. Fla. Dec. 14, 2005 ................... 19

## INTRODUCTION

Little Tikes seeks to have this Court ignore the fundamental issue in this case:  is Little Tikes' purported termination of the License Agreement with Kids Station valid?  If the Court only read Little Tikes papers, it would understandably conclude that Kids Station was an IP "pirate" illegally selling knockoffs of Little Tikes toys. In reality, Kids Station is a longstanding licensee of the Little Tikes brand, selling high quality toys. Not only is Kids Station a legitimate licensee, it is an exceptional one. Little Tikes has named Kids Station its Little Tikes Licensee of the Year, the Licensing Industry Merchandisers Association nominated Kids Station for Best Corporate Brand Licensee of the Year for the Little Tikes brand, and, just a few weeks ago, Kids Station was selected as Wal-Mart's 2007 Global Procurement Supplier of the Year, a highly coveted award that recognizes suppliers of high quality products who demonstrate a related commitment to ethical standards and service.

Little Tikes' TRO motion and supporting papers ignore Kids Station's longstanding, successful track record. Those papers also fail to acknowledge that every Little Tikes-branded product manufactured, marketed and sold by Kids Station was approved in writing and authorized for sale by Little Tikes.  This includes the so-called "Unauthorized Cell Phone," the only product that Little Tikes complains about and relies upon in its request for TRO relief. Little Tikes' review and approval of every Little Tikes-branded product sold by Kids Station for the past four years flatly contradicts the central assumption of Little Tikes' TRO motion.

Given the scope of information Little Tikes chose not to share with the Court, it is hardly surprising that the totality of the facts do not support a TRO.   MGA Entertainment, Inc.("MGA"), acquired Little Tikes at the end of 2006. Since that acquisition, MGA has orchestrated a relentless campaign to terminate Kids Station's exclusive license.  This campaign has included strident demands for additional, unearned royalties, position-shifting, attempted

withdrawals of prior approvals of products, and deliberate misrepresentations, all aimed at manufacturing a basis to terminate Kids Station's exclusive license.  MGA and its Little Tikes subsidiary have pursued this course of conduct because they are apparently not content with the substantial royalties they receive from Kids Station, and wish to sell these products themselves. The Court does not need to speculate about their motive; MGA has illegally infringed Kids Station's exclusive license repeatedly for over a year, selling millions of dollars of products for which Kids Station had and has the exclusive sales rights.

The courts have repeatedly rejected efforts, such as the instant TRO motion, to terminate license rights to sell and distribute products where the attempted termination is of dubious merit, particularly where an injunction will put in question the survival of the licensee.  *See, e.g.*, *SMC Corp. v. Lockjaw, LLC*, 481 F. Supp. 2d 918, 924 (N.D. Ill. 2007) (enjoining the wrongful termination of a distributorship based upon the irreparable harm caused to the distributor's business reputation and goodwill); *Northwest Bakery Distrib., Inc. v. George Weston Bakeries*, No. 04 C 8233, 2005 WL 66044, at *4 (N.D. Ill. Jan. 11, 2005) (same).  Rather than confront this case law, and the undisputed fact that Little Tikes approved every Little Tikes-branded Kids Station product ever sold, including the purported "unauthorized cell phone," Little Tikes and MGA have pretended this case is one involving strangers and brand piracy.  In fact, this case has nothing to do with brand piracy. The real issue is whether Little Tikes' abrupt and "immediately effective" February 5, 2008 termination of Kids Station's license was or was not legitimate. Remarkably, Little Tikes completely ignores the fact of that termination, let alone its merits, until the final page of its argument.  (Little Tikes' Mem. at 20)  That reticence is understandable; the termination was wholly improper, as is any injunctive relief premised upon it.

2

Little Tikes' lack of candor is only the latest example of a course of conduct which began almost at the moment MGA acquired Little Tikes. Kids Station originally acquired its license at a time when Little Tikes was owned by Newell-Rubbermaid ("Rubbermaid"). Kids Station and Little Tikes-Rubbermaid performed under the License Agreement to their mutual benefit without incident. As soon as Little Tikes was acquired by MGA (which, unlike Rubbermaid or Little Tikes itself, manufactures children's electronic toys), Little Tikes-MGA has pursued a single goal: to contrive a basis for terminating Kids Station's license. Its actions in pursuit of that goal included the following:

- Beginning in March 2007, MGA claimed that Kids Station owed MGA approximately $13.5 million in unpaid royalties. The accusation was completely baseless, and was abandoned by MGA after Kids Station presented evidence to rebut every point raised by MGA.

- MGA purported to retract prior approvals of products and, with respect to at least one product, began manufacturing the product itself and deriving substantial profits following the retraction.

- MGA began manufacturing groundless complaints regarding Kids Station's operations and its reporting and product quality, but without ever providing any specificity about what needed to be changed. The accusations came notwithstanding the fact that Little Tikes personnel (who were abruptly removed by MGA) had specifically approved actions about which MGA complained.

- Finally, in February 2008, MGA notified Kids Station that it was immediately terminating Kids Station's license to manufacture Little Tikes products. This action was taken without any substantial basis or opportunity to cure, all in violation of the parties' agreement.

This course of bad faith conduct, culminating in the baseless February 5, 2008 "termination," has jeopardized Kids Station's business and infringed upon its rights. If the purported termination is not disposed of expeditiously, Kids Station will suffer enormous injury to its goodwill, business reputation, and sales network, an injury from which it is unlikely to recover. Kids Station has already participated in the critical annual industry toy show in Hong Kong and has promised products to its key customers for the current calendar year. Putting aside

the lack of a legitimate basis for termination, the License Agreement does not permit immediate termination without notice and an opportunity to cure except in narrow circumstances not present here.  The basis for termination articulated in Little Tikes' TRO brief is that Kids Station was selling an "unauthorized" product.  (Little Tikes Mem. at 20)  Yet, the undisputed record shows that all of the products sold by Kids Station were approved and authorized by Little Tikes and conformed to the specifications which formed the basis for that approval.

Moreover, Little Tikes' alleged need for injunctive relief rests on the possibility of continuing harm from sales of an "unapproved cell phone."  Putting aside the fact that Little Tikes approved this product (Ex. A, Cabrera Decl. ¶¶ 6-7 & Exs. 3-4)  Kids Station is no longer selling it.  (*Id.* ¶ 10)  In cooperation with the Consumer Product Safety Commission, and out of an abundance of caution, Kids Station has decided to voluntarily recall the older version of the KSL8033 (the original cell phone design) and remove it from the marketplace entirely.  Thus, the only issues on which this Court needs to focus are whether Little Tikes' unlawful termination on February 5, 2008, was proper, and the irreparable harm Kids Station will indisputably suffer if it is required to renege on existing commitments to retailers regarding sales of products already approved in writing by Little Tikes.

## BACKGROUND

A.    **Kids Station's Exclusive License for the Production of Little Tikes Electronic Toys**

For over seven years, Kids Station and its affiliates have been engaged in the business of manufacturing and distributing children's toys.  (Ex. B, Newman Decl. ¶ 1-2)  Kids Station has certain affiliates that have been organized for legitimate business purposes, including Kids Station (US) Inc., a Florida corporation, and Kids Station Toys International Ltd. Holding, a

Bermuda corporation.[1]  Kids Station has devoted substantial time and resources building its reputation as a reliable and successful global provider of quality toys.

On or about December 8, 2003, Little Tikes (then owned by Rubbermaid) entered into the Agreement with Kids Station[2], pursuant to which Kids Station was granted an exclusive license to manufacture, market, sell, and distribute certain electronic audio, video, and music toys for children in the United States, Canada, and Mexico.  (Ex. B, Newman Decl. ¶ 3; Ex. C, Agreement § 2.1)  At the time the parties entered into the Agreement, Rubbermaid and Little Tikes were well known for producing molded plastic products, but neither of them had any expertise in producing electronic toys.  Kids Station filled this gap.  Kids Station's substantial expertise in designing and producing electronic toys was a principal reason Little Tikes granted Kids Station an exclusive license.

By the Agreement, Kids Station was exclusively authorized to design, manufacture, sell and distribute specific categories of "Licensed Products" covered by the Agreement.  (Ex. C, Agreement § 2.1)  Kids Station has invested substantial time and resources to develop and promote the Little Tikes brand -- a process that begins each year with the widely attended and critical "Toy Fair" that occurs in the beginning of the calendar year in various locations around the world.  (Ex. B, Newman Decl. ¶ 7)  At Toy Fair, major retailers review the offerings and ultimately place orders for products for the upcoming year.  (*Id.*)  Under the terms of the parties' Agreement, Little Tikes reviews and approves in writing all Little Tikes-branded products proposed by Kids Station.  (Ex. C, Agreement Art. IX)

---

[1] Kids Station never has attempted to obscure the existence of any of those entities.  For example, virtually all royalty payments to Little Tikes were made by Kids Station Toys International Ltd. in Bermuda, a fact of which Little Tikes has been aware for years.
[2] Little Tikes-Rubbermaid, which prepared the Agreement, identified Kids Station as "Kid Station". It is some reflection of the lack of merit of Plaintiff's case that it seizes upon this innocent mistake as evidence of some nefarious plot.

Little Tikes is not permitted to design, develop, manufacture, or sell any products which fall within the categories covered by the Agreement. The right to do so belongs exclusively to Kids Station for the duration of the license. Of course, Little Tikes receives royalty payments for the Little Tikes-branded products sold by Kids Station. (Ex. C, Agreement § 2.1)

### B. The Parties' Performance Under the Agreement Prior to MGA's Purchase of Little Tikes

Once Kids Station acquired the license, Little Tikes quickly became Kids Station's most successful product line. Throughout 2004 and 2005, Kids Station designed, manufactured, and marketed a successful and profitable line of electronic Little Tikes toys that were sold to major retailers such as Wal-Mart and Toys "R" Us. The product line of Little Tikes products manufactured by Kids Station expanded over time and so did the resources and effort Kids Station devoted to the Little Tikes brand.

Kids Station performed so successfully that Little Tikes and Rubbermaid agreed to expand the scope of the exclusive license, reflected in the January 2006 Addendum. (Ex. C, Agreement at Addendum) This expansion resulted in the introduction of various electronic "role-play" toys such as cameras, CD players, boom boxes, car keys, musical mats and other items. (*Id.*) These items also have been highly successful, generating substantial royalties for Little Tikes through sales that Kids Station developed.

### C. MGA's Purchase of Little Tikes and Immediate Efforts to Disrupt the Agreement

It was against this history of harmonious and mutually beneficial performance under the Agreement that Little Tikes was acquired by MGA from Rubbermaid in late 2006. By early 2007, MGA began controlling Little Tikes' operations. MGA, unlike Rubbermaid, designs and manufactures its own electronic toy products, including the same types of products that fall within the exclusive license granted to Kids Station.

6

Soon after the acquisition of Little Tikes by MGA, the previously productive relationship between Kids Station and Little Tikes took a dramatic turn for the worse.  Kids Station was warned by a long-time Little Tikes employee that MGA wanted to prematurely terminate the Agreement and manufacture the products licensed under the Agreement on its own.  That warning turned out to be prescient. Kids Station began to receive a series of increasingly strident, and misinformed, accusations and demands from Little Tikes.

The first of these was a bogus audit report MGA sent to Kids Station demanding in excess of $13.5 million in alleged "unpaid royalties."  Kids Station immediately responded to MGA, pointing out the numerous flaws and inaccuracies in the audit.  MGA subsequently abandoned that claim, and agreed that Kids Station owed nothing, but the die was cast.  The flawed audit report was followed by a seemingly endless parade of spurious charges and claims by Little Tikes.   Where Kids Station's relationship with Little Tikes-Rubbermaid was harmonious, collaborative, and mutually beneficial, its relationship with Little Tikes-MGA was the polar opposite.  Little Tikes-MGA began attempting to retract approvals for previously approved products (only to begin manufacturing and selling them on their own), fabricating alleged "quality" concerns with Kids Station's products, and conjuring up objections to Kids Station's reporting and other issues, all of which were substantially baseless.

**D.     MGA Ignores Kids Station's Rights and Sends the February 5, 2008 Termination Letter**

Despite Kids Station's best efforts to work collaboratively with Little Tikes-MGA, on February 5, 2008, MGA sent a notice to Kids Station purporting to immediately terminate Kids Station's license for several equally meritless reasons.  MGA wrongly claimed that it could immediately terminate the Agreement because of alleged problems with a single product (a prior version of the 8033 cell phone that had not been sold by Kids Station for months) that Little

Tikes had expressly approved for sale and which had been in the market for over a year.  (Ex. A, Cabrera Decl. ¶ 3,13 & Ex. 1)  It also claimed that immediate termination was justified because of other "material defaults," none of which has any merit.  The notice provided no opportunity to cure, in violation of the License Agreement.  (Ex. C, Agreement 14.1(b) (allowing the other party 30 days to cure))

###### E.    The Florida Litigation and Little Tikes' Shifting Positions

Given MGA's and Little Tikes' wrongful termination of the Agreement, Kids Station filed suit against MGA and Little Tikes in federal district court in Florida seeking to enjoin the wrongful termination and asserting claims for declaratory judgment, breach of contract for Little Tikes' infringement of Kids Station's exclusive rights, breach of good faith and fair dealing, tortious interference, and conspiracy.  All of these same claims will be raised in this matter following the Florida court's decision that this matter should be adjudicated in Illinois.[3]

The Florida action did elicit a number of interesting responses from Little Tikes and MGA.  Among them was the purported defense that the proper party under the Agreement was the misnomered "Kid Station," and Kids Station, the party with whom they and Rubbermaid had been dealing for the last 5 years, had no standing to sue.  Little Tikes-MGA also claimed that Kids Station acted improperly since all of the toys Kids Station manufactured under the Little Tikes brand (and which were indisputably sent to, reviewed by, and approved by Little Tikes) had a Kids Station Toys International label on them.  Little Tikes argued that the names used by Kids Station are somehow improper, an argument also pursued here. Yet, these same names were fully disclosed to Little Tikes on approval forms signed by Little Tikes and MGA, on e-mails

---

[3] While the Agreement contains a forum selection clause, after Rubbermaid, which was based in Illinois, sold Little Tikes, Chicago bore no relationship whatsoever to any of the parties in this dispute nor to any of the facts involved in the dispute.  As such, and in order to avoid burdening the courts of this district with litigation bearing no relation to the district, Kids Station filed its action in Florida, where venue clearly existed, and expressly articulated in its complaint in that forum Kids Station's basis for not filing in Chicago.  *See* Kids Station Florida Compl., ¶ 11.

sent to them, and on the products themselves, all of which were approved by Little Tikes and MGA. (Ex. A, Cabrera Decl. ¶¶ 6-7, Exs. 3 and 4)  For instance, the approval form for the 2007 version of the KSL8033 dated October 30, 2007, and executed by Sandra Penn of MGA accurately lists "Kids Station" as the licensee with its current address in Hong Kong.  (Ex. A, Cabrera Decl. ¶ 6 Ex. 3)  The approval form also lists the e-mail addresses of the persons in Hong Kong who regularly dealt with Little Tikes.  *Id.,* Ex. 3  Yet, despite all of this, Little Tikes – and particularly its in-house counsel, David Oakes (whose declaration is subject to a pending motion to strike) -- make the incredible claim that Kids Station was never authorized to sell Little Tikes-branded products, even though it is listed on Little Tikes and MGA's own approval forms as the licensee.  (Little Tikes' Mem. at 6; Oakes Decl. ¶¶ 4, 14)

MGA and Little Tikes also argued in Florida that the February 5, 2008 termination was justified by an April 30, 2007 letter from the CPSC based on a consumer complaint and inquiring about one of the products sold by Kids Station in 2006.  Just five days before, in Little Tikes' January 30, 2008 letter, Little Tikes had claimed that its basis for concern was a September 17, 2007 inquiry from the CPSC.  In making these varied arguments, MGA and Little Tikes ignore the undisputed facts that Kids Station worked closely with Little Tikes, MGA, and the CPSC in September 2007 to address the KSL8033, the product that was the subject of the CPSC letter, that the KSL8033 was modified on a going forward basis, that neither Little Tikes nor the CPSC suggested that the product should be recalled and Little Tikes approved both the pre-modification and the modified designs.  (Ex. A, Cabrera Decl. ¶¶ 5-8 & Ex. 3)  In fact, it was not until January 30, 2008, less than a week before the termination notice, that Mr. Oakes first suggested that the old version of the KSL8033 should be recalled.  This had nothing to do with

the modified version of the KSL8033 or any of Kids Station's other Little Tikes products, as Mr.

Oakes made clear:

> While you advised MGA that Kids Station would redesign the Product, we are concerned about remaining inventory of the older Product. We have had MGA's internal Quality Assurance team review the complaint and the Product, and they believe that it should be the subject of a voluntary recall . . . .

(Little Tikes' Mem. Ex. 1 Oakes' Decl. Ex. C)  Less than five business days later, before Kids

Station even had an opportunity to respond, MGA notified Kids Station that it had purported to

immediately terminate the license. (*Id.* Ex. D)

Even after Kids Station filed the lawsuit in Florida, MGA repeatedly demanded that Kids

Station immediately cease selling or offering to sell *any* products manufactured under the license

agreement and cause all of its products to be removed from its retailer-customers' shelves.

(Little Tikes' Mem. Ex. 1 Oakes' Decl. Ex. E)  Nothing in the Agreement empowers MGA or

Little Tikes to make these demands, which they knew would ruin Kids Station's reputation and

goodwill and destroy its business operations.  As a result, Kids Station was forced to file an

amended complaint seeking declaratory relief and additional injunctive relief to prevent Little

Tikes from acting upon its baseless demands.  Kids Station is prepared to file these claims here

as well.

**F.    The Irreparable Harm to Kids Station Resulting from MGA's Wrongful Termination of the Agreement**

Kids Station depends upon its goodwill, business reputation, and sales relationships,

assets it has developed over the past seven years.  (Ex. B, Newman Decl. ¶¶ 11-12)  It has

dedicated itself to marketing, designing, and selling the Little Tikes brand, investing substantial

time and money in expanding its line of electronic Little Tikes toys and developing relationships

for the sales of those products among key customers such as Wal-Mart and Toys "R" Us.  (*Id.*

¶ 2)  If Little Tikes is permitted to wrongly terminate the Agreement, Kids Station will suffer

irreparable harm to those relationships, an injury that cannot be compensated with money damages. (*Id.* ¶¶ 11-12)

The timing of MGA's purported termination could hardly be worse. Orders are arranged during the first part of the year, then manufactured and delivered. (*Id.* ¶¶ 6-7) Kids Station has already attended Toy Fair in Hong Kong earlier this year. (*Id.* ¶ 8) At that trade show, major retail clients of Kids Station reviewed Kids Station's upcoming products and specifically its Little Tikes' line of toys. (*Id.* ¶ 8) Kids Station has already made commitments to deliver those products later this year. (*Id.* ¶ 9) Kids Station's inability to honor those commitments as a result of Little Tikes' wrongful termination will be disastrous for Kids Station's business and could result in a commercial injury from which it will never recover. (*Id.* ¶¶ 11-12)

## ARGUMENT

Little Tikes seeks either a temporary restraining order or a preliminary injunction to enforce its February 5, 2008 termination and prevent Kids Station from continuing to do business as a Little Tikes licensee. It seeks to prevent the sale of products it has already approved to customers to whom Kids Station has already made commitments. It seeks all of this despite the uncontroverted fact that Kids Station currently is selling no version of the KSL8033 (or any related product) and has not sold the unmodified version of the product since October 2007. Regardless of whether the motion is treated as one for a temporary restraining order or for preliminary injunctive relief, the legal standard is the same and Little Tikes fails to meet it. *Kaczmarski v. Wheaton Sch. Dist.*, No. 04 C 2976, 2004 WL 1093348, at *3 (N.D. Ill. May 4, 2004) (courts employ the same standard when deciding to grant a temporary restraining order or preliminary injunction). Little Tikes bears the burden of proving (a) a likelihood of success on the merits that its termination was proper, (b) no adequate remedy at law if this Court does not immediately enjoin Kids Station, (c) and irreparable injury to Little Tikes if this Court denies

injunctive relief. *See id.* Even if Little Tikes proves each of these elements, the Court must still balance the harm that Kids Station will suffer if the Court grants the injunction against the harm Little Tikes will suffer if no such relief is provided, as well as determine the course which is most likely to promote the public interest. Such an analysis supports denial of Little Tikes' request for a TRO.

A.     **Little Tikes Has Not Properly Terminated the License Agreement**

Little Tikes provides neither legal nor factual support for the principal issue before this Court: whether the purported immediate termination of the license based on "Defendants continued sale of the Unapproved Cell Phone" was effective. Little Tikes' current litigation strategy appears to consist of ignoring this issue entirely, resorting instead to attacking a series of unremarkable straw man arguments under trademark law. (Little Tikes' Mem. at 13-17 (purporting to address the merits of whether Little Tikes has a protectable trademark (subheading A) and whether Kids Station's use post-termination, *assuming the termination was lawful*, could "confuse" consumers (subheadings B and C), but deliberately not addressing the lawfulness of the termination).

The principal issue for this Court to decide is whether Little Tikes properly terminated Kids Station's rights under the license agreement. *See, e.g., Peter v. Stone Park Enters., LLC*, No. 98 C 1160, 1999 WL 543210, at *2 (N.D. Ill. July 22, 1999) (stating a basic proposition of trademark law that "[i]n order to prevail on a trademark infringement claim . . . for post-termination use . . . Plaintiff must first establish that the franchise agreement[] [was] legally terminated"). The simple answer is that Little Tikes did not properly terminate, based both on the terms of the License Agreement and on its own conduct and actions preceding the filing of the litigation.

12

There is no dispute that Article XIV of the Agreement is the only provision which provides Little Tikes with a right of "immediate termination." Article XIV states (Ex. C, Agreement Art. XIV):

> Little Tikes may terminate this Agreement immediately and without prior notice to [Kids Station] if Little Tikes determines that [Kids Station] has published or offered for sale any Licensed Products or any related packaging, marketing, advertising, or any other materials **that have not been approved, or have been disapproved, pursuant to Article IX.**

Under the Agreement, products are approved or disapproved by Little Tikes pursuant to Article IX after a five-step approval process under which design concepts, product prototypes, pre-production parts samples, pre-production products samples, and first production run samples are provided to Little Tikes for inspection prior to those products ever being offered for sale. (Ex. C, Agreement Art. XIV)  In connection with this process, Little Tikes may disapprove products for noncompliance with product guidelines, for poor quality as manufactured, or for other reasons permitted under the Agreement.

According to Little Tikes, it terminated the License Agreement "because of Defendants continued sale of the Unapproved Cell phone." (Little Tikes' Mem. at 20)  That provides no support for the termination for a number of reasons.  First, Little Tikes in fact did approve the KSL8033 cell phone for production, as its own Trademark Release Letter of June 26, 2006 plainly shows. (Ex. A, Cabrera Decl. ¶ 3 & Ex. 1)  There is, therefore, no truthful basis for the claim that Kids Station sold "unauthorized" cell phones.  Every Little Tikes-branded product that Kids Station has ever offered for sale has been approved in writing by Little Tikes.  That history of approvals includes the modified version of the KSL8033 cell phone, approved on October 30, 2007, in a communication from Little Tikes which identifies Kids Station as the licensee and was sent to its Hong Kong address. (Ex. A, Cabrera Decl. ¶ 6 & Ex. 3)

13

Nor have MGA/Little Tikes ever "disapproved" the KSL8033 in any form prior to the termination, including the "old" version of the KSL8033 cell phone. At no time prior to February 5, 2008 did either Little Tikes or MGA notify Kids Station that they considered the old version of the KSL8033 to be "unapproved" product or a basis for immediate termination. Little Tikes and MGA were expressly informed of Kids Station's intent to modify the KSL8033 in late September of 2007 and never objected to the proposal. Similarly, neither ever suggested that the KSL8033 should be recalled until January 30, 2008, just days before the abrupt termination notice and two months after MGA and Little Tikes gave written approval for the sale of the KSL8033 and additional Kids Station products for the upcoming year. (Ex. A, Cabrera Decl. ¶ 9 & Exs. 3-4)

Little Tikes' and MGA's claim that Kids Station sold unapproved or disapproved products simply is false. The uncontroverted record confirms that Kids Station's products were all approved by Little Tikes. (Ex. A, Cabrera Decl. ¶¶ 3,6) Not only were these products approved by Little Tikes, they passed extensive testing by reputable independent testing agencies as well. (*Id.* ¶¶ 4, 8 & Group Ex. 2)

The facts show that the "old" version of the cell phone was submitted for approval and approved by Little Tikes. It remained approved in the Fall of 2007 when, in response to inquiries from the CPSC, Kids Station voluntarily designed a new version of the cell phone, and stopped selling the old version. (Ex. A, Cabrera Decl. ¶¶ 5,6, 13 & Ex. 3) This new version was also approved by Little Tikes. (*Id.* ¶ 6 & Ex. 3) Months later, in February 2008, Little Tikes purported to terminate Kids Station's license based upon sales of an "unapproved" old version of the cell phone which had in fact been approved, had never been disapproved, and had not been

sold for months because it had been replaced with the approved new version.  Try as they may, not even MGA/Little Tikes can transmogrify those facts into a basis for termination.

That MGA and Little Tikes have engaged in a spirited game of revisionist history is made clear by a comparison of their treatment of the 'immediate termination" in Little Tikes' February 5, 2008 termination letter (Little Tikes' Mem. Ex. 1 Oakes' Decl. Ex. D) with the explanation of the basis for termination found in Little Tikes' memorandum filed with this Court.[4]  (Little Tikes' Mem. at 20)  On February 5, 2008, Little Tikes and MGA told Kids Station that its rights were immediately terminated, listing a number of equally meritless justifications for that action.  (Little Tikes' Mem. Ex. 1 Oakes' Decl. Ex. D)  But now (at least in Mr. Oakes' Declaration) they acknowledge the immediate termination may have been improper.  Ever hopeful, they suggest that even if it was, and even if they failed to provide an opportunity to cure, Kids Station should have nonetheless attempted to cure, and its failure to do so justifies termination now.  (Little Tikes' Mem. Ex. 1 Oakes' Decl. ¶ 16 (stating that Kids Station failed to cure the alleged "material breaches" by March 6, 2008, thus justifying the purported termination)  A similar exercise in pretzel logic was rejected in *SMC Corp. v. Lockjaw*, 481 F. Supp. 2d at 927, where Judge Castillo enjoined an improper termination like the one by MGA and Little Tikes here.  Judge Castillo found it "somewhat duplicitous that Lockjaw would treat the contract as terminated (indeed, telling SMC's customers that the contract *is* terminated), and at the same time seek adequate assurances of future performance by SMC."  *Id.*  Having been told that its license was terminated, what possible good could come out of an attempt by Kids Station to cure.

---

[4] "Material breaches" such as ones raised in Mr. Oakes' February 5, 2008 termination letter are not grounds for immediate termination under the License Agreement.  Rather, Article XIV of the Agreement specifically states that Little Tikes can only terminate the Agreement based upon a material breach of the Agreement after giving [Kid Station] thirty (30) days' written notice of a material breach of th[e] [Agreement], provided that such breach is not cured within thirty (30) days following notice to the other party." (Ex. C, Agreement § 14.1(b))  Neither Little Tikes nor MGA provided Kids Station with its opportunity to cure.  Instead, they immediately terminated the license Agreement.  In addition, there is nothing suggesting that the alleged breaches referred to, such as failure to provide reports, constitute *material* breaches.

More fundamentally, cure what?  The product about which MGA and Little Tikes complained was no longer being sold.  (Ex. A, Cabrera Decl. ¶ 10)  The Court should reject the *post facto* attempts by MGA and Little Tikes to defend conduct which is quite plainly indefensible.

### B.    Kids Station Will Suffer Irreparable Harm If the Court Enters the Injunction Requested by Little Tikes

If the injunction requested by Little Tikes is granted, Kids Station will face irreparable harm to its business reputation, goodwill, and existing sales network.  (Ex. B, Newman Decl. ¶¶ 11-12)  The absence of an adequate remedy at law is shown when an award of damages at the end of trial would be "seriously deficient as a remedy for the harm suffered."  *Roland Mach. v. Dresser Indus.*, 749 F.2d 380, 386 (7th Cir. 1984).  Here, Kids Station's business will be seriously, probably mortally, harmed if a temporary restraining order is issued.  Immediately ending Kids Station's rights under the License Agreement will not simply result in lost sales, it will destroy Kids Station's goodwill and business reputation as a reliable manufacturer that honors its commitments.  Once that reputation and goodwill are destroyed, the customer relationships Kids Station has worked so hard to build will be destroyed with it.  How many new orders for toys are Wal-Mart and Toys "R" Us likely to place with Kids Station in the future if Kids Station fails to deliver the merchandise it has agreed to provide this year?  Any form of injunctive relief will make it impossible for Kids Station to honor these commitments, all before any determination on the merits.  (Ex. B, Newman Decl. ¶¶ 9, 11, 12)

Courts in this district and elsewhere have declined to permit termination of agreements similar to the one at issue here.  In *SMC Corp v. Lockjaw*, 481 F. Supp. at 924-29, Judge Castillo enjoined a trading company from terminating a sales agreement that allowed the plaintiff distributor the exclusive right to sell products under the name of the trading company.  The trading company, similar to MGA here, purported to terminate the parties' agreement based upon

various grounds not definitively covered by the termination provision of the parties' agreement and with which the distributor vehemently disagreed. *Id.* at 924-26. Judge Castillo held that termination of the sales and distribution agreement and the abrupt ending of the distributor's exclusive distributorship of the Lockjaw brand, would irreparably harm the company's goodwill through the loss of key customers and damage to its reputation. *Id.* at 927-28. The court also found that these types of injuries are "presumed irreparable." *Id.* at 928; *see also Ty, Inc. v. Jones Group, Inc.*, 237 F.3d at 891, 895 (7th Circ. 2001) ("it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill."); *Gateway E. Ry. Co. v. Terminal R.R. Ass'n*, 35 F.3d 1134, 1140 (7th Cir. 1994) ("We have stated that showing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages."); *Reinders Bros. v. Rain Bird E. Sales Corp.*, 627 F.2d 44, 53 & n.7 (7th Cir. 1980) (loss of small but valuable portion of clientele of dealer not compensable in monetary damages); *see also Northwest Bakery Distrib., Inc. v. George Weston Bakeries*, No. 04 C 8233, 2005 WL 66044, at *4 (N.D. Ill. Jan. 11, 2005) ("[P]laintiff's loss of goodwill [and] key relationships . . . will not easily be repaired and will certainly not be readily compensable in damages.").

Similarly, in *Reinders Bros. v. Rain Bird*, 627 F.2d at 53, the Seventh Circuit affirmed the district court's decision to enjoin the termination of a distribution agreement because the absence of an injunction would irreparably harm the distributor. The district court held that the termination of the agreement would irreparably harm the distributor's goodwill and the Seventh Circuit agreed that the interruption of the distributor's business would "clearly interfere with the distributor's efficient servicing of a valuable segment of its clientele." 627 F.2d at 44; *see also Gold v. Ziff Communications*, 553 N.E.2d 404, 410 (Ill. App. Ct. 1989) (finding irreparable harm

17

where the "injury to its reputation and goodwill and the resulting potential loss of future business is incapable of determination"). While much about Little Tikes' claims is hazy, this much is clear: the injury to Kids Station from an award of injunctive relief will be irreparable. It will be forced to renege on existing commitments to deliver Little Tikes branded products, commitments which were made in reliance on Little Tikes' approval. (Ex. B, Newman Decl. ¶¶ 11-13) Kids Station does not have an adequate remedy at law to redress these injuries to its goodwill and reputation, and it will suffer irreparable harm if an injunction is issued.

### C. The Balance of Hardships and the Public Interest Both Weigh in Kids Station's Favor

If Little Tikes is granted injunctive relief, Kids Station will suffer irreparable harm to its goodwill, reputation, and existing sales network, as set forth above. Little Tikes, on the other hand, faces no irreparable harm if the injunction is not granted. Kids Station will continue manufacturing and selling licensed products under the terms of the parties' Agreement, it will continue paying Little Tikes its royalty fees, and it will continue to perform all of its other obligations. If Little Tikes were ultimately to show the existence of any past breach, money damages would adequately compensate them. They would suffer no irreparable harm if they are required to honor the Agreement and allow Kids Station to continue selling approved licensed products and receiving royalty payments in connection with those sales. *See Carlo C. Gelardi Corp. v. Miller Brewing Co.*, 421 F. Supp. 233, 236 (D.N.J. 1976) (finding that the balance of harms warranted enjoining the termination of a beer distribution agreement as the brewing company would continue to derive revenue from the distributor's efforts); *World Triathlon Corp. v. Sports Ctr.*, No. 904CV1594T24TBM, 2005 WL 3445526, at *4 (M.D. Fla. Dec. 14, 2005 (balance of harms warranted enjoining the termination of a license agreement where the licensor

would continue receiving its fees, notwithstanding claims by licensor that events were not being handled correctly and there was a past incident resulting in injury to a competitor).

Moreover, Little Tikes' argument that it would be harmed if injunctive relief is not granted is unsupportable. In large part because of the high quality line of its Little Tikes' products, Kids Station has been selected as Little Tikes Licensee of the Year, nominated as the Licensing Industry Merchandisers Association's Best Corporate Brand Licensee of the Year for the Little Tikes brand and, just last month, selected as Wal-Mart Global Procurement Supplier of Year 2007. (Ex. A, Cabrera Decl. ¶ 14; Ex. B, Newman Decl. ¶ 5) Contrary to their unsubstantiated claims of harm, Little Tikes benefits substantially from Kids Station's Little Tikes-branded products both in royalties and through an enhanced reputation for quality.

