THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE LITTLE TIKES COMPANY,<br>an Ohio corporation, | ) <br> ) <br> ) | |
| | ) | Case No. 1:08-cv-1935 |
| Plaintiff, | ) <br> ) | |
| v. | ) <br> ) | |
| KID STATION TOYS, LTD.,<br>a Florida corporation, | ) <br> ) <br> ) | **Jury Trial Demanded** |
| KIDS STATION TOYS, LTD.,<br>a Hong Kong corporation, | ) <br> ) <br> ) | |
| KIDS STATION (U.S.) INCORPORATED,<br>a Florida corporation, | ) <br> ) <br> ) | |
| KIDS STATION TOYS<br>　　　INTERNATIONAL, LTD.,<br>a Bermuda corporation, | ) <br> ) <br> ) <br> ) | |
| KIDS STATION TOYS INTERNATIONAL<br>　　　HOLDING, GmbH<br>a Switzerland corporation, and | ) <br> ) <br> ) <br> ) | |
| MR. ELLIOT S. NEWMAN<br>an individual, | ) <br> ) <br> ) | |
| Defendants. | ) | |

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER

The parties agree that the determinative issue before the Court is whether the Agreement

was properly terminated by Little Tikes. However, as Little Tikes first set forth in its

Memorandum in Support of its Motion for a Temporary Restraining Order ("Memorandum"),

and again sets forth herein, the undisputed facts and the plain language of the Agreement show,

without question, that Little Tikes properly terminated the Agreement pursuant to Article XI and Section 9.1. See Agreement attached as Ex. A to D. Oakes Decl. in Support of Motion for Temporary Restraining Order, § 9.1 and Art. XI. These provisions of the Agreement specifically provide that Little Tikes may immediately terminate the Agreement if Kid Station sells unapproved products. Kid Station undeniably sold unapproved products – products that do not comply with applicable laws and regulatory standards – until only a few days ago.

Defendants attempt to gloss over this clear breach of the Agreement as well as their numerous other breaches of the Agreement that were identified by Little Tikes in its February 5, 2008 Termination letter by devoting several pages of their brief to describing their purported success and reputation for selling high quality toys and the purported "relentless campaign to terminate" the Agreement by MGA and Little Tikes. Not only are these claims meritless and irrelevant to the instant motion, but Defendants fail to provide any evidence to corroborate them. These unsupported allegations merely attempt to avoid the fact that Defendants breached the Agreement, that Little Tikes properly terminated the Agreement, and that Defendants continue to sell goods under the LITTLE TIKES mark and logo to trade upon the reputation and goodwill of Little Tikes in violation of Little Tikes' rights. Accordingly, Defendants are manufacturing, distributing and selling products under the LITTLE TIKES trademark and logo without authorization, and their infringement of Little Tikes' valuable trademarks and the resulting damage to Little Tikes must be stopped immediately.

## I.  LITTLE TIKES PROPERLY TERMINATED THE AGREEMENT

Little Tikes properly terminated the Agreement under Section 14.2, Section 9.1 and Article XI of the Agreement based upon Defendants continued sale of unapproved products. Memorandum at pp. 10-11. Section 9.1 clearly states that "[i]f any **unapproved** Licensed Products is being sold, Little Tikes may, together with other remedies available to Little Tikes,

including but not limited to, the **immediate termination of this Agreement by written notice**, require such Licensed Product to be immediately withdrawn from the market." See § 9.1 of the Agreement attached as Ex. A to Declaration of David Oakes (emphasis added). Article XI expressly states that "Licensed Products that do not comply with applicable laws and regulatory standards shall be deemed **unapproved** under Article IX." Id. at Art. XI (emphasis added). Accordingly, Defendants' sale of Licensed Products that violate applicable laws and regulatory standards is grounds for immediate termination.

