**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THE LITTLE TIKES COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08 C 1935 |
| | ) | |
| v. | ) | Hon. Joan B. Gottschall |
| | ) | United States District Judge |
| KID STATION TOYS LTD., et al., | ) | |
| | ) | Hon. Nan Nolan |
| Defendants. | ) | United States Magistrate Judge |
| | ) | |
| KIDS STATION TOYS LTD., | ) | |
| | ) | |
| Counterplaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE LITTLE TIKES COMPANY and MGA | ) | |
| ENTERTAINMENT, INC., | ) | |
| | ) | |
| Counterdefendants. | ) | |

**ANSWER AND AFFIRMATIVE DEFENSES OF
KIDS STATION (U.S.) INCORPORATED,
KIDS STATION TOYS INTERNATIONAL, LTD.,
KIDS STATION TOYS INTERNATIONAL HOLDING, GMBH
AND ELLIOT S. NEWMAN**

Defendants Kids Station (U.S.) Incorporated ("KSUS"), Kids Station Toys International, Ltd. ("KSTI"), Kids Station Toys International Holding, GmbH ("KSH") and Elliot S. Newman ("Newman" and, along with KSUS, KSTI and KSH, the "Answering Defendants") submit the following Answer and Affirmative Defenses to the Complaint of Plaintiff The Little Tikes Company ("Little Tikes"). The Answering Defendants answer only those allegations of the Complaint that are directed against them and do not intend or purport to answer or respond to any of the allegations made by Little Tikes against the other purported defendants to this case. The Answering Defendants deny each and every allegation of the Complaint that is directed against them and is not specifically admitted.

1.    Plaintiff Little Tikes is a corporation organized under the laws of Ohio, and maintains its principal place of business at 2180 Barlow, Hudson, Ohio, 44232.

**ANSWER:**

On information and belief, the Answering Defendants admit that Little Tikes is a corporation organized under the laws of Ohio and with its principal place of business in Hudson, Ohio.  The Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations of this paragraph.

2.    Defendant Kid Station Toys, Ltd. is, on information and belief, a corporation organized under the laws of Florida, and maintains a mailing address at P.O. Box 694660, Miami, Florida 33268-4660 (referred to hereinafter as "Kid Station (Florida)").

**ANSWER:**

The Answering Defendants deny the allegations of this paragraph.  Further answering, the Answering Defendants admit that Kids Station Toys Ltd. ("Kids Station") is a corporation organized under the laws of Hong Kong, China with its principal place of business in Miami, Florida.  The Answering Defendants further admit that Kids Station has a mailing address of P.O. Box 694660, Miami, Florida 33269-4660.

3.    Defendant Kids Station Toys, Ltd. is, on information and belief, a corporation organized under the laws of Hong Kong, China, has a registered agent at Rm 804 8/F Empire Ctr., 68 Mody Rd., Tsim Sha Tsui East, Kowloon, Hong Kong, and maintains a principal place of business in Miami, Florida (referred to hereinafter as "Kids Station (HK)").

**ANSWER:**

The Answering Defendants admit that Kids Station is a corporation organized under the laws of Hong Kong, China with an office at Room 804 8/F Empire Center, 68 Mody Road, Tsim Sha Tsui East, Kowloon, Hong Kong, China, and a principal place of business in Miami, Florida. The Answering Defendants deny the remaining allegations of this paragraph.

4.    Defendant Kids Station (U.S.) Incorporated is, on information and belief, a corporation organized under the laws of Florida, and maintains its principal place of business at 1160 NW 163rd Drive, Miami Gardens, Florida, 33169-5816 (referred to hereinafter as "Kids Station (U.S.)").

**ANSWER:**

KSUS admits that it is a corporation organized under the laws of Florida with its principal place of business in Miami, Florida. The allegations of this paragraph are not directed to KSTI, KSH and Newman, and therefore, no answer is necessary or required. To the extent an answer is required by KSTI, KSH and Newman, they join the answer of KSUS as set forth previously in this paragraph. The Answering Defendants deny the remaining allegations of this paragraph.

5.     Defendant Kids Station Toys International, Ltd. is, on information and belief, a corporation organized under the laws of Bermuda having a registered agent at c/o Alexander Management, Ltd., 48 Par-La-Ville Road, Suite 1461, Hamilton, Pembroke, Bermuda (referred to hereinafter as "Kids Station (Bermuda)"). It is unknown where Kids Station (Bermuda)'s principal place of business is, but it is believed to be in or near Miami, Florida.

**ANSWER:**

KSTI admits that it is a corporation organized under the laws of Bermuda with its principal place of business in Hong Kong, China. The allegations of this paragraph are not directed to KSUS and Newman, and therefore, no answer is necessary or required. To the extent an answer is required by KSUS, KSH and Newman, they join the answer of KSTI as set forth previously in this paragraph. The Answering Defendants deny the remaining allegations of this paragraph.

6.     Kids Station Toys International Holding, GmbH is, on information and belief, a corporation organized under the laws of Switzerland having a registered agent at c/o Oliver Cornelis Gugelot, Treichlerstrasse 7, 8032 Zurich ZH, Switzerland (referred to hereinafter as "Kids Station (International)"). It is unknown where Kids Station (International)'s principal place of business is, but it is believed to be in or near Miami, Florida.

**ANSWER:**

KSH admits that it is a corporation organized under the laws of Switzerland with a principal place of business in Miami, Florida. The allegations of this paragraph are not directed to KSUS, KSTI and Newman, and therefore, no answer is necessary or required. To the extent an answer is required by KSUS, KSTI and Newman, they join the answer of KSH as set forth

previously in this paragraph.  The Answering Defendants deny the remaining allegations of this paragraph.

7.    Elliot S. Newman is an individual who, on information and belief, resides at 355 Ocean Blvd., Golden Beach, Florida, 33160, and is the owner of each of the Kids Station Entities identified in Paragraphs 2 - 6 (collectively referred to as the "Kids Station Entities") and is responsible for controlling the operation of each Kids Station Entity.

**ANSWER:**

Newman denies the allegations of this paragraph.  The allegations of this paragraph are not directed to KSUS, KSTI and KSH, and therefore, no answer is necessary or required.  To the extent an answer is required by KSUS, KSTI and KSH, they join the answer of Newman as set forth previously in this paragraph.

8.    On information and belief, Mr. Newman and each Kids Station Entity identified above has participated, on some level, in the manufacturing, transportation, distribution or sale of products bearing the LITTLE TIKES trademark and will be referred to collectively as "Defendants." There may be additional persons or entities liable for the activities which form the basis for this Complaint. Plaintiffs will explore this on discovery and, if necessary, amend this Complaint to add such persons or entities as parties.

**ANSWER:**

The Answering Defendants deny the allegations of this paragraph.

9.    This is an action seeking remedy for (i) piercing the corporate veil; (ii) trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1); (iii) dilution by tarnishment under 15 U.S.C. § 1125(c); (iv) false representation under 15 U.S.C. § 1125(a); (v) unfair competition; and (vi) breach of contract.

**ANSWER:**

The Answering Defendants admit that Little Tikes purports to bring this action asserting claims for piercing the corporate veil, trademark infringement under the Lanham Act, dilution under 15 U.S.C. § 1125(c), false representation under 15 U.S.C. § 1125(a), unfair competition, and breach of contract, all of which arise out of Little Tikes' purported, but wrongful, termination on February 5, 2008 of that certain License Agreement which appears to be attached to Little

Tikes' Complaint as Exhibit A.  The Answering Defendants deny that any of Little Tikes' claims have any merit or that Little Tikes is entitled to any relief.

10.   This Court has jurisdiction over the Trademark infringement, false representation and dilution counts pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 (a) in that they involve actions arising under the Lanham Act. This Court has jurisdiction and supplemental jurisdiction over the remaining counts pursuant to 28 U.S.C. § 1367, 28 U.S.C. § 1338(b), and 28 U.S.C. § 1332, as there is complete diversity between the parties and the matter in controversy exceeds the sum of $75,000.

**ANSWER:**

The Answering Defendants admit that this Court has subject matter jurisdiction over this case.