Little Tikes' arguments to the contrary are based upon the entirely inaccurate premise that they have suffered or will suffer harm because of sales of the old version of the approved KSL8033, and the groundless statement that Little Tikes would "lose control" over its trademarks. (Little Tikes' Mem. at 19) All of this is untrue. Little Tikes' claims of past harm are entirely unsupported and ignore the factual reality that when millions of products are sold, a handful of complaints are inevitable. Discovery will undoubtedly show such complaints have been made about MGA's products over time as well. In fact, a quick Internet search reveals numerous customer complaints about the quality of non-Kids Station, Little Tikes-branded products. These complaints include ones about lead paint and other safety problems, which are alleged to have caused serious injuries to children. Little Tikes histrionics notwithstanding, no one ever has claimed a child has been injured by a Kids Station Little Tikes toy. (Group Ex. D) This evidence supports the obvious point that Little Tikes' attempts to conjure danger from a handful of consumer complaints, unaccompanied by any injuries, falls far short of the mark. It

19

also pales in comparison to the real and irreparable harm Kids Station will suffer if it is enjoined. Furthermore, as a reflection of Kids Station's high standards, and out of an abundance of caution, Kids Station has elected to voluntarily recall the older version of the approved KSL8033, the principal basis for Little Tikes' claim of irreparable harm (with which Kids Station disagrees entirely). Little Tikes purported basis for establishing harm is moot.

Additionally, denying Little Tikes' request for injunctive relief would not cause it to lose control over its trademarks. All Kids Station wants is to have Little Tikes act in good faith, abide by the terms of the License Agreement, and have a court determine the appropriateness of Little Tikes' purported termination before Little Tikes is allowed to destroy Kids Station's business. Kids Station will fully and completely abide by the License Agreement, continue paying all of its royalty payments, and perform all of its other obligations. Little Tikes cannot possibly suffer any irreparable injury if the only Little Tikes branded products in the marketplace are the ones that Little Tikes has already approved (and, as established, do not include any version of the KSL8033).

Finally, the public interest further supports denying Little Tikes' request for injunctive relief. Contrary to Little Tikes' sole argument with respect to this point, there is no confusion in the marketplace because each product in the marketplace today was properly approved in writing by Little Tikes for sale. Courts have long recognized that the public has an interest in agreements being enforced. *See Arcadia Health Serv., Inc. v. A. Health Care, Inc.*, No. 96 C 8363, 1997 WL 24737, at *5 (N.D. Ill. Jan. 17, 1997) ("the public has an interest in valid contracts being enforced"). *Caterpillar, Inc. v. Jerryco Footware*, 880 F. Supp. 578, 593 (C.D. Ill. 1994) ("[t]he public has an interest in seeing that parties that enter into commercial agreements honor those agreements"). Further, licensees and other businesses such as Kids

Station need certainty that the licensors with whom they contract with will be required to honor their commitments, not renege on them whenever it serves their proprietary interests to do so.

## CONCLUSION

Little Tikes does not address the one issue that really makes a difference to the outcome of this dispute: was there a substantial basis for immediate termination of the License Agreement?  Little Tikes does not and cannot show Kids Station ever sold an unapproved product.  Indeed, the record will show something very different.  Every Little Tikes product sold by Kids Station had been properly tested and approved, even the "old" version cell phone that Kids Station voluntarily stopped selling months before the purported termination.  The purported termination was plainly improper, and affords no basis for terminating the license.  Little Tikes' request for injunctive relief is wholly unsupported by the record, and should be denied.  Alternatively, Kids Station requests that this matter be set for a preliminary injunction hearing following expedited discovery of both Little Tikes and MGA, their unlawful practices, and their conduct involving the disputes central to this case.

Dated: April 15, 2008                    Respectfully submitted,


                                         /s/ Charles B. Leuin
                                         Paul T. Fox
                                         Charles B. Leuin
                                         Paul J. Ferak
                                         Jason B. Elster
                                         Greenberg Traurig, LLP
                                         77 West Wacker Drive, Suite 2500
                                         Chicago, Illinois 60601
                                         Tel: (312) 456-8400
                                         Fax: (312) 456-8435

                                         Attorneys for Kids Station Toys Ltd.

# EXHIBIT
# A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

THE LITTLE TIKES COMPANY,  )
                                    )

     Plaintiff,  )
                                      )

                                      )   Case No. 08 CV 1935

v.  )
                                      )   Hon. Joan B. Gottschall

KID STATION TOYS LTD., et al.,  )
                                      )

     Defendants.  )

### DECLARATION OF EDWIN A. CABRERA

I, Edwin A. Cabrera, under penalty of perjury, state as follows:

1.     I am the Chief Financial Officer of Kids Station Toys Ltd. ("Kids Station"), a Hong Kong corporation with its principal place of business in Miami, Florida. I have served as the Chief Financial Officer of Kids Station for four years, and am responsible for a wide variety of financial and operational matters.

2.     Kids Station has certain affiliates that have been organized for tax and other business reasons, including Kids Station (US) Inc., a Florida corporation, and Kids Station Toys International Ltd., a Bermuda corporation. Kids Station never has attempted to obscure the existence of any of those entities. For example, virtually all royalty payments to Little Tikes were made by Kids Station Toys International Ltd. in Bermuda, a fact of which Little Tikes has been aware for years.

3.     One of the products Kids Station manufactures and sells is called the Little Tikes Play Cell Phone and Electronic Light N' Sounds Key Ring, known as product number 8033. The 8033 was approved by Little Tikes for production and sale under the License Agreement between Kids Station and Little Tikes. Prior to being approved for production and sale, Little Tikes approves the design concepts and samples of a product. A true and correct

copy of a May 23, 2006 Trademark Release authorizing Kids Station to sell the KSL8033, and other products, is attached hereto as Exhibit 1. Little Tikes only provides a Trademark Release, which can be necessary for importation of a licensed product, for products that have received final production approval.

4.     The 8033 was reviewed and tested both in 2006 and 2007 by independent third parties, Consumer Testing Laboratories, Inc., Intertek Testing Services, HK Ltd., and Bureau Veritas, who each concluded that the 8033 was in compliance with applicable safety standards and regulations. Attached to this Declaration as Group Exhibit 2 are testing reports that Kids Station received from Consumer Testing Laboratories, Inc., Intertek Testing Services, HK Ltd., and Bureau Veritas concluding that the 8033 was in compliance with applicable safety standards and regulations.

5.     In or around September 2007, Kids Station was contacted by the United States Consumer Products Safety Commission (the "CPSC") regarding a customer contact with the CPSC relating to the 8033.

6.     In September 2007, Kids Station proposed a modification to the 8033. Kids Station provided notice to both the CPSC and Little Tikes of the proposed modification, which involved adding a screw to the hinge cover of the 8033. This modification was to be made on a going-forward basis only and both the CPSC and Little Tikes were informed in late September 2007 that Kids Station would implement the modification when new tooling was complete. Little Tikes agreed with this approach. The modified 8033 was approved by Little Tikes on October 30, 2007. Attached as Exhibit 3 is a true and correct copy of the approval form for the modified 8033.

2

7.    In addition to sending an approval form for the modified 8033, Little Tikes sent approval forms for other Kids Station products on that same date, including products known by Kids Station product numbers KSL8030 and KSL4010. The KSL4010 contains the same cell phone toy as is included in the KSL8033. True and correct copies of the approval forms for these products are attached hereto as Exhibit 4.

8.    The modified 8033 was reviewed and tested by Bureau Veritas, who concluded that the modified 8033 was in compliance with applicable safety standards and regulations. *See* Group Exhibit 2, 10/17/07 Test Report.

9.    At no time did any representative of Little Tikes suggest that any version of the 8033 should be removed from any retailer's shelves until January 30, 2008, when it asked Kids Station to consider doing that by letter. Four business days later, and before Kids Station had an opportunity to respond to that letter, Little Tikes told Kids Station that Little Tikes was purporting to immediately terminate the License Agreement.

10.    In a letter from the CPSC dated March 14, 2008, after Little Tikes' purported termination of the Agreement, the CPSC stated that testing indicated that the 8033 did not comply with an applicable safety standard. In response to the March 14, 2008 CPSC letter, Kids Station stopped all shipments and sales of the 8033 pending its investigation of CPSC's findings and further testing of the 8033. Kids Station also notified all retailers who had purchased the 8033 (and any other products containing the cell phone at issue) of the CPSC's finding.

11.    On March 26, 2008, in response to the March 14, 2008 CPSC letter, SGS United States Testing Company, Inc. was retained to conduct further testing of the 8033. Twelve samples of the 8033 were submitted for testing, six samples of the unmodified 8033

and six samples of the modified 8033.  SGS United States Testing Company completed its review and testing on March 28, 2008 and was unable to replicate any problem with the 8033, determining that the 8033 was in compliance with applicable safety standards and regulations. A true and correct copy of the SGS test report is attached hereto as Exhibit 5.  On April 2, 2008, Kids Station communicated those test results to the CPSC.  Little Tikes also was informed of those test results before it brought the instant action.

12.     Despite these additional passing test results for the 8033, Kids Station has determined that, out of an abundance of caution, it will submit to the CPSC a voluntary corrective action plan relating to the 8033.  While Kids Station continues to believe that the 8033 meets the small parts requirement set forth in 16 CFR Part 1501 and all other applicable safety standards and regulations, and disagrees with the CPSC's March 14, 2008 findings, Kids Station has informed the CPSC that it will propose a voluntary corrective action plan and intends on submitting the plan to the CPSC no later than April 25, 2008.  The proposed corrective action plan will be limited to versions of the product produced prior to the modification in October 2007.

13.     Once Kids Station was able to produce the modified 8033, Kids Station made no shipments of the pre-modification 8033.  The last shipment of the 8033 as originally tested and approved occurred on or about October 5, 2007.

14.     On March 21, 2008, Kids Station was notified by Wal-Mart that Kids Station was selected as Wal-Mart Global Procurement Supplier of the Year for 2007.

The undersigned certifies, under penalty of perjury pursuant to 28 U.S.C. § 1746, that the statements set forth herein are true and correct.

Executed on April 15, 2008

_____

Edwin A. Cabrera
Chief Financial Officer, Kids Station Toys Ltd.

# EXHIBIT 1

## to Edwin Cabrera's Declaration



6/23/06

## TRADEMARK RELEASE

Kid Station, Inc has been contracted by The Little Tikes Company to design, produce and import products sold under the Little Tikes Trademark. The expiration date of this agreement is 12/31/2006. Territories are restricted to include USA & Canada.

KSL2021  JAM N' GROOVE BOOMBOX
KSL2022  JAM N' GROOVE CD PLAYER
KSL2102  CLICK N PLAY CAMERA WITH FLASH
KSL2105  JAM N' GROOVE MP3 PLAYER
KSL4010  PLAY CELL PHONE
KSL5001  LIGHTS N SOUNDS LAPTOP
KSL8029  MUSICAL HANDS PLAYMAT
KSL8030  ELECTRONIC LIGHT N SOUNDS KEY RING
KSL8031  ELECTRONIC DUAL DANCEMAT
KSL8032  ELECTRONIC COMBO SET
KSL8033  ELECTRONIC COMBO SET
KSL8034  CD PLAYER AND PLAY PHONE COMBO SET

Frank Shorf

Little Tikes Licensing
2180 Barlow Road
Hudson, Oh 44236
330-650-3180

# GROUP EXHIBIT 2

## to Edwin Cabrera's Declaration



# CONSUMER TESTING LABORATORIES [FAR EAST] LTD.

UNIT 703-704, 7TH FLOOR, RILEY HOUSE, 88 LEI MUK ROAD, KWAI CHUNG, N.T., HONG KONG
852-2423-7161  •  FAX 852-2480-4758  •  info@ctlife.com

## EVALUATION OF TESTING RESULTS

**Client:** WAL-MART                                      **Date:** MAY 29, 2006

**Lab Report No.:** 720907        **Buyer:** MARVIN DESHOMMES        **Dept:** 07

**Test Type:** PRODUCTION    **Retest:** ____   **Prev. Lab No.:** 720000

**Order Type:** DIRECT IMPORT    **WMGP:** SHENZHEN    **Importer:** _____

**Item Desc:** PLAY CELL PHONE AND ELECTRONIC LIGHT N' SOUNDS KEY RING

**Factory/Mfg:** SHENZHEN SHI NAN SHAN QU TANG LANG LAP SANG PLASTI    **Factory No:** 28056303

**Style / Model No.:** KSL8033

**Country of Origin:** CHINA        **Order No.:** 0851 64 1318

**Wal-Mart Supplier:** KIDS STATION TOYS INT'L LTD.        **Supplier No:** 28029747

**Reason For Test:** OVERALL QUALITY EVALUATION

**Reference:** _____

| | |
|---|---|
| **XXX** | THE SAMPLE IS RATED AS **GOOD** AND PASSED THE BASIC PERFORMANCE AND SERVICEABILITY TESTS. |
| | THE SAMPLE IS RATED AS **UNSATISFACTORY** BECAUSE OF DEFICIENCIES LISTED BELOW. |

CONSUMER TESTING LABORATORIES (FAR EAST) LTD.

JAMES HO
CATEGORY MANAGER

TODD KRAWCHUK
DIRECTOR OF HARDLINES, HONG KONG

## Specialists in the Evaluation of Consumer Products Since 1952

Florida  •  Arkansas  •  Hong Kong  •  India  •  Canada  •  China

**CONSUMER TESTING LABORATORIES, INC**

CLIENT      Wal-Mart                                    LABORATORY REPORT No. 720907

# TOY

### TECHNICAL WORKSHEET

**SAMPLE**    Play Cell Phone and Electric Light N' sounds Key Rin     **STOCK No.**    KSL8033

## I.  IDENTIFICATION and INSPECTION

| | PASS | FAIL | COMMENTS |
|---|:---:|:---:|---|
| **PACKAGING** | | | |
| Good package quality and labeling | x | | |
| Country of origin          *Made In China* | x | | |
| Provides the following manufacturer / distributor information | | | |
| Mfg/Distributor I.D.   *Kids Station Toys International Ltd* | x | | |
| Address          *P.O Box 694660 Miami, Florida* | x | | |
| **AGE GRADING** | | | |
| Labeled age          *+1½years* | | | |
| Age group(s) for which the sample is tested: | | | |
| 18 months or less          --- | | | |
| Over 18 months to 36 months          x | | | |
| Over 36 months to 72 months          x | | | |
| Over 72 months to 96 months          x | | | |
| Over 96 months          x | | | |
| All Ages          --- | | | |
| **PACKAGING SAFETY LABELING  (as applicable)** | | | |
| Packaging exhibits conspicuous and legible safety labeling in accordance with Section 5.3, regarding the following: | | | |
| Aquatic Toy - (5.4) - Toy is an aquatic toy | | | |
| *N*          Y/N | | | |
| Packaging exhibits aquatic toy safety labeling | --- | --- | *N/A Not an aquatic toy* |
| Promotional Materials - (5.16) | x | | |
| Toys in Contact with Food - Labeling - (6.7) - Toy is a food contact toy | | | |
| *N*          Y/N | | | |
| Packaging (or instructions) exhibits labeling for toys in contact with food | --- | --- | *N/A Not a food contact toy* |
| Toys Intended to be Assembled by an Adult - (5.8) - Toy is intended to be assembled by an adult | | | |
| *N*          Y/N | | | |
| Packaging for a toy which requires adult assembly and contains, in its unassembled state, potentially hazardous sharp edges or points, or contain small parts, includes the following: | | | |
| A statement that the toy is to be assembled by an adult *AND* | --- | --- | *N/A Not an adult assembly toy* |
| Safety labeling consisting of the alert symbol with the signal word "CAUTION" or "WARNING"  followed by a statement which indicates the potential hazard  (e.g. small parts, sharp point, sharp edge) | --- | --- | *N/A Not an adult assembly toy* |
| Small Parts Warning - (4.6) | --- | --- | *N/A- tested for 18m+* |
| Small Balls Warning - (4.35 & 5.11.3) | --- | --- | *N/A- no ball* |
| Marble Warning - (4.34 & 5.11.4) | --- | --- | *N/A- no marble* |
| Latex Balloon Warning - (4.32 & 5.11.5) | --- | --- | *N/A- no latex balloon* |

**CONSUMER TESTING LABORATORIES, INC**

CLIENT    Wal-Mart _____    LABORATORY REPORT No. 720907 _____

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| Simulated Protective Devices - (5.9) - Toy is a simulated safety protective device<br><br>_N_          Y/N | | | |
| Packaging exhibits simulated protective device safety labeling | --- | --- | N/A Not a simulated safety protective device |
| Toys with Functional Sharp Edges or Points Labeling - (5.10) | --- | --- | N/A- no functional sharp edge or point |
| **PRODUCT SAFETY LABELING** (as applicable)<br>Toy exhibits permanent, conspicuous, and legible safety labeling in accordance with Section 5.3, regarding the following: | | | |
| Aquatic Toy - (5.4) - Toy exhibits aquatic toy safety labeling | --- | --- | N/A Not an aquatic toy |
| Stroller and Carriage Toys (4.29 & 5.7) - Toy is intended to be strung across a stroller or carriage by means of strings, cords, elastic, or straps<br><br>_N_          Y/N | | | |
| Toy exhibits stroller and carriage toys safety labeling | --- | --- | N/A Not a stroller or carriage toy as defined |
| Simulated Protective Devices- (5.9) - Toy exhibits simulated protective device safety labeling | --- | --- | N/A Not a simulated safety protective device |
| **INSTRUCTIONS** (as applicable)<br>Instructions (if required) are complete and easy to read and understand by persons of the age level for whom the instructions are intended | x | | |
| Instructions exhibit safety labeling as defined in Section 5.3, regarding the following: | | | |
| Toys in Contact with Food - Instructions - (6.7) - Instructions (or packaging) exhibits required labeling for toys in contact with food | --- | --- | N/A Not a food contact toy |
| Toy Intended to be Assembled by an Adult - (6.5) - Instructions for a toy which requires assembly and contains, in its unassembled state, potentially hazardous sharp edges or points, or contain small parts, includes the following: | | | |
| A statement that the toy is to be assembled by an adult AND | --- | --- | N/A Not an adult assembly toy |
| Safety labeling consisting of the alert symbol with the signal word "CAUTION" or "WARNING" followed by a statement which indicates the potential hazard (e.g. small parts, sharp point, sharp edge) | --- | --- | N/A Not an adult assembly toy |

| II. CONSTRUCTION | | | |
|---|---|---|---|
| | PASS | FAIL | COMMENTS |
| Packaging Film - (4.12) - Toy includes a flexible plastic film bag or flexible plastic sheets used as packaging material (shrink film in the form of an overwrap that would normally be destroyed when the package is opened OR bags or plastic film with a minor dimension of 3.94 in or less is excluded)<br><br>_N_          Y/N | | | |
| Flexible plastic film bags and flexible plastic sheets used as packaging material exhibit a nominal thickness of at least 0.0015 in, with the actual thickness never less than 0.00125 in | --- | --- | N/A No plastic film bags or plastic sheets |

**CONSUMER TESTING LABORATORIES, INC**

CLIENT     Wal-Mart                                         LABORATORY REPORT No. 720907

| | | | PASS | FAIL | COMMENTS |
|---|---|---|---|---|---|
| DIMENSIONS (required only if labeled) - Toy includes labeled dimension(s) | | *N* _____ Y/N | | | |
| Length | Labeled | --- in | | | N/A No labeled dimensions |
| | Actual | --- in | --- | --- | N/A No labeled dimensions |
| Width | Labeled | --- in | | | N/A No labeled dimensions |
| | Actual | --- in | --- | --- | N/A No labeled dimensions |
| Height | Labeled | --- in | | | N/A No labeled dimensions |
| | Actual | --- in | --- | --- | N/A No labeled dimensions |
| **OVERALL WEIGHT** | | *7* oz | | | |
| **FINISH / WORKMANSHIP** | | | | | |
| Good overall appearance and good finish qualities with no material or workmanship defects noted | | | x | | |
| Wires or Rods - (4.10) - Toy includes internal wires or rods | | *N* _____ Y/N | | | |
| Internal wires or rods are free from sharp edges or any other defects. Cut wire ends are turned back or are fitted with a plastic end cap to eliminate potential hazards and prevent protrusion | | | --- | --- | N/A No internal wires or rods |
| Sound Producing Toy - (4.5) - Toy is a sound producing toy | | *Y* _____ Y/N | | | |
| Noise making components do not produce sounds that exceed the dB levels specified in ASTM F963 section 4.5 | | | x | | |
| Small Objects - (4.6) - The toy is intended for children under 36 months of age | | *Y* _____ Y/N | | | |
| The toy, or any as received components, do not fit within the test cylinder used to determine choking hazards | | | x | | |
| Mouth Actuated Toy - (4.6.2) - Toy is a mouth actuated toy | | *N* _____ Y/N | | | |
| Mouth actuated toy does not release any small object when tested in accordance with section 8.13 | | | --- | --- | N/A Not a mouth actuated toy |
| Inflatable Toy (4.6.2.1) - Toy, or component of toy is inflatable | | *N* _____ Y/N | | | |
| Does not release small objects during inflation or deflation | | | --- | --- | N/A Not an inflatable toy |
| Accessible Edges (4.7) - No hazardous sharp edges as received, when tested using the sharp edge tester | | | x | | |
| *Note: Toy intended for children from 48 to 96 mo of age may contain a functional sharp edge if cautionary labeling is provided (section 5.10)* | | | | | |
| Exposed Bolts / Threaded Rods - (4.7.5) - Toy includes bolts or threaded rods | | *N* _____ Y/N | | | |
| Bolts or rods exhibit no accessible hazardous sharp edges or burrs | | | --- | --- | N/A No exposed bolts or threaded rods |
| Projections (4.8) - Exhibits no hazardous rigid projections which present a potential puncture hazard (Under 8 yrs) | | | x | | |
| Accessible Points - (4.9) - No hazardous sharp points as received, when tested using sharp point tester | | | x | | |
| *Note: Toy intended for children from 48 to 96 mo of age may contain a functional sharp point if cautionary labeling is provided (section 5.10)* | | | | | |

**CONSUMER TESTING LABORATORIES, INC**

CLIENT     Wal-Mart

LABORATORY REPORT No. 720907

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| <u>Wood</u> - (4.9.3) - Toy or component of toy is constructed of wood <br> _____N_____ Y/N | | | |
| Accessible wood surfaces and edges are free from splinters | --- | --- | _N/A No wood in construction_ |
| <u>Nails & Fasteners</u> - (4.11) - Toy includes nails or other fasteners <br> _____Y_____ Y/N | | | |
| Fasteners exhibit no point, edge, ingestion, or projection hazards | x | | |
| <u>Folding Mechanisms</u> - (4.13) - Toy includes a folding mechanism, arm, or bracing <br> _____N_____ Y/N | | | |
| Folding mechanisms (intended to bear the weight of a child) provide a safety stop to prevent unexpected or sudden movement or collapse, OR has adequate clearance to provide protection from crushing or laceration or pinching of appendages in the event of sudden movement or collapse (before & after use / abuse tests) | --- | --- | _N/A Toy includes no folding mechanisms_ |
| <u>Hinge-Line Clearance</u> - (4.13.2) - Toy exhibits a gap or clearance along a hinge line of a component which is intended to bear the weight of a child <br> _____N_____ Y/N | | | |
| Accessible gaps along the hinge line between a stationary portion and a movable portion that weighs more than 1/2 lb. is constructed so that if the gap admits a 3/16 in diameter rod, it will also admit a 1/2 in diameter rod at all positions of the hinge (before & after use/abuse tests) | --- | --- | _N/A Toy exhibits no gaps or clearances as described_ |
| <u>Cords & Elastics</u> - (4.14) - Toy includes cords or elastics (excluding self-retracting pull cords, and pull cords on pull toys, or toy bags) <br> _____N_____ Y/N | | | |
| Cords or elastics included with or attached to toys intended for children under 18 mo of age, are less than 12 in when measured in a free state and under a load of 5 lb | --- | --- | _N/A No cords or elastics_ |
| The perimeter of any loop formed by cords / elastics or multiple cords / elastics in connection with any part of a toy intended for children under 18 mo of age (including beads or attachments on the ends of the cords or elastics), does not allow the complete passage of the head probe | --- | --- | _N/A No cords or elastics_ |
| <u>Self-Retracting Pull Cords</u> - (4.14.1.1) - Toy includes a self retracting pull cord <br> _____N_____ Y/N | | | |
| Accessible cords used in cord activated mechanisms intended for children under 18 mo of age, do not retract more than 1/4 inch when a weight of 2 lb is attached to the fully extended cord. The cord is held vertical and the toy is held firmly in the most favorable position for retraction <br><br> _Note: For monofilament cords which are 1/16 inch or less in diameter the applied load is 1 lb_ | --- | --- | _N/A No self-retracting pull cords_ |
| <u>Pull Toys</u> - (4.14.2) - Toy is a pull toy <br> _____N_____ Y/N | | | |
| Cords and elastics greater than 12 in long on pull toys intended for children under three, exhibit no beads or other attachments that could tangle to form a loop | --- | --- | _N/A Not a pull toy_ |

Rev. 05/19/06

**CONSUMER TESTING LABORATORIES, INC**

CLIENT     Wal-Mart                 LABORATORY REPORT No. 720907

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| <u>Cords on Toy Bags</u> - (4.14.4) - Toy includes a toy bag with an opening perimeter greater than 14 in<br>*N*        **Y/N** | | | |
| Toy bags included with toys intended for children under 18 months do not use a drawstring or cord as a means of closing | --- | --- | *N/A No potentially hazardous toy bags* |
| **<u>STABILITY & OVERLOAD REQUIREMENTS</u> - (4.15)** | | | |
| <u>Ride-On Toys and Seats</u> - The toy is a ride on toy or seat<br>*N*        **Y/N** | | | |
| Ride-on toys meets requirements of supplemental worksheet Ride-On Toy 7-8 (attached) | --- | --- | *N/A Not a ride on toy or seat* |
| <u>Feet Available for Stabilization</u> - (4.15.2.1) - The toy does not tip when placed on a 10° incline from the horizontal, and tested as outlined in ASTM F 963 section 8.16  (under 60 mo) | --- | --- | *N/A Not a ride on toy or seat* |
| <u>Feet Unavailable for Stabilization</u> - (4.15.2.2) -  The toy does not tip when placed on a 15° incline from the horizontal, and tested as outlined in ASTM F 963 section 8.16  (under 60 mo) | --- | --- | *N/A Not a ride on toy or seat* |
| <u>Fore and Aft Stability</u> - (4.15.3) -  Toy does not tip forward or backward when placed on an incline facing both down and up the slope and tested as outlined in ASTM F 963 section 8.16 except the surface is inclined to 15°   (under 60 mo, for toys where the rider can not easily use legs for stabilization) | --- | --- | *N/A Not a ride on toy or seat* |
| <u>Overload Requirements for Ride-On Toys and Seats</u> - (4.15.5) - Any component designed to support the weight of the child withstands without collapsing to produce a hazardous condition, three times the weight indicated in ASTM F 963 Table 3 | --- | --- | *N/A Not a ride on toy or seat* |
| <u>Stability of Stationary Floor Toys</u> - (4.15.4) - The toy is a stationary floor toy<br>*N*        **Y/N** | | | |
| The stationary floor toy does not tip when placed on 10° incline from the horizontal, with all movable portions extended to their fullest travel and facing in the direction of the downslope side | --- | --- | *N/A Not a stationary floor toy* |
| <u>Ventilation</u> - (4.16.1) - Toy contains door or lid that encloses a continuous volume greater than 1.1 ft$^3$ and in which all internal dimensions are 6 in or more<br>*N*        **Y/N** | | | |
| Toy provides one of the following unobstructed ventilation areas:<br>Two openings (minimum) with each having at least 1 in² and are at least 6 in apart  **OR** | --- | --- | *N/A No ventilation required* |
| One opening that is the equivalent of the two 1 in² openings expanded to include the separation area, provided this leaves opening areas of 1 in² on either side of a 6 in spacing | --- | --- | *N/A No ventilation required* |
| <u>Closures</u> - (4.16.2) - Toy has a closure such as a lid, cover or door<br>*N*        **Y/N** | | | |
| Closures do not provide an automatic locking device, and can be opened with a force of 10 lb or less when tested as outlined in section 4.16.2.1 | --- | --- | *N/A No closures* |

**CONSUMER TESTING LABORATORIES, INC**

CLIENT _____Wal-Mart_____     LABORATORY REPORT No. 720907_____

| | | PASS | FAIL | COMMENTS |
|---|---|---|---|---|
| Toys that Enclose the Head - (4.16.3) - Toy encloses the head | _N_ _____ Y/N | | | |
| Provides ventilation consisting of a minimum of 2 holes with a total of at least 2 in² of ventilation and at least 6 in between the holes | | --- | --- | N/A Not a head enclosing toy |
| Accessible Clearances for Movable Segments - (4.18.1) - Toy exhibits accessible clearances between movable segments (where potential for pinching / crushing fingers or other appendages exist) | _N_ _____ Y/N | | | |
| Accessible clearances between moveable segments are constructed so that if the clearance admits a 3/16 in. diameter rod, it also admits a 1/2 in. diameter rod (before & after use / abuse tests) | | --- | --- | N/A No potentially hazardous clearances |
| Circular Holes in Rigid Materials - (4.18.2) - Toy intended for 60 mo or less (all criteria applies before & after use / abuse tests) | _Y_ _____ Y/N | | | |
| Toy exhibits accessible circular hole(s) in rigid material | _Y_ _____ Y/N | | | |
| Circular holes are located in rigid material which is less than 0.062 inches thick | _Y_ _____ Y/N | | | |
| Circular holes are constructed so that if the hole can admit a 1/4 in. diameter rod to a depth of 3/8 in., it will also admit a 1/2 in. diameter rod | | x | | |
| Inaccessibility of Mechanisms - (4.18.4) - Toy includes clockwork, battery operated, inertial, or other power driven mechanisms | _N_ _____ Y/N | | | |
| No accessible part of any power driven mechanism used in a toy tested for children under 60 mo. of age, presents a pinch or laceration hazard (before & after use / abuse tests) | | --- | --- | N/A No power driven mechanisms |
| Winding Keys - (4.18.5) - Toy includes a winding key | _N_ _____ Y/N | | | |
| Winding keys used on a toy intended for children under 36 mo. of age, do not present a potential finger entrapment hazard, by conforming to the following dimensional requirements: | | | | |
| If the clearance between the flukes of the key and the body of the toy admits a 0.25 in. diameter rod, it also admits a 0.50 in. diameter rod, at all positions of the key | | --- | --- | N/A No winding keys |
| Exhibits no opening in the flukes of the key that admits a 0.19 inch diameter rod | | --- | --- | N/A No winding keys |

Rev. 05/19/06

**CONSUMER TESTING LABORATORIES, INC**

CLIENT      Wal-Mart                                    LABORATORY REPORT No. 720907

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| Coil Springs - (4.18.6) - The toy includes a coil spring which forms part of a component that is intended to bear the weight of a child _____N_____ Y/N | | | |
| Coil springs are shielded to prevent access during normal use or reasonably foreseeable abuse (shielding is not required if one of the conditions specified below is provided) | --- | --- | *N/A No potentially hazardous coil springs* |
| A 0.12 inch diameter rod cannot be inserted freely   **OR** | --- | --- | *N/A No potentially hazardous coil springs* |
| A 0.25 inch diameter rod can be inserted freely between the adjacent coils at all points in the action cycle when the spring is first subjected to a weight of 3 lb and then to a weight of 70 lb | --- | --- | *N/A No potentially hazardous coil springs* |
| Eye Protection - (4.19.1) - Toy covers the face _____N_____ Y/N | | | |
| Rigid toys which cover the face do not exhibit any sharp edges, points, or loose objects which could enter the eye (before & after use / abuse tests) | --- | --- | *N/A Not a toy that covers the face* |
| Toy Pacifiers - (4.20.2) - Toy includes, or is a toy pacifier _____N_____ Y/N | | | |
| Nipple length is no longer than 0.63 in. and meets small objects requirements | --- | --- | *N/A Not a toy pacifier* |
| Toy Gun/Projectile Toy - (4.21) - Toy is, or includes a gun/projectile _____N_____ Y/N | | | |
| Meets requirements of supplemental worksheet Gun / Projectile Toy 7-9 (attached) | --- | --- | *N/A Not a projectile toy* |
| Battery Operated Toy - (4.25) - Toy is a battery operated toy _____Y_____ Y/N | | | |
| Meets requirements of supplemental worksheet Battery Operated Toy 7-5 (attached) | x | | |
| Battery Operated Ride On Toy - (4.25.10) - Toy is a battery operated ride on toy _____N_____ Y/N | | | |
| Meets requirements of supplemental worksheet Battery Operated Ride-On Toy 7-36 (attached) | --- | --- | *N/A Not a battery operated ride on toy* |
| Certain Toys with Spherical Ends - (4.33.1) Toy incorporates a spherical, hemispherical, or circular flared end attached to a shaft, handle, or support that has a smaller cross section _____N_____ Y/N | | | |
| Spherical, hemispherical, or circular flared ends used on toys intended for children 18 mo. of age or younger pass at least one of the following requirements | | | |
| Weight of toy does not exceed 1.1 lbs OR | --- | --- | *N/A No spherical ends as described* |
| Spherical, hemispherical, or circular flared ends are not capable of entering and penetrating the full depth of the cavity in the supplemental test fixture | --- | --- | *N/A No spherical ends as described* |