On June 14, 2007 the CPSC notified Little Tikes of complaints claiming that a small piece of the plastic hinge on the toy cell phone (KSL8033) manufactured by Defendants breaks off, thereby creating a choking hazard. Therefore, pursuant to the Agreement, the toy cell phone was reported to deviate from CPSC standards, and thus considered "unapproved products," and reason for immediate breach of the Agreement by Little Tikes. Nevertheless, Little Tikes did not immediately terminate. Instead, Little Tikes gave Defendants an opportunity to fix the problem and Defendants agreed in September of 2007 to modify the toy cell phone by adding a screw to the hinge to remedy this violation of regulatory standards. Little Tikes believed that only the modified toy cell phone would thereafter be sold or distributed by Defendant because under the Agreement the unmodified version of the toy cell phone would automatically be considered "unapproved products," regardless of whether it had been approved previously by Little Tikes. The entire reason for Article XI is to more precisely address the situation in this case where an article approved in the approval process implemented by the practice under Article IX is subsequently objected to be a government or regulatory agency – the CPSC – under Article XI. These provisions give the Licensor, Little Tikes, the ability to terminate in such a situation.

And, until two incidents involving the unmodified versions of the toy cell phone took

place in January of 2008, Little Tikes and MGA believed that Defendants had removed the unmodified version from retailers' shelves and ceased sales and distribution. Specifically, on January 18, 2008 Little Tikes received a consumer complaint regarding the *unmodified version* of the toy cell phone (KSL8033) – an unapproved product – in which a piece of plastic again broke off thereby creating a choking hazard. This incident was shortly followed by Channel KTTC in Rochester, Minnesota reporting a similar incident on January 31, 2008 involving a mother who reportedly found a broken piece of the *unmodified version* of the toy cell phone in her child's mouth, but was able to retrieve the piece before he could swallow it. Detrimentally to Little Tikes, the report only identified the product as "a Little Tikes Toy," thereby leading the public to believe that Little Tikes, rather than Defendants, was responsible. Together these two incidents alerted Little Tikes that Defendants had not removed the unmodified and unapproved version from retailers' shelves or stopped selling and distributing these unapproved products.

Indeed, the very next day, an investigation by MGA confirmed that as of February 2008, consumers were still able to purchase unmodified and unapproved Licensed Products from retailers. Based upon this clear breach of the Agreement under Article XI that entitles Little Tikes to, among other things, immediately terminate the Agreement pursuant to Section 9.1, Little Tikes sent notice of termination of the Agreement to Kid Station on February 5, 2008. Defendants admit that they actually continued to sell the unapproved products even after receiving the termination letter. In fact, it was not until after the CPSC demanded on March 14, 2008 that these unapproved products stop being sold and be withheld from distribution that Defendants finally moved to cease sales of the unapproved toy cell phone in the marketplace.

## II.  DEFENDANTS HAVE BREACHED THE AGREEMENT IN NUMEROUS WAYS, AND ADMIT THAT THEY FAILED TO CURE ANY OF THE BREACHES

In their Opposition, Defendants ignore the fact that they breached numerous terms of the

Agreement. As set forth in the declaration of David Oakes submitted in support of Little Tikes'

Motion for a Temporary Restraining Order, Defendants failed to:

- Provide samples of each Licensed Product to Little Tikes as required by Section 3.1 of the Agreement.

- Provide certain distribution reports, including, for example, Kid Station's product development plans, advertising and merchandising and promotional activities as required by Sections 4.8 or 4.9 of the Agreement.

- Provide submit new product designs for 2008 as required by Section 5.3 of the Agreement

- Maintain proper telephone support services as required by Section 8.1 of the Agreement.

- Provide testing reports for Kid Station's products as required by Section 9.2 of the Agreement.

- Provide Little Tikes with its marketing plan for 2008 as required by Section 12.2 of the Agreement.

- Provide Little Tikes with Written Meeting Reports as required by Exhibit A to the Agreement.

See Ex. 1, ¶¶ 9(a) – (g).

Rather than respond to the February 5, 2008 Termination letter or attempt to cure,

Defendant Kids Station (Hong Kong) filed suit in Florida – in further breach of the Agreement –

alleging that Little Tikes improperly terminated the Agreement. Under Defendants' theory that

the Agreement was improperly terminated, they would have had thirty days from receiving Little

Tikes' February 5, 2008 termination letter that clearly set forth these breaches of the Agreement

(i.e., March 6, 2008) to cure the breaches. Yet, as Defendants readily admit in their Opposition,

Defendants took no actions whatsoever to cure these breaches by March 6, 2008, and have no

intention of taking actions to cure these breaches. Defendants claim they need not cure because

they claim they do not need to in view of Little Tikes' termination of the Agreement.