11.   Personal jurisdiction and venue are proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) and (c) with respect to Kid Station (Florida), Kids Station (U.S.), Kids Station (HK) and Mr. Newman as a substantial part of the events giving rise to the claims occurred in this District and these Defendants have, by contract with Little Tikes, agreed to jurisdiction here. Personal jurisdiction and venue are proper in this Court under 28 U.S.C. § 1391 (b), (c) and (d) with respect to all other Defendants because they are alien corporations, have continuous and substantial contacts with this District, are doing business in this District, and are currently selling or marketing products under Plaintiff's trademarks in this District. [confirm]

**ANSWER:**

The Answering Defendants deny that this Court has personal jurisdiction over them and deny that venue is proper in this district with respect to the claims asserted against them.  The Answering Defendants deny the remaining allegations of this paragraph.

12.   Little Tikes bring [sic] this action in response to Defendants' willfully-infringing conduct and to protect and prevent the destruction of the goodwill and consumer recognition Plaintiff has worked hard to secure over the years.

**ANSWER:**

The Answering Defendants deny the allegations of this paragraph.

13.   For nearly 40 years, since being founded in 1970, Little Tikes has been a manufacturer and marketer of high-quality, innovative children's products. Little Tikes products are known worldwide for providing durable, imaginative and active fun. Its products are manufactured and sold under the famous "LITTLE TIKES" trademark. The products are produced in a wide variety of categories for young children, including infant toys, popular sports, play trucks, ride-

on toys, sandboxes, activity gyms and climbers, slides, pre-school development, role-play toys, creative arts and juvenile furniture.

**ANSWER:**

The Answering Defendants lack sufficient knowledge or information to form a belief as to

the truth of the allegations of this paragraph, and therefore, deny those allegations.

14.    As a result of its long use, worldwide advertising and quality products, Little Tikes' trademarks are famous and instantly recognizable throughout the world, particularly its famous, federally registered LITTLE TIKES and Design mark:



U.S. Reg. No. 1,145,515 (the "LITTLE TIKES mark").

**ANSWER:**

The Answering Defendants lack sufficient knowledge or information to form a belief as to

the truth of the allegations of this paragraph, and therefore, deny those allegations.

15.    By way of example, Little Tikes' red and yellow Cozy Coupe® Car, an international icon in toys, celebrated its 25th anniversary in 2004, with more than 6 million units sold since its creation. Little Tikes' goal is to create and supply innovative products to customers and consumers around the world. To reach that goal, Little Tikes' associates' actions are guided by the principles of Customer Satisfaction, Teamwork, Innovation, Marketing and Continuous Improvement.

**ANSWER:**

The Answering Defendants lack sufficient knowledge or information to form a belief as to

the truth of the allegations of this paragraph, and therefore, deny those allegations.

16.    Because of and [sic] Little Tikes' innovation and commitment to quality and safety, Plaintiff's products have won numerous awards and its LITTLE TIKES trademark is instantly recognizable throughout the world. This instant recognition and the exceedingly valuable goodwill associated with Little Tikes' trademarks are among Plaintiff's most valuable assets, and have been developed over numerous years and at great effort and expense by Little Tikes.

**ANSWER:**

The Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations of this paragraph, and therefore, deny those allegations.

17.    On December 8, 2003, Little Tikes, at that time wholly-owned by Newell Rubbermaid, Inc., located near Chicago, Illinois, and Kid Station (Florida), entered into a written License Agreement, (the "Agreement"), which granted Kid Station (Florida) the exclusive right to use the valuable LITTLE TIKES and Design mark in connection with certain categories of children toys. A copy of the Agreement is attached hereto as Exhibit A. The Agreement includes, among other provisions, a specific forum selection clause, designating the present Court as the forum of choice for any court actions, and Illinois law as the controlling law of the Agreement.

**ANSWER:**

The Answering Defendants admit that on or around December 8, 2003, Little Tikes and Kids Station entered into a written License Agreement which granted Kids Station the exclusive right to use the Little Tikes trademark in connection with various products and that, at that time, Little Tikes was owned by Newell Rubbermaid, Inc., which was located in Illinois.  Further answering, the Answering Defendants admit that the document attached as Exhibit A to the Complaint appears to be a true and accurate copy of the License Agreement.  The Answering Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations of this paragraph relating to Newell Rubbermaid, and therefore, deny those allegations. The Answering Defendants deny the remaining allegations of this paragraph to the extent they are inconsistent with the License Agreement or call for a legal conclusion to which no answer is necessary or required.

18.    Under the Agreement, Kid Station (Florida) had no right to sublicense any of the rights licensed to it under the Agreement. Ex. A, § 2.2. Additionally, according to Article XIX, the rights granted to Kid Station (Florida) under the Agreement were personal in nature, and Kid Station (Florida) agreed that it could not sell, transfer, lease or assign the Agreement or the rights granted thereunder, or any part thereof, without the prior written consent of Little Tikes. Little Tikes has never given any such consent.

**ANSWER:**

The Answering Defendants admit that Exhibit A to the Complaint appears to be true and correct copy of the License Agreement. The Answering Defendants deny the allegations of this paragraph to the extent they are inconsistent with the License Agreement or call for a legal conclusion to which no answer is necessary or required. The Answering Defendants further deny that Little Tikes did not consent or otherwise agree to Kids Station's actions under the License Agreement.

19.   Because of the exclusivity of the trademark license granted by the Agreement, the fact that Kid Station (Florida) would be making and selling products to small children and the value of the Little Tikes' trademarks, the 36-page Agreement stressed quality control. Some of its quality control provisions include:

- Kid Station (Florida) was only licensed to use Little Tikes' trademarks on products that were of at least the same quality as those sold by Little Tikes. Ex. A, § 6.8.

- Kid Station (Florida) was only licensed to manufacture products in accordance to approved designs. *Id.*

- Kid Station (Florida) represented that its products would be free from defects and would be in compliance with all standards and regulations. *Id.* at § 7.2.

- Kid Station (Florida) was required to provide a toll-free customer support service call-in service, and to provide Little Tikes regular reports detailing the customer service activities on a quarterly basis. *Id.* at §§ 8.1 and 8.2.

- Kid Station (Florida) was required to submit design proposals to Little Tikes for approval. *Id.* at § 9.1

- Kid Station (Florida) agreed that it would ensure that all of the products complied with the various laws and standards, whether voluntary or mandatory, of the various Federal Agencies, including the U.S. Consumers Products Safety Commission, the Federal Trade Commission, Underwriters Laboratory, and the Canadian Standards Association. *Id.* at § 11.

**ANSWER:**

The Answering Defendants admit that Exhibit A to the Complaint appears to be true and correct copy of the License Agreement. The Answering Defendants deny the allegations of this paragraph that refer or relate to the License Agreement to the extent those allegations are inconsistent with the License Agreement. The Answering Defendants deny the remaining

allegations of this paragraph.

20.     Additionally, the Agreement included a provision that required Kid Station (Florida) to use the LITTLE TIKES mark on products of a certain quality, and permitted Little Tikes, in its sole discretion, to terminate the Agreement if such quality standards were not satisfied. *Id.* at § 6.8. This provision was vital to preserving and protecting the immeasurable goodwill that Little Tikes had garnered in its trademark among consumers for nearly forty years.

**ANSWER:**

The Answering Defendants deny the allegations of this paragraph.

21.     On January 1, 2006, Little Tikes and an entity again purporting to be Kid Station (Florida) entered an amendment to the Agreement ("the Addendum") to expand the types of products that the original license covered. See Ex. A, Addendum.

**ANSWER:**

The Answering Defendants admit that Kids Station entered into an Addendum with Little Tikes on or about January 1, 2006, pursuant to which Little Tikes agreed to expand the exclusive license Little Tikes had granted to Kids Station.  Further answering, the Answering Defendants admit that Exhibit A to the Complaint appears to include a true and correct copy of the Addendum.  The Answering Defendants deny the remaining allegations of this paragraph.