**CONSUMER TESTING LABORATORIES, INC**

CLIENT    Wal-Mart                                        LABORATORY REPORT No. 720907

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| <u>Preschool Play Figures</u> - (4.33.2.1) - Toy includes a preschool play figure<br><br>                    *N*           Y/N | | | |
| Preschool play figures intended for children under 36 mo. of age are meet at least one of the following requirements | | | |
| Preschool play figures exceed 2.5 in. in length   **OR** | --- | --- | *N/A No preschool play figures* |
| Rounded ends of preschool play figures are not capable of entering & penetrating the full depth of the cavity in the Supplemental Test Fixture | --- | --- | *N/A No preschool play figures* |
| <u>Small Balls</u> - (4.35) - Toy is, or includes a ball<br><br>                    *N*           Y/N | | | |
| Balls intended for children under 36 mo. of age, do not pass through the 1.75 in. test fixture used to determine small ball hazards. Balls are rotated to all orientations and are tested under the influence of their own weight, and without compression | --- | --- | *N/A No balls* |
| <u>Pompoms</u> - (4.36) - Toy includes a pompom<br><br>                    *N*           Y/N | | | |
| Pompoms on toys intended for children under 36 mo. of age do not pass entirely through the 1.75 in. test fixture (small balls), under their own weight (tested in accordance with section 8.17) | --- | --- | *N/A No pompoms* |
| <u>Hemispheric Shaped Objects</u> - (4.37) - Toy is a hemispheric shaped object<br><br>                    *N*           Y/N | | | |
| Hemispheric shaped objects intended for children under 36 months are constructed to pass at least one of the following four requirements (before and after abuse testing) | | | |
| Provides at least two openings (0.08 in. diameter) that are a minimum of 0.5 in. from the rim | --- | --- | *N/A Not a hemispheric shaped toy* |
| The plane of the open end of the cup shape is interrupted at the center by a divider that extends 0.25 inches or less from the plane of the open end | --- | --- | *N/A Not a hemispheric shaped toy* |
| Provides at least three openings (0.080 in. diameter) that are at least 100° apart and located between 0.25 in. and 0.5 in. from the rim | --- | --- | *N/A Not a hemispheric shaped toy* |
| Provides a repeating scalloped edge around the entire rim with the distance between center lines of adjacent peaks 1 in. maximum and a minimum depth of 0.25 in. | --- | --- | *N/A Not a hemispheric shaped toy* |

## III.  USE & ABUSE TESTS

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| **PRACTICAL USE TESTS**<br>Properly performs all labeled and intended functions | x | | |
| <u>Assembly Toys</u> - Toy requires assembly<br><br>                    *N*           Y/N | | | |
| Toy is easily assembled and exhibits no creation of  hazards when assembled following the manufacturer's instructions. (simple assembly toys which do not include  instructions are easy to assemble without the aid of instructions) | --- | --- | *N/A Not an assembly toy* |

**CONSUMER TESTING LABORATORIES, INC**

CLIENT     Wal-Mart                                LABORATORY REPORT No. 720907

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| Toy intended to be taken apart easily disassembles, and exhibits no creation of hazards when disassembled as | --- | --- | *N/A Not an assembly toy* |
| Washable Toy - (8.5.1) - Toy is described as machine washable          N _____ Y/N | | | |
| Machine washable toy withstands 6 machine wash and tumble dry cycles as specified | --- | --- | *N/A Not labeled as machine washable* |
| **ABUSE TESTS - (8.6)** without creating a hazardous condition that presents an unreasonable risk of injury, such as ingestion, aspiration, puncture or laceration hazards (e.g. small parts, sharp edges, sharp points, splinters, projections, etc.) | | | |
| **IMPACT TESTS - (8.7)** Drop Test - (8.7.1) - Withstands dropping onto a concrete surface covered with vinyl composition floor tile, in a random orientation by the number of drops and at the drop height indicated in the table below: (not required for toy weighing more than the maximum toy weight indicated, or for a toy that meets the criteria for the tip-over test) | | | |

| AGE (months) | Max. Toy Weight (lb) | TEST PARAMETERS | | | |
|---|---|---|---|---|---|
| 0 to 18 | less than 3.0 ± 0.01 | 10 drops @ 4.5 ft ± 0.5 in | --- | --- | |
| 18 to 36 | less than 4.0 ± 0.01 | 4 drops @ 3.0 ft ± 0.5 in | --- | --- | |
| 36 to 96 | less than 10.0 ± 0.01 | 4 drops @ 3.0 ft ± 0.5 in | x | | |

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| Tip Over Test for Large, Bulky Toys - (8.7.2) - Toy is a large, bulky toy          N _____ Y/N | | | |
| Large, bulky toy withstands tipping over three times (one of which is in the worst case attitude) by pushing the toy slowly past its center balance onto a concrete surface covered with vinyl composition floor tile | --- | --- | *N/A Not a large, bulky toy* |
| Tumble Test for Wheeled Toy - (8.7.3) - Toy is a wheeled toy          N _____ Y/N | | | |
| Withstands tumbling down a flight of six steps, two times, in each of the four attitudes described in ASTM F 963 Section 8.7.3 (only applicable to toys weighing more than 3 lbs. but not more than 10 lbs.) | --- | --- | *N/A Not a wheeled toy* |
| Impact Test for Toys that Cover the Face - (8.7.4) - Toy covers the face          N _____ Y/N | | | |
| Withstands one drop of a 5/8 in. diameter ball weighing 0.56 oz. from a height of 50 in. upon the horizontal upper surface in the area that would cover the eyes in normal use | --- | --- | *N/A Not a face covering toy* |
| **TORQUE / TENSION TESTS FOR COMPONENT REMOVAL** Any projection, part, or assembly which could be grasped between the child's thumb and forefinger, or teeth, withstands torque tests, followed by tension tests, as outlined below | | | |

**CONSUMER TESTING LABORATORIES, INC**

CLIENT     Wal-Mart

LABORATORY REPORT No. 720907

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| **Torque Test for Removal of Components - (8.8) -** Withstands the applicable torque force (indicated in the table below) applied evenly within a period of 5 sec. in a clockwise direction until either: (1) a rotation of 180° from the original position has been attained, or (2) the required torque is exceeded.  The maximum rotation, or required torque is maintained for an additional 10 sec. Repeat procedure in the counterclockwise direction for each component | | | |

| Age (months) | Test Parameters | | | |
|---|---|---|---|---|
| 0 to 18 | 2 ± 0.2 in-lb | --- | --- | |
| 18 to 36 | 3 ± 0.2 in-lb | --- | --- | |
| 36 to 96 | 4 ± 0.2 in-lb | x | | |

**Tension Test** - (8.9) - Withstands the applicable tensile force (indicated in the table below) applied evenly within a period of 5 sec., parallel to the major axis of the test component, and maintained for 10 sec.  Repeat test with the force applied perpendicularly to the major axis of the test component

| Age (months) | Test Parameters | | | |
|---|---|---|---|---|
| 0 to 18 | 10 ± 0.5 lb | --- | --- | |
| 18 to 96 | 15 ± 0.5 lb | x | | |

Tension Test for Seams - (8.9.1) - Toy exhibits seams

$\qquad$ *N* $\qquad$ Y/N

   Seams withstand the applicable tensile force applied evenly within a period of 5 sec., and maintained for an additional 10 sec. Force is applied using clamps with 3/4 in. washers attached to the jaws.  Clamps are attached to the stuffed toy in such a manner that the outside edge of the washers at a point nearest the seam is no closer than 1/2 in. from the seam's edge | --- | --- | *N/A No seams* |

Compression Test - (8.10) - Toy exhibits a surface which is accessible to a child, but is inaccessible to contact during the drop test

$\qquad$ *Y* $\qquad$ Y/N

   All areas on the surface of the toy which are inaccessible to contact during the drop test withstand the applicable compression force (indicated in the table below) applied evenly within a period of 5 sec., and maintained for 10 sec.  Force is applied through a rigid metal disk (1.125 ± 0.015 in. in diameter and 0.375 in. thick) positioned so that the flat surface contact is parallel to the surface under test

| Age (months) | Test Parameters | | | |
|---|---|---|---|---|
| 0 to 18 | 20 ± 0.5 lb | --- | --- | |
| 18 to 36 | 25 ± 0.5 lb | --- | --- | |
| 36 to 96 | 30 ± 0.5 lb | x | | |

Protective Caps - (4.7.5) - Toy includes protective caps on accessible bolts or threaded rods

$\qquad$ *N* $\qquad$ Y/N

   Caps used to protect from potentially hazardous sharp edges on accessible bolts or threaded rods withstand the compression test regardless of whether the cap is accessible to flat-surface contact during the appropriate impact test | --- | --- | *N/A No protective caps as described* |

**CONSUMER TESTING LABORATORIES, INC**

CLIENT    Wal-Mart    LABORATORY REPORT No. 720907

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| <u>Removal of Tires</u> - (8.11.1) - Toy includes tires | | | |
| *N*              Y/N | | | |
| Tires do not present an ingestion hazard or the axle a laceration or puncture hazard when the wheel axle is clamped in a vertical position and a wire hook attached to a load of 15-lbs (10-lbs if toy intended for children aged 18 mo or less) is gradually applied to the tire over a period of 5-sec and maintained for 10-sec | --- | --- | *N/A No tires* |
| <u>Snap-in Axles</u> - (8.11.2) - Toy includes a snap in axle | | | |
| *N*              Y/N | | | |
| Toys with snap-in axles do not present an ingestion hazard if intended for children aged less than 36 mo when held in a horizontal position and a load of 15-lbs is applied perpendicularly to the axle between the two bearings using a hook.  The load is gradually applied over a period of 5-sec and maintained for 10-sec.  If the axle cannot be hooked as above, the load is applied perpendicular to the axle to one wheel by a hook or clamp | --- | --- | *N/A No snap in axles* |
| <u>Axle Assembly Compression Test</u> - (8.11.3) - The wheel and axle were removed during the snap in axle test above | | | |
| ---              Y/N | | | |
| The wheel and axle assembly is positioned vertically on a rigid plate with a hole large enough to permit the axle to pass through.  The axle does not form a hazardous point or projection when a 20-lb load is gradually applied to the upper wheel through a circular adapter over a period of 5-sec and maintained for 10-sec | --- | --- | *N/A No snap in axles* |
| <u>Flexure Test</u> - (8.12) - Toy includes wires or other metal material used for stiffening, or form retention | | | |
| *N*              Y/N | | | |
| Wires or other metal material withstand the flexure test without fracturing to produce a hazardous point or edge (applicable forces are indicated in the table below) | | ✓ | |

| Age (months) | Test Parameters | | PASS | FAIL | COMMENTS |
|---|---|---|---|---|---|
| 0 to 18 | 10 ± 0.5 lb | | --- | --- | *N/A No wire or metal stiffeners* |
| 18 to 96 | 15 ± 0.5 lb | | --- | --- | *N/A No wire or metal stiffeners* |

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| **TOXICOLOGY** Toy includes a glazed ceramic or porcelain enamel component that is intended to be in contact with food | | | |
| *N*              Y/N | | | |
| Glazed ceramic or porcelain enamel components comply with the following: | | | |
| FDA guidelines for maximum allowable content of leachable lead and cadmium | --- | --- | *N/A No glazed ceramic or porcelain enamel food contact components* |
| California Proposition 65 guidelines for maximum allowable content of leachable lead and cadmium | --- | --- | *N/A No glazed ceramic or porcelain enamel food contact components* |

**CONSUMER TESTING LABORATORIES, INC**

CLIENT _____Wal-Mart_____    LABORATORY REPORT No. 720907_____

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| Lead Content - (16CFR 1303) - Toy exhibits paint or similar surface coating | | | |
| _Y_         Y/N | | | |
| Paint or similar surface coatings demonstrate a lead content not exceeding 0.06% by weight when tested in accordance with specified methods   *OR* | --- | --- | |
| Laboratory Report is submitted which indicates that all paint or similar surface coatings demonstrate a lead content not exceeding 0.06% by weight in accordance with 16 CFR1303 | x | | |
| Report Date (dated within 1 year)      _18/05/06_ | x | | *refer to report #720000* |
| Liquids, Putties, Pastes, Powders & Gels - (4.3.6) - Toy includes a liquid, putty, paste, gel or powder | | | |
| _N_         Y/N | | | |
| 1.  Laboratory Report is provided which indicates that liquids, putties, pastes, powders or gels have been tested in accordance to USP 61 and are within the following limits: | | | |
| Tested Age / Total Viable Count Limit table: 18 months or less — 100 cfu/ml(g); over 18 months — 1000 cfu/ml(g) | --- | --- | *N/A No liquids, putties, pastes, powders, or gels* |
| 2.  Laboratory Report indicates the absence of Staphylococcus aureus, Pseudomonas aeruginosa, Salmonella, and Escherichia coli | --- | --- | *N/A No liquids, putties, pastes, powders, or gels* |
| Report Date (dated within 1 year)      --- | --- | --- | *N/A No liquids, putties, pastes, powders, or gels* |
| Hazardous Chemicals - (16CFR) - Toy is filled with a liquid or gel | | | |
| _N_         Y/N | | | |
| Laboratory Report is provided by supplier stating that the liquid contains no petroleum distillates or other hazardous chemicals as listed in 16 CFR 1500.231 | --- | --- | *N/A Not a filled toy* |
| Report Date (dated within 1 year)      --- | --- | --- | *N/A Not a filled toy* |
| Phthalates - Toy is  labeled as "phthalate free" or similar | | | |
| _N_         Y/N | | | |
| Laboratory Report is provided which indicates phthalates are not detected | --- | --- | *N/A Not labeled as phthalate free or similar* |

**CONSUMER TESTING LABORATORIES, INC**

CLIENT      Wal-Mart                                    LABORATORY REPORT No. 720907

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| **FLAMMABILITY (4.2)**<br>Rigid or Pliable Solids - Horizontal burn rate not greater than 0.10 inches per second or does not ignite | x | | *does not exceed burn rate* |
| Removable Clothing & Removable Unstuffed Textiles - 16 CFR) - Meets requirements of Class 1 Normal Flammability classification as outlined in 16 CFR 1610.3 | --- | --- | *N/A- no removable clothing & removable unstuffed textiles* |

## III. CONCLUSIONS

**OVERALL RATING**                                                        **Good**

COMMENTS:

*These test results are representative of all styles identified in this report unless otherwise noted.*

Reference Material:        *ASTM F963-03 Standard Consumer Safety Specification on Toy Safety*
                          *Code of Federal Regulations - Title 16 Commercial Practices*

*This technical worksheet represents testing methods and procedures generally used by Consumer Testing Laboratories, Inc. for testing and evaluating the above specified item. Depending upon the nature of the product, certain tests specified herein may not be applied and / or additional testing procedures may be utilized. This technical worksheet is not intended to be used as a manufacturing or design specification and is subject to revision as further experience and investigation may show necessary.*

**CONSUMER TESTING LABORATORIES, INC**

CLIENT   Wal-Mart _____          LABORATORY REPORT No. ____720907____

# BATTERY OPERATED TOY

TECHNICAL WORKSHEET SUPPLEMENT

**SAMPLE**   Play Cell Phone and Electric Light N' sounds Key Ring       **STOCK No.**    KSL8033

| I.  IDENTIFICATION and INSPECTION | | | |
|---|:---:|:---:|---|
| | **PASS** | **FAIL** | **COMMENTS** |
| *Note: This worksheet is a supplement and must accompany the applicable toy worksheet* | | | |
| **MARKING / INSTRUCTIONS** | | | |
| <u>Section 4.25.1</u> | | | |
| Provides permanent and legible voltage and polarity markings, either in the battery compartment or on the area immediately adjacent to the battery compartment (not applicable to button cells, non-replaceable batteries, or proprietary battery packs that cannot be inserted with reversed polarity) | | | |
|     Polarity | x | | |
| *The following may be marked on the product, OR in the instructions* | | | |
|     Size _____ *AAA* | x | | |
|     Voltage _____ *1.5* volt | x | | |
| <u>Section 5.15</u> | | | |
| Non-replaceable battery which may be accessed by a coin, screwdriver or other common household tool bears a marking stating the battery is not replaceable.  If marking the toy is impractical, the statement may be in packaging or instructions | --- | --- | *N/A- replaceable battery* |
| <u>Section 6.6</u> | | | |
| Provides the following statements either in the instructions or  marked on the toy (required only for toys which use more than one battery in one circuit) | | | |
|     Do not mix old and new batteries | x | | |
|     Do not mix alkaline, standard (carbon-zinc), or rechargeable (ni-cad, ni-mh, etc.) batteries | x | | |
| <u>Radio Frequency Controlled Toys</u> | | | |
| Permanent labeling regarding compliance with FCC Part 15 regulations (not required for receiver if less than 30 MHz) | --- | --- | *N/A- not a radio control toy* |
|     FCC identification on transmitter | --- | --- | *N/A- not a radio control toy* |
|     Number    --- | | | |

**CONSUMER TESTING LABORATORIES, INC**

CLIENT   Wal-Mart

LABORATORY REPORT No.    720907

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| <u>Products with Nickel Cadmium or Lead Acid Rechargeable Battery</u> | | | |
| Exhibits the following labeling on the package and marking on the battery (on the product if battery is not easily accessible) | | | |
| Exhibits "3 chasing arrows" recycle symbol on the battery (on the product if battery is not easily accessible) | --- | --- | *N/A- not a rechargeable battery* |
| Information pertaining to proper disposal and recycling (text or equivalent pictorial representations) | --- | --- | *N/A- not a rechargeable battery* |
| Chemical Composition (ni-cad, ni-mh, etc.) | --- | --- | *N/A- not a rechargeable battery* |
| **CONSTRUCTION** | | | |
| Number of Batteries          *4 (2 for each)* | | | |
| Battery compartment exhibits no hazardous sharp edges or points | x | | |
| Overcurrent/overheating protection is provided          *N* Y / N | | | |
| Type/rating  --- | | | |
| <u>Section 4.25.3</u> | | | |
| Provides positive protection from the possibility of charging any primary battery (required only for toys which use 3 or more non-rechargeable batteries OR for toys that incorporate an external DC power jack; not applicable if powered by button cells) | --- | --- | *N/A- not use 3 or more batteries* |
| <u>Section 4.25.4</u> | | | |
| Batteries are not accessible either before or after abuse testing without the use of a coin, screwdriver, or other common household tool (toys intended for children under three years of age only) | x | | |
| <u>Section 4.25.5</u> | | | |
| Batteries that fit entirely within the small parts test cylinder are not accessible either before or after use and abuse testing without the use of a coin, screwdriver, or other common household tool (applicable for all ages) | x | | |
| Compartment securement means:          *screw* | | | |
| <u>Section 4.25.6</u> | | | |
| Batteries of different types and capacity are not mixed within any single electrical circuit | --- | --- | *N/A- only one type electric circuit* |

                                                                   Rev. 05/19/06

**CONSUMER TESTING LABORATORIES, INC**

CLIENT  Wal-Mart

LABORATORY REPORT No.  720907

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| Section 4.25.6<br>Each circuit is electrically isolated (toys which require a combination of AC and primary batteries) | --- | --- | *N/A- not a toy with combination of AC and primary batteries* |

## II.  PERFORMANCE TESTING

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| Section 4.25.7<br>The batteries do not leak, cause a fire, or the surface temperatures do not exceed 71°C during normal use and reasonably foreseeable abuse.  Toy is operated through one complete battery life cycle using new alkaline or fully charged batteries | x | | |
| *Note:  If normal use allows the motor to run unattended or if the toy has a non-recessed switch allowing it to be kept in "on" position, operate the toy continuously.  The test may be discontinued 60 minutes after the peak temperature is recorded.  If the toy shuts off automatically or must be kept "on" manually, monitor temperatures for 30 seconds, resetting the toy as many times as necessary to complete the 30 seconds of operation.  If the toy shuts off automatically after an operating time of greater than 30 seconds, continue the test until the toy shuts off* | | | |
| Section 8.18.2<br>Meets above requirements when external moving parts which are linked mechanically to a motor are locked in position | --- | --- | *N/A- no motor* |
| Sample demonstrates the following results or reaction to the stalled motor test:<br><br>--- | | | *N/A- no motor* |

## III.  CONCLUSIONS

**OVERALL RATING**                                                    Good

*These test results are representative of all styles identified in this report unless otherwise noted.*

*Reference Material: ASTM F 963 Standard Consumer Safety Specification on Toy Safety*

*This technical worksheet represents testing methods and procedures generally used by Consumer Testing Laboratories, Inc. for testing and evaluating the above specified item. Depending upon the nature of the product, certain tests specified herein may not be applied and / or additional testing procedures may be utilized.  This technical worksheet is not intended to be used as a manufacturing or design specification and is subject to revision as further experience and investigation may show necessary.*



**BUREAU VERITAS**

CONSUMER PRODUCTS SERVICES DIVISION

## KIDS STATION TOYS INTERNATIONAL LTD

| **Technical Report:** | **(5207)142-0795** | |
|---|---|---|
| Date Received: | June 13, 2007 | June 14, 2007 |
| | | Page 1 of 5 |

ANIL TO / ERIC LEUNG
KIDS STATION TOYS INTERNATIONAL LTD
ROOM 804, 8/F, EMPIRE CENTRE
68 MODY ROAD
TSIM SHA TSUI EAST
KOWLOON
HONG KONG

| Sample Description: | PLAY CELL PHONE AND ELECTRONIC LIGHT N' SOUNDS KEY RING | | |
|---|---|---|---|
| | 1. ) PINK / BLUE | | |
| | 2. ) RED / DARK BLUE | | |
| Vendor: | N/A | Sample Size: | 6 |
| Manufacturer: | N/A | Style No(s): | KSL8033 |
| Buyer: | N/A | SKN/SKU No.: | 427548 |
| Labeled Age Grade: | +1-1/2 YEARS | PO No.: | N/A |
| Appropriate Age Grade: | OVER 1-1/2 YEAR OF AGE | Ref #: | N/A |
| Client Specified Age Grade: | NOT SPECIFIED | Country of Origin: | CHINA |
| Tested Age Grade: | OVER 1-1/2 YEAR OF AGE | Assortment No.: | N/A |
| UPC Code: | 731398080335 | | |

### EXECUTIVE SUMMARY:

The sample(s) MEET the following requirement(s):

- The lead content requirements of 16 CFR 1303, "Ban of lead-containing paint and certain consumer products bearing lead-containing paint" (CPSC and CPSA regulations).

- The flammability requirements of 16 CFR 1500.3(c)(6)(vi), "Flammable solid" (FHSA regulations).

- The labeling requirements of ASTM F963-03, "Standard consumer safety specification for toy safety".

- The mechanical hazards requirements of ASTM F963-03, "Standard consumer safety specification for toy safety".

- The packaging and labeling requirements of the client's testing program.

- The performance requirement of client's specification.

BUREAU VERITAS HONG KONG LIMITED

Lau Wing Kit, Ken
Director
Toys and Juvenile Products Department

KL/so

Bureau Veritas Hong Kong Limited
Kowloon Bay Office
1/F Pacific Trade Centre, 2 Kai Hing Road,
Kowloon Bay, Kowloon, Hong Kong

This report is governed by, and incorporates by reference, the Conditions of Testing as posted at the date of issuance of this report at ...



KIDS STATION TOYS INTERNATIONAL LTD
Technical Report: (5207)142-0795
June 14, 2007
Page 2 of 5

**RESULTS:**

### APPROPRIATE AGE GRADE DETERMINATION

| | |
|---|---|
| The Appropriate Age Grade is determined with reference to the Age Determination Guidelines of the Consumer Product Safety Commission (CPSC); and the ASTM F963-03, "Standard Consumer Safety Specification on Toy Safety". Annex A1 | |
| Note : | The most stringent age grade from the Labeled Age Grade and the Appropriate Age Grade will be used for testing. |
| Note : | If the client does not specify an age grade for testing or request Bureau Veritas Consumer Products Services, Inc. to determine an appropriate age grade, the labeled age grade will be used for testing. |

### USE AND ABUSE TESTS

| The samples were undergo the tests in accordance with section 8.6 through 8.16, whichever is applicable | | |
|---|---|---|
| **Test** | **Test Parameters** | **Standard Reference** |
| Impact Test | 4 x 3 ft | 1500.52(b) |
| Torque Test | 4 in-lbs | 1500.53(e) |
| Tension Test | 15 lbs | 1500.53(f) |
| Compression Test | 30 lbs | 1500.53(g) |



BUREAU
VERITAS

KIDS STATION TOYS INTERNATIONAL LTD
Technical Report: (5207)142-0795
June 14, 2007
Page 3 of 5

**RESULTS:**

## PHYSICAL AND MECHANICAL HAZARDS (ASTM F963-03)

| Section | Requirement | Result |
|---------|-------------|--------|
| 4.1 | Material Quality | M |
| 4.3.7 | Stuffing Materials -- Visual Inspection | N/A |
| 4.5 | Sound-Producing Toys | M |
| 4.6 | Small Objects | M |
| 4.7 | Accessible Edges | M |
| 4.8 | Projections | N/A |
| 4.9 | Accessible Points | M |
| 4.10 | Wires or Rods | N/A |
| 4.11 | Nails and Fasteners | M |
| 4.12 | Packaging Film | N/A |
| 4.13 | Folding Mechanisms and Hinges | N/A |
| 4.14 | Cords and Elastics | N/A |
| 4.15 | Stability and Over-Load Requirements | N/A |
| 4.16 | Confined Spaces | N/A |
| 4.17 | Wheels, Tires, and Axles | N/A |
| 4.18 | Holes Clearances, and Accessibility of Mechanisms | M |
| 4.19 | Simulated Protective Devices | N/A |
| 4.20 | Pacifiers | N/A |
| 4.21 | Projectile Toys | N/A |
| 4.22 | Teethers and Teething Toys | N/A |
| 4.23 | Rattles | N/A |
| 4.24 | Squeeze Toys | N/A |
| 4.25 | Battery-Operated Toys | M |
| 4.26 | Toys Intended to be Attached to a Crib or Playpen | N/A |
| 4.27 | Toy Chest | N/A |
| 4.28 | Stuffed and Beanbag-Type Toys | N/A |
| 4.31 | Toy Gun Marking | N/A |
| 4.33 | Certain Toys with Spherical Ends | N/A |
| 4.35 | Balls | N/A |
| 4.36 | Pompoms | N/A |
| 4.37 | Hemispheric-Shaped Objects | N/A |

M = Meet    NM = Not Meet    N/A = Not Applicable    R = Refer to Comment Section



KIDS STATION TOYS INTERNATIONAL LTD
Technical Report: (5207)142-0795
June 14, 2007
Page 4 of 5

**RESULTS:**

### LABELING AND INSTRUCTIONAL REQUIREMENT (ASTM F963-03)

| Section | Requirement | Result |
|---------|-------------|--------|
| | Safety Labeling Requirements | |
| 5.4 & 5.3 | Aquatic Toys | N/A |
| 5.5 & 5.3 | Crib and Playpens Toys | N/A |
| 5.6 & 5.3 | Mobiles | N/A |
| 5.7 & 5.3 | Stroller and Carriage Toys | N/A |
| 5.8 & 5.3 | Toys Intended to be Assembled by an Adult | N/A |
| 5.9 & 5.3 | Simulated Protective Devices | N/A |
| 5.10 & 5.3 | Toys with Functional Sharp Edges and Sharp Points | N/A |
| 5.11 | Small Objects, Small Balls, Marbles and Balloons (16 CFR 1500.19) | N/A |
| 5.12 | Toy Caps (16 CFR 1500.86 for Required Labeling) | N/A |
| 5.13 | Art Materials (16 CFR 1500.14(b)(8)) | N/A |
| 5.15 | Battery-Operated Toys | N/A |
| 5.15.1 & 5.3 | Battery-Powered Ride-On Toys | N/A |
| 5.16 | Promotional Materials | M |
| | Instructional Literature | |
| 6.1 | Definition and Description | M |
| 6.2 | Toy Chests | N/A |
| 6.3 | Crib and Playpen Toys | N/A |
| 6.4 | Mobiles | N/A |
| 6.5 & 5.3 | Toys Intended to be Assembled by an Adult | N/A |
| 6.6.1-2 | Battery-Operated Toys | M |
| 6.6.3 | Battery-Powered Ride-On Toys | N/A |
| 6.7 | Toys in Contact with Food | N/A |
| | Producer's Markings | |
| 7.1 | Producer's Name and Address | M |
| 7.2 | Toy Chests | N/A |
| 7.3 | Battery-Powered Ride-on Toys | N/A |

M = Meet   NM = Not Meet   N/A = Not Applicable   R = Refer to Comment Section



**RESULTS:**

**FLAMMABILITY (16 CFR SECTION 1500.3(c)6)(vi))**

| Requirement | Test Method Reference | Findings |
|---|---|---|
| Burn rate no greater than 0.1 of an inch per second | 16 CFR 1500.44 | Most rapid burn rate less than 0.1 of an inch per second. |

**TOTAL LEAD CONTENT (16 CFR 1303, "Ban of Lead-containing paint and certain consumer products bearing Lead-containing paint")**

| Element: | | | Lead | |
|---|---|---|---|---|
| Requirement: Maximum allowable limit (0.06% by weight) | | | 600 mg/kg | |
| Sample Description | | | Result (mg/kg) | Conclusion |
| Color / Component | Location | Style | | |
| (A) Surface Coating<br>red<br>deep blue<br>light blue<br>yellow<br>black<br>shiny silver | label on keys<br>label on keys<br>label on keys<br>label on keys<br>buttons on control<br>keys | 1<br>all<br>2<br>2<br>all<br>all | LT 27 | Pass |
| (B) blue/ white/ red<br><br>white<br>yellow/ white underlying | logo on control and phone<br>buttons on phone<br>letters on phone | all<br><br>all<br>all | LT 32 | Pass |

*LT = Less than*
*\* = Average of duplicate analyses*        *mg/kg = milligrams per kilogram (ppm = parts per million)*



# CONSUMER TESTING LABORATORIES [FAR EAST] LTD.

UNIT 703-704, 7TH FLOOR, RILEY HOUSE, 88 LEI MUK ROAD, KWAI CHUNG, N.T., HONG KONG
852-2423-7161   •   FAX 852-2480-4768   •   info@ctlfe.com

## EVALUATION OF TESTING RESULTS

| | | |
|---|---|---|
| Client: | WAL-MART | Date: JULY 13, 2007 |
| Lab Report No.: 776127 | Buyer: MARVIN DESHOMMES | Dept: 07 |
| Test Type: PRODUCTION | Retest: ___ Prev. Lab No.: | 772844/ 765323 |
| Order Type: DIRECT IMPORT | WMGP: SHENZHEN | |

Item Desc: PLAY CELL PHONE AND ELECTRONIC LIGHT N'SOUNDS KEY RING
Factory/Mfg: LUNG PIN INDUSTRIES (HUIZHOU)
Style / Model No.: KSL8033    Factory No: 28042555
Country of Origin: CHINA    Order No.: 9806686730
Item No.: 719017/738229    UPC No.: 73139808033
Wal-Mart Supplier: KIDS STATION TOYS INT'L LTD.    Supplier No: 28029747
Reason For Test: OVERALL QUALITY EVALUATION

| | |
|---|---|
| [X] | THE SAMPLE IS RATED AS GOOD AND PASSED THE BASIC PERFORMANCE AND SERVICEABILITY TESTS. |
| [ ] | THE SAMPLE IS RATED AS UNSATISFACTORY BECAUSE OF DEFICIENCIES LISTED BELOW. |

The PO number referenced on this report is provided for reference purposes. This report is valid for all purchase orders for this Item for the period of time designated by the Wal-Mart Testing Program.

The sample was received at the laboratory with a WMGP associates signature and chop provided on the sample. The chop date is 7/9/07. The sample was shipped to the lab by the supplier.

CONSUMER TESTING LABORATORIES (FAR EAST) LTD.

**JAMES HO**
**CATEGORY MANAGER**

**TODD KRAWCHUK**
**DIRECTOR OF HARDLINES, HONG KONG**

## Specialists in the Evaluation of Consumer Products Since 1952

This report is governed by, and incorporates by reference, the Terms and Conditions of Testing appearing on our website http://www.consumertesting.com/ and is intended for your exclusive use. Any copying or replication of this report or disclosure of test results to or for any other person or entity, and any use of our name and/or seal is strictly prohibited without our prior written authorization. This report sets forth our findings with respect to the individual sample(s) tested only. CTL's liability shall not exceed the fees paid for the testing reflected on this report.