Opposition, pp. 15-16.   But, this argument makes no sense and, moreover, is inconsistent with others asserted by Defendants.   On one hand Defendants claim that because Little Tikes improperly terminated the Agreement they can continue to sell LITTLE TIKES branded products as if the Agreement is still in force.   On the other hand Defendants claim they have no duty to cure their breaches of the Agreement because the Agreement was terminated.   Defendants cannot have it both ways.   Moreover, contrary to Defendants' assertion, *SMC Corp., Ltd. v. Lockjaw, LLC*, 481 F. Supp. 2d 918, 927 (E.D. Ill. 2007) does not excuse Defendants from curing these breaches, but rather just the opposite.   The quote cited by Defendants applies to them, not Little Tikes – it is Defendants who are treating the Agreement as being in force (by continuing to sell Licensed Products with Little Tikes' marks), while at the same time asserting that they have no duty to cure the undisputed breaches.   As characterized by Judge Castillo in *SMC Corp.*, Defendants' position is somewhat duplicitous.

It is undisputed that Defendants have not attempted to cure the above-identified breaches of the Agreement, or, for that matter, have never even responded to the February 5, 2008 letter. Rather, Defendants filed a lawsuit in the Southern District of Florida against Little Tikes and MGA.   Not only was this lawsuit a waste of time and resources, but it was yet another breach of the Agreement by Defendants because the Agreement's Forum Selection Clause (see Ex. A at Article XXI) requires any dispute "relating to" the Agreement to be litigated in Cook County, Illinois.   Defendants repeated disregard for complying with its obligations under the Agreement further demonstrates that Little Tikes was well within its rights when it terminated the Agreement on February 5, 2008.

### III.   DEFENDANTS PURPORTED CLAIMS OF IRREPARABLE HARM LACK ANY EVIDENTIARY SUPPORT

Defendants' claim of irreparable harm is premised upon a number of unsupported factual

allegations. For instance, Defendants claim that if the Court grants the temporary restraining order that its customer relationships with companies such as Wal-Mart and Toys "R" Us will be destroyed. Opposition, p. 16. However, Defendants lost the Toys "R" Us account in 2007 due to reasons completely unrelated to Little Tikes or MGA, and Kids Station has not made any sales of Little Tikes products to Toys "R" Us for many months. Declaration of David Oakes attached hereto as Exhibit A, ¶ 4. Similarly, Defendants unsubstantiated claim that it will be unable to fulfill its outstanding commitments to deliver LITTLE TIKES branded products must also be rejected. Opposition, p. 18. In fact, Defendants cannot possibly have substantial outstanding commitments to these unidentified customers because approximately 67% percent of their sales of all Little Tikes Products in the fourth quarter of 2007 were attributed to the Unapproved Toy Cell Phone, which Defendants can no longer sell or distribute because the CPSC has specifically demanded that all sales and distribution of this product be stopped. Oakes Dec., Ex. A, ¶ 5. Moreover, the Addendum to the License Agreement granting Kid Station the right to use the LITTLE TIKES mark and logo in connection with Category IV products, namely, electronic youth roleplay items, expires December 31, 2008, and at least 68% of sales under the Agreement and Addendum are Category IV products. Further, Defendants ignore the fact that they are free to fulfill these purported commitments so long as they remove all references to the LITTLE TIKES mark and logo on the product, packing, and any other related materials. Therefore, Defendants' claims of substantial lost sales and damage to relationships are simply untrue.

In addition, Defendants reliance on cases involving termination of exclusive distributor agreements is misplaced because Defendants are not merely distributors of LITTLE TIKES branded products. Instead, Defendants, a trademark licensee, actually manufacture the products bearing the valuable LITTLE TIKES mark and logo and also control how the LITTLE TIKES

mark and logo is used and displayed. Little Tikes does not make the products on which its mark is used – which is the great concern in this case. Therefore, this Court should find that Little Tikes will be irreparably harmed by Defendants continued use of its valuable LITTLE TIKES mark and logo because, at a minimum, it has no ability to control the nature and quality of the infringer's goods. *Wesley-Jessen Division of Schering Corp. v. Bausch & Lomb, Inc.*, 698 F.2d 862, 867 (7th Cir. 1983).