22.     In late 2006, MGA Entertainment, Inc. ("MGA"), a California corporation, bought Little Tikes from Newell Rubbermaid, Inc. Neither MGA nor Newell Rubbermaid, Inc. is a party to the Agreement. However, pursuant to the Agreement's Notice Provision (Ex. A, § 20), Newell Rubbermaid, Inc.'s Legal Department, located in Oak Brook, Illinois, was to receive a copy of all notices.

**ANSWER:**

On information and belief, the Answering Defendants admit that in late 2006, MGA Entertainment, Inc. acquired Little Tikes from Newell Rubbermaid, Inc.   The Answering Defendants further admit that Exhibit A to the Complaint appears to be true and correct copy of the License Agreement.  The Answering Defendants deny the allegations of this paragraph that refer or relate to the License Agreement to the extent those allegations are inconsistent with the License Agreement.  The Answering Defendants deny the remaining allegations of this paragraph.

23.    Prior to the sale of Little Tikes to MGA, Little Tikes had begun to discover quality problems with the goods manufactured and sold by Kid Station (Florida) under Little Tikes' trademarks. In fact, Little Tikes had become aware of several consumer complaints over the quality of toys sold under Little Tikes' trademarks that were being made and sold by Kid Station (Florida). Little Tikes became increasingly concerned with protecting its valuable trademarks in the face of these quality complaints.

**ANSWER:**

The Answering Defendants deny the allegations of this paragraph.

24.    After MGA acquired Little Tikes, MGA and Little Tikes received numerous customer and government complaints about Little Tikes products made by Kid Station (Florida), including complaints that certain products posed serious injury hazards to small children. In addition, MGA found that Kid Station (Florida) was not fulfilling numerous critical obligations required under the Agreement. As a result, MGA held a meeting with Mr. Newman and his legal counsel in May 2007 to address these concerns and other issues of Kid Station (Florida)'s noncompliance with the Agreement. Despite meeting with Mr. Newman, the purported president of Kid Station (Florida), as well as his counsel Charles Leuin, and subsequent written correspondence insisting upon compliance by Kid Station (Florida) with its obligations, Kid Station (Florida) continued, and still continues, to ignore such obligations.

**ANSWER:**

The Answering Defendants admit that in May 2007 there was a meeting between Kids

Station and MGA Entertainment Inc. ("MGA") pursuant to which the parties and their

representatives discussed matters relating to the License Agreement, including but not limited to,

MGA's and Little Tikes' noncompliance with the License Agreement and infringement of Kids

Station's rights under the License Agreement.  The Answering Defendants deny the remaining

allegations of this paragraph.

25.    On April 30, 2007, MGA received a report from the U.S. Consumers Product Safety Commission (the "CPSC"), describing a potential choking hazard associated with one of the licensed products made by Defendants, namely, the Little Tikes Play Cell Phone, product number KSL8033 (the "Unapproved Cell Phone"). A copy of the report is attached hereto as Exhibit B.

**ANSWER:**

The Answering Defendants admit that Exhibit B to the Complaint appears to be a true and

correct copy of an April 30, 2007 incident report from the U.S. Consumers Product Safety

Commission (the "CPSC").  The Answering Defendants deny the allegations of this paragraph to the extent they are inconsistent with the CPCS's April 30, 2007 incident report.  The Answering Defendants further deny that the KSL8033 was unapproved.  Further answering, the Answering Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations of this paragraph, and therefore, denies those allegations.

26.    Little Tikes, through its parent MGA, met with Mr. Newman, the president of Kid Station (Florida), as well as his counsel Charles Leuin, Esq. of Greenberg Traurig - Chicago, in Los Angeles in May of 2007 to discuss the April 30 CPSC report, as well as other concerns. As a result of the meeting, Kid Station (Florida) agreed to modify the design of the Unapproved Cell Phone.

**ANSWER:**

The Answering Defendants deny the allegations of this paragraph.

27.    Defendants finally claimed to have modified the Unapproved Cell Phone in September 2007. However, Defendants failed to remove the prior version of the Unapproved Cell Phone from retailers' shelves, and complaints continued. On January 30, 2008, concerned with protecting the goodwill in the LITTLE TIKES mark, MGA sent a letter to Kid Station (Florida) detailing a new consumer complaint reporting a potential choking hazard related to the Unapproved Cell Phone, and requesting that Kid Station (Florida) immediately cease selling the KSL8033 product. A copy of the January 30 letter is attached as Exhibit C.

**ANSWER:**

The Answering Defendants admit that in September 2007 Kids Station decided to modify the Little Tikes Chit N Chat Cell Phone (the "Approved Cell Phone").  The Answering Defendants further admit that Exhibit C to the Complaint appears to be a true and correct copy of the letter Kids Station received on or about January 30, 2008 from Little Tikes.  The Answering Defendants deny the remaining allegations of this paragraph.

28.    Despite the CPSC report indicating that the Unapproved Cell Phone created a choking hazard, and despite assurances by Defendants that a modified Cell Phone, one with a screw in the hinge, had been manufactured since September of 2007, Little Tikes discovered that Defendants still had never recalled the unmodified KLS8033 product identified in the CPSC report from their retailers, nor had Defendants asked the retailers to stop selling the Unapproved Cell Phone.

**ANSWER:**

The Answering Defendants admit that prior to March 2008 Kids Station did not ask retailers to stop selling the Approved Cell Phone. The Answering Defendants deny the remaining allegations of this paragraph.

29.    Once Defendants finally started selling the modified cell phone, Defendants sold both the original Unapproved Cell Phone and the modified cell phone under the same SKU number. As such, it would be impossible for retailers to tell the difference between the two phones unless they physically examined each individual product. Indeed, as detailed below, Little Tikes came to learn in February of 2008 that consumers could still purchase the Unapproved Cell Phone from retailers, such as Wal-Mart.

**ANSWER:**

The Answering Defendants admit that the modified and unmodified versions of the Approved Cell Phone are sold under the same product numbers. The Answering Defendants deny the remaining allegations of this paragraph.

30.    On January 31, 2008, Channel KTTC in Rochester, Minnesota reported yet another choking incident involving a mother who had found a broken piece of the Unapproved Cell Phone in her child's mouth, but was able to retrieve the piece before he could swallow it. Detrimentally to Little Tikes, the report only identified the product as "a Little Tikes Toy," thereby leading the general public to believe that Little Tikes, rather than Defendants, was solely responsible for the problem.

**ANSWER:**

The Answering Defendants deny that the Approved Cell Phone was unapproved. Further answering, the Answering Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations of this paragraph, and therefore, deny those allegations.

31.    Additionally, despite assurances from Kid Station (Florida) that the design of the Unapproved Cell Phone had been modified in September of 2007, MGA purchased a Unapproved Cell Phone from a Wal-Mart store on February 1, 2008. Incredibly, stickers on the purchased phone indicated that the manufacture date of the product was September of 2007. Moreover, there were multiple Unapproved Cell Phones on the shelf, each having stickers with the same date of manufacture.

**ANSWER:**

The Answering Defendants admit the Approved Cell Phone was modified in September 2007, and denies that the Approved Cell Phone was unapproved.  The Answering Defendants lack sufficient knowledge or information to form a belief as to the remaining allegations of this paragraph, and therefore, deny those allegations.

32.    On February 5, 2008, due to the danger of grave and irreparable damage to its reputation and goodwill, and based on the continuing and inexplicable sale of products that were, by definition, unapproved under the Agreement, MGA sent, on behalf of Little Tikes, a letter to Defendants, terminating the Agreement. The February 5 letter is attached hereto as Exhibit C.

**ANSWER:**

The Answering Defendants admit that Exhibit C to the Complaint appears to be a true and correct copy of the letter Little Tikes sent to Kids Station on February 5, 2008 purporting to immediately terminate the License Agreement.  The Answering Defendants deny that the Approved Cell Phone was unapproved.  The Answering Defendants further deny the remaining allegations of this paragraph.

33.    In addition, Plaintiff's letter of February 5 identified numerous additional breaches of the Agreement, and served as Plaintiff's written notice of those material breaches of the Agreement pursuant to paragraph 14.1 of the Agreement. According to that paragraph, Defendants had thirty (30) days from the time of notice to cure the additional breaches.[1] As of March 6, 2008, Defendants had taken no actions to cure the numerous breaches identified in the February 5 letter. Indeed, Defendants have still taken no actions in an attempt to cure any of the breaches identified in the February 5 letter.