Florida   •   Arkansas   •   Hong Kong   •   India   •   Canada   •   China

**CONSUMER TESTING LABORATORIES, INC**

CLIENT   Wal-Mart

LABORATORY REPORT No 776127

## TOY
### TECHNICAL WORKSHEET

SAMPLE   See Conclusion

STOCK No.   KSL6033

| I. **IDENTIFICATION and INSPECTION** | | | |
|---|---|---|---|
| | PASS | FAIL | COMMENTS |
| **PACKAGING** | | | |
| Good package quality and labeling | X | | |
| Country of origin   _China_ | X | | |
| Provides the following manufacturer / distributor information | | | |
| Mfg/Distributor I.D   _Kids Station Toys International Ltc_ | X | | |
| Address   _Miami, Florida 33269-4660_ | X | | |
| **AGE GRADING** | | | |
| Labeled age   "+1 1/2 years" | | | |
| Age group(s) for which the sample is tested: | | | |
| 18 months or less | | | |
| Over 18 months to 36 months | | | |
| Over 36 months to 72 months | | | |
| Over 72 months to 96 months | | | |
| Over 96 months | | | |
| All Ages   X | | | |
| **PACKAGING SAFETY LABELING** (as applicable) | | | |
| Packaging exhibits conspicuous and legible safety labeling in accordance with Section 5.3, regarding the following: | | | |
| Aquatic Toy - (5.4) - Toy is an aquatic toy | | | |
| Packaging exhibits aquatic toy safety labeling   N___Y/N | — | — | N/A Not an aquatic toy |
| Promotional Materials - (5.16) | X | | |
| Toys in Contact with Food - Labeling - (5.7) - Toy is a food contact toy | | | |
| Packaging (or instructions) exhibits labeling for toys in contact with food   N___Y/N | — | — | N/A Not a food contact toy |
| Toys Intended to be Assembled by an Adult - (5.8) - Toy is intended to be assembled by an adult | | | |
| Packaging for a toy which requires adult assembly and contains, in its unassembled state, potentially hazardous sharp edges or points, or contain small parts, includes the following:   N___Y/N | | | |
| A statement that the toy is to be assembled by an adult AND | — | — | N/A Not an adult assembly toy |
| Safety labeling consisting of the alert symbol with the signal word "CAUTION" or "WARNING"  followed by a statement which indicates the potential hazard (e.g. small parts, sharp point, sharp edge) | — | — | N/A Not an adult assembly toy |
| Small Parts Warning - (4.6) | — | — | N/A Test for aged under 3 |
| Small Balls Warning - (4.35 & 5.11.3) | — | — | N/A No small balls |

Form 7-7

Rev. 04/06/07

**CONSUMER TESTING LABORATORIES, INC**

CLIENT    **Wal-Mart**

LABORATORY REPORT №776127

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| Marble Warning - (4.34 & 5.11.4) | — | — | N/A No marble |
| Latex Balloon Warning - (4.32 & 5.11.5) | — | — | N/A No latex balloon |
| Simulated Protective Devices - (5.9) - Toy is a simulated safety protective device | | | |
|     N       Y/N | | | |
|     Packaging exhibits simulated protective device safety labeling | — | — | N/A Not a simulated safety protective device |
| Toys with Functional Sharp Edges or Points Labeling - (5.10) | — | — | N/A No functional sharp edges / points |
| **PRODUCT SAFETY LABELING** (as applicable) Toy exhibits permanent, conspicuous, and legible safety labeling in accordance with Section 5.3, regarding the following: | | | |
| Aquatic Toy - (5.4) - Toy exhibits aquatic toy safety labeling | — | — | N/A Not an aquatic toy |
| Stroller and Carriage Toys (4.29 & 5.7) - Toy is intended to be strung across a stroller or carriage by means of strings, cords, elastic, or straps | | | |
|     N       Y/N | | | |
|     Toy exhibits stroller and carriage toys safety labeling | — | — | N/A Not a stroller or carriage toy as |
| Simulated Protective Devices- (5.9) - Toy exhibits simulated protective device safety labeling | — | — | N/A Not a simulated safety protective device |
| **INSTRUCTIONS** (as applicable) Instructions (if required) are complete and easy to read and understand by persons of the age level for whom the instructions are intended | X | | |
| Instructions exhibit safety labeling as defined in Section 5.3, regarding the following: | | | |
| Toys in Contact with Food – Instructions - (5.7) - Instructions (or packaging) exhibits required labeling for toys in contact with food | — | — | N/A Not a food contact toy |
| Toy Intended to be Assembled by an Adult - (5.5) - Instructions for a toy which requires assembly and contains, in its unassembled state, potentially hazardous sharp edges or points, or contain small parts, includes the following: | | | |
|     A statement that the toy is to be assembled by an adult AND | — | — | N/A Not an adult assembly toy |
|     Safety labeling consisting of the alert symbol with the signal word "CAUTION" or "WARNING" followed by a statement which indicates the potential hazard (e.g. small parts, sharp point, sharp edge) | — | — | N/A Not an adult assembly toy |

## II.  CONSTRUCTION

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| Packaging Film - (4.12) - Toy includes a flexible plastic film bag or flexible plastic sheets used as packaging material (shrink film in the form of an overwrap that would normally be destroyed when the package is opened OR bags or plastic film with a minor dimension of 3.94 in or less is excluded) | | | |
|     N       Y/N | | | ------- ------- |

**CONSUMER TESTING LABORATORIES, INC**

CLIENT     **Wal-Mart**

LABORATORY REPORT Nc.776127

| | | | PASS | FAIL | COMMENTS |
|---|---|---|---|---|---|
| Flexible plastic film bags and flexible plastic sheets used as packaging material exhibit a nominal thickness of at least 0.0015 in, with the actual thickness never less than 0.00125 | | | — | — | N/A No plastic film bags or plastic sheets |
| DIMENSIONS (required only if labeled) - Toy includes labeled dimension(s) | | | | | |
| | | N — Y/N | | | |
| Length | Labeled | — in | — | — | N/A No labeled dimensions |
| | Actual | — in | | | N/A No labeled dimensions |
| Width | Labeled | — in | — | — | N/A No labeled dimensions |
| | Actual | — in | | | N/A No labeled dimensions |
| Height | Labeled | — in | — | — | N/A No labeled dimensions |
| | Actual | — in | — | — | N/A No labeled dimensions |
| OVERALL WEIGHT | | 5 oz | | | |
| FINISH / WORKMANSHIP | | | | | |
| Good overall appearance and good finish qualities with no material or workmanship defects noted | | | X | | |
| Wires or Rods - (4.10) - Toy includes internal wires or rods | | | | | |
| | | N — Y/N | | | |
| Internal wires or rods are free from sharp edges or any other defects. Cut wire ends are turned back or are fitted with a plastic end cap to eliminate potential hazards and prevent protrusion | | | — | — | N/A No internal wires or rods |
| Sound Producing Toy - (4.5) - Toy is a sound producing toy | | | | | |
| | | Y — Y/N | | | |
| Noise making components do not produce sounds that exceed the dB levels specified in ASTM F963 section 4.5 | | | X | | |
| Small Objects - (4.6) - The toy is intended for children under 36 months of age | | | | | |
| | | Y — Y/N | | | |
| The toy, or any as received components, do not fit within the test cylinder used to determine choking hazards | | | X | | |
| Mouth Actuated Toy - (4.6.2) - Toy is a mouth actuated toy | | | | | |
| | | N — Y/N | | | |
| Mouth actuated toy does not release any small object when tested in accordance with section 8.13 | | | — | — | N/A Not a mouth actuated toy |
| Inflatable Toy (4.6.2.1) - Toy, or component of toy is inflatable | | | | | |
| | | N — Y/N | | | |
| Does not release small objects during inflation or deflation | | | — | — | N/A Not an inflatable toy |
| Accessible Edges (4.7) - No hazardous sharp edges as received, when tested using the sharp edge tester | | | X | | |
| Note: Toy intended for children from 48 to 96 mo of age may contain a functional sharp edge if cautionary labeling is provided (section | | | | | |
| Exposed Bolts / Threaded Rods (4.7.5) - Toy includes bolts or threaded rods | | | | | |
| | | Y — Y/N | | | |
| Bolts or rods exhibit no accessible hazardous sharp edges or burrs | | | X | | |

Rev. 04/06/07

**CONSUMER TESTING LABORATORIES, INC**

CLIENT    Wal-Mart

LABORATORY REPORT Nc776127

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| Projections (4.8) - Exhibits no hazardous rigid projections which present a potential puncture hazard (Under 8 yrs) | X | | |
| Accessible Points - (4.9) - No hazardous sharp points as received, when tested using sharp point tester<br>Note: Toy intended for children from 48 to 96 mo of age may contain a *functional* sharp point if cautionary labeling is provided (section | X | | |
| Wood - (4.9.3) - Toy or component of toy is constructed of wood<br>$\underline{\quad N \quad}$  Y/N<br>Accessible wood surfaces and edges are free from splinters | — | — | N/A No wood in construction |
| Nails & Fasteners - (4.11) - Toy includes nails or other fasteners<br>$\underline{\quad N \quad}$  Y/N<br>Fasteners exhibit no point, edge, ingestion, or projection hazards | — | — | N/A No nails or other fasteners |
| Folding Mechanisms - (4.13) - Toy includes a folding mechanism, arm, or bracing<br>$\underline{\quad N \quad}$  Y/N<br>Folding mechanisms (intended to bear the weight of a child) provide a safety stop to prevent unexpected or sudden movement or collapse, OR has adequate clearance to provide protection from crushing or laceration or pinching of appendages in the event of sudden movement or collapse (before & after use / abuse tests) | — | — | N/A Toy includes no folding mechanisms |
| Hinge-Line Clearance - (4.13.2) - Toy exhibits a gap or clearance along a hinge line of a component which is intended to bear the weight of a child<br>$\underline{\quad N \quad}$  Y/N<br>Accessible gaps along the hinge line between a stationary portion and a movable portion that weighs more than 1/2 lb. is constructed so that if the gap admits a 3/16 in diameter rod, it will also admit a 1/2 in diameter rod at all positions of the hinge (before & after use/abuse tests) | — | — | N/A Toy exhibits no gaps or clearances as described |
| Cords & Elastics - (4.14) - Toy includes cords or elastics (excluding self-retracting pull cords, and pull cords on pull toys, or toy bags)<br>$\underline{\quad N \quad}$  Y/N<br>Cords or elastics included with or attached to toys intended for children under 18 mo of age, are less than 12 in when measured in a free state and under a load of 5 lb | — | — | N/A No cords or elastics |
| The perimeter of any loop formed by cords / elastics or multiple cords / elastics in connection with any part of a toy intended for children under 18 mo of age (including beads or attachments on the ends of the cords or elastics), does not allow the complete passage of the head probe | — | — | N/A No cords or elastics |

Form 7-7

Rev. 04/06/07

**CONSUMER TESTING LABORATORIES, INC**

CLIENT     Wal-Mart

LABORATORY REPORT Nc776127

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| Self-Retracting Pull Cords - (4.14.1.1) - Toy includes a self retracting pull cord | | | |
| Accessible cords used in cord activated mechanisms intended for children under 18 mo of age, do not retract more than 1/4 inch when a weight of 2 lb is attached to the fully extended cord. The cord is held vertical and the toy is held firmly in the most favorable position for retraction<br>N_____ Y/N<br>*Note: For monofilament cords which are 1/16 inch or less in diameter the applied load is 1 lb* | — | — | N/A No self-retracting pull cords |
| Pull Toys - (4.14.2) - Toy is a pull toy | | | |
| Cords and elastics greater than 12 in long on pull toys intended for children under three, exhibit no beads or other attachments that could tangle to form a loop<br>N_____ Y/N | — | — | N/A Not a pull toy |
| Cords on Toy Bags - (4.14.4) - Toy includes a toy bag with an opening perimeter greater than 14 in | | | |
| Toy bags included with toys intended for children under 18 months do not use a drawstring or cord as a means of closing<br>N_____ Y/N | — | — | N/A No potentially hazardous toy bags |
| STABILITY & OVERLOAD REQUIREMENTS - (4.15) | | | |
| Ride-On Toys and Seats - The toy is a ride on toy or seat | | | |
| Ride-on toys meets requirements of supplemental worksheet Ride-On Toy 7-8 (attached) | — | — | N/A Not a ride on toy or seat |
| Feet Available for Stabilization - (4.15.2.1) - The toy does not tip when placed on a 10° incline from the horizontal, and tested as outlined in ASTM F 963 section 8.16  (under 60 mo) | — | — | N/A Not a ride on toy or seat |
| Feet Unavailable for Stabilization - (4.15.2.2) - The toy does not tip when placed on a 15° incline from the horizontal, and tested as outlined in ASTM F 963 section 8.16  (under 60 mo) | — | — | N/A Not a ride on toy or seat |
| Fore and Aft Stability - (4.15.3) -  Toy does not tip forward or backward when placed on an incline facing both down and up the slope and tested as outlined in ASTM F 963 section 8.16 except the surface is inclined to 15°   (under 60 mo, for toys where the rider can not easily use legs for stabilization) | — | — | N/A Not a ride on toy or seat |
| Overload Requirements for Ride-On Toys and Seats - (4.15.5) - Any component designed to support the weight of the child withstands without collapsing to produce a hazardous condition, three times the weight indicated in ASTM F 963 Table 3 | — | — | N/A Not a ride on toy or seat |
| Stability of Stationary Floor Toys - (4.15.4) - The toy is a stationary floor toy | | | |
| The stationary floor toy does not tip when placed on 10° incline from the horizontal, with all movable portions extended to their fullest travel and facing in the direction of the downslope side<br>N_____ Y/N | — | — | N/A Not a stationary floor toy |

**CONSUMER TESTING LABORATORIES, INC**

CLIENT    Wal-Mart

LABORATORY REPORT Nc 776127

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| Ventilation - (4.16.1) - Toy contains door or lid that encloses a continuous volume greater than 1.1 ft³ and in which all internal dimensions are 6 in or more | | | |
| *N*_____ Y/N | | | |
| Toy provides one of the following unobstructed ventilation areas: Two openings (minimum) with each having at least 1 in² and are at least 6 in apart   OR | — | — | N/A No ventilation required |
| One opening that is the equivalent of the two 1 in² openings expanded to include the separation area, provided this leaves opening areas of 1 in² on either side of a 6 in spacing | — | — | N/A No ventilation required |
| Closures - (4.16.2) - Toy has a closure such as a lid, cover or door | | | |
| *N*_____ Y/N | | | |
| Closures do not provide an automatic locking device, and can be opened with a force of 10 lb or less when tested as outlined in section 4.16.2.1 | — | — | N/A No closures |
| Toys that Enclose the Head - (4.16.3) - Toy encloses the head | | | |
| *N*_____ Y/N | | | |
| Provides ventilation consisting of a minimum of 2 holes with a total of at least 2 in² of ventilation and at least 6 in between the holes | | | N/A Not a head enclosing toy |
| Accessible Clearances for Movable Segments - (4.18.1) - Toy exhibits accessible clearances between movable segments (where potential for pinching / crushing fingers or other appendages exist) | | | |
| *N*_____ Y/N | | | |
| Accessible clearances between moveable segments are constructed so that if the clearance admits a 3/16 in. diameter rod, it also admits a 1/2 in. diameter rod (before & after use / abuse tests) | — | — | N/A No potentially hazardous clearances |
| Circular Holes in Rigid Materials - (4.18.2) - Toy intended for 60 mo or less (all criteria applies before & after use / abuse tests) | | | |
| *Y*_____ Y/N | | | |
| Toy exhibits accessible circular hole(s) in rigid material | | | |
| *Y*_____ Y/N | | | |
| Circular holes are located in rigid material which is less than 0.062 inches thick | | | |
| *N*_____ Y/N | | | |
| Circular holes are constructed so that if the hole can admit a 1/4 in. diameter rod to a depth of 3/8 in., it will also admit a 1/2 in. diameter rod | — | — | N/A Located in rigid material greater than 0.062 in thick |
| Supporting Chains - (4.18.3.1) - Toy intended for 36 months or less | | | |
| *Y*_____ Y/N | | | |
| Toy includes an accessible chain that supports the weight of a child | | | |
| *N*_____ Y/N | | | |
| Chain links can admit a 0.19 inch diameter rod | | | N/A No chains intended to bear the weight of a child |
| _____ Y/N | | | |
| Chain is properly shielded | — | — | N/A No chains intended to bear the weight |

Form 7-7

Rev. 04/06/07

**CONSUMER TESTING LABORATORIES, INC**

CLIENT    **Wal-Mart**

LABORATORY REPORT No.776127

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| Inaccessibility of Mechanisms - (4.18.4) - Toy includes clockwork, battery operated, inertial, or other power driven mechanisms | | | |
| No accessible part of any power driven mechanism used in a toy tested for children under 60 mo. of age, presents a pinch or laceration hazard (before & after use / abuse tests) | — | — | *N/A No power driven mechanisms* |
| Winding Keys - (4.18.5) - Toy includes a winding key **N** ___ ___ Y/N | | | |
| Winding keys used on a toy intended for children under 36 mo. of age, do not present a potential finger entrapment hazard, by conforming to the following dimensional | | | |
| If the clearance between the flukes of the key and the body of the toy admits a 0.25 in. diameter rod, it also admits a 0.50 in. diameter rod, at all positions of the key | — | — | *N/A No winding keys* |
| Exhibits no opening in the flukes of the key that admits a 0.19 inch diameter rod | — | — | *N/A No winding keys* |
| Coil Springs - (4.18.6) - Toy includes a coil spring that forms part of a component intended to bear the weight of a child **N** ___ Y/N | | | |
| Coil spring(s) provides a shield to prevent access ___ ___ Y/N | | | *N/A No coil springs that bear the weight of a child* |
| Coil spring allows free insertion of a 0.12 inch dia rod — ___ Y/N | | | *N/A No coil springs that bear the weight of a child* |
| A 0.25 inch diameter rod can be inserted freely between the adjacent coils at all points in the action cycle when the spring is subjected first to a weight of 3 lbs. and then to a weight of 70 lb. | — | — | *N/A No coil springs that bear the weight of a child* |
| Eye Protection - (4.19.1) - Toy covers the face **N** ___ ___ Y/N | | | |
| Rigid toys which cover the face do not exhibit any sharp edges, points, or loose objects which could enter the eye (before & after use / abuse tests) | — | — | *N/A Not a toy that covers the face* |
| Toy Pacifiers - (4.20.2) - Toy includes, or is a toy pacifier **N** ___ Y/N | | | |
| Nipple length is no longer than 0.63 in. and meets small objects requirements | — | — | *N/A Not a toy pacifier* |
| Toy Gun/Projectile Toy - (4.21) - Toy is, or includes a gun/projectile toy **N** ___ Y/N | | | |
| Meets requirements of supplemental worksheet Gun / Projectile Toy 7-9 (attached) | — | — | *N/A Not a projectile toy* |
| Battery Operated Toy - (4.25) - Toy is a battery operated toy **Y** ___ ___ Y/N | | | |
| Meets requirements of supplemental worksheet Battery Operated Toy 7-5 (attached) | x | — | |

Form 7-7

Rev. 04/06/07

**CONSUMER TESTING LABORATORIES, INC**

CLIENT     Wal-Mart

LABORATORY REPORT Nc 776127

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| Battery Operated Ride On Toy - (4.25.10) - Toy is a battery operated ride on toy | | | |
| Meets requirements of supplemental worksheet Battery Operated Ride-On Toy 7-36 (attached)    N ... Y/N | — | — | N/A Not a battery operated ride on toy |
| Certain Toys with Spherical Ends - (4.33.1) Toy incorporates a spherical, hemispherical, or circular flared end attached to a shaft, handle, or support that has a smaller cross section    N    Y/N | | | |
| Toy weighs less than 1.1 lb    — Y/N | | | |
| Spherical, hemispherical, or circular flared ends on toys intended for children up to the age of 18 months, are not capable of entering and penetrating the full depth of the | — | — | N/A No spherical ends as described |
| Preschool Play Figures - (4.33.2.1) - Toy includes a preschool play figure    N    Y/N | | | |
| Preschool play figures intended for children under 36 mo. of age are meet at least one of the following requirements | | | |
| Preschool play figures exceed 2.5 in. in length    OR | — | — | N/A No preschool play figures |
| Rounded ends of preschool play figures are not capable of entering & penetrating the full depth of the cavity in the Supplemental Test Fixture | — | — | N/A No preschool play figures |
| Small Balls - (4.35) - Toy is, or includes a ball    N    Y/N | | | |
| Balls intended for children under 36 mo. of age, do not pass through the 1.75 in. test fixture used to determine small ball hazards. Balls are rotated to all orientations and are tested under the influence of their own weight, and without compression | — | — | N/A No balls |
| Pompoms - (4.36) - Toy includes a pompom    N    Y/N | | | |
| Detachable pompoms on toys intended for children under 36 mo. of age do not pass entirely through the 1.75 in. test fixture (small balls), under their own weight (tested in accordance with section 8.17) | — | — | N/A No pompoms |
| Hemispheric Shaped Objects - (4.37) - Toy is a hemispheric shaped object    N    Y/N | | | |
| Hemispheric shaped objects intended for children under 36 months are constructed to pass at least one of the following four requirements (before and after abuse testing) | | | |
| Provides at least two openings (0.08 in. diameter) that are a minimum of 0.5 in. from the rim | — | — | N/A Not a hemispheric shaped toy |
| The plane of the open end of the cup shape is interrupted at the center by a divider that extends 0.25 inches or less from the plane of the open end | — | — | N/A Not a hemispheric shaped toy |

Form 7-7

Rev. 04/06/07

**CONSUMER TESTING LABORATORIES, INC**

CLIENT     **Wal-Mart**                           LABORATORY REPORT Nc **776127**

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| Provides at least three openings (0.080 in. diameter) that are at least 100° apart and located between 0.25 in. and 0.5 in. from the rim | — | — | N/A Not a hemispheric shaped toy |
| Provides a repeating scalloped edge around the entire rim with the distance between the center lines of adjacent peaks 1 in. maximum and a minimum depth of 0.25 in. | — | — | N/A Not a hemispheric shaped toy |

## III. USE & ABUSE TESTS

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| **PRACTICAL USE TESTS**<br>Properly performs all labeled and intended functions | x | | |
| Assembly Toys - Toy requires assembly                              N          Y/N | | | |
| Toy is easily assembled and exhibits no creation of hazards when assembled following the manufacturer's instructions. (simple assembly toys which do not include instructions are easy to assemble without the aid of instructions) | — | — | N/A Not an assembly toy |
| Toy intended to be taken apart easily disassembles, and exhibits no creation of hazards when disassembled as | — | — | N/A Not an assembly toy |
| Washable Toy - (6.5.1) - Toy is described as machine washable | | | |
| Machine washable toy withstands 6 machine wash and tumble dry cycles as specified             N          Y/N | — | — | N/A Not labeled as machine washable |
| **ABUSE TESTS - (6.6)**<br>Withstands the following reasonably foreseeable abuse tests without creating a hazardous condition that presents an unreasonable risk of injury, such as ingestion, aspiration, puncture or laceration hazards (e.g. small parts, sharp edges, sharp points, | | | |
| **IMPACT TESTS - (6.7)**<br>Drop Test - (6.7.1) - Withstands dropping onto a concrete surface covered with vinyl composition floor tile, in a random orientation by the number of drops and at the drop height indicated in the table below: (not required for toy weighing more than the maximum toy weight indicated, or for a toy that meets the criteria for the tip-over test) | | | |

| AGE (months) | Max. Toy Weight (lb) | TEST PARAMETERS | PASS | FAIL | |
|---|---|---|---|---|---|
| 0 to 18 | less than 3.0 ± 0.01 | 10 drops @ 4.5 ft ± 0.5 in | x | | |
| 18 to 36 | less than 4.0 ± 0.01 | 4 drops @ 3.0 ft ± 0.5 in | — | — | |
| 36 to 96 | less than 10.0 ± 0.01 | 4 drops @ 3.0 ft ± 0.5 in | — | — | |

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| Tip Over Test for Large, Bulky Toys - (6.7.2) - Toy is a large, bulky toy | | | |
| Large, bulky toy withstands tipping over three times (one of which is in the worst case attitude) by pushing the toy slowly past its center balance onto a concrete surface covered with vinyl composition floor tile             N          Y/N | — | — | N/A Not a large, bulky toy |

**CONSUMER TESTING LABORATORIES, INC**

CLIENT     Wal-Mart

LABORATORY REPORT No 776127

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| Tumble Test for Wheeled Toy - (8.7.3) - Toy is a wheeled toy N Y/N — Withstands tumbling down a flight of six steps, two times, in each of the four attitudes described in ASTM F 963 Section 8.7.3 (only applicable to toys weighing more than 3 lbs. but not more than 10 lbs.) | -- | -- | N/A Not a wheeled toy |
| Impact Test for Toys that Cover the Face - (8.7.4) - Toy covers the face N Y/N — Withstands one drop of a 5/8 in. diameter ball weighing 0.56 oz. from a height of 50 in. upon the horizontal upper surface in the area that would cover the eyes in normal use | -- | -- | N/A Not a face covering toy |
| TORQUE / TENSION TESTS FOR COMPONENT REMOVAL Any projection, part, or assembly which could be grasped between the child's thumb and forefinger, or teeth, withstands torque tests, followed by tension tests, as outlined below | | | |
| Torque Test for Removal of Components – (8.8) - Withstands the applicable torque force (indicated in the table below) applied evenly within a period of 5 sec. In a clockwise direction until either: (1) a rotation of 180° from the original position has been attained, or (2) the required torque is exceeded. The maximum rotation, or required torque is maintained for an additional 10 sec. Repeat procedure in the counterclockwise direction for each component | | | |

| Age (months) | Test Parameters |
|---|---|
| 0 to 18 | 2 ± 0.2 in-lb |
| 18 to 36 | 3 ± 0.2 in-lb |
| 36 to 96 | 4 ± 0.2 in-lb |

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| | X | -- | |
| Tension Test – (8.9) – Withstands the applicable tensile force (indicated in the table below) applied evenly within a period of 5 sec., parallel to the major axis of the test component, and maintained for 10 sec. Repeat test with the force applied perpendicularly to the major axis of the test component | | | |

| Age (months) | Test Parameters |
|---|---|
| 0 to 18 | 10 ± 0.5 lb |
| 18 to 96 | 15 ± 0.5 lb |

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| | X | -- | |
| Tension Test for Seams - (8.9.1) - Toy exhibits seams N Y/N — Seams withstand the applicable tensile force applied evenly within a period of 5 sec., and maintained for an additional 10 sec. Force is applied using clamps with 3/4 in. washers attached to the jaws. Clamps are attached to the stuffed toy in such a manner that the outside edge of the washers at a point nearest the seam is no closer than 1/2 in. from the seam's edge | -- | -- | N/A No seams |

**CONSUMER TESTING LABORATORIES, INC**

CLIENT    Wal-Mart

LABORATORY REPORT Nc776127

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| Compression Test - (8.10) - Toy exhibits a surface which is accessible to a child, but is inaccessible to contact during the drop test | | | |
| **Y**          Y/N | | | |
| All areas on the surface of the toy which are inaccessible to contact during the drop test withstand the applicable compression force (indicated in the table below) applied evenly within a period of 5 sec., and maintained for 10 sec. Force is applied through a rigid metal disk (1.125 ± 0.015 in. in diameter and 0.375 in. thick) positioned so that the flat surface contact is parallel to the surface under test | | | |
| Age (months)       Test Parameters | | | |
| 0 to 18       20 ± 0.5 lb | — | — | |
| 18 to 36       25 ± 0.5 lb | | | |
| 36 to 96       30 ± 0.5 lb | X | | |
| Protective Caps - (4.7.5) - Toy includes protective caps on accessible bolts or threaded rods | | | |
| **N**          Y/N | | | |
| Caps used to protect from potentially hazardous sharp edges on accessible bolts or threaded rods withstand the compression test regardless of whether the cap is accessible to flat-surface contact during the appropriate impact test | — | — | *N/A No protective caps as described* |
| Removal of Tires - (8.11.1) - Toy includes tires | | | |
| **N**          Y/N | | | |
| Tires do not present an ingestion hazard or the axle a laceration or puncture hazard when the wheel axle is clamped in a vertical position and a wire hook attached to a load of 15-lbs (10-lbs if toy intended for children aged 18 mo or less) is gradually applied to the tire over a period of 5-sec and maintained for 10-sec | — | — | *N/A No tires* |
| Snap-in Axles - (8.11.2) - Toy includes a snap in axle | | | |
| **N**          Y/N | | | |
| Toys with snap-in axles do not present an ingestion hazard if intended for children aged less than 36 mo when held in a horizontal position and a load of 15-lbs is applied perpendicularly to the axle between the two bearings using a hook. The load is gradually applied over a period of 5-sec and maintained for 10-sec. If the axle cannot be hooked as above, the load is applied perpendicular to the axle to one wheel by a hook or clamp | — | — | *N/A No snap in axles* |
| Axle Assembly Compression Test - (8.11.3) - The wheel and axle were removed during the snap in axle test above | | | |
| —          Y/N | | | |
| The wheel and axle assembly is positioned vertically on a rigid plate with a hole large enough to permit the axle to pass through. The axle does not form a hazardous point or projection when a 20-lb load is gradually applied to the upper wheel through a circular adapter over a period of 5-sec and maintained for 10-sec | — | — | *N/A No snap in axles* |

Form 7-7

Rev. 04/06/07

**CONSUMER TESTING LABORATORIES, INC**

CLIENT    **Wal-Mart**

LABORATORY REPORT Nc 776127

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| Flexure Test - (8.12) - Toy includes wires or other metal material used for stiffening, or form retention | | | |
| _____ N _____ Y/N | | | |
| Wires or other metal material withstand the flexure test without fracturing to produce a hazardous point or edge (applicable forces are indicated in the table below) | | | |
| **Age (months)   Test Parameters** | | | |
| 0 to 18        10 ± 0.5 lb | ... | ... | *N/A No wire or metal stiffeners* |
| 18 to 96       15 ± 0.5 lb | ... | ... | *N/A No wire or metal stiffeners* |
| **TOXICOLOGY** | | | |
| Toy includes a glazed ceramic or porcelain enamel component that is intended to be in contact with food | | | |
| _____ N _____ Y/N | | | |
| Glazed ceramic or porcelain enamel components comply with the following: | | | |
| FDA guidelines for maximum allowable content of leachable lead and cadmium | — | — | *N/A No glazed ceramic or porcelain enamel food contact components* |
| California Proposition 65 guidelines for maximum allowable content of leachable lead and cadmium | — | — | *N/A No glazed ceramic or porcelain enamel food contact components* |
| Lead Content - (16CFR 1303) - Toy exhibits paint or similar surface coating | | | |
| _____ Y _____ Y/N | | | |
| Paint or similar surface coatings demonstrate a lead content not exceeding 0.06% by weight when tested in accordance with specified methods   OR | | | *Wet paint submitted and refer to the report# 765323* |
| Laboratory Report is submitted which indicates that all paint or similar surface coatings demonstrate a lead content not exceeding 0.06% by weight in accordance with 16 CFR1303 | X | | *Refer to the report# 772844* |
| Report Date (dated within 1 year)        14-Jun-07 | X | | |
| Liquids, Putties, Pastes, Powders & Gels - (4.3.6) - Toy includes a liquid, putty, paste, gel or powder | | | |
| _____ N _____ Y/N | | | |
| 1. Laboratory Report is provided which indicates that liquids, putties, pastes, powders or gels have been tested in accordance to USP 61 and are within the following limits: | | | |
| **Tested Age      Total Viable Count Limit** | | | |
| 18 months or less       500 cfu/ml(g) | — | — | *N/A No liquids, putties, pastes, powders, or gels* |
| over 18 months          5000 cfu/ml(g) | | | |
| 2. Laboratory Report indicates the absence of Staphylococcus aureus, Pseudomonas aeruginosa, Salmonella, and Escherichia coli | — | — | *N/A No liquids, putties, pastes, powders, or gels* |
| Report Date (dated within 1 year)        — | — | — | *N/A No liquids, putties, pastes, powders,* |
| Hazardous Chemicals - (16CFR) - Toy is filled with a liquid or gel | | | |
| _____ N _____ Y/N | | | |
| Laboratory Report is provided by supplier stating that the liquid contains no petroleum distillates or other hazardous chemicals as listed in 16 CFR 1500.231 | — | — | *N/A Not a filled toy* |
| Report Date (dated within 1 year)        — | — | — | *N/A Not a filled toy* |

**CONSUMER TESTING LABORATORIES, INC**

CLIENT    Wal-Mart

LABORATORY REPORT Nc 776127

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| <u>Phthalates</u> - Toy is labeled as "phthalate free" or similar<br>N          Y/N<br>Laboratory Report is provided which indicates phthalates are not detected | — | — | N/A Not labeled as phthalate free or similar |
| <u>FLAMMABILITY (4.2)</u><br><u>Rigid or Pliable Solids</u> - Horizontal burn rate not greater than 0.10 inches per second or does not ignite | X | | Does not ignite |
| <u>Unstuffed Textile Fabrics & Removable Unstuffed Clothing</u> - Meets requirements of Class 1 Normal Flammability classification as outlined in 16 CFR 1610.3 | — | — | N/A No unstuffed textile fabrics / removable unstuffed clothing |

## III. CONCLUSIONS

### OVERALL RATING

COMMENTS:

Name: Play Cell Phone And Electronic Light N'Sounds Key Ring

Two style received. These test results are representative of all styles identified in this report unless otherwise noted.

Reference Material:      ASTM F963-03 Standard Consumer Safety Specification on Toy Safety
Code of Federal Regulations - Title 16 Commercial Practices

This technical worksheet represents testing methods and procedures generally used by Consumer Testing Laboratories, Inc. for testing and evaluating the above specified item. Depending upon the nature of the product, certain tests specified herein may not be applied and / or additional testing procedures may be utilized. This technical worksheet is not intended to be used as a manufacturing or design specification and is subject to revision as further experience and investigation may show necessary.