## IV.    CONCLUSION

For the reasons set forth herein and those previously articulated in Little Tikes' Memorandum, Little Tikes respectfully requests that this Court grant its Motion and enter a Temporary Restraining Order against Defendants.

Dated:  April 16, 2008.

Respectfully submitted,

By:  s/Robert E. Browne
One of the Attorneys for Plaintiff, The Little Tikes Company

Robert E. Browne (ARDC# 032 1761)
Michael G. Kelber (ARDC# 623 1033)
Lara V. Hirshfeld (ARDC# 627 7477)
Maurice E. Finnegan, III (ARDC# 628 1387)
**NEAL, GERBER & EISENBERG LLP**
Two North LaSalle Street, Suite 2200
Chicago, IL  60602-3801
Telephone:  (312) 269-8000
Facsimile:  (312) 269-1747

*Of Counsel*
Jeanine Pisoni
General Counsel
MGA Entertainment, Inc.
16300 Roscoe Blvd
Suite 150
Van Nuys, California  91406

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing **REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER and DECLARATION OF DAVID OAKES** was served, via the Court's ECF filing system, on April 16, 2008 on the following counsel of record:

> Paul T. Fox, Esq.
> Charles B. Leuin, Esq.
> Paul J. Ferak, Esq.
> GREENBERG TRAURIG LLP
> 77 W. Wacker Drive, Suite 2500
> Chicago, Il 60601

> ***Attorneys for Defendants***

>                   s/Lara V. Hirshfeld
>                   Lara V. Hirshfeld

NGEDOCS: 1524000.1

- 10 -

# Exhibit A

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE LITTLE TIKES COMPANY,<br>an Ohio corporation, | )<br>)<br>) | Case No. 1:08-cv-1935 |
| Plaintiff, | )<br>) | |
| v. | )<br>)<br>) | |
| KID STATION TOYS, LTD.,<br>a Florida corporation, | )<br>)<br>) | **Jury Trial Demanded** |
| KIDS STATION TOYS, LTD.,<br>a Hong Kong corporation, | )<br>)<br>) | |
| KIDS STATION (U.S.) INCORPORATED,<br>a Florida corporation, | )<br>)<br>) | |
| KIDS STATION TOYS<br>    INTERNATIONAL, LTD.,<br>a Bermuda corporation, | )<br>)<br>)<br>) | |
| KIDS STATION TOYS INTERNATIONAL<br>    HOLDING, GmbH<br>a Switzerland corporation, and | )<br>)<br>)<br>) | |
| MR. ELLIOT S. NEWMAN<br>an individual, | )<br>)<br>) | |
| Defendants. | )<br>) | |

## DECLARATION OF DAVID OAKES

Pursuant to 28 U.S.C. Section 1746, the undersigned declares, under penalty of perjury, as follows:

1.    My name is David Oakes, and I am senior counsel of MGA Entertainment, Inc. ("MGA") and its wholly-owned subsidiary, The Little Tikes Company ("Little Tikes"), which was purchased by MGA in November, 2006 from Newell Rubbermaid, Inc. ("Newell"). I have served as senior counsel of MGA and have been involved in the negotiation, finalization, and enforcement of license agreements for MGA for 4 3/4 years, and for Little Tikes since its

acquisition by MGA. I make this declaration based on my position with the corporation, my personal knowledge of matters, my review of pertinent files and information provided to me by others on whom I rely.

2.     In connection with the acquisition of Little Tikes, MGA obtained various files maintained by Little Tikes and Newell, including files regarding the Agreement between Little Tikes and Kid Station (Florida) and related documents. Within these files was a Report dated February 2005 and prepared by a third-party, the Beanstalk Group, which is a licensing agency and consultancy company that was hired by Newell and Little Tikes. A copy of the Report is attached hereto as Exhibit 1.