---

[1] According to § 14.2, Little Tikes could immediately terminate the Agreement if Kid Station (Florida), among other events, sold any Licensed Products that had not been approved pursuant to Article IX. According to § 14.1, Little Tikes could terminate the Agreement for other material breaches upon thirty (30) days written notice, and provided the breaches were not cured within that thirty day period.

**ANSWER:**

The Answering Defendants admit that Exhibit A to the Complaint appears to be a true and correct copy of the License Agreement and that Section 14 of the License Agreement provides for termination of the License Agreement in specific circumstances.  The Answering Defendants deny the allegations of footnote 1 to the extent they are inconsistent with Section 14 of the License Agreement.

**ANSWER:**

The Answering Defendants admit that Exhibit C to the Complaint appears to be a true and correct copy of the letter Little Tikes sent to Kids Station on February 5, 2008 purporting to immediately terminate the License Agreement. The Answering Defendants deny the remaining allegations of this paragraph.

34.   On February 19, 2008, Defendant, Kids Station (HK), not Kid Station (Florida), the purported Florida corporation that is the named party in the Agreement, filed suit in the Southern District of Florida. On March 17, 2008, Kids Station (HK) amended its complaint, which included counts for a declaratory judgment, breach of contract, breach of the implied covenant of good faith and fair dealing, tortuous interference with contract, and civil conspiracy. *See* Amended Complaint, attached hereto as Exhibit E. Kids Station (HK) also filed a motion for Temporary Restraining Order seeking, among other remedies, to enjoin MGA and Little Tikes from terminating the Agreement.

**ANSWER:**

The Answering Defendants admit that on February 14, 2008, Kids Station filed suit against Little Tikes and MGA in the Southern District of Florida and that Exhibit E to the Complaint appears to be a true and correct copy of Kids Station's Amended Complaint. The Answering Defendants further admit that Kids Station filed a motion for a temporary restraining order to enjoin MGA's and Little Tikes' improper purported termination of the License Agreement. The Answering Defendants deny the remaining allegations of this paragraph.

35.   In its Amended Complaint, Kid Station (HK) alleged that it, not Kid Station (Florida), has been the sole and exclusive party with whom Little Tikes entered the Agreement. Ex. E, ¶¶ 4, 14. This allegation comes despite the fact that the company description on the website located at the domain name <www.kidsstationtoys.com/homepage.php> states, "Kids Station Toys International, Ltd, which started in 1999 . . . has forged relationships with some of the biggest companies in the toy industry, including . . . Little Tikes . . . ." A printout of this website is attached hereto as Exhibit F.

**ANSWER:**

The Answering Defendants admit that Exhibit E to the Complaint appears to be a true and correct copy of the Amended Complaint that Kids Station filed in the Southern District of Florida. The Answering Defendants further admit that Kids Station is the intended party under the License

Agreement.  The Answering Defendants further admit that Exhibit F to the Complaint appears to

be a true and correct copy of a printout of Kids Station's website dated as of April 3, 2008.  The

Answering Defendants deny the remaining allegations of this paragraph.

36.    Based on these statements, and on information and belief, Defendant Newman is playing a shell game with the various entities that he controls. Plaintiff believes that Mr. Newman is a principal officer or shareholder of each of the Kids Station Entities. The Kids Station Entities are scattered across the globe, but each has some role in or responsibility for the actions complained of herein. The relationship between these different entities remains unclear.

**ANSWER:**

The Answering Defendants deny the allegations of this paragraph.

37.    In response to the original and Amended Complaints, MGA and Little Tikes filed motions to dismiss, or in the alternative, to transfer jurisdiction. On April 2, 2008, the Florida Court dismissed the action with prejudice to re-file in Florida, and denied all pending motions as moot. A copy of the Florida Court's April 2 order is attached hereto as Exhibit G.

**ANSWER:**

The Answering Defendants admit that MGA and Little Tikes filed motions to dismiss, or

in the alternative, to transfer jurisdiction of the case pending in the Southern District of Florida

after Kids Station filed its Complaint and Amended Complaint.  The Answering Defendants

further admit that Exhibit G to the Complaint appears to be a true and correct copy of Judge

King's April 2, 2008 Order.  The Answering Defendants deny the allegations of this paragraph to

the extent they are inconsistent with that Order.

38.    On March 11, 2008, while the Florida matter was still pending, Plaintiffs sent a third letter to Defendants, a copy of which is attached hereto as Exhibit H. The March 11 letter referenced a recent customer complaint to Kids Station (HK) regarding a battery found on the Unapproved Cell Phone that leaked battery acid. Additionally, the March 11 letter once again informed Defendants that the Agreement had been terminated under the immediate termination clause and, as a result, Defendants no longer were permitted to sell products bearing Little Tikes' trademarks. Therefore, because of the lack of a license, as well as the potential damage to Plaintiff's valuable goodwill, Plaintiffs further demanded that Defendants remove all of Defendants' products bearing Little Tikes trademarks from retailers' shelves.

**ANSWER:**

The Answering Defendants admit that Exhibit H to the Complaint appears to be a true and correct copy of the letter sent by Little Tikes to Kids Station on or about March 11, 2008, that the March 11, 2008 letter references what is referred to as a customer complaint regarding a Kids Station cell phone, and that the March 11, 2008 letter was sent to Kids Station while the litigation between the parties was pending in the Southern District of Florida. The Answering Defendants deny the remaining allegations of this paragraph.

39.   Defendants have not responded to the specific demands of the March 11 letter and, on information and belief, are continuing to sell products bearing Plaintiff's marks.

**ANSWER:**

The Answering Defendants admit that Kids Station continues to sell products under the Little Tikes mark in accordance with Kids Station's rights under the License Agreement and pursuant to this Court's April 18, 2008 Memorandum Opinion and Order. The Answering Defendants deny the remaining allegations of this paragraph.

40.   On March 14, 2008, the CPSC sent a new letter to Little Tikes regarding the Unapproved Cell Phone. A copy of the March 14 letter is attached hereto as Exhibit I. In the March 14 letter, the CPSC referenced the hinge cover of the Unapproved Cell Phone. The March 14 letter states that the Unapproved Cell Phone is "a hazardous substance as defined in section 2(f)(1)(D) of the Federal Hazardous Substances Act ("FHSA"), 15 U.S.C. § 1261.2(f)(1)(D), and the regulations at 16 C.F.R. § 1501.18(a)(9), and is a banned hazardous substance under section 2(q)(1)(A) of the FHSA...." The report states that the hinge cover is hazardous, and that "[b]ecause of the potential risk of injury to children, the staff requests that you stop sale and withhold distribution of any inventory of the [Unapproved Cell Phone]."

**ANSWER:**

The Answering Defendants admit that Exhibit I to the Complaint appears to be a true and correct copy of a March 14, 2008 letter from the CPSC relating to the Approved Cell Phone sold under Kids Station product number KSL8033. The Answering Defendants deny the allegations of this paragraph to the extent they are inconsistent with the CPSC's March 14, 2008 letter and

denies that the Approved Cell Phone or the KSL8033 was unapproved.

41.    Plaintiff received the March 14 letter on March 18, 2008. On March 19, 2008, MGA and Plaintiff sent a copy of this letter to Defendant Newman and again demanded that Defendants immediately cease the sale of this Unapproved Cell Phone, and all other products bearing the LITTLE TIKES mark.

**ANSWER:**

The Answering Defendants lack sufficient knowledge or information to form a belief as to

the truth of the allegations of this paragraph insofar as they relate to when Little Tikes received the

March 14, 2008 CPSC letter, and therefore, denies those allegations.  The Answering Defendants

deny the remaining allegations of this paragraph.

42.    The Unapproved Cell Phone contains a legend which states, "Designed and Licensed by *Kids Station Toys International Ltd."* (emphasis added). Plaintiff is uncertain whether this refers to Defendant Kids Station (Bermuda) or Defendant Kids Station (International). Regardless of the Defendant to which the notice refers, neither is a party to the Agreement, neither is authorized to use the LITTLE TIKES mark, and therefore, distribution by either is an infringement of Plaintiff's trademark rights.