**CONSUMER TESTING LABORATORIES, INC**

CLIENT __Wal-Mart_____

LABORATORY REPORT No. ____776127____

# BATTERY OPERATED TOY
### TECHNICAL WORKSHEET

SAMPLE   See Conclusion _____

STOCK No.   __KSL8033__

| I. IDENTIFICATION and INSPECTION | PASS | FAIL | COMMENTS |
|---|---|---|---|
| *Note: This worksheet is a supplement and must accompany the applicable toy worksheet* | | | |
| **MARKING / INSTRUCTIONS** | | | |
| Section 4.25.1 | | | |
| Provides permanent and legible voltage and polarity markings, either in the battery compartment or on the area immediately adjacent to the battery compartment (not applicable to button cells, non-replaceable batteries, or proprietary battery packs that cannot be inserted with reversed polarity) | | | |
| Polarity | x | | |
| *The following may be marked on the product, OR in the instructions* | | | |
| Size | *"AAA"* | | |
| Size | x | | |
| Voltage | 1.5 volt | | |
| Voltage | x | | |
| Section 5.15 | | | |
| Non-replaceable battery which may be accessed by a coin, screwdriver or other common household tool bears a marking stating the battery is not replaceable. If marking the toy is impractical, the statement may be in packaging or instructions | — | — | *N/A The battery can be replaced* |
| Section 6.6 | | | |
| Provides the following statements either in the instructions or  marked on the toy (required only for toys which use more than one battery in one circuit) | | | |
| Do not mix old and new batteries | x | | |
| Do not mix alkaline, standard (carbon-zinc), or rechargeable (ni-cad, ni-mh, etc.) batteries | x | | |
| Radio Frequency Controlled Toys | | | |
| Permanent labeling regarding compliance with FCC Part 15 regulations (not required for receiver if less than 30 MHz) | — | — | *N/A Not radio frequency controlled toys* |
| FCC identification on transmitter | — | — | *N/A Not radio frequency controlled toys* |
| Number | | | *N/A Not radio frequency controlled toys* |

Form 7-5

Rev. 09/29/06

**CONSUMER TESTING LABORATORIES, INC**

CLIENT  Wal-Mart

LABORATORY REPORT No. _____ 776127

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| <u>Products with Rechargeable Battery</u><br>Products marketed in the US which contain rechargeable lead acid or nickel cadmium batteries exhibit information pertaining to proper disposal and recycling. Information may be on the battery or product | — | — | *N/A No rechargeable battery* |
| **CONSTRUCTION**<br>Number of Batteries _____ 2/2 | | | *Cell phone / Sound key ring* |
| Battery compartment exhibits no hazardous sharp edges or points | x | | |
| Overcurrent/overheating protection is provided _____ N Y/N<br>  Type/rating — | | | |
| <u>Section 4.25.3</u><br>Provides positive protection from the possibility of charging any primary battery (required only for toys which use 3 or more non-rechargeable batteries OR for toys that incorporate an external DC power jack; not applicable if powered by button cells) | — | — | *N/A 2 batteries only* |
| <u>Section 4.25.4</u><br>Batteries are not accessible either before or after abuse testing without the use of a coin, screwdriver, or other common household tool (toys intended for children under three years of age only) | x | | |
| <u>Section 4.25.5</u><br>Batteries that fit entirely within the small parts test cylinder are not accessible either before or after use and abuse testing without the use of a coin, screwdriver, or other common household tool (applicable for all ages) | x | | |
| Compartment securement means:<br>  *Screw* | | | |
| <u>Section 4.25.6</u><br>Batteries of different types and capacity are not mixed within any single electrical circuit | — | — | *N/A One type of batteries only* |
| <u>Section 4.25.6</u><br>Each circuit is electrically isolated (toys which require a combination of AC and primary batteries) | — | — | *N/A Primary batteries only* |

Form 7-5

Rev. 09/29/06

**CONSUMER TESTING LABORATORIES, INC**

CLIENT  Wal-Mart                              LABORATORY REPORT No.  776127

## II.  PERFORMANCE TESTING

| | PASS | FAIL | COMMENTS |
|---|---|---|---|
| **Section 4.25.7**<br>The batteries do not leak, cause a fire, or the surface temperatures do not exceed 71°C during normal use and reasonably foreseeable abuse.  Toy is operated through one complete battery life cycle using new alkaline or fully charged batteries | x | | |
| *Note: If normal use allows the motor to run unattended or if the toy has a non-recessed switch allowing it to be kept in "on" position, operate the toy continuously.  The test may be discontinued 60 minutes after the peak temperature is recorded.  If the toy shuts off automatically or must be kept "on" manually, monitor temperatures for 30 seconds, resetting the toy as many times as necessary to complete the 30 seconds of operation.  If the toy shuts off automatically after an operating time of greater than 30 seconds, continue the test until the toy shuts off* | | | |
| **Section 8.18.2**<br>Meets above requirements when external moving parts which are linked mechanically to a motor are locked in position | --- | --- | *N/A No motor* |
| Sample demonstrates the following results or reaction to the stalled motor test:<br>-- | | | *N/A No motor* |

## III.  CONCLUSIONS

**OVERALL RATING**                                              **Good**

*Name: Play Cell Phone And Electronic Light N'Sounds Key Ring*

*Two styles received. These test results are representative of all styles identified in this report unless otherwise noted.*

*Reference Material: ASTM F 963-03 Standard Consumer Safety Specification on Toy Safety*

This technical worksheet represents testing methods and procedures generally used by Consumer Testing Laboratories, Inc. for testing and evaluating the above specified item. Depending upon the nature of the product, certain tests specified herein may not be applied and / or additional testing procedures may be utilized. This technical worksheet is not intended to be used as a manufacturing or design specification and is subject to revision as further experience and investigation may show necessary.



Hong Kong Government Recognized Service Supplier
Approved Laboratory of The Woolmark Company
Members of :
American National Standards Institute          Hong Kong Association for Testing, Inspection and Certification Limited
American Society for Testing and Materials      Hong Kong Toys Council
British Standards Institute

## HUDSON'S BAY TEST REPORT                    NUMBER :   HJ00581044

KIDS STATION TOYS INTERNATIONAL LIMITED              DATE :      Jul 26, 2007
ROOM 604 6/F EMPIRE CENTRE
NO 68 MODY ROAD
TSIMSHATSUI EAST
KLN HK
ATTN.:   KATHY LEE/ KATHERINE SO/ ERIC LEUNG

BANNER/BRAND NAME   :   ☐ THE BAY          /   -
                         ☒ ZELLERS          /   VENDOR BRAND.
                         ☐ HOME OUTFITTERS  /   -

DATE IN       :   JUL 24, 2007.
DATE OUT      :   JUL 26, 2007.
WORKING DAYS  :   2.

| | OVERALL RATING |
|---|---|
| PASS | X |
| FAIL | |
| TEST STAGE | ☐ Initial    ☒ Retest |
| PREVIOUS TEST REPORT | HJ00574790. |

TEST PROTOCOL   TOYS  # 02
ITEM : GENERAL

| Item Name : | ELECTRONIC COMBO SET. | | |
|---|---|---|---|
| Style/Model No. : | KSL8033. | | |
| Hbc Vendor : | KIDS STATION TOYS INT'L LTD. | P.O. No. : | 2730193. |
| | | SKU No. : | 52444247. |
| Manufacturer : | - | Hbc Dept : | 762. |
| Country Of Origin : | CHINA. | UPC Code : | 731398080335. |
| No. Of Colors : | 2 ASSORTED COLORS : - PINK, - RED. | Quantity : | 1 SET PER COLOR. |
| Labeled Age Group : | 1-1/2+ YEARS. | Appropriate Age Grade : | - FOR AGES OVER 18 MONTHS (FOR US). - FOR UNDER 3 YEARS OF AGES (FOR CANADA). |

**************************************************************************************************

                                                        TO BE CONTINUED

FOR AND ON BEHALF OF :
INTERTEK TESTING SERVICES HK LTD.

KAREN S.C. NG
GENERAL MANAGER

Intertek Testing Services Hong Kong Ltd.
2/F., Garment Centre, 576 Castle Peak Road, Kowloon, Hong Kong.
Tel: (852) 2173 8888   Fax: (852) 2785 1903   Website: www.intertek.com

                                                        PAGE 1 OF 3



Hong Kong Government Recognized Service Supplier
Approved Laboratory of The Woolmark Company
Members of :
American National Standards Institute            Hong Kong Association for Testing, Inspection and Certification Limited
American Society for Testing and Materials       Hong Kong Toys Council
British Standards Institute

## HUDSON'S BAY TEST REPORT                    NUMBER:  HJ00581044

**EXECUTIVE SUMMARY :**

THE SUBMITTED SAMPLES CONFORM TO MECHANICAL REQUIREMENT OF HBC TEST PROTOCOL TOYS #02.

| TEST PROPERTY | PASS | FAIL | COMMENTS/REMARKS |
|---|---|---|---|
| COMPLIANCE (MECHANICAL) | X | | |

SHOULD YOU HAVE ANY QUERY ON THIS REPORT, YOU MAY CONTACT FIONA KOO AT fiona.koo@intertek.com.



FOR AND ON BEHALF OF :
INTERTEK TESTING SERVICES HK LTD.

KAREN S.C. NG
GENERAL MANAGER

Intertek Testing Services Hong Kong Ltd.
2/F., Garment Centre, 576 Castle Peak Road, Kowloon, Hong Kong.
Tel: (852) 2173 8888  Fax: (852) 2786 1903  Website: www.intertek.com

PAGE 2 OF 3



Hong Kong Government Recognized Service Supplier
Approved Laboratory of The Woolmark Company
Members of :
American National Standards Institute            Hong Kong Association for Testing, Inspection and Certification Limited
American Society for Testing and Materials       Hong Kong Toys Council
British Standards Institute

## HUDSON'S BAY TEST REPORT                    NUMBER:  HJ00581044

TESTS CONDUCTED

| EVALUATION | TEST METHODS | REQUIREMENTS | RESULT |
|---|---|---|---|
| COMPLIANCE | | | |
| SMALL PARTS | CHPA C.R.C., C.931 SECTION 7 CHPA R.S., C. H-3 SCHEDULE I PART II, ITEM 13(C) | SHALL NOT INCLUDE REMOVABLE, LIBERATED COMPONENTS, OR FRAGMENTS OF TOYS SMALL ENOUGH TO FIT ENTIRELY WITHIN THE SMALL PARTS CYLINDER WHEN SUBJECT TO A FORCE OF NOT MORE THAN 1 POUND (4.45 NEWTONS) FOR CHILDREN LESS THAN 3 YEARS OF AGE | P |

REMARK : P = PASS

DATE SAMPLE RECEIVED : JUL 24, 2007
TESTING PERIOD : JUL 24, 2007 TO JUL 26, 2007
*********************************************************************************************

END OF REPORT

Intertek Testing Services Hong Kong Ltd.
2F., Garment Centre, 576 Castle Peak Road, Kowloon, Hong Kong.
Tel: (852) 2173 8888   Fax: (852) 2785 1903   Website: www.intertek.com

  

Hbc

Intertek

## CERTIFICATE OF COMPLIANCE
## FOR
## HUDSON'S BAY COMPANY

(Please select one)

☐ **Issued by Hudson's Bay Company ( Hbc)**

☑ **Issued by Intertek Testing Services (ITS)**

This certificate verifies that the following items have been tested to meet Hbc's requirement and Have valid test report submitted for Hbc:

| | | |
|---|---|---|
| **Description** | : | ELECTRONIC COMBO SET |
| **Vendor** | : | KIDS STATION TOYS INTERNATIONAL LIMITED |
| **Date of Test Report** | : | JUL 26, 2007 |
| **Manufacturer** | : | -- |
| **Lab test report No.** | : | HJ00581044, HJ00574790 |
| **P.O. number as per invoice** | : | 2730193 |
| **SKU Number / Style Number** | : | 52444247 / KSL8033 |
| **UPC Code (If available)** | : | 731398080335 |

**The sample MEETS testing requirements of Hudson's Bay Company.**

**This Certificate of Compliance is valid for the above SKU/style for one year from date of test report. Unless otherwise stated, this attestation to compliance refers only to test report submitted to Hbc.
THIS DOCUMENT DOES NOT RELEASE SUPPLIERS/ MANUFACTURERS FROM THEIR CONTRACTUAL LIABILITIES AND RESPONSIBILITIES FOR THEIR PRODUCTS.

This document cannot be reproduced in anyway, except in full context, without the prior approval in Writing by Hbc.

(Signed by either Hbc or ITS Labs)

| **Authorized Signature For Hbc** | **Authorized Signature For ITS** (On behalf of hbc) |
|---|---|
| **Sign** : | **Sign** : [signature] |
| **Name and title** : | **Name and title** : Karen Ng - General Manager |
| | **Lab Location** : Intertek HK |
| **Date** : | **Date** : JUL 26, 2007 |



**BUREAU VERITAS**

CONSUMER PRODUCTS SERVICES DIVISION

## KIDS STATION TOYS INTERNATIONAL LTD

| | | |
|---|---|---|
| **Technical Report:** | **(5207)277-0091** | October 17, 2007 |
| **Date Received:** | October 04, 2007 | Page 1 of 8 |

KATHY LEE / KATHERINE SO
KIDS STATION TOYS INTERNATIONAL LTD
ROOM 804, 8/F, EMPIRE CENTRE
68 MODY ROAD
TSIM SHA TSUI EAST
KOWLOON
HONG KONG

**Sample Description:** ELECTRONIC COMBO SET (ON PACKAGING: PLAY CELL PHONE AND ELECTONIC LIGHT N' SOUNDS KEY RING)
1. ) RED
2. ) PINK

| | | | |
|---|---|---|---|
| **Vendor:** | N/A | **Sample Size:** | 4 |
| **Manufacturer:** | N/A | **Style No(s):** | KSL8033 |
| **Buyer:** | N/A | **SKN/SKU No.:** | 731398-08033-5 |
| **Labeled Age Grade:** | 1-1/2+ YEARS | **PO No.:** | N/A |
| **Appropriate Age Grade:** | NOT REQUESTED | **Ref #:** | N/A |
| **Client Specified Age Grade:** | NOT SPECIFIED | **Country of Origin:** | CHINA |
| **Tested Age Grade:** | OVER 1-1/2 YEARS OF AGE | **Assortment No.:** | N/A |
| **UPC Code:** | 731398080335 | | |

### EXECUTIVE SUMMARY:

The sample(s) MEET the following requirement(s):

- The lead content requirements of 16 CFR 1303, "Ban of lead-containing paint and certain consumer products bearing lead-containing paint" (CPSC and CPSA regulations).

- The flammability requirements of 16 CFR 1500.3(c)(6)(vi), "Flammable solid" (FHSA regulations).

- The soluble heavy metals content requirements of ASTM F963-03, "Standard consumer safety specification on toy safety," Section 4.3.5.2.

- The labeling requirements of ASTM F963-07, "Standard consumer safety specification for toy safety".

- The mechanical hazards requirements of ASTM F963-07, "Standard consumer safety specification for toy safety".

Note: The received sample(s) contained scrapable surface coating material(s) of less than 10 milligrams by weight on one single sample, therefore such coating material(s) was not subject to the soluble heavy metals analysis of ASTM F963-03, "Standard consumer safety specification on toy safety", Section 4.3.5.2, as specified in Section 8.3.3.1(2).

BUREAU VERITAS HONG KONG LIMITED

Lau Wing Kit, Keff
Director
Toys and Juvenile Products Department

KL/ka

Bureau Veritas Hong Kong Limited
Kowloon Bay Office
1/F Pacific Trade Centre, 2 Kai Hing Road,
Kowloon Bay, Kowloon, Hong Kong
Tel: (852) 2351 0888  Fax: (852) 2351 0889  www.cps-us.cerveritas.com



KIDS STATION TOYS INTERNATIONAL LTD
Technical Report: (5207)277-0091
October 17, 2007
Page 2 of 6

## RESULTS:

### APPROPRIATE AGE GRADE DETERMINATION

| |
|---|
| The Appropriate Age Grade is determined with reference to the Age Determination Guidelines of the Consumer Product Safety Commission (CPSC); and the ASTM F963-07, "Standard Consumer Safety Specification on Toy Safety", Annex A1 |

| | |
|---|---|
| Note : | The most stringent age grade from the Labeled Age Grade and the Appropriate Age Grade will be used for testing. |
| Note : | If the client does not specify an age grade for testing or request Bureau Veritas Consumer Products Services, Inc. to determine an appropriate age grade, the labeled age grade will be used for testing. |

### USE AND ABUSE TESTS

The samples were undergo the tests in accordance with section 8.6 through 8.16, whichever is applicable

| Test | Test Parameters | Standard Reference |
|---|---|---|
| Impact Test | 4 x 3 ft | 1500.52(b) |
| Torque Test | 4 in-lbs | 1500.53(e) |
| Tension Test | 15 lbs | 1500.53(f) |
| Compression Test | 30 lbs | 1500.53(g) |



KIDS STATION TOYS INTERNATIONAL LTD
Technical Report: (5207)277-0091
October 17, 2007
Page 3 of 6

**RESULTS:**

## PHYSICAL AND MECHANICAL HAZARDS (ASTM F963-07)

| Section | Requirement | Result |
|---------|-------------|--------|
| 4.1 | Material Quality | M |
| 4.3.7 | Stuffing Materials – Visual Inspection | N/A |
| 4.5 | Sound-Producing Toys | M |
| 4.6 | Small Objects | M |
| 4.7 | Accessible Edges | M |
| 4.8 | Projections | N/A |
| 4.9 | Accessible Points | M |
| 4.10 | Wires or Rods | N/A |
| 4.11 | Nails and Fasteners | M |
| 4.12 | Packaging Film | N/A |
| 4.13 | Folding Mechanisms and Hinges | N/A |
| 4.14 | Cords, Straps and Elastics | N/A |
| 4.15 | Stability and Over-Load Requirements | N/A |
| 4.16 | Confined Spaces | N/A |
| 4.17 | Wheels, Tires, and Axles | N/A |
| 4.18 | Holes Clearances, and Accessibility of Mechanisms | M |
| 4.19 | Simulated Protective Devices | N/A |
| 4.20 | Pacifiers | N/A |
| 4.21 | Projectile Toys | N/A |
| 4.22 | Teethers and Teething Toys | N/A |
| 4.23 | Rattles | N/A |
| 4.24 | Squeeze Toys | N/A |
| 4.25 | Battery-Operated Toys | M |
| 4.26 | Toys Intended to be Attached to a Crib or Playpen | N/A |
| 4.27 | Toy Chest | N/A |
| 4.28 | Stuffed and Beanbag-Type Toys | N/A |
| 4.31 | Toy Gun Marking | N/A |
| 4.33 | Certain Toys with Spherical Ends | N/A |
| 4.35 | Balls | N/A |
| 4.36 | Pompoms | N/A |
| 4.37 | Hemispheric-Shaped Objects | N/A |
| 4.38 | Yo Yo Elastic Tether Toys | N/A |
| 4.39 | Magnets | N/A |

*M = Meet    NM = Not Meet    N/A = Not Applicable    R = Refer to Comment Section*



KIDS STATION TOYS INTERNATIONAL LTD
Technical Report: (5207)277-0091
October 17, 2007
Page 4 of 8

**RESULTS:**

## LABELING AND INSTRUCTIONAL REQUIREMENT (ASTM F963-07)

| Section | Requirement | Result |
|---|---|---|
| | Safety Labeling Requirements | |
| 5.4 & 5.3 | Aquatic Toys | N/A |
| 5.5 & 5.3 | Crib and Playpens Toys | N/A |
| 5.6 & 5.3 | Mobiles | N/A |
| 5.7 & 5.3 | Stroller and Carriage Toys | N/A |
| 5.8 & 5.3 | Toys Intended to be Assembled by an Adult | N/A |
| 5.9 & 5.3 | Simulated Protective Devices | N/A |
| 5.10 & 5.3 | Toys with Functional Sharp Edges and Sharp Points | N/A |
| 5.11 | Small Objects, Small Balls, Marbles and Balloons (16 CFR 1500.19) | N/A |
| 5.12 | Toy Caps (16 CFR 1500.86 for Required Labeling) | N/A |
| 5.13 | Art Materials (16 CFR 1500.14(b)(8)) | N/A |
| 5.15 | Battery-Operated Toys | N/A |
| 5.15.1 & 5.3 | Battery-Powered Ride-On Toys | N/A |
| 5.16 | Promotional Materials | M |
| 5.17 & 5.3 | Magnets | N/A |
| | Instructional Literature | |
| 6.1 | Definition and Description | M |
| 6.2 | Toy Chests | N/A |
| 6.3 | Crib and Playpen Toys | N/A |
| 6.4 | Mobiles | N/A |
| 6.5 & 5.3 | Toys Intended to be Assembled by an Adult | N/A |
| 6.6.1-2 | Battery-Operated Toys | M |
| 6.6.3 | Battery-Powered Ride-On Toys | N/A |
| 6.7 | Toys in Contact with Food | N/A |
| | Producer's Markings | |
| 7.1 | Producer's Name and Address | M |
| 7.2 | Toy Chests | N/A |
| 7.3 | Battery-Powered Ride-on Toys | N/A |

*M = Meet    NM = Not Meet    N/A = Not Applicable    R = Refer to Comment Section*



**RESULTS:**

### FLAMMABILITY (16 CFR SECTION 1500.3(c)6)(vi))

| Requirement | Test Method Reference | Findings |
|---|---|---|
| Burn rate no greater than 0.1 of an inch per second | 16 CFR 1500.44 | Ignited but Self-Extinguished. |

**TOTAL LEAD CONTENT (16 CFR 1303, "Ban of Lead-containing paint and certain consumer products bearing Lead-containing paint")**

| Element: | | | | Lead | |
|---|---|---|---|---|---|
| Requirement: Maximum allowable limit (0.06% by weight) | | | | 600 mg/kg | |
| Sample Description | | | | Result (mg/kg) | Conclusion |
| | Color / Component | Location | Style | | |
| (A) | Surface Coating<br>all<br>shiny silver | paper stickers on control keys | all | LT 13 | Pass |
| (B) | light blue<br>green<br>red<br>pink | paper sticker on key<br>paper sticker on key<br>paper sticker on key<br>control | all<br>2<br>2<br>2 | LT 36 | Pass |
| (C) | orange<br>yellow<br>dull white<br>black | paper sticker on key<br>paper sticker on key<br>numbers on phones<br>pattern on control | 1<br>1<br>all<br>all | LT 46 | Pass |
| (D) | dull red/ white/ blue<br><br>yellow/ white underlying | logo on phones and control<br>words on phone | all<br><br>all | LT 22 | Pass |

*LT = Less than*
*\* = Average of duplicate analyses*      *mg/kg = milligrams per kilogram (ppm = parts per million)*



KIDS STATION TOYS INTERNATIONAL LTD
Technical Report: (5207)277-0091
October 17, 2007
Page 6 of 6

**RESULTS:**

**SOLUBLE HEAVY METALS CONTENT (ASTM F963, Section 4.3.5.2)**

|   | Color / Component | | Location | Style |
|---|---|---|---|---|
| | Surface Coating | | | |
| A. | pink | | control | 2 |
| B. | shiny silver | | keys | all |
| C. | dull red | | logo on phone and control | all |
| D. | white | | logo on phone and control | all |

| Element | As | Ba | Cd | Cr | Hg | Pb | Sb | Se | Mass of | |
|---|---|---|---|---|---|---|---|---|---|---|
| Maximum Limit (mg/kg) | 25 | 1000 | 75 | 60 | 60 | 90 | 60 | 500 | trace Amount | |
| Analytical Correction | 60% | 30% | 30% | 30% | 50% | 30% | 60% | 60% | | |
| Sample | Result (mg/kg) | | | | | | | | (gram) | Conclusion |
| A | LT 2 | LT 2 | LT 2 | 3 | LT 2 | LT 2 | LT 2 | LT 2 | 0.0128 | Pass |
| B | LT 2 | LT 2 | LT 2 | LT 2 | LT 2 | LT 2 | LT 2 | LT 2 | 0.0546 | Pass |
| C | LT 2 | 45 | LT 2 | LT 2 | LT 2 | LT 2 | LT 2 | LT 2 | 0.0109 | Pass |
| D | LT 2 | 23 | LT 2 | LT 2 | LT 2 | LT 2 | LT 2 | LT 2 | 0.0103 | Pass |

LT   = Less Than
CR  = Adjusted analytical result
mg/kg   = milligrams per kilogram (ppm = parts per million)
•       = Average of duplicate analyses

As = Arsenic, Ba = Barium, Cd = Cadmium,
Cr = Chromium, Hg = Mercury, Pb = Lead,
Sb = Antimony, Se = Selenium

Form No. ALFM n67

# EXHIBIT 3

## to Edwin Cabrera's Declaration

 

# PRODUCT APPROVAL FORM

No approvals are given by MGA except in writing. This form must be used for all product submissions at every stage of development from initial concept to final production and distribution. A separate form must be used for each item submitted for approval.

| LICENSEE INFORMATION | | | |
|---|---|---|---|
| **Product:** | Little Tikes Electronic Combo Set (2-in-1) | **Style Number:** | KSL8033 |
| **Date Submitted:** | October 17th, 2007 | **Email Address:** | El1125@aol.com; kathy@kidsstationtoys.com; debbie@kidsstationtoys.com |
| **Licensee:** | Kids Station | **Agent Name (if applicable):** | |
| **Contact Name:** | Elliot Newman;Vivian Hernandez;Kathy Lee;Debbie Leung | **Shelf Date/Month** | Fall 2007 |
| **Address:** | Room 804, 8/F Empire Centre, No 68 Mody Rd, Tsimshatsui East, Hong Kong | **Expected Life of Product** | **PLEASE UPDATE INFO** |
| **Telephone:** | 305.628.0900 | **Retail Target Price:** | **PLEASE UPDATE INFO** |
| **Fax:** | | **Licensee Comments (include limitations, timelines, pertinent information)** | |
| **Retailer:** | **PLEASE UPDATE INFO** | | |

## PRODUCT INFORMATION

**PRODUCT/HARDLINES**
- [ ] Concept
- [X] Contractual Samples
- [X] Final Production Samples for approval to Distribution (see contract for quantity)

**PRODUCT/SOFTLINES**
- [ ] Concept
- [ ] Strike Off (Fabric Sub. Only)
- [ ] Pre Production
- [ ] Final Production Samples for approval to Distribution (see contract for quantity)

**PACKAGING/HANGTAG**
- [ ] Concept
- [ ] Mechanical/Matchprint
- [X] Finished Product

**COLLATERAL/ADVERTISING**
- [ ] Concept
- [ ] Mechanical
- [ ] Finished Product

## SUBMISSION

[X] 1st          [ ] 2nd          [ ] 3rd          [ ] 4th

## APPROVAL

- [ ] Approved as submitted
- [X] Proceed to Next Stage:
- [X] Approved with Comments
- [ ] Re-Submit Same Stage Before Going to Next Stage
- [ ] Disapproved

Distribution _____ (to be completed by MGA)

  - Need to update shape, color & sounds in 2008.

Send all submissions to:
Sandra Penn
MGA Entertainment
16340 Roscoe Blvd – Suite 120
Van Nuys, CA 91406
Ph: 818.894.2525;Fx: 818.830.0139

Date Returned to Licensee:    10.30.07            Approved by:  Sandra Penn

# EXHIBIT 4

## to Edwin Cabrera's Declaration

 

## PRODUCT APPROVAL FORM

No approvals are given by MGA except in writing. This form must be used for all product submissions at every stage of development from initial concept to final production and distribution. A separate form must be used for each item submitted for approval.

| LICENSEE INFORMATION | | | |
|---|---|---|---|
| **Product:** | Little Tikes Chit N' Chat Cell Phone | **Style Number:** | KSL4010 |
| **Date Submitted:** | October 17th, 2007 | **Email Address:** | El1125@aol.com; kathy@kidsstationtoys.com; debbie@kidsstationtoys.com |
| **Licensee:** | Kids Station | **Agent Name (if applicable):** | |
| **Contact Name:** | Elliot Newman;Vivian Hernandez;Kathy Lee;Debbie Leung | **Shelf Date/Month** | Fall 2007 |
| **Address:** | Room 804, 8/F Empire Centre, No 68 Mody Rd, Tsimshatsui East, Hong Kong | **Expected Life of Product** | **PLEASE UPDATE INFO** |
| **Telephone:** | 305.628.0900 | **Retail Target Price:** | **PLEASE UPDATE INFO** |
| **Fax:** | | **Licensee Comments (include limitations, timelines, pertinent information)** | |
| **Retailer:** | **PLEASE UPDATE INFO** | | |

| PRODUCT INFORMATION | | |
|---|---|---|
| **PRODUCT/HARDLINES** | **PRODUCT/SOFTLINES** | **PACKAGING/HANGTAG** |
| ☐ Concept | ☐ Concept | ☐ Concept |
| X Contractual Samples | ☐ Strike Off (Fabric Sub. Only) | ☐ Mechanical/Matchprint |
| ☒ Final Production Samples for approval to Distribution (see contract for quantity) | ☐ Pre Production | ☒ Finished Product |
| | ☐ Final Production Samples for approval to Distribution (see contract for quantity) | **COLLATERAL/ADVERTISING** |
| | | ☐ Concept |
| | | ☐ Mechanical |
| | | ☐ Finished Product |

| SUBMISSION | | | |
|---|---|---|---|
| X 1st | ☐ 2nd | ☐ 3rd | ☐ 4th |

### APPROVAL

☐ Approved as submitted
☒ Proceed to Next Stage:

☒ Approved with Comments
☐ Re-Submit Same Stage Before Going to Next Stage

☐ Disapproved

Distribution _____ **(to be completed by MGA)**

- Need to update shape, color & sounds in 2008.

Send all submissions to:

Sandra Penn
MGA Entertainment
16340 Roscoe Blvd – Suite 120
Van Nuys, CA 91406
Ph: 818.894.2525;Fx: 818.830.0139

Date Returned to Licensee:   10.30.07 _____        Approved by:   Sandra Penn _____

 

## PRODUCT APPROVAL FORM

No approvals are given by MGA except in writing. This form must be used for all product submissions at every stage of development from initial concept to final production and distribution. A separate form must be used for each item submitted for approval.

### LICENSEE INFORMATION

| | | | |
|---|---|---|---|
| **Product:** | Little Tikes Electronic Light N' Sounds Key Ring | **Style Number:** | KSL8030 |
| **Date Submitted:** | October 17th, 2007 | **Email Address:** | El1125@aol.com; kathy@kidsstationtoys.com; debbie@kidsstationtoys.com |
| **Licensee:** | Kids Station | **Agent Name (if applicable):** | |
| **Contact Name:** | Elliot Newman;Vivian Hernandez;Kathy Lee;Debbie Leung | **Shelf Date/Month** | Fall 2007 |
| **Address:** | Room 804, 8/F Empire Centre, No 68 Mody Rd, Tsimshatsui East, Hong Kong | **Expected Life of Product** | PLEASE UPDATE INFO |
| **Telephone:** | 305.628.0900 | **Retail Target Price:** | PLEASE UPDATE INFO |
| **Fax:** | | **Licensee Comments (include limitations, timelines, pertinent information)** | |
| **Retailer:** | PLEASE UPDATE INFO | | |

### PRODUCT INFORMATION

**PRODUCT/HARDLINES**
- ☐ Concept
- ☒ Contractual Samples
- ☒ Final Production Samples for approval to Distribution (see contract for quantity)

**PRODUCT/SOFTLINES**
- ☐ Concept
- ☐ Strike Off (Fabric Sub. Only)
- ☐ Pre Production
- ☐ Final Production Samples for approval to Distribution (see contract for quantity)

**PACKAGING/HANGTAG**
- ☐ Concept (French Manual)
- ☐ Mechanical/Matchprint
- ☒ Finished Product

**COLLATERAL/ADVERTISING**
- ☐ Concept
- ☐ Mechanical
- ☐ Finished Product

### SUBMISSION

☒ 1st        ☐ 2nd        ☐ 3rd        ☐ 4th

### APPROVAL

- ☐ Approved as submitted
- ☒ Proceed to Next Stage:
- ☒ Approved with Comments
- ☐ Re-Submit Same Stage Before Going to Next Stage
- ☐ Disapproved

Distribution _____ **(to be completed by MGA)**

- Need to update shape, color & sounds in 2008.

Send all submissions to:     Sandra Penn
                            MGA Entertainment
                            16340 Roscoe Blvd – Suite 120
                            Van Nuys, CA 91406
                            Ph: 818.894.2525;Fx: 818.830.0139

Date Returned to Licensee:    10.30.07         Approved by:  Sandra Penn

# EXHIBIT 5

## to Edwin Cabrera's Declaration



**SGS**

CLIENT:    **Greenberg Traurig, LLP**
           **77 West Wacker Drive - Suite 2500**
           **Chicago, IL 60601**

| | |
|---|---|
| **Test Report No:  177:011512** | **Date:**   March 28, 2008 |

**The following sample was submitted by the Client as:  12 samples of play Cell Phones and Electronic Lite N' Sounds Key Ring**

**DATE OF RECEIPT:**        March 26, 2008

**TESTING PERIOD:**        March 28, 2008

**AUTHORIZATION:**        Order Confirmation No. 177:011512, dated March 28, 2008

**TEST(S) REQUESTED:**    16 CFR 1500.48 Sharp Points, 16 CFR 1500.49 Sharp Edges and
                          16 CFR 1501 Small Parts, both before and after conditioning, as
                          set forth in 16 CFR 1500.50.

**TEST RESULTS:**    The submitted sample has complied with all applicable requirements of
                     the referenced specification as summarized on Page 2 of this report.

**PREPARED BY:**

**SIGNED FOR AND ON BEHALF OF
SGS U.S. TESTING COMPANY INC.**

Arthur D. Fiorino, Senior Technician
Products Evaluation

Dominick Lepore, Manager
Products & Building Materials

Page 1 of 3

This report is issued by SGS U.S. Testing Company Inc. under its General Conditions for Testing Services, as printed on reverse side. SGS U.S. Testing's responsibility under this report is limited to proven negligence and will in no case be more than the amount of the testing fees. Except by special arrangement, samples are not retained by SGS U.S. Testing for more than 30 days. The results shown on this test report refer only to the sample(s) tested unless otherwise stated, under the conditions agreed upon. Anyone relying on this report should understand all of the details of the engagement. Neither the name, seals, marks nor insignia of SGS U.S. Testing may be used in any advertising or promotional materials without the prior written approval of SGS U.S. Testing. The test report cannot be reproduced, except in full, without prior written permission of SGS U.S. Testing Company Inc.

SGS U.S. Testing Company Inc. | Consumer Testing Services  291 Fairfield Avenue, Fairfield, NJ 07004  t (973) 575-5252  f (973) 575-7175  www.sgs.com

Member of the SGS Group



**Report No.: 177:011512**
**Date:** March 28, 2008
**Page:** 2 of 3

**CLIENT:**    **Greenberg Traurig, LLP**

<u>Mechanical Hazards:</u>   <u>Simulated Use and Abuse Testing</u>

<u>Procedure (Summary):</u>   The submitted samples were tested for compliance with the requirements of 16 CFR 1500.48 Sharp Points, 16 CFR 1500.49 Sharp Edges and 16 CFR 1501 Small Parts, both before and after conditioning, as set forth in 16 CFR 1500.50

<u>Labeled Age Group:</u>

0-18 Months___                      36-96 Months ____
18-36 Months   _X_                  *Not Age-Labeled ___

- When not age-labeled, products were subjected to the most stringent abuse test conditioning.