3.     The Report identifies an unprecedented number of complaints about Kids Station products and inadequate processes by Kids Station for remedying customer concerns.

4.     Also in MGA's files is an email sent from Edwin Cabrera of Kids Station to Janet Han on March 19, 2007, in which Kids Station projected that 45% of its 2007 Little Tikes Sales would be made to Toys-R-Us. However, contrary to the forecast, Kids Station lost the Toys-R-Us account in 2007 due to reasons completely unrelated to Little Tikes or MGA, and Kids Station has not made any sales of Little Tikes products to Toys-R-Us for many months.

5.     Kids Station sells four different products that contain the Unapproved Toy Cell Phone, which the CPSC demanded on March 14, 2008 that Defendants stop selling and withhold distribution. As described in the product catalog attached hereto as Exhibit 2, these four products are the KSL8032 3-in-1 Electronic Combo Set, KSL8033 2-in-1 Electronic Combo Set, KSL4010 Chit N' Chat Cell Phone, and KSL8030 Electronic Light N' Sounds Key Ring. According to the fourth quarter 2007 royalty report Little Tikes received from Kids Station, these four products accounted for 67% of Defendants' sales of all Little Tikes products in the fourth quarter of 2007.

6.    As required under the Agreement, Defendants sent Little Tikes a copy of its consumer call log for the fourth quarter of 2007, which shows that Defendants received 225 consumer calls and complaints related solely to the KSL8033 product during that time period.

Executed in Van Nuys, California this 16th day of April, 2008.

_____
David Oakes

NGEDOCS: 1523990.2

3

# Exhibit 1



# THE BEANSTALK GROUP

## Kids Station Quality Assurance

Date: February 2, 2005

*Confidential*

## Kids Station: Licensee Overview

- Kids Station's product grant includes youth electronic audio and video, clocks, telephones and musical instruments
  - Contract expires 6/30/2007

- Products are placed at Toys 'R Us (17 SKUS, and 80%+ of licensee sales volume), Wal-Mart Canada, Sam's Canada, Costco Canada, Sears Canada, and Lablaws

- Product launched at retail in October 2004 and had excellent sell-through at Toys 'R Us for Holiday 2004, selling out of many SKUs
  - The licensee forecasts a 15% increase in business at TRU in 2005

- With retail sales of more than $8 million, Kids Station is the largest Little Tikes licensee in terms of both sales and royalty revenues
  - $387,651 in gross royalty revenue generated in 2004
  - Given the licensee's ubiquity, it is especially capable of tarnishing brand reputation in both customer service and product quality

- Beanstalk's first priority is protecting Little Tikes' brand reputation, but will lead discussions with Kids Stations as a partner if quality standards can be met

BEANSTALK GROUP

2

*Confidential*

BEANSTALK THE GROUP

# Numerous Complaints Raise Concerns About Product Quality and Customer Service Performance

▫ Little Tikes Consumer Service received an unprecedented number of complaints about Kids Station products

- 124 complaints received about product quality since its October 2004 launch
  - Other licensed products prompted only 48 calls in 2004

- The nature of the electronics category and the volume of sales suggest that Kids Station should be a source of more customer service volume than other licensees

  - Return rates in the electronics industry are as high as 15%*

▫ Amazon.com ratings for the products have been disappointing

- Most customer reviews gave average or below average ratings (three our of five stars or under); many bad reviews cited customer service experience

  - *"Like so many of the reviews written I have the same problem. The mic piece broke right away and trying to get a replacement was a NIGHTMARE! Kids Station was very unhelpful and rude. Customer service … did not care … I actually called Little Tikes to complain about them."* – Customer review on Amazon.com

▫ Kids Station was recently the subject of a product recall

- A non-electronic drum set (not Little Tikes) was recalled in January by the CPSC for small parts that could be a choking hazard

Source: IBM/Transform Magazine, 2004

3

Confidential

# Kids Station Customer Service Policies Cause Dissatisfaction

- Information supplied by Kids Station does not show significantly high complaint or return rates

  - Kids Station outsources its customer service to VAC, which does not track inquiries by product line or model