**ANSWER:**

The Answering Defendants admit that the Approved Cell Phone is marked "Designed and

Licensed by Kids Station Toys International Ltd." and that Little Tikes approved that product and

its packaging.  The Answering Defendants deny the remaining allegations of this paragraph.

43.    Because of the apparent interchangeability of the various Defendants, it appears that Mr. Newman is using these various entities in an attempt to avoid liability, and that he, individually, is responsible for the actions of the various Defendants.

**ANSWER:**

The Answering Defendants deny the allegations of this paragraph.

**COUNT I**
**PIERCING THE CORPORATE VEIL**
**(NEWMAN)**

44.    Plaintiff realleges and incorporates herein paragraphs 1 through 43 of this Complaint.

**ANSWER:**

Newman repeats and incorporates its answers to paragraphs 1 through 43 of the Complaint as if set forth fully herein. The allegations of this Count are not directed to KSUS, KSTI and KSH, and therefore, no answer is necessary or required. To the extent an answer is required by KSUS, KSTI and KSH, they join the answer of Newman as set forth previously in this paragraph.

45.    There is a unity of interest between Defendant Newman and each of the Kids Station Entities named as Defendants. On information and belief, Defendant Newman is the president and primary shareholder of each Kids Station Entity and exercises total dominion and control over the finances and business operations of each Kids Station Entity.

**ANSWER:**

Newman denies the allegations of this paragraph. The allegations of this Count are not directed to KSUS, KSTI and KSH, and therefore, no answer is necessary or required. To the extent an answer is required by KSUS, KSTI and KSH, they join the answer of Newman as set forth previously in this paragraph.

46.    Based on information and belief, since the respective formations of the Kids Station Entities:

    (a)    none of the Kids Station Entities have observed corporate formalities;

    (b)    Newman did not maintain separate finances for the Kids Station Entities and commingled their funds and shifted funds among the various Defendants; and

    (c)    Newman has not maintained separate places of business for each of the Kids Station Entities. Indeed, each lists, at one time or another, a place of business or operation at P.O. Box 694660 in Miami, Florida.

**ANSWER:**

Newman denies the allegations of this paragraph. The allegations of this Count are not directed to KSUS, KSTI and KSH, and therefore, no answer is necessary or required. To the extent an answer is required by KSUS, KSTI and KSH, they join the answer of Newman as set forth previously in this paragraph.

47.    On information and belief, there is a unity of interest and ownership among the various Kids Station Entities and Newman.

**ANSWER:**

Newman denies the allegations of this paragraph.  The allegations of this Count are not directed to KSUS, KSTI and KSH, and therefore, no answer is necessary or required.  To the extent an answer is required by KSUS, KSTI and KSH, they join the answer of Newman as set forth previously in this paragraph.

48.    On information and belief, Kid Station (Florida), Kids Station (HK), Kids Station (U.S.), Kids Station (Bermuda) and Kids Station (International) were and are corporations in name only, and their primary equity holder and principal, Newman, is and has been the real party in interest who used the various Kids Station Entities as his alter ego to shield him from personal liability for the obligations he has incurred.

**ANSWER:**

Newman denies the allegations of this paragraph.  The allegations of this Count are not directed to KSUS, KSTI and KSH, and therefore, no answer is necessary or required.  To the extent an answer is required by KSUS, KSTI and KSH, they join the answer of Newman as set forth previously in this paragraph.

49.    The various Kids Station Entities are mere instrumentalities and alter egos of Newman who has defrauded Plaintiff by hiding behind the veil of the alleged separate existence of the various Kids Station Entities. Each of the various Kids Station Entities and Mr. Newman are, therefore, individually and jointly liable for the infringements of Little Tikes' trademarks.

**ANSWER:**

Newman denies the allegations of this paragraph.  Further answering, Newman states that the allegations of this paragraph, and of this Count generally, fail entirely to allege with particularity any circumstances constituting fraud, as required under relevant law.  The allegations of this Count are not directed to KSUS, KSTI and KSH, and therefore, no answer is necessary or required.  To the extent an answer is required by KSUS, KSTI and KSH, they join the answer of Newman as set forth previously in this paragraph.

50.    Allowing Newman to continue to perpetrate these activities permits him to be unjustly enriched and deprives Plaintiffs of the opportunity to defend and control the valuable goodwill associated with its trademarks.

**ANSWER:**

Newman denies the allegations of this paragraph.  The allegations of this Count are not

directed to KSUS, KSTI and KSH, and therefore, no answer is necessary or required.  To the

extent an answer is required by KSUS, KSTI and KSH, they join the answer of Newman as set

forth previously in this paragraph.

51.    Unless the corporate identities of the various Kids Station Entities are disregarded, Plaintiff will have no remedy for the breach of contract or trademark infringement stated above. Under the circumstances, observance of the fiction of the separate corporate existence of the various Kids Station Entities would sanction fraud and promote injustice. The purported corporate existence of the various Kids Station Entities should be disregarded, and liability should be imposed on Newman personally.

**ANSWER:**

Newman denies the allegations of this paragraph.  Further answering, Newman states that

the allegations of this paragraph, and of this Count generally, fail entirely to allege with

particularity any circumstances constituting fraud, as required under relevant law.  The allegations

of this paragraph are not directed to KSUS, KSTI and KSH, and therefore, no answer is necessary

or required.  To the extent an answer is required by KSUS, KSTI and KSH, they join the answer

of Newman as set forth previously in this paragraph.

## COUNT II
## FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(A))
## (ALL DEFENDANTS)

52.    Plaintiff realleges and incorporates herein paragraphs 1 through 51 of this Complaint.

**ANSWER:**

The Answering Defendants repeat and incorporate their answers to paragraphs 1 through

51 of the Complaint as if set forth fully herein.

A.    *Against Kids Station (Bermuda), Kids Station (International) and Newman*

53.    These Defendants had constructive knowledge of Little Tikes' ownership of and rights in its federally-registered mark pursuant to 15 U.S.C. § 1072, long prior to these Defendants' unauthorized distribution of goods under the Little Tikes mark. Furthermore, because of the lack of corporate formalities and the relatedness of these Defendants to the purported named party of the Agreement, these Defendants and their agents also had actual knowledge of Little Tikes' ownership of and rights in its federally-registered mark long prior to these Defendants' unauthorized conduct complained of herein.

**ANSWER:**

KSTI, KSH and Newman deny the allegations of this paragraph.  The allegations of this paragraph are not directed to KSUS, and therefore, no answer is necessary or required.  To the extent an answer is required by KSUS, they join the answer of KSTI, KSH and Newman as set forth previously in this paragraph.

54.    These Defendants have deliberately and willfully distributed and sold products bearing the LITTLE TIKES mark in an attempt to trade upon the enormous goodwill, reputation, and selling power established by Little Tikes under its mark, and to pass their goods off as Little Tikes' goods.

**ANSWER:**

KSTI, KSH and Newman deny the allegations of this paragraph.  The allegations of this paragraph are not directed to KSUS, and therefore, no answer is necessary or required.  To the extent an answer is required by KSUS, they join the answer of KSTI, KSH and Newman as set forth previously in this paragraph.

55.    Little Tikes has not consented to these Defendants' use of the LITTLE TIKES mark on the products distributed by these Defendants.

**ANSWER:**

KSTI, KSH and Newman deny the allegations of this paragraph.  The allegations of this paragraph are not directed to KSUS, and therefore, no answer is necessary or required.  To the extent an answer is required by KSUS, they join the answer of KSTI, KSH and Newman as set forth previously in this paragraph.

56.    These Defendants' unauthorized use of the LITTLE TIKES mark in connection with Defendants' promotion and provision of their goods has caused, is currently causing, and is likely to continue to cause, confusion, mistake or deception as to the affiliation, connection or association of these Defendants with Little Tikes in violation of 15 U.S.C. § 1114.