<u>Sample I.D.:</u>   12 samples of play Cell Phones and electronic Lite N' Sounds key ring

| Test Results: | Sharp Points | Sharp Edges | Small Parts |
|---|---|---|---|
| As Received | Pass | Pass | Pass |
| After Impact [1500.52 (b)] | Pass | Pass | Pass |
| After Torque [1500.52 (e)] | Pass | Pass | Pass |
| After Tension² [1500.52 (f)] | Pass - 1 | Pass - 1 | Pass - 1 |
| After Compression [1500.52 (g)] | Note 2 | Note 2 | Note 2 |

Samples are conditioned at 73°F (+/- 3°) and a Relative Humidity of 20 to 70 for a period of not less than 4 hours prior to testing.

<u>Notes:</u>

1. The headset of the cell phone was released during Second Direction Tension on the 6 samples that were tested to Torque and Tension. The pressures that removed the headsets were 12-pounds, 15-pounds-3-seconds, 13-pounds, 7-pounds, 9-pounds and 10-pounds. Please note that there were no small parts generated during separation of headset from the body.

2. Compression testing not requested by the client.

<u>Conclusion:</u>   When tested as specified, the submitted sample **met** the Federal Hazardous Substances Act, 16 CFR 1500 as indicated.



Report No.: 177:011512
Date: March 28, 2008
Page: 3 of 3

CLIENT:    Greenberg Traurig, LLP



Cell Phones and Electronic Lite N' Sounds Key Ring

\* \* \* \* \* \* \* \*
End Of Report

# EXHIBIT
# B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THE LITTLE TIKES COMPANY,              )
                                       )
         Plaintiff,                    )
                                       )    Case No. 08 CV 1935
v.                                     )
                                       )    Hon. Joan B. Gottschall
KID STATION TOYS, LTD., et al.,        )
                                       )
         Defendants.                   )

## DECLARATION OF ELLIOT NEWMAN

I, Elliot Newman, under penalty of perjury, state as follows:

1.      I am the President of Kids Station Toys Ltd. ("Kids Station"), a Hong Kong corporation with its principal place of business in Miami, Florida.  I have served as President of Kids Station and have been involved in the toy manufacturing and distribution business for over seven years.

2.      Kids Station is, and always has been, engaged in the business of designing, manufacturing, and distributing, a variety of electronic children's toys.  Over the years, Kids Station has developed substantial experience in the electronic toy industry.  It has also forged valuable strategic relationships with some of the largest toy retailers in the country.  Kids Station markets and sells products to those retailers, including Kids Station's line of Little Tikes products.

3.      On or about December 8, 2003, Kids Station and The Little Tikes Company ("Little Tikes") entered into an exclusive License Agreement (the "Agreement") pursuant to which Kids Station manufacturers and sells electronic toys bearing the Little Tikes name.  Kids Station is erroneously named in the Agreement as "Kid Station Toys Ltd., a Florida corporation."  Kids Station is a Hong Kong corporation.  There is no company named Kid Station Toys Ltd.

nor to my knowledge has there ever been. Despite the fact that Kids Station has operated under the name Kids Station throughout its relationship with Little Tikes, Little Tikes never inquired about the name or requested that the error in the Agreement be addressed.

4.      Over the years since the Agreement was executed, revenue from Kids Station's sales of Little Tikes-branded products has grown to represent a substantial portion of Kids Station's annual revenues.

5.      In 2004, Kids Station received the Little Tikes Licensee of the Year Award. Kids Station also has been nominated for the Licensing Industry Merchandisers Association for Best Corporate Brand Licensee of the Year for Kids Station's sale of the Little Tikes brand.

6.      Each year, Kids Station markets its products to retailers in order to generate sales. The critical part of this process begins in the months preceding the end of the calendar year and continues through January and February.

7.      In January and February, Toy Fairs take place in various locations around the world. Toy Fairs are attended by buying representatives from major brands and leading stores from around the world. They are critical to Kids Station for showcasing its product lines to retailers in order to generate sales of products.

8.      Kids Station attended Toy Fair in Hong Kong in January 2008. Similar to prior years, Kids Station presented its line of products, including its line of Little Tikes products, to major retailers, including the customer base that Kids Station has developed over the years through the investment of significant time and money.

9.      For the current year, Kids Station has committed to supply customers with various Kids Station products at certain negotiated prices, both from the Little Tikes line of products and other lines.

10.     On or about February 5, 2008, I received a letter from Little Tikes purporting to immediately terminate the Agreement (the "Purported Termination Letter"). The grounds articulated in the Purported Termination Letter are not supported by the facts.

11.     If Little Tikes is permitted to terminate the Agreement and abruptly end Kids Station's exclusive license to sell Little Tikes products, as Little Tikes has attempted to do through the Purported Termination Letter, Kids Station will suffer a massive loss of goodwill, damage to its reputation, and harm to its existing sales network. This is particularly true given the timing of Little Tikes' purported termination and the resulting interference with Kids Station's delivery of products to its customer base.

12.     Kids Station's inability to deliver upon its sales commitments as a result of Little Tikes' wrongful termination would be disastrous for Kids Station's business, which has been built up over a significant period of time and at great expense. In addition to abruptly losing a substantial share of its business, Kids Station also would be unable to satisfy customer orders on which those important customers are relying. Those customers have purchased and otherwise would continue to purchase from Kids Station both Little Tikes products and other product lines. However, if Kids Station fails to deliver the Little Tikes products that it has committed to provide for 2008, Kids Station's reputation and reliability will be irreparably harmed in the marketplace. Not only would Kids Station be unable to continue selling Little Tikes product to those retailers, but the retailers would be unlikely to rely upon Kids Station for the future purchase of any other products.

13.     All of the Little Tikes-branded products that Kids Station has committed to sell to its retailer customers have been approved by Little Tikes as part of the product approval submission process provided in the Agreement.

3

The undersigned certifies, under penalty of perjury pursuant to 28 U.S.C. § 1746, that the statements set forth herein are true and correct.

Executed on April 15, 2008

Elliot Newman
President, Kids Station Toys Ltd.

4

# EXHIBIT C

ORIGINAL

## LICENSE AGREEMENT

This Agreement is effective as of this 8th day of December, 2003, by and between The Little Tikes Company, an Ohio corporation, having a principal place of business at 29 East Stephenson Street, Freeport, Illinois 61032 (hereinafter referred to as "Little Tikes") and Kid Station Toys Ltd., a Florida corporation, having its principal place of business at P.O. Box 694660, Miami, FL 33268-4660 (hereinafter referred to as "User").

## RECITALS

WHEREAS, Little Tikes has used and is the owner of the famous, distinctive and valuable trademark LITTLE TIKES (with and without an associated logo) (the "Trademarks," as defined below) known throughout the world for high quality consumer and commercial products that are used in a variety of environments; and

WHEREAS, User is desirous of manufacturing and selling Electronic Audio, Video and MusicToys ("Product") in the Territory (as defined below) using the Trademarks, and is desirous of acquiring a license with respect to such rights;

NOW, THEREFORE, the parties hereto, in consideration of the mutual agreements herein contained and promises herein expressed and for other good consideration acknowledged by each of them to be satisfactory and adequate, do hereby agree as follows:

1

## ARTICLE I. DEFINITIONS

The following terms shall have the following meanings when used in this Agreement and the schedules attached hereto:

1.1    "Authorized Channels" means all Mass Market, Electronic Specialty, Discount and Warehouse Clubs, Toy Specialty, Drug, Mid-Tier, Department Stores, Grocery, Internet and Catalog in the Territory.

1.2    "Core Target Market" means the market for Products directed principally to children under the age of ten (10).

1.3    "Licensed Products" means the Products specified in Exhibit A designed for children in the Core Target Market. The Licensed Products shall be designed and made available in accordance with the product specification attached as Exhibit A (as may be amended from time to time by agreement of the parties).

1.4    "Trademarks" means the trademarks owned or controlled by Little Tikes as are specifically detailed in Exhibit B; i.e., "LITTLE TIKES" and the "LITTLE TIKES" logo, and any other trademark specifically designated in writing by Little Tikes for use on or in connection with the Licensed Products.

1.5    "Licensed Rights" means all intellectual property, including titles, personae, places, props, materials, copyrights and derivative works, patents, designs, trademarks, trade dress,

and other intellectual property in and/or relating to the Licensed Products that have been designed or prepared for or by User for use in connection with the Licensed Products, as well as the Trademarks.

1.6     "Term" means the term as defined in Article V.

1.7     "Territory" means the United States, Canada, and Mexico.

1.8     "Net Sales Price" shall mean the gross selling price of Licensed Products sold by User, less a flat twelve percent (12%) deduction to cover any and all of the amount of credits or other terms allowed by User to its customers relating to all freight, insurance, transportation charges, trade discounts, advertising allowances, sales taxes and other usual deductions, charges, discounts, returns, allowances, credits or adjustments to the gross selling price.   The Licensed Products shall be deemed to have been "sold" when billed out, or when shipped, or when paid for, whichever shall occur first.

1.9     "Shipping Date" shall mean the date no earlier than the date of execution of this Agreement and no later than October 1, 2004.

ARTICLE II. GRANT

2.1     License.  Subject to the terms and conditions hereof, Little Tikes hereby grants to User, for the Term, in the Territory and through the Authorized Channels, an exclusive,

P:\Legal\Private\Little Tikes\Little Tikes - Kid Station #964598   2003-12-01.doc

3

royalty-bearing license to utilize the Licensed Rights solely on or in connection with the manufacture, marketing, sale and distribution of the Licensed Products.

2.2   No Sublicensing.  User shall have no right to sublicense any of the rights which are licensed under this Agreement.

2.3   Limited License.  User agrees that the license granted hereunder applies only to the use of the Licensed Rights in connection with the Licensed Products sold through Authorized Channels in the Territory, and that this license does not extend to any other trade name, trademark, or other intellectual property that Little Tikes or its affiliates may own or use, or to the use of the Licensed Rights on products other than Licensed Products, or outside of the Authorized Channels, or outside of the Territory. Little Tikes does not grant any right to use all or any part of the Trademarks in the name or style of User or of any subsidiary, division or subdivision of User, or of any corporation or other business entity, shop or establishment. User agrees that it will not incorporate or use the Trademarks or similar words thereto in conjunction with its company name or as a trademark or as a generic name during or after the period of this Agreement.  User agrees not to register or use any of the Trademarks or any parts thereof or terms confusingly similar thereto as part of an Internet or website address, a Universal Resource Locator ("URL"), or as a domain name.

2.4   Best Efforts; No Competition.  User shall use its reasonable best efforts to market, sell, and distribute Licensed Products according to the terms and subject to the conditions hereunder.  User shall not develop, manufacture, sell, supply, or market products to be sold

P:\Legal\Private\Little Tikes\Little Tikes - Kid Station #964598   2003-12-01.doc

4

under major toy brands (e.g., without limitation, Fisher-Price, Playskool, Leap Frog, etc.) that directly compete with the Licensed Products, unless otherwise approved in writing by Little Tikes, which approval shall not be unreasonably withheld

## ARTICLE III. SAMPLES; SALES TO LITTLE TIKES

3.1     User shall provide to Little Tikes twelve (12) free samples of each Licensed Product each year within 30 days after production start.  No royalty shall be payable as to these free samples.  In addition, each year within a reasonable time prior to both Toy Fair and Little Tikes' customer meetings, User shall make available to Little Tikes at least one (1) production model (or if such production model is not yet available then a quality three-dimensional model) of each Licensed Product (along with all existing related packaging) for the purpose of displaying the same at Little Tikes showrooms during Toy Fair (traditionally held in New York City in February) and during Little Tikes' customer meetings.

3.2     User shall sell Licensed Products to Little Tikes, at the lowest price offered by User to other third parties, for distribution by Little Tikes through Little Tikes-owned retail stores and for sales to Little Tikes and Newell employees.  No royalty shall be payable as to these sales.

## ARTICLE IV. REPORTS AND PAYMENTS

4.1     Running Royalties.  As consideration for the licenses granted herein, User shall pay during the Term of this Agreement the earned, running royalties ("Running Royalties") at the rate of five percent (5%) of the Net Sales Price for domestic and FOB sales  for Category

I (as set forth in Exhibit A) based upon sales of Licensed Products by User; three percent (3%) of the Net Sales Price for domestic and FOB sales for Category II (as set forth in Exhibit A) based upon sales of Licensed Products by User and for Category III (as set forth in Exhibit A): five percent (5%) of Net Sales for domestic and FOB sales or seven percent (7%) of Net Sales for domestic and FOB sales if a Licensed Product originated from or is designed and/or engineered in whole by Little Tikes. The Licensed Products shall be deemed to have been "sold" when billed out, or when shipped, or when paid for, whichever shall occur first. All sales by User of Licensed Products to any of its affiliates or to any entity or person associated with User, including all inter-company transactions, shall be carried on User's books of account at the full regular wholesale price charged to unrelated third parties, and User shall account for and pay Running Royalties to Little Tikes on all such sales as if they occurred on an arms-length basis to an unrelated wholesale account.

4.2    Guaranteed Annual Royalty Payment. In accordance with the following schedule, User shall pay to Little Tikes in U.S. dollars a minimum guaranteed annual royalty payment (the "Guaranteed Annual Royalty Payment") regardless of the sales levels of the Licensed Products as follows:

| Due Date | Amount Due | Applicable Calendar Year |
|---|---|---|
| Category I and II: | | |
| Upon Signing | $25,000.00 | October 1, 2003 – June 30, 2005 |
| December 15, 2004 | $35,000.00 | October 1, 2003 – June 30, 2005 |
| September15, 2005 | $20,000.00 | July 1, 2005 – June 30, 2006 |
| March 15, 2006 | $45,000.00 | July 1, 2005 – June 30, 2006 |
| September 15, 2006 | $20,000.00 | July 1, 2006 – June 30, 2007 |
| March 15, 2007 | $55,000.00 | July 1, 2006 – June 30, 2007 |
| September 15, 2007 | $20,000.00 | July 1, 2007 – June 30, 2008 if Renewal Term |

is exercised by User pursuant to paragraph 5.2 hereunder

March 15, 2008          $55,000.00          July 1, 2007 – June 30, 2008 if Renewal Term
is exercised by User pursuant to paragraph 5.2 hereunder
September 15, 2008    $20,000.00          July 1, 2008 – June 30, 2009 if Renewal Term
is exercised by User pursuant to paragraph 5.2 hereunder
March 15, 2009          $55,000.00          July 1, 2008 – June 30, 2009 if Renewal Term
is exercised by User pursuant to paragraph 5.2 hereunder

<u>Category III:</u>

| | | |
|---|---|---|
| Upon Signing | $50,000.00 | October 1, 2003 – June 30, 2005 |
| December 15, 2004 | $25,000.00 | October 1, 2003 – June 30, 2005 |
| September 15, 2005 | $25,000.00 | July 1, 2005 – June 30, 2006 |
| March 15, 2006 | $50,000.00 | July 1, 2005 – June 30, 2006 |
| September 15, 2006 | $25,000.00 | July 1, 2006 – June 30, 2007 |
| March 15, 2007 | $75,000.00 | July 1, 2006 – June 30, 2007 |
| September 15, 2007 | $25,000.00 | July 1, 2007 – June 30, 2008 if |

Renewal Term is exercised by User pursuant to paragraph 5.2 hereunder
March 15, 2008          $75,000.00          July 1, 2007 – June 30, 2008 if
Renewal Term is exercised by User pursuant to paragraph 5.2 hereunder
September 15, 2008    $25,000.00          July 1, 2008 – June 30, 2009 if
Renewal Term is exercised by User pursuant to paragraph 5.2 hereunder
March 15, 2009          $75,000.00          July 1, 2008 – June 30, 2009 if
Renewal Term is exercised by User pursuant to paragraph 5.2 hereunder


Running Royalties shall be credited against Guaranteed Annual Royalty Payments, so that

the amount of Guaranteed Annual Royalty Payment due and payable is reduced by the

amount of the Running Royalties paid to Little Tikes.   If Running Royalties in a calendar

year exceed the Guaranteed Annual Royalty Payment for that calendar year, then no payment

is due under Section 4.2.  Guaranteed Annual Royalty Payments may only be applied against

the calendar year that they relate to and may not be applied to any other calendar year.

Guaranteed Annual Royalty Payments for Category I and Category II may not be applied to

Category III and Guaranteed Annual Royalty Payments for Category III may not be applied

to Category I and Category II.

4.3    Advance Payments. User shall pay to The Beanstalk Group, LLC, 28 East 28th Street, 15th Floor, New York, NY 10016 ("Beanstalk"), on behalf of Little Tikes, a non-refundable advance payment of Twenty Five Thousand Dollars ($25,000.00) for Categories I and II; and Fifty Thousand Dollars ($50,000.00) for Category III (together, the "Advance") upon signing of this Agreement. This Advance shall be credited against User's Running Royalty Payment for the year commencing October 1, 2003 and ending June 30, 2005.

4.4    Quarterly Report and Payment. Within thirty (30) days following the end of each calendar quarter, starting with the month following the quarter in which sales of the Licensed Products commence, User shall submit to Beanstalk (with a copy to Little Tikes), a statement, certified by an officer of User to be accurate, showing separately for each of the Licensed Products, on a country-by-country basis, the number, description and sales price for each Stock Keeping Unit ("SKU") of each Licensed Product sold by User during the preceding calendar quarter, and the calculation of Running Royalties due Little Tikes for such calendar quarter. User shall transmit to Beanstalk, on behalf of Little Tikes, payment of the amounts due under this Agreement concurrently with the rendering of the statement for the period. If Little Tikes at any time so requests, User's reports shall be made in the form set forth in Exhibit C attached hereto or in another form to be provided by Little Tikes to User in the future. A copy of the reports and a copy of the check in Little Tikes' favor shall be delivered to The Little Tikes Company, Attention: Director of Licensing, 2180 Barlow Road, Hudson, Ohio 44236.

4.5     <u>Annual Report and Payment.</u>  Together with the quarterly royalty report provided for

sales occurring during the fourth calendar quarter of each calendar year during the Term,

User shall provide Beanstalk (with a copy to Little Tikes) with a year end report showing

separately for each SKU of each  Licensed Product, on a country-by-country basis, the

number, description and sales price for each Licensed Product sold by User during the

preceding calendar year, and the calculation of Running Royalties due Little Tikes

hereunder. This report shall be accompanied by  payment to Beanstalk, on behalf of Little

Tikes, of any Guaranteed Annual Royalty Payment that is due.


4.6     <u>Record Keeping</u>. User shall keep full and accurate books of account, records, data,

and memoranda respecting the manufacture and sale of the Licensed Products in sufficient

detail to enable the payments hereunder to Little Tikes to be determined. Little Tikes, at its

sole cost and expense, shall have the right to conduct examinations of the books and records

pertaining to such statement for a period of two (2) years from the date on which such report

is furnished to Beanstalk and Little Tikes for the purpose of verifying the reports provided

for in this Agreement. Such examinations shall be conducted by an independent auditor or

representative of Little Tikes, upon prior written notice of at least seven (7) days and not

more often than once in any calendar year (unless Little Tikes discovers a discrepancy

requiring additional audits), and in such manner as to not unduly interfere with the business

of User. Each examination shall be at the expense of Little Tikes unless the examination

discloses a discrepancy in favor of User exceeding by more than five percent (5%) of the

total amounts paid to Little Tikes during the period covered  by the examination, in which

case, User shall pay Little Tikes for all the direct and verifiable expenses of that

examination. Payments found to be due Little Tikes as a result of an examination and the applicable interest shall be paid immediately as set forth herein.

4.7    Payments and Calculations in U.S. Dollars; Interest on Past Due Payments; Tax Payments. All Running Royalties shall be paid in U.S. dollars on the day payment is due, except that any past due payment shall be at the rate prevailing when such payment became due. Sales made in currency other than U.S. Dollars shall be converted to U.S. Dollars, at Licensee's sole expense, as of the date that Running Royalties on those sales are due. It is further understood and agreed that User shall pay interest to Little Tikes upon any and all Running Royalties that are at any time overdue, said interest to be computed at the rate of two percent (2%) per annum over the prime interest rate charged by Chase Manhattan Bank in New York from the date when such Running Royalties are due and payable as provided herein to the date of payment.

User shall withhold as taxes on all payments to be made to Little Tikes only such amounts as are absolutely required to be withheld by law in the country from which payment is being made. User shall submit to Little Tikes originals of the remittance voucher and the official receipt evidencing the payment of the corresponding taxes. User shall fully cooperate with Little Tikes and provide such information and records as Little Tikes may require in connection with any application by Little Tikes to the tax authorities in any country of the Territory and/or the United States of America including but not limited to, the obtaining of a credit for any withholding tax paid in the Territory or any country from which Running Royalties and any other payments are being made by User to Little Tikes pursuant to this Agreement.

4.8    Distribution Report.  User agrees to provide to Little Tikes, on or before April 30 of each calendar year during the Term, a distribution and sales plan (including, but not limited to, User's product development plans, advertising, and merchandising and promotional activities) for the remainder of that calendar year.  User also agrees to provide to Little Tikes, on or before March 1 of each calendar year during the Term, a report of actual unit sales by individual retail account for the previous calendar year.

4.9    Forecast Report.  Each calendar quarter, User agrees to provide Little Tikes,  with a forecast report containing an estimate of units sales of Licensed Products and gross dollar volume sales of Licensed Product for that calendar quarter.  These forecast reports are estimates only and are not binding on User.

## ARTICLE V. TERM OF THE AGREEMENT

5.1    Initial Term.  The initial term of the license granted herein shall be from the date of execution of this Agreement until June 30, 2007 (the "Initial Term"), subject to any earlier termination or extension of this Agreement.

5.2.    Renewals.

    (a)    User shall have the right to extend the Agreement for Categories I and II only beyond the Initial Term for  an additional two year term  commencing July 1, 2007 through June 30, 2009 ("Renewal Term") so long as, User earns and pays at least $200,000.00 in Running Royalties for Categories I and II combined by

December 31, 2006. User shall notify Little Tikes of its intention to extend the Term for an additional year by providing written notice of its intention to extend no later than ninety (90) days prior to the expiration of the then-current term.

(b)     User shall have the right to extend the Agreement for Category III only beyond the Initial Term for an additional two year term commencing July 1, 2007 through June 30, 2009 ("Renewal Term") so long as, User earns and pays at least $250,000.00 in Running Royalties for Category III by December 31, 2006. User shall notify Little Tikes of its intention to extend the Term for an additional year by providing written notice of its intention to extend no later than ninety (90) days prior to the expiration of the then-current term

5.3.     <u>Minimum Number of Product Introductions.</u>  During each year of this Agreement, subject to Little Tikes' approval rights hereunder, User shall introduce at least three (3) different SKUs of Licensed Products, the majority of which shall contain new aesthetic or functional features.

## ARTICLE VI. INTELLECTUAL PROPERTY

6.1     <u>Ownership of the Licensed Rights.</u>  User acknowledges that Little Tikes is the sole owner of all right, title and interest in and to the Licensed Rights and Trademarks in any form or embodiment thereof, in the Territory, and is also the sole owner of the goodwill attached or which shall become attached to the Licensed Rights and Trademarks in connection with the business and goods in relation to which the same has been, is, or shall be used.

6.2     Exclusive Rights.  All Licensed Rights developed by User for use in or in connection with the Licensed Products shall be the sole and exclusive property of, and title shall vest in, Little Tikes or its nominee, from and after the time it is created, and User shall cooperate with Little Tikes, at the sole expense of Little Tikes, to secure and perfect such Licensed Rights in the name of Little Tikes as Little Tikes' sole and exclusive property.

6.3     Work Made for Hire.  To the extent that any of the Licensed Rights is specially ordered or commissioned for use as a contribution to a collective work, as part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, the parties agree that the Licensed Rights shall be considered a "work made for hire" under 17 U.S.C. § 101 owned by Little Tikes.   For the avoidance of doubt, User acknowledges that the copyrights and all other proprietary rights in and to the Licensed Rights and any derivatives thereof are exclusively owned and reserved to Little Tikes.  User shall neither acquire nor assert copyright ownership or any other proprietary rights in and to the Licensed Rights or any derivatives thereof.

6.4     Assignment.  With respect to any rights in the Licensed Rights other than the rights described in Section 6.3, above, User agrees to assign and hereby assigns to Little Tikes or its nominee, the sole and exclusive right, title and interest in the United States and all foreign countries, in and to the Licensed Rights, including without limitation any and all related patent, copyright, trade secret, trade dress, trademark, design, and other relevant proprietary

rights of any nature whatsoever, as well as the right of priority, and all applications for trademark registration, copyright registration, mask work protection, design registration, or other protection. Little Tikes has the sole discretion as to when and in which countries to file for intellectual property registrations (including patents, trademarks, and copyrights) relating to any and all Licensed Rights.

6.5    Patent Prosecution and Related Activities. Little Tikes or its nominee, at its sole cost and expense, shall have the sole right to file and prosecute applications for letters patent, trademark registrations, copyright registrations, mask work protection, design registrations or other protection with respect to the Licensed Rights. In the event that Little Tikes declines, after notice from User, to file and prosecute applications for letters patent, copyright registrations, mask work protection, design registrations or other protection with respect to the Licensed Rights (but excluding the Trademarks), User may, with the prior written approval of Little Tikes, file and prosecute said applications and registrations in the name of User. In the event that User files and prosecutes said applications, User shall bear any and all costs, including reasonable attorney's fees, associated with User's filing and prosecuting said applications. In no event shall User file any applications for trademark registration or any other type of intellectual property protection covering the Trademarks.

6.6    Cooperation. User shall, at Little Tikes' request and at Little Tikes' expense, assist Little Tikes to obtain, maintain and protect the rights of Little Tikes in the Licensed Rights and Trademarks. User warrants and agrees to execute and deliver to Little Tikes, and to cause its employees, its subcontractors and their respective employees to execute and deliver

to Little Tikes, any and all documents that Little Tikes may reasonably request to convey to Little Tikes any interest User, its subcontractors or their respective employees may have in any Licensed Rights or Trademarks, or that are otherwise necessary to protect and perfect Little Tikes' interest in such Licensed Rights. User further warrants and agrees to take and cause its employees, its contractors and their respective employees to take such other actions as Little Tikes may reasonably request to protect and perfect Little Tikes' interest in any Licensed Rights and Trademarks.

6.7     Use Inures to Little Tikes.  Any use of the Trademarks by User shall inure to the benefit of Little Tikes.  On Licensed Products, Licensed Product packaging and advertisements, User will clearly disclose Little Tikes' ownership of the Trademarks in the form prescribed in Exhibit B.  User will not, at any time, do or suffer to be done any act or thing which may in any way adversely affect any rights of Little Tikes in and to the Trademarks or any registrations thereof.

6.8     Use of the Trademarks on Quality Licensed Products .  User may use the Trademarks only on those Licensed Products the quality of which is in all respects at least equal to products sold by Little Tikes.  User shall manufacture the Licensed Products in accordance with the approved designs, materials, tolerances of manufacture and assembly, testing and packaging specifications approved by Little Tikes.  All uses of the Trademarks must be in conformance with Little Tikes' guidelines for the use thereof, which guidelines shall be provided by Little Tikes. User shall not deviate substantially from such specifications without written approval from Little Tikes.  If at any time Little Tikes, at its sole discretion,

determines that any of the Licensed Products manufactured or sold by User do not conform to the previously approved production sample, then upon written notice by Little Tikes, permission to use the Trademarks as set forth herein may be immediately withdrawn, and User hereby covenants and agrees that it will cease and desist any and all such use, either directly or indirectly, immediately upon such notice until notified in writing by Little Tikes that use may be resumed.  User agrees that Little Tikes may supplement the above identified specifications at any time, and User agrees to manufacture Licensed Products which will conform to any supplemental specifications within agreed upon time tables.

6.9    Protecting the Licensed Rights.  User shall cooperate fully and in good faith with Little Tikes for the purpose of securing, preserving and protecting Little Tikes' rights in and to the Licensed Rights.

6.10    Compliance with Legal Requirements.  User will use the Licensed Rights in the Territory strictly in compliance with the legal requirements applicable therein.  Whenever User uses any of the Licensed Rights which are registered on any Licensed Product, packaging, labeling, or in any advertisement, it must be marked to indicate ownership and registration in accordance with applicable law.  Upon expiration or termination of this Agreement for any reason whatsoever, User will execute and file any and all documents required by Little Tikes terminating any and all ownership rights which User may have acquired in the Trademarks and in the Licensed Rights.

6.11    Notice of Infringement. User shall promptly notify Little Tikes in writing of any third party infringement or imitation of the Licensed Rights or any of them, when the same comes to its attention. Upon receipt of such notice, Little Tikes may, in its sole discretion, take such action against third parties it considers advisable for the protection of the Licensed Rights. In no event may User initiate any action or proceeding against such third parties.

6.12    Enforcement Actions. At Little Tikes' discretion, User may join or be joined as interested parties in any action that may be brought for infringement by others of the Licensed Rights, and participate and share the cost of such suits and any recoveries therein to an equal extent.

6.13    No Transfer of User's Pre-Existing Intellectual Property. Nothing herein shall be construed to transfer ownership of any of User's pre-existing proprietary rights incorporated in Licensed Products. The parties understand and agree that technology that is incorporated into Licensed Products is the sole property of User, and that all other property rights incorporated into Licensed Products are the sole property of Little Tikes, and each party agrees to take such actions as are reasonably required by the other party to secure and perfect these proprietary rights in the respective parties.

## VII. REPRESENTATIONS AND WARRANTIES, INDEMNITY AND INSURANCE

7.1    Representations and Warranties of Little Tikes. Little Tikes represents and warrants to User the following: (a) Little Tikes is the sole and exclusive owner of all rights to the Trademarks and has the right to grant the licenses and rights granted in Article II with

respect to the Trademarks; (b) Little Tikes has full power and authority to enter into and perform this Agreement; (c) there is no claim, action, suit or proceeding relating to this Agreement or the Trademarks pending or threatened before any court that would impair User's right to use the Trademarks; (d) any and all information or materials developed by Little Tikes shall be the original work of Little Tikes (except for materials in the public domain) and Little Tikes shall not use any information or materials which are not original unless it has obtained such information or materials from User or has received specific authorization in writing from the owner of such information and materials to use them; (e) to the best of Little Tikes' knowledge, after due inquiry has been made, no information or materials furnished to User by Little Tikes infringes on any third party intellectual property rights including, without limitation, patents, copyrights and trademarks, and no such information is defamatory or constitutes a violation of the right of privacy or publicity of any third party; and (f) so long as this Agreement is in effect, Little Tikes shall not commit any act or enter into any agreement which could adversely affect User's entitlement to enjoy the full benefit of the rights, title, and interests herein granted.

7.2    Representations and Warranties of User. User represents and warrants to Little Tikes the following: (a) User has full power and authority to enter into and perform this Agreement; (b) User shall create the Licensed Products as original works of authorship and shall design, manufacture, and sell them without violating the rights of third parties; and (c) to the best of its knowledge, after due inquiry has been made, the Licensed Products shall not infringe on any third party intellectual property rights including, without limitation, patents, copyrights and trademarks, and shall neither be defamatory nor constitute a violation

of the right of privacy or publicity of any third party; (d) any and all information or materials developed by User shall be the original work of User (except for materials in the public domain) and User shall not use any information or materials which are not original unless it has obtained such information or materials from Little Tikes or has received specific authorization in writing from the owner of such information and materials to use them; (e) so long as this Agreement is in effect, User shall not commit any act or enter into any agreement which could adversely affect Little Tike's exclusive rights in and to the Licensed Rights, including the Trademarks; and (f) Licensed Product made by or on behalf of User shall be free from defects in workmanship and shall be made in compliance with all applicable labor laws, standards, regulations, and safe practices, and shall not involve child or prison labor.

7.3    Indemnification by User.    User shall defend, indemnify and hold Little Tikes, its agents, parent, subsidiary and related entities and their respective officers, agents, directors and employees harmless from and against any and all claims relating to or arising out of any violation or alleged violations by User of any of the warranties, representations or agreements made by User hereunder, and from actions of User in this Agreement not authorized by Little Tikes, from product liability claims arising from the Licensed Products, including those claims that may be attributable to any defect in the Licensed Products regardless of when such defect shall be discovered, and from intellectual property claims by third parties (except those claims arising from User's approved use of the Licensed Rights) arising from the Licensed Products.    Upon receipt of notice of a third party claim that, if true, would constitute a breach by User of any warranty, undertaking, representation or

agreement entered into herein or hereunder, or any other such claim as specified in this Section, Little Tikes shall give prompt written notice of such claim to User. User shall have the right to assume the defense of such claim at User' sole cost and expense by furnishing Little Tikes with written notice of same. User shall be liable for all losses, costs, expenses, damages, or recoveries (including without limitation, amounts paid in settlement and reasonable attorney's fees based on such claim) suffered, made or incurred by either User or Little Tikes. User shall not, in settlement or otherwise, admit liability or otherwise prejudice Little Tikes without first receiving the written consent of Little Tikes.

7.4    User's Insurance. User shall maintain in full force and effect at all times while this Agreement is in effect and for three (3) years thereafter, comprehensive general and commercial liability insurance, including broad form advertising, contractual, property damage, and product liability coverage waiving subrogation with combined single limits of no less than $2 million. User shall include Little Tikes as an additional insured on User's insurance policy, and said insurance shall always be the primary coverage for the Licensed Products shipped by User hereunder, notwithstanding any other provision herein including Little Tikes' contribution, if any, to product development, design and/or engineering. User shall deliver to Little Tikes a certificate or certificates of insurance evidencing satisfactory coverage and indicating that Little Tikes shall receive written notice of cancellation, non-renewal or of any material change in coverage at least 30 days prior to the effective date thereof. User shall carry insurance with an insurance company having a BEST rating of A-V.