    - VAC received 4,828 Kids Station calls, also including licensed Barbie, Spiderman, and Power Play products, and Kids Station branded product

      - Even if all calls were for Little Tikes, this would represent a 0.71% inquiry rate for the 678,094 units sold

  - Retailer returns for defective product have not been excessive

    - The Toys 'R Us order provides that 5% of sales will be discounted to allow for product returns; the retailer will notify Kids Station if the amount exceeds 5%, which has not been the case

- Kids Station processes for remedying customer concerns are inadequate

  - Current Kids Station policy asks customers to ship the defective product to the manufacturer at their own expense, and include a check for shipping of the replacement product

  - This is likely the cause of high spillover to Little Tikes' call center

    - The most frequent complaint was Kids Station's process for returning defective product

BEANSTALK GROUP

*Confidential*

4



# Contractual Quality Assurance Protections



- Little Tikes' contract with Kids Station includes provisions mandating standards of quality for products and customer service

  - Sec. 8.1: Customer support service should match the level of Little Tikes' own customer support

  - Sec. 6.8: Licensee may use the trademarks only on products with quality which is in all respects at least equal to Little Tikes' core product

  - Sec. 12.4: Licensee must notify Little Tikes if more than 3% of product is returned by consumers as defective, and provide a plan outlining steps to reduce incidence of defects

- Licensee must submit QA reports from a third-party auditor in order to gain product approval

  - Little Tikes allowed Kids Station to submit reports after shipment in 2004 to meet timing of a retail purchase order

- Retailer quality controls provide a secondary protection

  - Toys 'R Us requires quality and safety testing for all products placed in its stores

5



# Immediate Steps to Protect the Brand

- Customer services practices can be immediately remedied
  - The licensee has verbally agreed to modify its customer service practices
    - Offer free shipping for return of defective product and replacement product
    - Provide only new product in replacement of defective product

- LT can immediately apply more stringent standards for product approval to ensure product quality
  - Internal QA: additional durability testing as required
  - Design team: check color palette to match LT core product
  - Licensing: Approve product only after all QA reports received

6





# Long-Term Quality Assurance Can Be Contractually Demanded

- If quality assurance issues are not corrected, Kids Station's performance constitutes a breach of contract

  - Practices do not satisfy the obligations listed in Sec. 8.1, mentioned previously

  - Kids Station did not provide a quarterly report on consumer service activities within 30 days following Q4 2004, as required by Sec. 8.2

- Little Tikes can threaten termination if licensee does not take steps to resolve QA problems

  - Contract allows 30 days for the licensee to remedy any breach of contract after first notice

- Little Tikes and Beanstalk should guide the process for addressing concerns and set deadlines for remedy

  - Licensee is more likely to comply if Little Tikes provides quantifiable standards and processes for quality assurance

  - Little Tikes can leverage the situation to demand additional reporting and testing that will prevent future QA problems

7

## Documentation of Steps to Cure Breach Will Ensure Future Licensee Compliance

THE
BEANSTALK
GROUP

- A contract amendment or letter of agreement with stronger and more specific language on product quality and customer service performance will provide:

  - A shared, written understanding of baseline quality requirements
  - Quantifiable criteria for gauging licensee performance
  - A timeline for when product quality and customer service improvements must be achieved
  - Legal recourse for Little Tikes if licensee does not comply
  - A demonstration of licensee's good faith in resolving concerns

- Little Tikes can encourage Kids Station to sign an agreement in order to cure its breach of contract

Confidential

# Stronger Standards for Customer Service Performance



- Contract provisions for Kids Station's customer service performance can be strengthened to include:

  - Calls answered within a minimal wait time

  - Response to written inquiries to within a certain period

  - Provision of specific remedies for common customer issues (i.e., paid shipping, product replacement upon first complaint)

  - Little Tikes-approved scripting for representatives responding to common customer issues

  - Quarterly reporting of customer complaints *including their resolution*

- Licensee can be required to meet these standards within one quarter, and tested each subsequent quarter

  - Performance can be confirmed through written reports submitted by the licensee, "secret shopper" testing, and/or a third-party auditor