**ANSWER:**

KSTI, KSH and Newman deny the allegations of this paragraph.  The allegations of this paragraph are not directed to KSUS, and therefore, no answer is necessary or required.  To the extent an answer is required by KSUS, they join the answer of KSTI, KSH and Newman as set forth previously in this paragraph.

57.    The blatantly intentional nature of the aforementioned acts renders this an exceptional case under 15 U.S.C. § 1117(a).

**ANSWER:**

KSTI, KSH and Newman deny the allegations of this paragraph.  The allegations of this paragraph are not directed to KSUS, and therefore, no answer is necessary or required.  To the extent an answer is required by KSUS, they join the answer of KSTI, KSH and Newman as set forth previously in this paragraph.

58.    As a result of these Defendants' aforesaid conduct, Little Tikes has suffered substantial damage and irreparable harm constituting an injury for which Little Tikes has no adequate remedy at law. Unless this Court enjoins these Defendants' conduct, Little Tikes will continue to suffer irreparable harm.

**ANSWER:**

KSTI, KSH and Newman deny the allegations of this paragraph.  The allegations of this paragraph are not directed to KSUS, and therefore, no answer is necessary or required.  To the extent an answer is required by KSUS, they join the answer of KSTI, KSH and Newman as set forth previously in this paragraph.

B.    *Against Kid Station (Florida), Kids Station (HK), Kids Station (U.S.) and Mr. Newman*

59.    Defendant Kids Station (HK) has alleged in the Florida action that one of these Defendants was a party to the Agreement. Because of the relatedness of the Defendants, it is unclear which

Defendant was actually the party to the Agreement. Each of these Defendants had actual knowledge of Little Tikes' ownership of and rights in its federally-registered mark long prior to these Defendants' unauthorized use of the Little Tikes mark.

**ANSWER:**

KSUS and Newman admit that Kids Station is the intended party under the License Agreement. KSUS and Newman deny the remaining allegations of this paragraph. The allegations of this paragraph are not directed to KSTI or KSH, and therefore, no answer is necessary or required. To the extent an answer is required by KSTI and KSH, they join the answer of KSUS and Newman as set forth previously in this paragraph.

60.   These Defendants have deliberately and willfully distributed and sold products bearing the LITTLE TIKES mark after the February 5, 2008 termination of the Agreement, in an attempt to trade upon the enormous goodwill, reputation, and selling power established by Little Tikes under its mark, and to pass their goods off as Little Tikes' goods.

**ANSWER:**

KSUS and Newman deny the allegations of this paragraph. The allegations of this paragraph are not directed to KSTI or KSH, and therefore, no answer is necessary or required. To the extent an answer is required by KSTI and KSH, they join the answer of KSUS and Newman as set forth previously in this paragraph.

61.   Little Tikes has not consented to these Defendants' continued use of the LITTLE TIKES mark on the products distributed by these Defendants.

**ANSWER:**

KSUS and Newman deny the allegations of this paragraph. The allegations of this paragraph are not directed to KSTI or KSH, and therefore, no answer is necessary or required. To the extent an answer is required by KSTI and KSH, they join the answer of KSUS and Newman as set forth previously in this paragraph.

62.   These Defendants' unauthorized use of the LITTLE TIKES mark in connection with the promotion and provision of their goods has caused, is currently causing, and is likely to continue

to cause in the future, confusion, mistake or deception as to the affiliation, connection or association of these Defendants with Little Tikes in violation of 15 U.S.C. § 1114.

**ANSWER:**

KSUS and Newman deny the allegations of this paragraph.  The allegations of this paragraph are not directed to KSTI or KSH, and therefore, no answer is necessary or required.  To the extent an answer is required by KSTI and KSH, they join the answer of KSUS and Newman as set forth previously in this paragraph.

63.    The intentional nature of the aforementioned acts renders this an exceptional case under 15 U.S.C. § 1117(a).

**ANSWER:**

KSUS and Newman deny the allegations of this paragraph.  The allegations of this paragraph are not directed to KSTI or KSH, and therefore, no answer is necessary or required.  To the extent an answer is required by KSTI and KSH, they join the answer of KSUS and Newman as set forth previously in this paragraph.

64.    As a result of these Defendants' aforesaid conduct, Little Tikes has suffered substantial damage and irreparable harm constituting an injury for which Little Tikes has no adequate remedy at law. Unless this Court enjoins these Defendants' conduct, Little Tikes will continue to suffer irreparable harm.

**ANSWER:**

KSUS and Newman deny the allegations of this paragraph.  The allegations of this paragraph are not directed to KSTI or KSH, and therefore, no answer is necessary or required.  To the extent an answer is required by KSTI and KSH, they join the answer of KSUS and Newman as set forth previously in this paragraph.

**COUNT III**
**FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(A))**
**(ALL DEFENDANTS)**

65.    Plaintiff realleges and incorporates herein paragraphs 1 through 64 of this Complaint.

**ANSWER:**

The Answering Defendants repeat and incorporate their answers to paragraphs 1 through 64 of the Complaint as if set forth fully herein.

    *A.*    *Against Kids Station (Bermuda), Kids Station (International) and Newman*

66.    Defendants Kids Station (Bermuda), Kids Station (International) and Newman have deliberately and willfully sold, and are currently selling, products under the Little Tikes trademarks, despite the fact that none of Kids Station (Bermuda), Kids Station (International) or Newman was ever a party to the Agreement, in an attempt to trade on the long-standing and hard-earned goodwill, reputation and selling power established by Little Tikes in connection with its products, and in order to confuse consumers as to the origin and sponsorship of the Little Tikes branded products.

**ANSWER:**

KSTI, KSH and Newman deny the allegations of this paragraph.  The allegations of this paragraph are not directed to KSUS, and therefore, no answer is necessary or required.  To the extent an answer is required by KSUS, they join the answer of KSTI, KSH and Newman as set forth previously in this paragraph.

67.    The unauthorized and tortious conduct of Kids Station (Bermuda), Kids Station (International) and Newman has also deprived and will continue to deprive Plaintiffs of the ability to control the consumer perception of its goods marketed under the Little Tikes trademarks, placing the valuable reputation and goodwill of Plaintiffs in the hands of Kids Station (Bermuda), Kids Station (International) and Newman, over whom Plaintiffs have no control.

**ANSWER:**

KSTI, KSH and Newman deny the allegations of this paragraph.  The allegations of this paragraph are not directed to KSUS, and therefore, no answer is necessary or required.  To the extent an answer is required by KSUS, they join the answer of KSTI, KSH and Newman as set forth previously in this paragraph.

68.    The conduct of Kids Station (Bermuda), Kids Station (International) and Newman constitutes a false representation or description of the goods, which is likely to cause, and indeed, already has caused, confusion, mistake or deception as to the affiliation, connection or association of Kids Station (Bermuda), Kids Station (International) and Newman with Plaintiffs, and as to the origin, sponsorship or approval of Kids Station (Bermuda), Kids Station (International) and Newman and their goods, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1).

**ANSWER:**

KSTI, KSH and Newman deny the allegations of this paragraph. The allegations of this paragraph are not directed to KSUS, and therefore, no answer is necessary or required. To the extent an answer is required by KSUS, they join the answer of KSTI, KSH and Newman as set forth previously in this paragraph.

69. The blatantly intentional nature of the aforementioned acts renders this an exceptional case under 15 U.S.C. § 1117(a).

**ANSWER:**

KSTI, KSH and Newman deny the allegations of this paragraph. The allegations of this paragraph are not directed to KSUS, and therefore, no answer is necessary or required. To the extent an answer is required by KSUS, they join the answer of KSTI, KSH and Newman as set forth previously in this paragraph.

70. As a result of Kids Station (Bermuda)'s, Kids Station (International)'s and Newman's aforesaid conduct, Plaintiff has suffered substantial damage and irreparable harm constituting an injury for which it has no adequate remedy at law. Plaintiff will continue to suffer irreparable harm unless this Court enjoins this conduct.

**ANSWER:**

KSTI, KSH and Newman deny the allegations of this paragraph. The allegations of this paragraph are not directed to KSUS, and therefore, no answer is necessary or required. To the extent an answer is required by KSUS, they join the answer of KSTI, KSH and Newman as set forth previously in this paragraph.