7.5    <u>Indemnification by Little Tikes.</u>  Little Tikes shall defend, indemnify and hold User, its agents, parent, subsidiary and related entities and their respective officers, agents, directors and employees harmless from and against any and all claims relating to or arising out of any violation or alleged violations by Little Tikes of any of the warranties, representations or agreements made by Little Tikes hereunder.  Upon receipt of notice of a third party claim that, if true, would constitute a breach by Little Tikes of any warranty, undertaking, representation or agreement entered into herein or hereunder, User shall give prompt written notice of such claim to Little Tikes.  Little Tikes shall have the right to assume the defense of such claim at Little Tikes' sole cost and expense by furnishing User with written notice of same.  Little Tikes shall be liable for all losses, costs, expenses, damages, recoveries (including without limitation, amounts paid in settlement and reasonable attorney's fees based on such claim) suffered, made or incurred by either Little Tikes or User.

7.6    <u>Limitation of Liability.</u>  Under no circumstances shall either party be entitled to recover from the other party any consequential, incidental, indirect, special or punitive damages, excluding claims made under Sections 7.3 or 7.5, whether in contract or in tort, including claims for negligence, even if the party has been advised of the possibility of such damages.  Each party acknowledges that the foregoing waiver serves as a material inducement for it to enter into this Agreement.

## ARTICLE VIII. CONSUMER SERVICE

8.1    <u>Telephone Support</u>. User agrees to provide quality customer support service via a toll-free 800 telephone service to all consumers of the Licensed Products. The level of customer support service shall be comparable to the level of quality of customer support service offered by Little Tikes in the United States by providing no less than the following: (a) User will provide a toll-free "800" number telephone service for consumers to be in operation during normal business hours (minimum of 9 a.m. to 5 p.m. Monday through Friday, Eastern Standard Time); (b) This service shall include, but not be limited to, providing assistance in locating the Licensed Products at retail stores, and handling all reasonable questions regarding technical support of Licensed Products and replacement of Licensed Products; and, (c) User agrees to include the toll-free number on Licensed Product packaging and instruction sheets relating to the Licensed Products.

8.2    <u>Reporting</u>. Within thirty (30) days after the end of each calendar quarter, User agrees to provide a report to Little Tikes, attention Director of Marketing - Licensing, detailing the consumer service activities of User for the Licensed Products for the preceding quarter.

8.3    <u>Responsible Persons</u>. User agrees to provide to Little Tikes, Manager of Consumer Service, the names of at least two (2) employees of User responsible for consumer service activities relating to the Licensed Products and to update Little Tikes Manager of Consumer Service when any changes are made concerning those employees of User that are responsible for such consumer service.

8.4.    <u>Warranty</u>. All Licensed Products shall be accompanied by a written document that clearly describes the product warranty period (which period shall be no less than ninety (90) days) and the procedure to make a warranty claim.

## ARTICLE IX. APPROVAL OF DESIGN CONCEPT, PROTOTYPE, PRE-PRODUCTION AND PRODUCTION SAMPLES

9.1    <u>Submission for Approval</u>. User is responsible for the developing, designing and engineering of the Licensed Products, and is responsible for all tooling, manufacturing and packaging for all Licensed Products. Approval of Licensed Products, shall not affect User's indemnification obligations under Paragraph 7.3. User agrees to submit the Licensed Products with a Product Submission Approval Form (Exhibit D) to Little Tikes for review and written approval at the following intervals of development:

- **Design Concept** (consisting of, but not limited to, a rendering and written description of the Licensed Product and Marketing Strategy), on or before August 1st annually, to submit a minimum of three (3) new product concepts to Little Tikes for fall product introductions;

- **Decorated Prototype Sample**, (consisting of, but not limited to, a painted three-dimensional model of the Product plus preliminary art work), as early as possible, and in any case at least four (4) months prior to the intended commercial production of any Licensed Products;

- **Pre-production Parts Samples** (including all the actual molded and sourced components plus proposed final art work), as early as possible, and in any case at least two (2) months prior to the intended commercial production of the Licensed Product;

- **Pre-Production Product Samples** (consisting of Product samples from the pre-production run of the finished Licensed Products in a sufficient number, which in no event shall be less than two (2) units), as early as possible, and in any case at least two (2) weeks prior to the intended commercial production of the Licensed Product, and

- **First Production Run Samples** (consisting of Product samples from the first production run of each supplier of each of the Licensed Products in a sufficient number, which in no event shall be less than six (6) units.)

Little Tikes' approval in each instance shall be deemed withheld if Little Tikes does not respond in writing within ten (10) business days after Little Tikes' receipt of User's submission of materials for approval. Little Tikes shall furnish User with the name of the Little Tikes employee to whom all approval submissions shall be addressed and provide User with specific guidelines governing the manner and format in which all approval submissions shall be delivered to Little Tikes. Little Tikes shall have complete and sole discretion to approve or disapprove of the Licensed Products, and disapproval may be based upon such factors as (without limitation) unacceptable quality of the artwork or photograph or of the Licensed Product as manufactured, or improper use of the Trademark. Any Licensed Product not so approved shall be deemed unlicensed, shall not be sold and shall, unless otherwise agreed by Little Tikes in writing, be destroyed. Such destruction shall be attested to in a certificate signed by an officer of User. If any unapproved Licensed Product is being sold, Little Tikes may, together with other remedies available to Little Tikes

including, but not limited to, the immediate termination of this Agreement by written notice, require such Licensed Product to be immediately withdrawn from the market. The parties agree that Little Tikes may be irreparably harmed by the introduction or continued sale of unapproved Licensed Products, and Little Tikes shall be entitled to injunctive judicial relief to enforce the provisions hereof.

9.2    Compliance Samples. User agrees to make available at no charge such additional samples of each Licensed Product as Little Tikes may from time to time reasonably request for the purpose of comparison with earlier samples or to test for compliance with applicable laws and standards and to permit Little Tikes upon reasonable request to inspect User's manufacturing operations and testing records (and those of User's suppliers) for the Licensed Products, subject to Little Tikes' obligation to treat all information obtained in such inspection as confidential and proprietary pursuant to the terms of this Agreement.

9.3    Modification of Production Units. No modification of an approved production sample of a Licensed Product shall be made without Little Tikes' further prior written approval. If, in Little Tikes' sole judgment, the quality of a previously approved Licensed Product has deteriorated in later production runs, or if the Licensed Product otherwise has been altered, Little Tikes may, in addition to other remedies available to Little Tikes, by written notice require such Licensed Product to be immediately withdrawn from the market.

## ARTICLE X. APPROVAL OF PACKAGING, PROMOTIONAL MATERIALS, AND ADVERTISING.

10.1    All containers, packaging, hang tags, promotional material, catalogs, advertising materials and display material for Licensed Products must be developed and funded by User, and submitted to Little Tikes with a Product Submission Approval Form (Exhibit D) for review and written approval. Little Tikes' approval thereof should be procured when such is still in rough format and in final format. Little Tikes' approval in each instance shall be deemed withheld if Little Tikes does not respond in writing within ten (10) business days after Little Tikes' receipt of User's submission of materials for approval.  Approval or disapproval shall lie in Little Tikes' sole discretion, and the use of unapproved packaging, hang tags and display material is prohibited.  The parties agree that Little Tikes may be irreparably harmed by the use of unapproved packaging, hang tags and display material, and Little Tikes shall be entitled to injunctive judicial relief to enforce the provision herein.  In addition, User may not place or use any of its own marketing, advertising, catalogs, promotional materials, or any other materials in connection with Licensed Products or their packaging without the prior approval of Little Tikes.


10.2    If Little Tikes has supplied User with forms, such as Exhibit D, for use in applying for approval of artwork, photographs, models, pre-production and production samples of Licensed Products, User shall use such forms when submitting anything for Little Tikes' approval.  However, User may use altered forms as User reasonably deems necessary if Little Tikes has pre-approved the altered forms in writing.

10.3    All packaging, display material, promotional material, catalogs and advertising for Licensed Products shall comply with all applicable laws and regulations for each country in the Territory where the Licensed Products are sold or used.  In addition, each Licensed Product and its packaging shall incorporate "date codes" signifying the date of production of each Licensed Product.

10.4    Packaging for Licensed Products to be distributed in the United States shall be printed with English language only.  Packaging for Licensed Products shall be printed in such languages, including multi languages, as are necessary to comply with laws and regulations governing the distribution of Licensed Products in the Territory.

## ARTICLE XI. COMPLIANCE WITH APPROVED SAMPLES AND APPLICABLE LAWS AND STANDARDS

Each Licensed Product and component thereof distributed hereunder shall be of good quality and shall comply with all applicable and the most current laws, health, safety and regulatory standards, whether voluntary or mandatory, of all countries in the Territory where the Licensed Product is sold including, but not limited to, regulations of the United States Consumer Products Safety Commission (CPSC), the Federal Trade Commission (FTC), Underwriters Laboratory (UL), and the Canadian Standards Association (CSA).  User shall be responsible to assure that all Licensed Products conform to all applicable safety laws and regulatory standards.  Prior to shipment, User shall provide Little Tikes with written confirmation of compliance with the foregoing, along with a list of the countries in the Territory where each of the Licensed Products hereunder is to be shipped.  User shall follow

reasonable and proper procedures for testing so that Licensed Products comply with such laws and standards and shall upon reasonable notice permit Little Tikes to inspect or receive copies of testing records and procedures. Licensed Products that do not comply with applicable laws and regulatory standards shall be deemed unapproved under Article IX.

Notwithstanding anything to the contrary herein, in the event that Little Tikes may, in its sole discretion, allow User to subcontract the manufacture of Licensed Products to third party manufacturers, provided that (a) User has given prior written notice of such proposed subcontract arrangement to Little Tikes, including the name, address and such other information concerning the proposed manufacturer as may be requested by Little Tikes; (b) each such manufacturer shall be otherwise subject to inspection by Little Tikes and the quality control procedures set forth herein; (c) the Licensed Products and/or any elements of any Licensed Products made by such manufacturer meet the quality standards set forth in this Agreement; and (d) each such manufacturer executes an agreement with both User and Little Tikes, such agreement to be in a form approved by Little Tikes.

## ARTICLE XII. ADDITIONAL COVENANTS OF USER

12.1    User shall ship the initial Licensed Product to retail stores in the United States for display and for consumer purchase no later than the Shipping Date. The failure to ship the initial Licensed Product by the Shipping Date as required by this paragraph shall be deemed a material breach of this Agreement.

12.2    User agrees to submit an Annual Marketing Plan for review by the Director of Licensing, within sixty (60) days before the start of each calendar year, using the Annual

Marketing Plan format prescribed by Little Tikes, receipt of which User herewith acknowledges or another report format as approved by Little Tikes.

12.4    If it becomes so, User shall notify Little Tikes that more than three percent (3%) of Licensed Products sold by User during the Initial Term, and two percent (2%) of Licensed Products sold by User during each additional Term, have been returned by consumers to User as defective.  User shall provide such notice within ten (10) days of such condition occurring, and shall transmit with that notice a written plan outlining the steps to be taken to reduce the incidence of defects and a schedule for implementing such steps.

12.5    The rights granted hereunder do not permit the sale of "seconds" or "irregulars."  All Licensed Products not approved under Article IX or failing subsequently to conform to the approved standard shall be destroyed by User.

## ARTICLE XIII. USER NAME AND ADDRESS ON ARTICLES

User's name and address (at least city and state) will appear on permanently affixed labeling on each Licensed Product, or if that is not practicable, then on approved packaging therefor.

## ARTICLE XIV. TERMINATION

14.1    This Agreement may be terminated prior to the end of the Term:

      (a)    at any time upon mutual agreement of the parties;

(b)    by either party giving the other party thirty (30) days' written notice of a material breach of this Agreement, provided that such breach is not cured within thirty (30) days following notice to the other party.

14.2    Little Tikes may terminate this Agreement immediately and without prior notice to User if Little Tikes determines that User has published or offered for sale any Licensed Products or any related packaging, marketing, advertising or any other materials that have not been approved, or have been disapproved, pursuant to Article IX.   User acknowledges that in such circumstance, Little Tikes will be irreparably injured, and may seek interlocutory injunctive relief, with or without notice to User, to prevent the publication and distribution of such materials, in addition to any other remedies available to Little Tikes.

14.3    This Agreement will terminate automatically upon the filing of a voluntary petition in bankruptcy by either party; the execution by either party of an assignment for the benefit of creditors; the filing of a petition to have either party declared bankrupt, provided it is not vacated within sixty (60) days from the date of filing; or the appointment of a receiver or trustee for either party.

14.4    Upon termination of this Agreement other than pursuant to Section 14.2, User shall have the right to complete the manufacture of Licensed Products then on order, and User shall further be permitted to sell such Licensed Products which have been ordered, manufactured or are still in stock on the date of termination for a period of time not to exceed three (3) months in duration, subject to the payment of Royalties specified herein

14.5    Subject to the sale of the Licensed Products on order or in stock pursuant to Section 14.4, upon termination of this Agreement, User shall immediately discontinue use of the Trademarks and shall immediately remove all reference to the Trademarks from any printed or other material distributed or disseminated by User. User shall no longer use the Trademarks in any variation, imitation or simulation thereof, or any marks similar thereto.

14.6.    Upon the termination of this Agreement, User shall promptly provide Little Tikes, at no cost to Little Tikes, with no less than One Hundred (100) units of each Licensed Product for the purposes of satisfying any consumer complaints Little Tikes receives to its 800 phone number.

## ARTICLE XV. BENEFIT

This Agreement shall inure to the benefit of and be binding upon the parties hereto, their successors and assigns.

## ARTICLE XVI. AMENDMENT

This Agreement may not be amended or modified, except by a written document signed by both parties hereto.

## ARTICLE XVII. CONFIDENTIALITY

17.1    General Obligation of Confidence.  Little Tikes and User agree that during the term of this Agreement and for a period of five years after termination of this Agreement not to

P:\Legal\Private\Little Tikes\Little Tikes - Kid Station #964598   2003-12-01.doc

31

reveal to any person (unless authorized in writing by the other party) any confidential or proprietary information regarding the other party's products, developments, processes, and know-how. The parties further agree that they will not disclose to anyone not authorized by the other party to receive same, the contents of any report, record, drawing, data, correspondence, or any other subject, material or information which is not generally available to the trade or public. Little Tikes and User acknowledge recognizing and agreeing that by virtue of this Agreement they may acquire information regarding matters of a confidential business nature regarding the other party, its affiliates, its parent, and its parent's subsidiaries, which it agrees not to disclose to third parties nor use in competition, such as, but not limited to, sales know-how, future plans, costs, prices, profits and losses, markets, suppliers, customers, and other information not generally available to the public. This Section shall survive termination of this Agreement, regardless of the reason for termination.

17.2    <u>Definition of Information Subject to Section 17.1</u>. The parties agree to treat all information and data furnished by the other party pursuant to this Agreement as confidential and proprietary, and such information and data shall be used solely for the purposes stated herein. The obligations of confidentiality under this Agreement shall not apply to such information and data (a) that through no act or failure of the receiving party is or becomes public knowledge, or (b) that the receiving party can prove was owned by the receiving party prior to the other party's disclosure, or (c) that is derived from any third party having the right to make such disclosure, or (d) the disclosure of which is compelled by a court of

competent jurisdiction and only after notice to the disclosing party and opportunity for the disclosing party to prevent disclosure.

## ARTICLE XVIII. NON-WAIVER

The failure of either party to enforce at any time any term, provision or condition of this Agreement, or to exercise any right or option herein, shall in no way operate as a waiver thereof, nor shall any single or partial exercise preclude any other right or option herein.  No waiver whatsoever shall be valid unless in writing, signed by the waiving party, and only to the extent therein set forth.

## ARTICLE XIX. ASSIGNMENT

The license and rights granted to User hereunder are personal in nature, and User shall not sell, transfer, lease or assign this Agreement or its rights and interests hereunder, or any part hereof, by operation of law or otherwise, without the prior written consent of Little Tikes, which consent shall not be unreasonably withheld.

## ARTICLE XX. NOTICE

Notices to be given under this Agreement shall be deemed sufficiently served when reduced to writing in English and deposited in the mail, postage prepaid for Certified Mail or sent by prepaid overnight express delivery (with a copy simultaneously sent by fax), to:

**If to User:**

 Kid Station Toys Ltd.
 P.O. Box 694660
 Miami, FL 33268-4660
 Attn: Elliot Newman

**If to Little Tikes:**

 The Little Tikes Company
 Director of Licensing
 2180 Barlow Road
 Hudson, Ohio 44236

With a copy to:

 Stuart I. Graff, Esq.
 Newell Rubbermaid Inc.
 Legal Department
 6833 Stalter Drive, Suite 101
 Rockford, IL 61108

## ARTICLE XXI. JURISDICTION

This Agreement shall be interpreted in all respects in accordance with the laws of the State of Illinois. Any dispute relating to the making or the interpretation of this Agreement, or the performance or nonperformance by any party of its obligations hereunder, shall be litigated only in the state or federal courts located within Cook County, Illinois. User consents to personal jurisdiction in said courts and shall not seek to transfer or change the venue of any action brought in compliance with this Paragraph.

## ARTICLE XXII. OTHER PROVISIONS

22.1 Pronouns; Gender. Whenever the pronoun "it", "its" or "his" may be used, it is understood by the parties to this Agreement that such usage shall include both singular and

plural, masculine, feminine and neuter genders and refer in appropriate cases to individuals as well as to corporations and businesses.

22.2    <u>Nature of Relationship.</u>  Nothing herein contained shall be construed to place Little Tikes and User in the relationship of partners, joint ventures, or agents and neither party shall have any power to obligate or bind the other party in any manner whatsoever.

22.3    <u>Force Majeure.</u>  In the event either party to this Agreement is unable to carry out its obligations under this Agreement, wholly or in part, due to circumstances beyond its control, including without limitation, acts of God, fire, flood, strikes, lockouts, war, or civil commotion, then upon giving prompt notice of force majeure to the other party, the party so affected shall be released, without any liability, from the performance of its obligations under this Agreement, but only to the extent and only for the period that its performance of said obligations is prevented by circumstances of force majeure.

22.4    <u>Headings.</u>  The headings of the articles and sections of this Agreement are for convenience only and in no way limit or affect the terms or conditions of this Agreement.

## ARTICLE XXIII.  ENTIRE AGREEMENT

This Agreement may be executed in duplicate, each of which shall be considered original for all purposes.  This instrument contains the entire Agreement between the parties and neither

it nor any of its provisions may be changed, waived or terminated, except as herein expressly provided, or in a written instrument signed by the parties.

IN WITNESS WHEREOF, this Agreement has been executed as of the day and year first above written.

THE LITTLE TIKES COMPANY

By: _____

Title: _UP Marketing_____

Date: _12/16/03_____

KID STATION TOYS LTD.

By: _Elliot Newman_____

Title: _President_____

Date: _12/8/03_____

EXHIBIT A

**Category I:** Electronic Youth Audio including:  Cassette players & recorders; Cassette players and recorders; Cassette sing-a-along players and recorders; CD players and sing-a-longs; CDG, CD and/or cassette karaoke machines; wireless and hard-wired microphones with or without built-in speaker, AM/FM radios; Walkie talkies; 35MM cameras; Clocks with AM/FM radios and/or CD or cassette player, Multi-colored flashing light mechanisms (i.e., balls or spot lights); Karaoke software, including cassettes, CD's, DVD's and CDG sold separately; Youth designed telephones

**Category II:**  VCR players; DVD players, 2" – 19" black and white and color TV's with or without DVD and VCR players

**Category III:**  Electronic Youth "Real Music", including:  Electronic Guitars, Electronic Keyboards, Electronic Drum Sets, and Electronic Kazoo-phone.  "Real Music" shall be defined as musical instruments directed for distribution and merchandising within the "Electronics or Music" section or aisle at retail and not the "Pre-school" section or aisle at retail, if such sections or aisles are separate

User shall use its best efforts to place the Licensed Products within the "Electronics or Music" section or aisle and not within the core Little Tikes or "Pre-school" section or aisle at retail, if such sections or aisles are separate.

P:\Legal\Private\Little Tikes\Little Tikes - Kid Station #964598   2003-12-01.doc

37

Little Tikes acknowledges that User can not dictate retail merchandising and that individual retailers and retail chains maintain the right to merchandise purchased product in the manner they see fit; however, User shall use its best efforts to ensure that the Licensed Products are placed in accordance with this Agreement.

User shall use its best efforts to inform a Little Tikes representative of any meeting with a "pre-school" buyer.

User shall provide to Little Tikes a written meeting report no later than three (3) business days following a meeting between User and a buyer at the following retailers: Walmart, Kmart, Target, Toys R Us, Kay Bee Toys, FAO Schwarz during which the Licensed Products are shown or discussed. Such report shall contain the participants attending the meeting, place of meeting, date of meeting, products discussed and actions taken and/or need to be taken.

EXHIBIT B

1. The Property: "LITTLE TIKES", and the "LITTLE TIKES" logo as shown below:



2. ⓒ/™ The Little Tikes Company.

P:\Legal\Private\Little Tikes\Little Tikes - Kid Station #964598  2003-12-01.doc

39

## EXHIBIT C

### Royalty Report Form

_____ QUARTER – YEAR _____

| SKU # | Description | Price/Unit | Units Sold | Total Sales | Less Returns | Less Allowances | Net Sales |
|-------|-------------|-----------|-----------|------------|-------------|----------------|-----------|
|       |             |           |           |            |             |                |           |
|       |             |           |           |            |             |                |           |
|       |             |           |           |            |             |                |           |
|       |             |           |           |            |             |                |           |
|       |             |           |           |            |             |                |           |

Total Net Sales _____
x Royalty Rate _____ %
Gross Royalties _____
Less Advance paid and which have not
   been credited against previous
ROYALTY PAYMENTS otherwise due
under the Agreement (_____)

Total Royalties Due  $_____

_____
Signature of Authorized Officer Certifying foregoing to be accurate

Name: _____
Title: _____
Date: _____

40

## EXHIBIT D



## Addendum to License Agreement

This Addendum dated January 1, 2006 (the "Effective Date") is an addendum to the License Agreement dated December 8, 2003 (the "License Agreement") by and between The Little Tikes Company ("Licensor"), an Ohio corporation ("Purchaser"), and Kid Station Toys Ltd., a Florida corporation ("Licensee").

### Recitals

Licensor and Licensee are parties to the License Agreement pursuant to which Licensor grants to Licensee the right to use the LITTLE TIKES trademark as set forth in that agreement. The purpose of this Addendum is to revise the License Agreement to include an additional category of Licensed Products. The Addendum also sets forth the Guaranteed Annual Royalty Payment for this new category of Licensed Products.

NOW THEREFORE, in consideration of the mutual covenants and promises herein contained, and other good and valuable consideration, the parties do hereby agree as follows:

1.  The definition of Licensed Products in Exhibit A of the License Agreement is amended to add the following:

    Category IV: Electronic Youth "roleplay" items (with and without lights, sounds or voice features), namely cameras, CD players, DVD players, boom boxes, laptops, car keys, cell phones. Single musical mats, Dual musical mats, deluxe musical mats, Plug N Play musical mats, and Plug N Play Deluxe/Dual musical mats.

    Licensee agrees that it shall use its best efforts to cause the retailer of the Licensed Products to display the Licensed Products in the electronics area of the retailer, rather than in toy area of the retailer.

2.  The parties agree that the Term of the license granted under Section 2.1 of the license Agreement with respect to the Category IV products shall commence on the Effective Date and end on December 31, 2008.

3.  Section 4.2 of the License Agreement is amended to add the following language at the end of the Section:

### Category IV:

| | |
|---|---|
| **Period 1:** | January 1, 2006 – December 31, 2006 |
| January 1, 2006: | $6,768.00 |
| March 15, 2006: | $6,768.00 |
| June 15, 2006: | $6,768.00 |
| September 15, 2006: | $6,768.00 |
| December 15, 2006: | $6,768.00 |
| | |
| **Period 2:** | January 1, 2007 – December 31, 2007 |
| January 1, 2007: | $6,768.00 |
| March 15, 2007: | $6,768.00 |
| June 15, 2007: | $6,768.00 |
| September 15, 2007: | $6,768.00 |
| December 15, 2007: | $6,768.00 |
| | |
| **Period 3:** | January 1, 2008 – December 31, 2008 |
| January 1, 2008: | $6,768.00 |
| March 15, 2008: | $6,768.00 |
| June 15, 2008: | $6,768.00 |

The Guaranteed Annual Royalty Payments shall be made quarterly

Guaranteed Annual Royalty Payments for Category I, Category II, Category III may not be applied to Category IV. Guaranteed Annual Royalty Payments for Category II, Category III, Category IV may not be applied to Category I. Guaranteed Annual Royalty Payments for Category I, Category III, Category IV may not be applied to Category II. Guaranteed Annual Royalty Payments for Category I, Category II, Category IV may not be applied to Category III. The parties acknowledge and agree that the term "annual" as used in the term Guaranteed Annual Royalty Payments with respect to the Products in Category IV shall refer to the "Periods" defined above.

4. The royalty rate for Category IV Licensed Products is five percent (5%) of the Net Sales Price for domestic and FOB Sales.

5. Except as expressly set forth in the Addendum, the provisions of the License Agreement shall remain unchanged and in full force and effect.

IN WITNESS WHEREOF, the undersigned parties have caused this Addendum to be signed on the day and year above written.

**LICENSOR**

THE LITTLE TIKES COMPANY

By: _____

Name: _Brian Kirkendall_

Title: _VP Marketing_


**LICENSEE**

Kid Station Toys Ltd.

By: _____

Name: _Ella Num_

Title: _Presdt_

# GROUP EXHIBIT D

The Little Tikes Co. Recalls Animal-Shaped Flashlights Containing Lead Paint Sold at Target          Page 1 of 3

# NEWS from CPSC

## U.S. Consumer Product Safety Commission

Office of Information and Public Affairs                                                                 Washington, DC 20207

FOR IMMEDIATE RELEASE
<u>Originally</u> issued March 1, 2006
Revised April 30, 2007
Release #06-100

**Company Telephone Number: (800) 321-0183**
CPSC Recall Hotline: (800) 638-2772
CPSC Media Contact: (301) 504-7908

**Note: Revised Telephone Number.**

## The Little Tikes Co. Recalls Animal-Shaped Flashlights Containing Lead Paint Sold at Target

WASHINGTON, D.C. - The U.S. Consumer Product Safety Commission, in cooperation with the firm named below, today announced a voluntary recall of the following consumer product. Consumers should stop using recalled products immediately unless otherwise instructed.

**Name of Product:** Glowin' Dino and Glowin' Doggy Animal Flashlights

**Units:** About 20,800

**Manufacturer:** The Little Tikes Co., of Hudson, Ohio

**Hazard:** The light green paint on the dinosaur-shaped flashlight and the brown paint on the dog-shaped flashlight could contain excess levels of lead. Lead is toxic if ingested by young children and can cause adverse health effects.

**Incidents/Injuries:** None reported.

**Description:** The Glowin' Dino Flashlight and the Glowin' Doggy Flashlight are about 9-inches long and make an electronic sound when switched on. The green dinosaur roars, and the white and brown dog barks. Only flashlights with the following date codes are in included in the recall: LC5H161, LC5H291, LC5I031, LC5I091, LC5I131, LC5J061, LC5J231, and LC5J311. The date codes are found on the bottom of the flashlights. Units that do not contain these codes or other animal flashlight characters made by The Little Tikes Co. are not included in this recall. Also, units that have an "R" at the end of the date code are not included in the recall.

**Sold at:** Only at Target stores nationwide from November 2005 through December 2005 for about $10.

**Manufactured in:** China

**Remedy:** Consumers should immediately take the recalled flashlights away from young children and contact Little Tikes for more information. Consumers will get a free replacement flashlight or refund.

**Consumer Contact:** Contact The Little Tikes Co. toll-free at (800) 321-0183 anytime, or visit the company's Web site at http://littletikes.com

The Little Tikes Co. Recalls Animal-Shaped Flashlights Containing Lead Paint Sold at Target    Page 2 of 3



The Little Tikes Co. Recalls Animal-Shaped Flashlights Containing Lead Paint Sold at Target        Page 3 of 3



---

Send the link for this page to a friend! The U.S. Consumer Product Safety Commission is charged with protecting the public from unreasonable risks of serious injury or death from more than 15,000 types of consumer products under the agency's jurisdiction. Deaths, injuries and property damage from consumer product incidents cost the nation more than $800 billion annually. The CPSC is committed to protecting consumers and families from products that pose a fire, electrical, chemical, or mechanical hazard. The CPSC's work to ensure the safety of consumer products - such as toys, cribs, power tools, cigarette lighters, and household chemicals - contributed significantly to the decline in the rate of deaths and injuries associated with consumer products over the past 30 years.

To report a dangerous product or a product-related injury, call CPSC's hotline at (800) 638-2772 or CPSC's teletypewriter at (800) 638-8270, or visit CPSC's web site at www.cpsc.gov/talk.html. To join a CPSC email subscription list, please go to https://www.cpsc.gov/cpsclist.aspx. Consumers can obtain this release and recall information at CPSC's Web site at www.cpsc.gov.

Pop 'n Scoot Ride-on Toys Recalled by Little Tikes

# NEWS from CPSC

## U.S. Consumer Product Safety Commission

Office of Information and Public Affairs                    Washington, DC 20207

FOR IMMEDIATE RELEASE
Originally issued June 12, 2002
Revised April 30, 2007
Release # 02-175

**Company Telephone Number: (800) 321-0183**
CPSC Consumer Hotline: (800) 638-2772
CPSC Media Contact: Nychelle Fleming, (301) 504-7063
Little Tikes Media Contact: Laurie Yingling, (330) 650-3489

**Note: Revised Telephone Number.**

# CPSC, Little Tikes Announce Recall of Pop 'n Scoot Ride-on Toys

WASHINGTON, D.C. - In cooperation with the U.S. Consumer Product Safety Commission (CPSC), The Little Tikes Company, of Hudson, Ohio, is voluntarily recalling about 21,400 Pop 'n Scoot Ride-on toys. Young children who lean forward can fall forward over the handlebars, causing facial injuries.

Little Tikes has received 10 reports of children falling forward over the toy's handlebars. Seven injuries to children include damaged teeth, stitches to the chin, cuts and scratches to the mouth and face.

The Pop 'n Scoot Ride-on toy is made of molded plastic with a clear dome filled with colorful beads attached to the handlebars. The riding toys have a yellow body, a red seat and red handlebars with blue hand grips. The identification number 32922XX 1 is molded on the underside of the ride-on body. The model number 1568-01 and "Made In U.S.A." is molded on the bottom of the storage area below the red seat. The product was sold for children age 9 months to 36 months old.

Toy stores nationwide sold the riding toys from March 2001 through May 13, 2002 for about $20.

Consumers should stop using the toys immediately and contact Little Tikes at www.littletikes.com or call (800) 321-0183 anytime to receive a Little Tikes replacement product.



Pop 'n Scoot Ride-on Toys Recalled by Little Tikes

---

Send the link for this page to a friend! The U.S. Consumer Product Safety Commission is charged with protecting the public from unreasonable risks of serious injury or death from more than 15,000 types of consumer products under the agency's jurisdiction. Deaths, injuries and property damage from consumer product incidents cost the nation more than $800 billion annually. The CPSC is committed to protecting consumers and families from products that pose a fire, electrical, chemical, or mechanical hazard. The CPSC's work to ensure the safety of consumer products - such as toys, cribs, power tools, cigarette lighters, and household chemicals - contributed significantly to the decline in the rate of deaths and injuries associated with consumer products over the past 30 years.

To report a dangerous product or a product-related injury, call CPSC's hotline at (800) 638-2772 or CPSC's teletypewriter at (800) 638-8270, or visit CPSC's web site at www.cpsc.gov/talk.html. To join a CPSC email subscription list, please go to https://www.cpsc.gov/cpsclist.aspx. Consumers can obtain this release and recall information at CPSC's Web site at www.cpsc.gov.

# NEWS from CPSC

## U.S. Consumer Product Safety Commission

Office of Information and Public Affairs

Washington, DC 20207

FOR IMMEDIATE RELEASE
<u>Originally</u> issued October 10, 2001
Revised April 30, 2007
Release # 02-011

**Company Telephone Number: (800) 321-0183**
CPSC Consumer Hotline: (800) 638-2772
CPSC Media Contact: Yolanda Fultz-Morris, (301) 504-7066

**Note: Revised Telephone Number.**

## CPSC, Little Tikes Announce Recall of Swings

WASHINGTON, D.C. - In cooperation with the U.S. Consumer Product Safety Commission (CPSC), Little Tikes Company, of Hudson, Ohio, is voluntarily recalling about 250,000 "2-in-1 Snug 'n Secure" swings. The buckles on the swing can break and the shoulder restraint straps can pull out of the back of the seat, causing young children to fall.

CPSC and Little Tikes have received 14 reports of problems with the swings. Five injuries to children included abrasions, bruises, cuts and bumps to the head.

The swings are made of molded plastic and have a blue seat with a red T-shaped restraint front. The model number 4117-00 is molded underneath the seat. The "little tikes" logo is written on the T-shaped restraint bar on the front of the swing. The swings were sold for children ages9-months through 4-years old. The swing is suspended with four yellow ropes. Only swings with blue or white buckles are included in this recall.

Juvenile product and toy stores nationwide sold the swings from December 2000 through September 2001 for about $20.

Consumers should stop using the swings immediately and contact Little Tikes at www.littletikes.com or call (800) 321-0183 anytime to receive a repair kit.