- If performance is not within Little Tike's quality threshold, a 1% royalty penalty can be assessed

*Confidential*

# Stronger Standards for Product Quality

- Contract provisions for Kids Station's product quality can be strengthened to include:

  - Mandating a specific third-party auditor with experience in electronics for QA testing

    – Little Tikes and Beanstalk can partner with this auditor to establish standards specific to electronic audio/video and musical instrument products and the age range for these toys

  - Requiring a longer time window for Little Tikes' internal quality testing between pre-production samples and approval to ship to retail, providing time for additional durability testing

  - Requiring copies of all retailer quality testing (i.e., TRU) that may show problem areas for Little Tikes to test more thoroughly

  - Stricter standards for product operating manual clarity, reducing customer inquiries on how to operate the product

- Little Tikes can aggressively withhold product approval if these requirements are not met in a timely manner

THE BEANSTALK GROUP

Confidential

**Exhibit 2**







## little tikes ®

### KSL4010

## Chif N' Chat Cell Phone

- 3 animal sound effects and pretend stylin' mirror
- Number pad features realistic sounds and play functions
- Belt clip included
- Try me function
- Requires 2 "AAA" batteries (included)

### KSL8030

## Electronic Light N' Sounds Key Ring

- Realistic, easy to handle car keys with
- 5 cool sound effects
- Flashlight
- Try me function
- Requires 2 "AAA" batteries (included)





3 animal sounds

5 sound effects

Specifications subject to change without notice.



## 3-in-1 combo set

## KSL8032

### Electronic Combo Set

**Chit N' Chat Cell Phone**
- 3 animal sound effects and pretend stylin' mirror
- Number pad features realistic sounds and play functions
- Belt clip included
- Try me function
- Requires 2 "AAA" batteries (Included)

**Electronic Light N' Sounds Key Ring**
- Realistic, easy to handle car keys with 5 cool sound effects
- Flashlight
- Try me function
- Requires 2 "AAA" batteries (Included)

**Dance N' Groove CD Player**
- Portable CD player
- 3 CDs with 21 songs
- Play, stop, fast forward, backward, random and repeat
- Fun portable carrying handle
- Bright LED synchronized to the music
- Try me function
- Requires 3 "AA" batteries (Included)

## 2-in-1 combo set



### KSL8033
### Electronic Combo Set

**Chit N' Chat Cell Phone**
- 3 animal sound effects and pretend stylin' mirror
- Number pad features realistic sounds and play functions
- Belt clip included
- Try me function
- Requires 2 "AAA" batteries (Included)

**Electronic Light N' Sounds Key Ring**
- Realistic, easy to handle car keys with 5 cool sound effects
- Flashlight
- Try me function
- Requires 2 "AAA" batteries (Included)