B.    *Against Kids Station (Florida), Kids Station (HK), Kids Station (US) and Newman*

71. Defendants Kid Station (Florida), Kids Station (U.S.), Kids Station (HK) and Newman have deliberately and willfully sold, and are currently selling, products under the Little Tikes trademarks subsequent to the termination of the Agreement in an attempt to trade on the long-standing and hard-earned goodwill, reputation and selling power established by Little Tikes in connection with its products, and in order to confuse consumers as to the origin and sponsorship of the Little Tikes branded products.

**ANSWER:**

KSUS and Newman deny the allegations of this paragraph.  The allegations of this paragraph are not directed to KSTI or KSH, and therefore, no answer is necessary or required.  To the extent an answer is required by KSTI and KSH, they join the answer of KSUS and Newman as set forth previously in this paragraph.

72.   The unauthorized and tortious conduct of Kid Station (Florida), Kids Station (U.S.), Kids Station (HK) and Newman has also deprived and will continue to deprive Plaintiff of the ability to control the consumer perception of its goods marketed under the Little Tikes trademarks, placing the valuable reputation and goodwill of Plaintiff in the hands of Kid Station (Florida), Kids Station (U.S.), Kids Station (HK) and Newman, over whom Plaintiff has no control.

**ANSWER:**

KSUS and Newman deny the allegations of this paragraph.  The allegations of this paragraph are not directed to KSTI or KSH, and therefore, no answer is necessary or required.  To the extent an answer is required by KSTI and KSH, they join the answer of KSUS and Newman as set forth previously in this paragraph.

73.   The conduct of Kid Station (Florida), Kids Station (U.S.), Kids Station (HK) and Newman constitutes a false representation or description of the goods, which is likely to cause, and indeed, already has caused, confusion, mistake or deception as to the affiliation, connection or association of Kid Station (Florida), Kids Station (U.S.), Kids Station (HK) and Newman with Plaintiff, and as to the origin, sponsorship or approval of Kid Station (Florida), Kids Station (U.S.), Kids Station (HK) and Newman and their goods, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1).

**ANSWER:**

KSUS and Newman deny the allegations of this paragraph.  The allegations of this paragraph are not directed to KSTI or KSH, and therefore, no answer is necessary or required.  To the extent an answer is required by KSTI and KSH, they join the answer of KSUS and Newman as set forth previously in this paragraph.

74.   The intentional nature of the aforementioned acts renders this an exceptional case under 15 U.S.C. § 1117(a).

27

**ANSWER:**

KSUS and Newman deny the allegations of this paragraph.  The allegations of this paragraph are not directed to KSTI or KSH, and therefore, no answer is necessary or required.  To the extent an answer is required by KSTI and KSH, they join the answer of KSUS and Newman as set forth previously in this paragraph.

75.    As a result of Kid Station (Florida)'s, Kids Station (U.S.)'s, Kids Station (HK)'s and Newman's aforesaid conduct, Plaintiff has suffered substantial damage and irreparable harm constituting an injury for which it has no adequate remedy at law. Plaintiff will continue to suffer irreparable harm unless this Court enjoins this conduct.

**ANSWER:**

KSUS and Newman deny the allegations of this paragraph.  The allegations of this paragraph are not directed to KSTI or KSH, and therefore, no answer is necessary or required.  To the extent an answer is required by KSTI and KSH, they join the answer of KSUS and Newman as set forth previously in this paragraph.

**COUNT IV**
**VIOLATION OF THE ILLINOIS DECEPTIVE TRADE PRACTICES ACT**
**(815 ILCS 510/1 ET SEQ.)**
**(ALL DEFENDANTS)**

76.    Plaintiff realleges and incorporates herein paragraphs 1 through 75 of this Complaint.

**ANSWER:**

The Answering Defendants repeat and incorporate their answers to paragraphs 1 through 75 of the Complaint as if set forth fully herein.

77.    The actions of each of the Defendants complained of herein constitute deceptive trade practices in violation of 815 ILCS 510/2 in that they are likely to cause confusion or misunderstanding as to source, sponsorship or approval of the Defendants' products sold under the Little Tikes trademark. Defendants' deceptive conduct also creates a likelihood of confusion as to the affiliation, connection or association of its goods with Plaintiffs' well-known marks. Furthermore, Defendants' conduct creates false or misleading representations of fact as to Plaintiff's connection to Defendants' sub-standard products.

**ANSWER:**

The Answering Defendants deny the allegations of this paragraph.

78.   Because Defendants' had notice of Plaintiff's prior use of and rights in the Little Tikes trademarks, Defendants willfully engaged in deceptive trade practices in violation of Illinois law.

**ANSWER:**

The Answering Defendants deny the allegations of this paragraph.

79.   As a result of Defendants' willful and malicious conduct, Plaintiff is likely to suffer, and has in fact already suffered, irreparable harm for which it has no adequate remedy at law. Unless this Court enjoins Defendants' conduct, Plaintiff will continue to suffer irreparable harm.

**ANSWER:**

The Answering Defendants deny the allegations of this paragraph.

## COUNT V
## FEDERAL TRADEMARK DILUTION (15 U.S.C. § 1125(C))
## (ALL DEFENDANTS)

80.   Plaintiff realleges and incorporates herein paragraphs 1 through 79 of this Complaint.

**ANSWER:**

The Answering Defendants repeat and incorporate their answers to paragraphs 1 through

79 of the Complaint as if set forth fully herein.

81.   Defendants' use of Plaintiff's distinctive and famous "LITTLE TIKES" trademark without Plaintiff's consent is likely to dilute the distinctive quality of the "LITTLE TIKES" mark in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

**ANSWER:**

The Answering Defendants deny the allegations of this paragraph.

82.   Defendants' acts complained of herein, specifically Defendants' use of Plaintiff's "LITTLE TIKES" trademarks, will tarnish, and indeed, already have tarnished, the reputation of Plaintiff's "LITTLE TIKES" mark in the market place. Defendants' acts have greatly damaged Plaintiff and, unless restrained and enjoined, will continue to damage Plaintiff. Plaintiff does not have an adequate remedy at law.

**ANSWER:**

The Answering Defendants deny the allegations of this paragraph.

## COUNT VI
## COMMON LAW UNFAIR COMPETITION
## (ALL DEFENDANTS)

83.    Plaintiff realleges and incorporates herein paragraphs 1 through 82 of this Complaint.

**ANSWER:**

The Answering Defendants repeat and incorporate their answers to paragraphs 1 through

82 of the Complaint as if set forth fully herein.

84.    The aforesaid conduct of each of the Defendants constitutes unfair competition in that such conduct is likely to cause members of the public and trade, and actual or potential customers of Plaintiff, to believe that Defendants and their goods are in some way sponsored by, affiliated with or otherwise connected to Plaintiff, when in fact they are not. These actions enable Defendants to trade on and deprive Plaintiff of the benefit of the goodwill in the "LITTLE TIKES" trademark.

**ANSWER:**

The Answering Defendants deny the allegations of this paragraph.

85.    Defendants' acts described above constitute unfair competition in violation of Illinois common law, as the aforementioned acts amount to an intentional misappropriation of Plaintiff's trademarks, reputation and commercial advantage. As a result of their wrongful actions, Defendants will be unjustly enriched.

**ANSWER:**

The Answering Defendants deny the allegations of this paragraph.

86.    As a result of Defendants' aforesaid conduct, Plaintiff has suffered substantial damage and irreparable harm constituting and injury for which Plaintiff has no adequate remedy at law. Unless this Court enjoins Defendants' conduct, Plaintiff will continue to suffer irreparable harm.

**ANSWER:**

The Answering Defendants deny the allegations of this paragraph.

## COUNT VII
## BREACH OF CONTRACT
## (KID STATION (FLORIDA), KIDS STATION (U.S.), KIDS STATION (HK), NEWMAN)

87.    Plaintiff realleges and incorporates herein paragraphs 1 through 84 of this Complaint.

**ANSWER:**

The Answering Defendants repeat and incorporate their answers to paragraphs 1 through 86 of the Complaint as if set forth fully herein.