Only swings with blue or white buckles are recalled

Little Tikes Swing Recall

<u>Send the link for this page to a friend!</u> The U.S. Consumer Product Safety Commission is charged with protecting the public from unreasonable risks of serious injury or death from more than 15,000 types of consumer products under the agency's jurisdiction. Deaths, injuries and property damage from consumer product incidents cost the nation more than $800 billion annually. The CPSC is committed to protecting consumers and families from products that pose a fire, electrical, chemical, or mechanical hazard. The CPSC's work to ensure the safety of consumer products - such as toys, cribs, power tools, cigarette lighters, and household chemicals - contributed significantly to the decline in the rate of deaths and injuries associated with consumer products over the past 30 years.

To report a dangerous product or a product-related injury, call CPSC's hotline at (800) 638-2772 or CPSC's teletypewriter at (800) 638-8270, or visit CPSC's web site at www.cpsc.gov/talk.html. To join a CPSC email subscription list, please go to https://www.cpsc.gov/cpsclist.aspx. Consumers can obtain this release and recall information at CPSC's Web site at www.cpsc.gov.

Original; see modified release: The Little Tikes Co. Recalls Animal-Shaped Flashlights Containi...    Page 1 of 3

# NEWS from CPSC

## U.S. Consumer Product Safety Commission

Office of Information and Public Affairs                    Washington, DC 20207

---

This is the original of a document that has been modified. To see the modified version, <u>click here</u>

FOR IMMEDIATE RELEASE
March 1, 2006
Release #06-100

Firm's Recall Hotline: **(866) 765-6729**
CPSC Recall Hotline: **(800) 638-2772**
CPSC Media Contact: **(301) 504-7908**

## The Little Tikes Co. Recalls Animal-Shaped Flashlights Containing Lead Paint Sold at Target

WASHINGTON, D.C. - The U.S. Consumer Product Safety Commission, in cooperation with the firm named below, today announced a voluntary recall of the following consumer product. Consumers should stop using recalled products immediately unless otherwise instructed.

**Name of Product:** Glowin' Dino and Glowin' Doggy Animal Flashlights

**Units:** About 20,800

**Manufacturer:** The Little Tikes Co., of Hudson, Ohio

**Hazard:** The light green paint on the dinosaur-shaped flashlight and the brown paint on the dog-shaped flashlight could contain excess levels of lead. Lead is toxic if ingested by young children and can cause adverse health effects.

**Incidents/Injuries:** None reported.

**Description:** The Glowin' Dino Flashlight and the Glowin' Doggy Flashlight are about 9-inches long and make an electronic sound when switched on. The green dinosaur roars, and the white and brown dog barks. Only flashlights with the following date codes are in included in the recall: LC5H161, LC5H291, LC5I031, LC5I091, LC5I131, LC5J061, LC5J231, and LC5J311. The date codes are found on the bottom of the flashlights. Units that do not contain these codes or other animal flashlight characters made by The Little Tikes Co. are not included in this recall. Also, units that have an "R" at the end of the date code are not included in the recall.

**Sold at:** Only at Target stores nationwide from November 2005 through December 2005 for about $10.

**Manufactured in:** China

**Remedy:** Consumers should immediately take the recalled flashlights away from young children and contact Little Tikes for more information. Consumers will get a free replacement flashlight or refund.

**Consumer Contact:** Contact The Little Tikes Co. toll-free at (866) 765-6729 anytime, or visit the company's Web site at http://littletikes.com





---

Send the link for this page to a friend! The U.S. Consumer Product Safety Commission is charged with protecting the public from unreasonable risks of serious injury or death from more than 15,000 types of consumer products under the agency's jurisdiction. Deaths, injuries and property damage from consumer product incidents cost the nation more than $800 billion annually. The CPSC is committed to protecting consumers and families from products that pose a fire, electrical, chemical, or mechanical hazard. The CPSC's work to ensure the safety of consumer products - such as toys, cribs, power tools, cigarette lighters, and household chemicals - contributed significantly to the decline in the rate of deaths and injuries associated with consumer products over the past 30 years.

To report a dangerous product or a product-related injury, call CPSC's hotline at (800) 638-2772 or CPSC's teletypewriter at (800) 638-8270, or visit CPSC's web site at www.cpsc.gov/talk.html. To join a CPSC email subscription list, please go to https://www.cpsc.gov/cpsclist.aspx. Consumers can obtain this release and recall information at CPSC's Web site at www.cpsc.gov.

Toy Basketball Nets Recalled by Little Tikes, Today's Kids & Fisher-Price

# NEWS from CPSC

## U.S. Consumer Product Safety Commission

Office of Information and Public Affairs

Washington, DC 20207

---

**FOR IMMEDIATE RELEASE**
Originally issued December 22, 1998
Revised July 19, 2005
Release # 99-036

CPSC Consumer Hotline: (800) 638-2772
CPSC Media Contact: Yolanda Fultz-Morris, (301) 504-7066

**Note: One of the firms, Today's Kids, is out of business and a replacement part is no longer available.**
**Do not use the product with the net from that firm.**
**Fisher-Price Phone Number Change.**

# CPSC, Toy Manufacturers Announce Recall to Replace Toy Basketball Nets

WASHINGTON, D.C. - In cooperation with the U.S. Consumer Product Safety Commission (CPSC), Ohio Art, Little Tikes, Today's Kids and Fisher-Price announced a voluntary recall to replace the nets on 10.1 million toy basketball sets. Children could strangle on loops or openings in the nets that come unhooked from the rim, or have knots that slide. If children put their heads into these openings, the net can get tangled around their necks.

Since 1988, CPSC and the manufacturers have received 20 reports of children under 5 years old getting their heads and necks caught in the nets of toy basketball sets. In 1992, an 18-month-old child died after becoming entangled in a partly unhooked net.

Consumers should immediately inspect their toy basketball sets for nets that can unhook from the rim or have knots that slide.

The toy basketball sets with nets that need to be replaced come in a variety of colors and include a nylon net and plastic hoop attached to a plastic pole. The pole is set in a plastic base and adjusts from 3.5 to 6 feet high. The manufacturer's name and model are located on the backboard or base of each toy. The manufacturers will help consumers determine if the nets need to be replaced.

Toy stores nationwide sold the toy basketball sets for about $10 to $50. While most have been sold since 1988, some were sold as early as 1976. Toy basketball sets sold in stores today, by the participating manufacturers, have nets that are attached securely to the rim, without sliding knots, and are not involved in this recall.

Consumers should remove and throw away nets that can unhook or have knots that slide, and call the manufacturer. However, one of the manufacturers, Today's Kids, is out of business and a replacement part is no longer available, so either that set should either be used without the net, or that set should be discarded or destroyed. Consumers should have the manufacturer's name and model on hand before calling the other manufacturers, who will send consumers new nets that securely attach to the rim, and do not have sliding knots. The basketball set can be used without a net until the new net arrives. Consumers should not return the product to retailers.

| Manufacturer | Quantity/<br>Dates Sold | Toll-Free Number/<br>Web Address |
|---|---|---|
| Ohio Art<br>Bryan, Ohio | 4.2 million sold between 1976 and 1997 | (800) 641-6226<br>www.world-of-toys.com |
| Little Tikes<br>Hudson, Ohio | 3 million sold between 1993 and 1998 | (800) 321-0183<br>www.littletikes.com |

Toy Basketball Nets Recalled by Little Tikes, Today's Kids & Fisher-Price

Page 2 of 2

| Today's Kids | 1.7 million sold between 1986 and 1997 | Firm out of business. |
| Fisher-Price<br>East Aurora, N.Y. | 1.2 million sold between 1988 and 1996 | (800) 432-5437<br>www.fisher-price.com |

In 1995, Come Play, of Worcester, Mass., recalled about 70,000 basketball nets that were included in its Junior Pro Basketball Sets. For information about these recalled nets, consumers should call Come Play at (800) 528-3328.



Consumers can also view a video clip about this recall (Transcript). It is about 5.8 megabytes long and the download time depends upon the speed of your Internet connection.

---

Send the link for this page to a friend! The U.S. Consumer Product Safety Commission is charged with protecting the public from unreasonable risks of serious injury or death from more than 15,000 types of consumer products under the agency's jurisdiction. Deaths, injuries and property damage from consumer product incidents cost the nation more than $800 billion annually. The CPSC is committed to protecting consumers and families from products that pose a fire, electrical, chemical, or mechanical hazard. The CPSC's work to ensure the safety of consumer products - such as toys, cribs, power tools, cigarette lighters, and household chemicals - contributed significantly to the decline in the rate of deaths and injuries associated with consumer products over the past 30 years.

To report a dangerous product or a product-related injury, call CPSC's hotline at (800) 638-2772 or CPSC's teletypewriter at (800) 638-8270, or visit CPSC's web site at www.cpsc.gov/talk.html. To join a CPSC email subscription list, please go to https://www.cpsc.gov/cpsclist.aspx. Consumers can obtain this release and recall information at CPSC's Web site at www.cpsc.gov.

Original; see modified release: Pop 'n Scoot Ride-on Toys Recalled by Little Tikes

Page 1 of 2

# NEWS from CPSC

## U.S. Consumer Product Safety Commission

Office of Information and Public Affairs

Washington, DC 20207

---

This is the original of a document that has been modified. To see the modified version, click here

FOR IMMEDIATE RELEASE
June 12, 2002
Release # 02-175

**Little Tikes Recall Hotline: (866)765-6729**
CPSC Consumer Hotline: (800) 638-2772
CPSC Media Contact: Nychelle Fleming, (301) 504-7063
Little Tikes Media Contact: Laurie Yingling, (330) 650-3489

## CPSC, Little Tikes Announce Recall of Pop 'n Scoot Ride-on Toys

WASHINGTON, D.C. - In cooperation with the U.S. Consumer Product Safety Commission (CPSC), The Little Tikes Company, of Hudson, Ohio, is voluntarily recalling about 21,400 Pop 'n Scoot Ride-on toys. Young children who lean forward can fall forward over the handlebars, causing facial injuries.

Little Tikes has received 10 reports of children falling forward over the toy's handlebars. Seven injuries to children include damaged teeth, stitches to the chin, cuts and scratches to the mouth and face.

The Pop 'n Scoot Ride-on toy is made of molded plastic with a clear dome filled with colorful beads attached to the handlebars. The riding toys have a yellow body, a red seat and red handlebars with blue hand grips. The identification number 32922XX 1 is molded on the underside of the ride-on body. The model number 1568-01 and "Made In U.S.A." is molded on the bottom of the storage area below the red seat. The product was sold for children age 9 months to 36 months old.

Toy stores nationwide sold the riding toys from March 2001 through May 13, 2002 for about $20.

Consumers should stop using the toys immediately and contact Little Tikes at www.littletikes.com or call (866) 765-6729 anytime to receive a Little Tikes replacement product.



Original; see modified release: Pop 'n Scoot Ride-on Toys Recalled by Little Tikes

---

Send the link for this page to a friend! The U.S. Consumer Product Safety Commission is charged with protecting the public from unreasonable risks of serious injury or death from more than 15,000 types of consumer products under the agency's jurisdiction. Deaths, injuries and property damage from consumer product incidents cost the nation more than $800 billion annually. The CPSC is committed to protecting consumers and families from products that pose a fire, electrical, chemical, or mechanical hazard. The CPSC's work to ensure the safety of consumer products - such as toys, cribs, power tools, cigarette lighters, and household chemicals - contributed significantly to the decline in the rate of deaths and injuries associated with consumer products over the past 30 years.

To report a dangerous product or a product-related injury, call CPSC's hotline at (800) 638-2772 or CPSC's teletypewriter at (800) 638-8270, or visit CPSC's web site at www.cpsc.gov/talk.html. To join a CPSC email subscription list, please go to https://www.cpsc.gov/cpsclist.aspx. Consumers can obtain this release and recall information at CPSC's Web site at www.cpsc.gov.

Little Tikes Recalls Lobster Toy Attached to Stationary Entertainer

# NEWS from CPSC

## U.S. Consumer Product Safety Commission

Office of Information and Public Affairs

Washington, DC 20207

FOR IMMEDIATE RELEASE
December 6, 2001
Release # 02-057

**Little Tikes' Recall Hotline: (888) 883-7662**
CPSC Consumer Hotline: (800) 638-2772
CPSC Media Contact: Kim Dulic, (301) 504-7058

# CPSC, Little Tikes Co. Announce Recall of Lobster Toy Attached to Stationary Entertainer

WASHINGTON, D.C. - In cooperation with the U.S. Consumer Product Safety Commission (CPSC), Little Tikes Co., of Hudson, Ohio, is voluntarily recalling about 260 lobster toys attached to the activity tray of the Ocean Friends Stationary Entertainer. The antennae on the lobster toy can break, posing a choking hazard to young children.

No injuries or incidents have been reported. This recall is being conducted to prevent the possibility of injury.

The recall involves Ocean Friends Stationary Entertainer model 4629 GIG. The model number is located underneath the entertainer's tray. The green tray on the stationary entertainer is supported by three adjustable legs and has the words "Little Tikes" printed across the front. The seat, patterned with colorful pictures of sea animals, sits in the center of the unit and swivels so the child can play with the nine toys attached to the tray. The recalled lobster toy is red with black antennae. Only lobsters with black antennae are involved in this recall.

Toys R Us stores sold the stationary entertainer with the lobster toy nationwide between October 2001 through November 2001 for about $60

Consumers should remove the lobster toy from the entertainer immediately and contact Little Tikes for a replacement toy. For more information, consumers can contact Little Tikes toll-free at (888) 883- 7662 anytime or visit the firm's web site at www.littletikes.com.

Little Tikes Recalls Lobster Toy Attached to Stationary Entertainer

Page 2 of 3





---

<u>Send the link for this page to a friend!</u> The U.S. Consumer Product Safety Commission is charged with protecting the public from unreasonable risks of serious injury or death from more than 15,000 types of consumer products under the agency's jurisdiction. Deaths, injuries and property damage from consumer product incidents cost the nation more than $800 billion annually. The CPSC is committed to protecting consumers and families from products that pose a fire, electrical, chemical, or mechanical hazard. The CPSC's work to ensure the safety of consumer products - such as toys, cribs, power tools, cigarette lighters, and household chemicals - contributed significantly to the decline in the rate of deaths and injuries associated with consumer products over the past 30 years.

To report a dangerous product or a product-related injury, call CPSC's hotline at (800) 638-2772 or CPSC's teletypewriter at (800) 638-8270, or visit CPSC's web site at www.cpsc.gov/talk.html. To join a CPSC email subscription list, please go to https://www.cpsc.gov/cpsclist.aspx. Consumers can obtain this release and recall information at CPSC's Web site at www.cpsc.gov.

Original; see modified release: Little Tikes Swing Recall                    Page 1 of 2

# NEWS from CPSC

## U.S. Consumer Product Safety Commission

Office of Information and Public Affairs                    Washington, DC 20207

This is the original of a document that has been modified. To see the modified version, <u>click here</u>

FOR IMMEDIATE RELEASE                    **Swing Hotline: (800) 815-4820**
October 10, 2001                    CPSC Consumer Hotline: (800) 638-2772
Release # 02-011                    CPSC Media Contact: Yolanda Fultz-Morris, (301) 504-7066

## CPSC, Little Tikes Announce Recall of Swings

WASHINGTON, D.C. - In cooperation with the U.S. Consumer Product Safety Commission (CPSC), Little Tikes Company, of Hudson, Ohio, is voluntarily recalling about 250,000 "2-in-1 Snug 'n Secure" swings. The buckles on the swing can break and the shoulder restraint straps can pull out of the back of the seat, causing young children to fall.

CPSC and Little Tikes have received 14 reports of problems with the swings. Five injuries to children included abrasions, bruises, cuts and bumps to the head.

The swings are made of molded plastic and have a blue seat with a red T-shaped restraint front. The model number 4117-00 is molded underneath the seat. The "little tikes" logo is written on the T-shaped restraint bar on the front of the swing. The swings were sold for children ages 9-months through 4-years old. The swing is suspended with four yellow ropes. Only swings with blue or white buckles are included in this recall.

Juvenile product and toy stores nationwide sold the swings from December 2000 through September 2001 for about $20.

Consumers should stop using the swings immediately and contact Little Tikes at <u>www.littletikes.com</u> or call (800) 815-4820 anytime to receive a repair kit.



Only swings with blue or white buckles are recalled

---

<u>Send the link for this page to a friend!</u> The U.S. Consumer Product Safety Commission is charged with protecting the

Original; see modified release: Little Tikes Swing Recall

public from unreasonable risks of serious injury or death from more than 15,000 types of consumer products under the agency's jurisdiction. Deaths, injuries and property damage from consumer product incidents cost the nation more than $800 billion annually. The CPSC is committed to protecting consumers and families from products that pose a fire, electrical, chemical, or mechanical hazard. The CPSC's work to ensure the safety of consumer products - such as toys, cribs, power tools, cigarette lighters, and household chemicals - contributed significantly to the decline in the rate of deaths and injuries associated with consumer products over the past 30 years.

To report a dangerous product or a product-related injury, call CPSC's hotline at (800) 638-2772 or CPSC's teletypewriter at (800) 638-8270, or visit CPSC's web site at www.cpsc.gov/talk.html. To join a CPSC email subscription list, please go to https://www.cpsc.gov/cpsclist.aspx. Consumers can obtain this release and recall information at CPSC's Web site at www.cpsc.gov.

Cozy Highback Swing Recalled by Little Tikes

# NEWS from CPSC

## U.S. Consumer Product Safety Commission

Office of Information and Public Affairs

Washington, DC 20207

FOR IMMEDIATE RELEASE
June 3, 1996, 1996
Release # 96-138

CONTACT:
(301) 504-7908

# CPSC and Little Tikes Announce Cozy Highback Swing Recall

WASHINGTON, D.C. - In cooperation with the U.S. Consumer Product Safety Commission (CPSC), The Little Tikes Company of Hudson, Ohio, is voluntarily recalling approximately 245,000 Cozy Highback Swings, model no. 4637. The swing may tip forward and possibly flip over while a child is swinging in it.

Little Tikes has received 55 reports of the swing tipping forward. No serious injuries have been reported.

The Cozy Highback Swing is a bright blue plastic swing sold for children ages nine months to three years. The swing, measuring 13 inches wide, 12 inches long, and 14 inches high, has a Little Tikes logo molded into the stationary front cross bar. It does not have an adjustable T-bar closure. The swing hangs by four yellow, weather-resistant ropes.

Cozy Highback Swing Recalled by Little Tikes                     Page 2 of 2



Toy stores, department stores, and discount stores sold the swing nationwide from January 1996 through April 1996 for about $15 to $18.

Consumers should stop using the swing and call Little Tikes at (800) 321-0183 to exchange it for a different model swing, or comparable Little Tikes product. Consumers may also write to Little Tikes at 2180 Barlow Road, Hudson, OH 44236.

---

Send the link for this page to a friend! The U.S. Consumer Product Safety Commission is charged with protecting the public from unreasonable risks of serious injury or death from more than 15,000 types of consumer products under the agency's jurisdiction. Deaths, injuries and property damage from consumer product incidents cost the nation more than $800 billion annually. The CPSC is committed to protecting consumers and families from products that pose a fire, electrical, chemical, or mechanical hazard. The CPSC's work to ensure the safety of consumer products - such as toys, cribs, power tools, cigarette lighters, and household chemicals - contributed significantly to the decline in the rate of deaths and injuries associated with consumer products over the past 30 years.

To report a dangerous product or a product-related injury, call CPSC's hotline at (800) 638-2772 or CPSC's teletypewriter at (800) 638-8270, or visit CPSC's web site at www.cpsc.gov/talk.html. To join a CPSC email subscription list, please go to https://www.cpsc.gov/cpsclist.aspx. Consumers can obtain this release and recall information at CPSC's Web site at www.cpsc.gov.

Toddle Tots Dinosaur Mountain Playset Recalled by Little Tikes Co.                    Page 1 of 1

# NEWS from CPSC

## U.S. Consumer Product Safety Commission

Office of Information and Public Affairs                    Washington, DC 20207

FOR IMMEDIATE RELEASE
December 22, 1995
Release # 96-055

CONTACT: Kate Primo
(301) 504-7046

# CPSC, Little Tikes Co. Announce Toddle Tots Dinosaur Mountain Playset Recall

WASHINGTON, D.C. - In cooperation with the U.S. Consumer Product Safety Commission (CPSC), The Little Tikes Company of Hudson, Ohio, is recalling approximately 160,000 Toddle Tots Dinosaur Mountain playsets. Small plastic cups that hold palm trees may detach, posing a choking risk to young children.

CPSC is aware of 12 incidents in which the cups detached. In eight cases, parents found the cups in a child's mouth. Parents found two of the children choking but were able to remove the piece. Aside from a cut finger, no other injuries have been reported.

The beige plastic playsets, measuring 23 inches long, 17 inches wide and 16 inches high, resemble a rocky cave. Three palm trees, held in place by small plastic cups, surround the cave. A red footbridge extends out of the front of the cave, over a blue moat. The playset was packaged with a caveman, cavewoman, pink baby dinosaur, red Tyrannosaurus, blue Brontosaurus and an orange Stegosaurus. The cavepeople fit in the back of the blue dinosaur and in a log-shaped car, also included with the set.

Toy stores and other retail stores sold the playsets nationwide between June 1994 and December 1995 for approximately $30 to $40.

Consumers should not allow children to play with the playset and should call Little Tikes at (800) 321-0183 to exchange the product. The company will pay for shipping charges associated with the exchange. Consumers also may write to The Little Tikes Company at 2180 Barlow Road, Hudson, Ohio 44236.

---

Send the link for this page to a friend! The U.S. Consumer Product Safety Commission is charged with protecting the public from unreasonable risks of serious injury or death from more than 15,000 types of consumer products under the agency's jurisdiction. Deaths, injuries and property damage from consumer product incidents cost the nation more than $800 billion annually. The CPSC is committed to protecting consumers and families from products that pose a fire, electrical, chemical, or mechanical hazard. The CPSC's work to ensure the safety of consumer products - such as toys, cribs, power tools, cigarette lighters, and household chemicals - contributed significantly to the decline in the rate of deaths and injuries associated with consumer products over the past 30 years.

To report a dangerous product or a product-related injury, call CPSC's hotline at (800) 638-2772 or CPSC's teletypewriter at (800) 638-8270, or visit CPSC's web site at www.cpsc.gov/talk.html. To join a CPSC email subscription list, please go to https://www.cpsc.gov/cpsclist.aspx. Consumers can obtain this release and recall information at CPSC's Web site at www.cpsc.gov.

# NEWS from CPSC

## U.S. Consumer Product Safety Commission

Office of Information and Public Affairs                    Washington, DC 20207

FOR IMMEDIATE RELEASE
February 8, 1994
Release # 94-037

CONTACT:
(301) 504-7908

# Little Tikes Company Offers Free Seat Belt To Prevent Falls From High Back Toddler Swing

PRODUCT:"High Back Toddler Swing" Model 4309 manufactured by The Little Tikes Company and sold beginning January 1993. These swings have no seat belt. Beginning in September 1993 seat belts were pre-installed on all High Back Toddler Swings.

PROBLEM:Children may push up or stand in the swing and fall out of the swing. A fall could result in serious injury. Twelve injuries that included facial cuts, bruises and a broken elbow were reported to the company.

WHAT TO DO:Consumers should not use or install a Little Tikes High Back Toddler Swing without a seat belt. A free seat belt can be obtained by calling Little Tikes at (800) 868-2276.

WASHINGTON, DC -- In cooperation with the U.S. Consumer Product Safety Commission (CPSC), The Little Tikes Company, Hudson, OH is offering consumers a free seat belt for its "High Back Toddler Swing," Model 4309 for children ages 9 months to 3 years. Small children can push up or stand and fall out of the swing, which may result in serious injury. Twelve injuries that included facial cuts, bruises and a broken elbow were reported to the company.

The High Back Toddler Swing, Model 4309 is a plastic chair swing which comes in blue or evergreen and has yellow ropes to attach it to a backyard swing set. The Little Tikes label is on the T-bar across the front of the chair. High Back Toddler Swings were sold beginning in January 1993. High Back Toddler Swings manufactured after September 1993 have a seat belt installed on the swing.

Consumers should not use or install a High Back Toddler Swing Model 4309 which does not have a seat belt. Consumers should call Little Tikes at (800) 868-2276 for a free seat belt to prevent falls and injuries.

CPSC is announcing this as a part of its mission to protect the public from unreasonable risks of injury associated with consumer products.

---

Send the link for this page to a friend! The U.S. Consumer Product Safety Commission is charged with protecting the public from unreasonable risks of serious injury or death from more than 15,000 types of consumer products under the agency's jurisdiction. Deaths, injuries and property damage from consumer product incidents cost the nation more than $800 billion annually. The CPSC is committed to protecting consumers and families from products that pose a fire, electrical, chemical, or mechanical hazard. The CPSC's work to ensure the safety of consumer products - such as toys, cribs, power tools, cigarette lighters, and household chemicals - contributed significantly to the decline in the rate of deaths and injuries associated with consumer products over the past 30 years.

To report a dangerous product or a product-related injury, call CPSC's hotline at (800) 638-2772 or CPSC's teletypewriter at (800) 638-8270, or visit CPSC's web site at www.cpsc.gov/talk.html. To join a CPSC email subscription list, please go to https://www.cpsc.gov/cpsclist.aspx. Consumers can obtain this release and recall information at CPSC's Web site at www.cpsc.gov.

Little Tikes Co. Recalls Little Tikes Crib Center

Page 1 of 2

# NEWS from CPSC

## U.S. Consumer Product Safety Commission

Office of Information and Public Affairs

Washington, DC 20207

FOR IMMEDIATE RELEASE
June 16, 1992
Release # 92-094

CONTACT:
(301) 504-7908

# The Little Tikes Company Recalls Little Tikes Crib Center Due To Lead Paint Hazard

PRODUCT: 16,300 crib toys made by the Little Tikes Company known as "Little Tikes Crib Centers," model number 1525.

PROBLEM: Lead in the red stripes on the candy cane roller exceeds federal government standards presenting a safety hazard for young children.

WHAT TO DO: Return to the store where purchased for a product exchange or full refund. For more information, consumers may call the Little Tikes Company at 1-800-321-0183 or 330-656-3906.

WASHINGTON, DC -- In cooperation with the U.S. Consumer Product Safety Commission (CPSC), Little Tikes Company of Hudson, OH, is voluntarily recalling 16,300 Little Tikes Crib Centers, model number 1525. Testing the crib center in accordance with regulations under the Consumer Product Safety Act revealed a level of lead in the red stripes on the candy cane roller which exceeds government standards and presents a safety hazard for young children.

Neither CPSC nor the company is aware of any injuries involving these products. This voluntary recall is being conducted to prevent the possibility of injury.

The Little Tikes Crib Center is an infant crib toy that measures 18-1/2 inches long, 3-3/4 inches wide and 14-1/2 inches high. It is intended to be mounted on an inside crib rail. The crib center has nine large bright features including the red and white cylindrical candy cane roller. The roller is 4-1/4 inches long and three inches in diameter. The label on the carton in which the crib center was sold reads in part: " . . . CRIB CENTER, LITTLE TIKES, MADE IN USA." The model number, 1525, is molded on the back of the product, next to Little Tikes' toll- free 800 telephone number.

A new purple and white-striped candy cane roller that meets all safety standards has been substituted for the unsafe roller. The revised crib center with purple stripes has a fluorescent orange dot on the package and is not being recalled. The revised product has been sold in retail stores since mid-February 1992.

The Little Tikes Crib Center was sold nationwide at a variety of retail stores from November 1991 through January 1992. The Crib Center sold for an estimated price of $20.00 each.

Consumers are urged to dismantle the recalled Little Tikes Crib Centers from crib rails immediately and return them to the store where purchased for a product exchange or full refund. For more information, consumers may contact the Little Tikes Company at 1-800-321-0183 or 330-656-3906.

The potentially hazardous toys were reported by the Little Tikes Company under section 15 of the Consumer Product Safety Act.

CPSC is announcing this recall as part of its mission to protect the public from unreasonable risks of injury and death associated with consumer products. The Commission's objective is to reduce the estimated 28.5 million injuries and 21,600 deaths associated each year with the 15,000 different types of consumer products under CPSC's jurisdiction.

Lead in the red stripes on the candy cane roller exceeds government standards.

Little Tikes Co. Recalls Little Tikes Crib Center

---

Send the link for this page to a friend! The U.S. Consumer Product Safety Commission is charged with protecting the public from unreasonable risks of serious injury or death from more than 15,000 types of consumer products under the agency's jurisdiction. Deaths, injuries and property damage from consumer product incidents cost the nation more than $800 billion annually. The CPSC is committed to protecting consumers and families from products that pose a fire, electrical, chemical, or mechanical hazard. The CPSC's work to ensure the safety of consumer products - such as toys, cribs, power tools, cigarette lighters, and household chemicals - contributed significantly to the decline in the rate of deaths and injuries associated with consumer products over the past 30 years.

To report a dangerous product or a product-related injury, call CPSC's hotline at (800) 638-2772 or CPSC's teletypewriter at (800) 638-8270, or visit CPSC's web site at www.cpsc.gov/talk.html. To join a CPSC email subscription list, please go to https://www.cpsc.gov/cpsclist.aspx. Consumers can obtain this release and recall information at CPSC's Web site at www.cpsc.gov.

Amazon.co.uk: Reviews for Musical Motion Ocean Gym: Baby

1 of 1 people found the following review helpful:

★★☆☆☆ **poor quality you will be dissapointed**, 25 Sep 2006

By **Ms. L. A. Bridge** (lincoln, england) - See all my reviews

REAL NAME

my 3 month old daughter has one of these, when i saw it i fell in love with it immediatly and it took me forever to find one and i ended up payin for it but i thought the lobster was cute and thort it would be perfect for my daughter but when it camethe lobster when kicked didnt activate the button underneath it because the lobster was too big for the space so overlapped a bit of the plastic, so we had to put the starfish and the turtle where the lobster should be and even then they are majorly overlapped, also the fish that spins in the middle has a motor which drowns out the sounds of the music. i thought this was realy poor quality for little tikes, even the packaging was scuffed. when we bought it the sounds it made were realy poor quality and i had to buy new batterys for it even when it was in a factory where nobody would have played with it! my daughter has to sit in a bouncy chair with this over her feet because she cant reach the kick pads with her feet and she has very long legs for 3 months i dont advise u to buy this product. aklso the legs were wobbly

Comment | Permalink | Was this review helpful to you? ( Yes ) ( No )   (Report this)

31 Little Tikes Little Handiworker - Workhorse reviews in Play Tools - Buzzillions.com

**Mom Of 2 Boys**
Bryant, Arkansas

**I am:**
Parent of Two or More Children

[1 of 1 customers found this review helpful]

Jan **16** 2008

## NOT WORTH THE MONEY OR THE TIME!!!!

**Cons:** Boring, Doesn't Work, Flimsy, Poor Quality

**Bottom Line:** No, I would not recommend this to a friend

I have a 3 and a half year old and a 1 and a half year old boy and we bought my 3 year old the "big boy workbench" and so we decided to buy Zachary, my 1 year old a small workbench and when we found this, it was a blessing! ... Needless to say, we thought wrong. Christmas Eve when tried to put it together, it was a nightmare. IT DOES NOT STAND UP. The "legs" support falls off. There is no way to keep it attached. The pegs were bent. The pieces on the front do not move. The only way it would work for our 1 year old is if we screwed just the top of it to the wall and I'm not putting screws in my wall. This piece was truley a nightmare!

Reviewed at **ToysЯUs**

Price: **$19.99**

*Was this review helpful to you? Yes | No You may also flag this review.*
*Post this review to your blog*

Amazon.co.uk: Reviews for Little Tikes Trike & Parent Handle: Toys & Games

4 of 4 people found the following review helpful:

★★★☆☆ **It's pretty good for the money but BEWARE ON HILLS!**, 17 April 2007

By <u>Jeremy Burgess</u> (Bath, UK) - <u>See all my reviews</u>

REAL NAME

We bought this trike knowing that it was not top of the line. It feels pretty robust on the whole but the clicking noise of the front wheel and the plastic tyres on the road are really annoying.

Locking steering would be desirable but with the parent handle it's easy enough to tip the front wheel off the ground when crossing roads in case of sudden U-turns.

SERIOUS SAFETY WARNING: The parent handle is in three sections: two long tubes with a telescopic adjustment and the handle at the top. The small spring operated locking pin in the height adjustment is too small and when the trike vibrates this can work loose. The handle came apart twice on its first outing to the park leaving the trike to run away down a hill. Fortunately on both occasions my daughter was on my shoulders!

FIX FOR ABOVE: We use one of the kind of safety straps you might use when your toddler starts to run off - nylon strap with a loop at either end. One end is looped through the handle on the saddle, the other on the parent end of the handle. When it becomes detached it can't now run away.

TOP TIP: Find an old inner tube from a car / trailer tyre and make 2 huge rubber bands to fit over the rear wheels (and front if you can be bothered taking the trike apart - it really helps on the noise front!

Overall - good for the money but be careful on hills.

▢ <u>Comment</u> | <u>Permalink</u> | Was this review helpful to you? ( **Yes** ) ( **No** )  (Report this)

**EVANS BUSY MOM**
PUYALLUP, WA

**I am:**
Education Oriented
First Time Parent
Working Parent

# LITTLE FOR TYKES TO BE HAPPY ABOUT

Jan
**18**
2008

**Pros:** Attractive Design, Fun cooking sounds, Realistic, Stylish for girlsboys

**Cons:** Difficult Assembly, Flimsy, Poor Quality

**Best Uses:** Imaginative Play, Playing House

**Bottom Line:** No, I would not recommend this to a friend

Little Tykes is one of our favorite brands except for this product! All the hinged parts oven doors, cabinet doors, microwave doors, etc have little plastic hinges that broke off. The unit is two attached pieces that didn't properly screw together and is wobbly. There are no pre-drilled holes. After two hours of assembly I gave up.
My 4 year old still likes it however.

*Post this review to your blog*