specifications subject to change without notice

| Description | Carton Qty. | Carton Dimensions (in.) | Weight (lb.) | Cubic (ft.) | 40' Crt Qty. | UPC | Ages |
|---|---|---|---|---|---|---|---|
| MUSICAL COMBO PACK | 1 | 14.17 (W) x 13.58 (H) x 32.68 (D) | 14.30 | 3.64 | 543 | 731398-08022-9 | 4+ |
| ELECTRIC GUITAR AND MINI KEYBOARD | 4 | 28.23 (W) x 10.94 (H) x 10.63 (D) | 15.40 | 1.90 | 4,148 | 731398-08026-7 | 4+ |
| ELECTRONIC DRUMSET | 2 | 18.31 (W) x 17.52 (H) x 20.47 (D) | 14.08 | 3.80 | 1,040 | 731398-08007-6 | 3+ |
| BIG DRUM MUSICAL SET | 4 | 21.26 (W) x 12.40 (H) x 22.64 (D) | 14.08 | 3.45 | 2,292 | 731398-08027-4 | 3+ |
| MINI MUSICAL DRUM | 6 | 10.71 (W) x 9.33 (H) x 14.96 (D) | 6.16 | 0.87 | 13,716 | 731398-08016-8 | 3+ |
| MINI MUSICAL GUITAR | 12 | 15.59 (W) x 10.94 (H) x 15.20 (D) | 9.02 | 1.50 | 15,816 | 731398-08017-5 | 3+ |
| MINI MUSICAL KEYBOARD | 12 | 12.25 (W) x 12.25 (H) x 17.13 (D) | 13.86 | 1.49 | 15,948 | 731398-08015-1 | 3+ |
| MINI MUSICAL INSTRUMENT SET | 4 | 14.80 (W) x 14.17 (H) x 22.72 (D) | 13.64 | 2.76 | 2,868 | 731398-08014-4 | 3+ |
| MY FIRST LAPTOP | 6 | 17.50 (W) x 14.00 (H) x 13.50 (D) | 13.00 | 1.92 | 6,210 | 731398-05002-4 | 2+ |
| LIGHTS N SOUNDS LAPTOP | 6 | 19.13 (W) x 13.00 (H) x 15.37 (D) | 13.20 | 2.21 | 5,364 | 731398-05001-7 | 3+ |
| ELECTRONIC DUAL DANCEMAT | 6 | 14.37 (W) x 20.75 (H) x 19.75 (D) | 17.60 | 3.34 | 3,480 | 731398-08031-1 | 3+ |
| MUSICAL HANDS PLAYMAT | 6 | 14.17 (W) x 12.60 (H) x 14.96 (D) | 7.50 | 1.55 | 7,674 | 731398-08029-8 | 2+ |
| JAM N' GROOVE BOOMBOX | 6 | 21.65 (W) x 10.91 (H) x 12.40 (D) | 11.44 | 1.70 | 7,002 | 731398-08021-8 | 3+ |
| JAM N' GROOVE CD PLAYER | 12 | 14.96 (W) x 9.84 (H) x 18.31 (D) | 12.32 | 1.56 | 15,216 | 731398-02022-5 | 2+ |
| JAM N' GROOVE MP3 PLAYER | 6 | 10.83 (W) x 8.66 (H) x 9.57 (D) | 3.30 | 0.52 | 22,854 | 731398-02105-5 | 3+ |
| CLICK N PLAY CAMERA WITH FLASH | 6 | 10.71 (W) x 8.66 (H) x 13.58 (D) | 3.52 | 0.73 | 16,278 | 731398-02102-4 | 3+ |
| PLAY VIDEO CAMERA | 12 | 19.00 (W) x 18.00 (H) x 6.25 (D) | 12.00 | 1.64 | 14,400 | 731398-05005-5 | 3+ |
| PLAY CELL PHONE | 12 | 25.59 (W) x 7.28 (H) x 8.86 (D) | 6.07 | 0.96 | 24,840 | 731398-04010-0 | 1-1/2+ |
| ELECTRONIC LIGHT N SOUNDS KEY RING | 12 | 25.59 (W) x 7.48 (H) x 10.04 (D) | 6.16 | 1.11 | 21,336 | 731398-08030-4 | 1-1/2+ |
| ELECTRONIC COMBO SET (2-IN-1) | 6 | 17.13 (W) x 16.54 (H) x 12.60 (D) | 11.55 | 2.07 | 5,748 | 731398-08032-8 | 2+ |
| ELECTRONIC COMBO SET (3-IN-1) | 6 | 13.98 (W) x 8.46 (H) x 10.43 (D) | 5.02 | 0.71 | 16,614 | 731398-08033-5 | 1-1/2+ |



...ications subject to change without notice.



**KIDS STATION TOYS INTERNATIONAL LTD.**
**(Hong Kong Office)**
Rm. 804, 8/F  Empire Centre.
68 Mody Road, Tsimshatsui East
Kowloon, Hong Kong
Tel: (852) 2723 3308  Fax: (852) 2723 8110

**KIDS STATION TOYS INTERNATIONAL LTD.**
**(U.S.A Office)**
1160 NW 163 Drive Miami, Florida, 33169, U.S.A
Tel: (305) 628 0900  Fax: (305) 622 9251
1-888-321-7191



**The Little Tikes Company**

©2007 The Little Tikes Company
Designed and Licensed by
Kids Station Toys International Ltd
P.O. Box 664620
Miami Florida 33164-4860