88.    Plaintiff Little Tikes entered into the Agreement with Kid Station (Florida). The Agreement was signed and executed on behalf of Kid Station (Florida) by Newman. While it is unclear if Kid Station (Florida) currently exists, or ever has existed, Little Tikes has, at all times, performed its obligations under the Agreement.

**ANSWER:**

The Answering Defendants admit that Kids Station is the intended party to the License Agreement.  The Answering Defendants deny the remaining allegations of this paragraph.

89.    Newman and Kid Station (Florida), or whatever purported entity actually entered into the Agreement, has, however, knowingly and intentionally breached its obligations under the Agreement by, among other things:

(a)    Continuing to sell, and failing to remove from retailers' shelves, Licensed Products under the Agreement that were, by definition, unapproved because they do not comply with safety standards of the CPSC. Specifically, Defendants sold and are continuing to sell the Unapproved Cell Phone, which was defined by the CPSC as a hazardous substance under the Federal Hazardous Substances Act, 15 U.S.C. § 1261.2(f)(1)(D).

(b)    Failing to comply repeated requests to provide, under Section 3.1 of the Agreement, samples of each Licensed Product to Little Tikes. Despite these repeated requests, Kid Station (Florida) has failed to provide samples of each Licensed Product. While MGA and Little Tikes have received samples of a few products, neither MGA nor Little Tikes has received samples of all products, nor in the quantities of samples required by the Agreement or within the mandated time frames.

(c)    Failing to provide any of the documents specified under Sections 4.8 or 4.9 of the Agreement. Specifically, Kid Station (Florida) has not provided certain distribution reports, which are required to include, at the very least, Kid Station (Florida)'s product development plans, advertising and merchandising and promotional activities. Kid Station (Florida) has also not provided a report of actual unit sales by individual retail account for the previous calendar year. Finally, Kid Station (Florida) has not

provided a forecast report containing an estimate of units sales of Licensed Products and gross dollar volume sales of Licensed Product for that calendar quarter.

(d)     Failing to submit new products designs for 2008 pursuant to its obligations under Section 5.3 of the Agreement. Specifically, Kid Station (Florida) has not introduced at least three (3) different SKUs of Licensed Products, the majority of which are required to contain new aesthetic or functional features.

(e)     Failing to meet its obligations to maintain an adequate telephone support service under Section 8.1 of the Agreement. The reports MGA and Little Tikes have received, reviewed and analyzed from Kid Station (Florida) deviate substantially from the standards set forth in the Agreement. For a large portion of the calls, no individual name was filled in and no information about the complaints was filled in, so MGA and Little Tikes could not determine the nature of the call. The gaps in information lead to the logical conclusion that Kid Station (Florida) is not providing a comparable level of service offered by Little Tikes, in direct violation of the terms set forth in Section 8.1. Additionally, the voluminous amount of calls Little Tikes' own Consumer Service has received regarding the lack of response from Kid Station (Florida)' s customer service confirm Kid Station (Florida)' s failure to comply with this provision of the Agreement.

(f)     Failing to provide testing reports for Kid Station (Florida)'s Little Tikes products pursuant to Section 9.2 of the Agreement as repeatedly requested by the Quality Assurance divisions of both MGA and Little Tikes. Given current public perceptions of problems in the toy industry, it is of vital importance to both MGA and Little Tikes that the Licensed Products are safe for children. Kid Station (Florida) has failed to consistently provide testing reports.

(g)     Failing to provide either MGA or Little Tikes with its marketing plan for 2008, in direct violation of Kid Station (Florida)'s obligations under Section 12.2 of the Agreement.

(h)     Failing, under Exhibit A of the Agreement, to provide either MGA or Little Tikes with written meeting reports following any meeting between Kid Station (Florida) and a buyer at the following retailers: Wal-Mart, Kmart, Target, Toys R Us, Kay Bee Toys or FAO Schwarz. Kid Station (Florida) has repeatedly failed to provide these reports on a consistent basis.

(i)     Selling Licensed Products outside the Territory as defined in section 1.7 of the Agreement. Specifically, Defendants' sold and marketed the Licensed Products in Puerto Rico.

As a result of Defendants' willful breach of the Agreement, Little Tikes has suffered substantial damage in an amount to be proven at trial.

**ANSWER:**

The Answering Defendants deny the allegations of this paragraph.

WHEREFORE, having fully answered all of the allegations directed against them in the Complaint, Defendants Kids Station (U.S.) Incorporated, Kids Station Toys International, Ltd., Kids Station Toys International Holding, GmbH and Elliot S. Newman pray: (1) that Little Tikes' Complaint be dismissed with prejudice, (2) that judgment be entered in favor of Defendants on the Complaint, (3) that Defendants be awarded such other and further relief as the nature of this case may require, including but not limited to, an award of attorneys' fees and costs, or such other relief that this Court deemed just and proper.

## AFFIRMATIVE DEFENSES

The Answering Defendants give notice that they may rely upon the following affirmative defenses to the extent applicable and supported by facts either presently known or as uncovered during discovery. The Answering Defendants do not hereby assume the burden of proof on such defenses that would otherwise rest on Little Tikes, the plaintiff in the case.

1.    Little Tikes' claims are barred for failure to state a claim upon which relief can be granted.

2.    Little Tikes' claims are barred based upon the doctrines of laches and estoppel.

3.    Little Tikes' claims are barred based upon the doctrine of waiver or acquiescence.

4.    Little Tikes' claims are barred by the doctrine of unclean hands.

5.    Little Tikes' claims are barred because Kids Station has not infringed or diluted the asserted trademark rights or any other rights of Little Tikes.

6.    Little Tikes' claims are barred because the conduct complained of in the Complaint is permitted by an express and/or implied license and/or is otherwise a justified, permitted, legitimate and fair use.

7.    Little Tikes' claims are barred because Little Tikes has suffered no damages.

8.      Little Tikes' claims are barred because its alleged damages are speculative and because of the impossibility of the ascertainment and allocation of the alleged damages.

9.      Little Tikes' claims are barred to the extent Little Tikes has failed to mitigate its damages, if any.

10.     Little Tikes' claims are barred because Little Tikes had full knowledge of and/or assumed the risk that caused, contributed, or resulted in Little Tikes' damages, if any.

11.     Little Tikes' claims are barred because the Court does not possess personal jurisdiction over the Answering Defendants.

12.     Little Tikes' claims are barred because venue is not proper in this district as to Little Tikes' claims against the Answering Defendants.

13.     Little Tikes' claims for piercing the corporate veil and fraud are barred because Little Tikes has failed to allege with particularity any circumstances constituting fraud, as required under relevant law.

The Answering Defendants reserve the right to add to or delete from its affirmative defenses as discovery proceeds.


Dated: June 6, 2008                     Respectfully submitted,


                                        /s/ *Charles B. Leuin*
                                        Paul T. Fox
                                        Charles B. Leuin
                                        Paul J. Ferak
                                        Jason B. Elster
                                        Greenberg Traurig, LLP
                                        77 West Wacker Drive, Suite 2500
                                        Chicago, Illinois 60601
                                        Tel: (312) 456-8400
                                        Fax: (312) 456-8435

                                        Attorneys for Defendants Kids Station
                                        (U.S.) Incorporated, Kids Station Toys
                                        International, Ltd., Kids Station Toys
                                        International Holding, GmbH and Elliot S.
                                        Newman

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that a copy of the foregoing ***Answer and Affirmative Defenses of Defendants Kids Station (U.S.) Incorporated, Kids Station Toys International, Ltd., Kids Station Toys International Holding, GmbH and Elliot S. Newman*** has been served upon the individuals listed below via the CM/ECF electronic filing service system on this 6th day of June 2008:

Robert E. Browne
Lara V. Hirshfeld
Maurice Edward Finnegan, III
Michael Gary Kelber
**NEAL, GERBER & EISENBERG LLP**
Two N. LaSalle Street, Suite 2200
Chicago, IL  60602-3801

*Counsel for Plaintiff/Counterdefendant*

_____ /s/ *Charles B. Leuin* _____