UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE LITTLE TIKES COMPANY, an Ohio corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:08-cv-1935 |
| v. | ) ) | Hon. Joan B. Gottschall |
| KID STATION TOYS, LTD., a Florida corporation, | ) ) ) | |
| KIDS STATION TOYS, LTD., a Hong Kong corporation, | ) ) ) | |
| KIDS STATION (U.S.) INCORPORATED, a Florida corporation, | ) ) ) | |
| KIDS STATION TOYS INTERNATIONAL, LTD., a Bermuda corporation, | ) ) ) ) | |
| KIDS STATION TOYS INTERNATIONAL HOLDING, GmbH a Switzerland corporation, and | ) ) ) ) | |
| MR. ELLIOT S. NEWMAN an individual, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM IN SUPPORT OF THE LITTLE TIKES COMPANY'S
MOTION TO DISMISS**

Defendant, Kids Station Toys Ltd. ("Kids Station (HK)"), a Hong Kong Corporation,

filed a Counterclaim asserting seven counts against Plaintiff, The Little Tikes Company ("Little

Tikes"), and its parent, MGA Entertainment, Inc. ("MGA") for breach of contract (Count I),

breach of the implied covenant of good faith and fair dealing (Count II), declaratory judgment

against Little Tikes (Count III), declaratory judgment against Little Tikes and MGA (Count IV), tortious interference with contract (Count V), civil conspiracy (Count VI), and unjust enrichment (Count VII). *See* Counterclaim, ¶¶ 49-88. Counts I to VI are all based upon a License Agreement ("the Agreement") between Little Tikes and an entity specifically identified in the Agreement as "Kid Station Toys Ltd., a Florida Corporation" and referred to herein as "Kid Station (Florida)". Agreement, attached as Ex. A to Compl.[1] However, despite its claims to the contrary, Kids Station (HK) is not the real party to the Agreement. *See* Counterclaim at ¶ 14. Indeed, there is no evidence that it was either the intended party to the Agreement or the party with whom Little Tikes knowingly interacted since entering the Agreement over four years ago. And, as a non-party to the Agreement, Kids Station (HK) lacks standing to bring Count I to VI of its Counterclaim, and, further, is not a real party in interest as required by Rule 17(a) of the Federal Rules of Civil Procedure. Accordingly, Counts I to VI of the Counterclaim must be dismissed.

In addition to the fact that Kids Station (HK) lacks standing to bring Counts I through VI of its Counterclaim, as explained below, the claims of any Defendants for breach of the implied covenant of good faith and fair dealing, civil conspiracy, and unjust enrichment must also be dismissed for failure to state a claim as required by Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Accordingly, Little Tikes and MGA respectfully request that this Court dismiss Kids Station (HK)'s Counterclaim.

## I.    RELEVANT FACTS

---

[1] In the interest of saving paper, Little Tikes and MGA refer to the relevant exhibits attached to the Complaint rather than reattaching them hereto.

On or about December 8, 2003, Little Tikes and an entity purporting to be "Kid Station Toys Ltd., a Florida corporation," entered into the Agreement, which granted Kid Station (Florida) the exclusive right to use the valuable and federally registered LITTLE TIKES trademark in connection with certain categories and types of children toys. *See* Ex. A to Compl. at introduction and ¶ 2.1. No other entity or individual is identified as a party in the Agreement. *See id.* Given the need for prompt accountability and recourse for issues of liability typically associated with manufacturing, distributing, and selling toys to children, Little Tikes, like any licensor of a well-known and valuable trademark, considered it essential that the Agreement name a domestic corporation as a counter-party. To further control the licensee under the Agreement, Kid Station (Florida) had no right to sublicense any of the rights licensed, and could not sell, transfer, lease or assign the Agreement or the rights granted under the Agreement, or any part thereof, without the prior written consent of Little Tikes. Ex. A to Compl. at § 2.2, Article XIX. Little Tikes never received a request to sell, transfer, lease or assign the rights under the Agreement. Oakes Decl. at ¶ 3.

There is no dispute that the Agreement is a valid and enforceable contract. Experienced business people on behalf of Kid Station (Florida) and Little Tikes fairly and freely entered into the Agreement. *Id.* at ¶ 4. The Agreement was signed in his purported capacity as President of Kid Station (Florida) by Elliot Newman – a defendant in this litigation – on behalf of Kid Station (Florida). Ex. A to Compl. at signature block. Mr. Newman is also the chief officer of Kids Station (HK). *See* Declaration of Charles Frey ("Frey Decl."), ¶ 3.

On or about January 1, 2006, Little Tikes and the same entity again purporting to be "Kid Station, Ltd., a Florida corporation" entered an amendment to the Agreement ("the Addendum") to expand the types of products that the original license covered. *See* Ex. A to Ex. A to Compl.

at ¶ 1.  Again, experienced business people on behalf of Kid Station (Florida) and Little Tikes fairly and freely entered into the Addendum.  Oakes Decl. at ¶ 5.  And, like the Agreement, the Addendum was signed by Mr. Newman in his purported capacity as President on behalf of Kid Station (Florida).  Ex. A to Ex. A to Compl. at signature block.  Notably, at no time during the negotiation and execution of the Addendum did anyone indicate to Little Tikes that Kid Station (Florida) was not the correct party to the Agreement or Addendum.  Oakes Decl. at ¶ 5.  For that matter, no one, including Mr. Newman, ever said to amend the Agreement to indicate that Kids Station (HK) was the real party to the Agreement and Addendum.  *Id.*

But despite the clear designation in the Agreement and Addendum of the parties, Kids Station (HK) claims that it, not Kid Station (Florida), is the party with whom Little Tikes entered the Agreement and that it performed the obligations under the Agreement.   Counterclaim at ¶ 14.  Kids Station (HK)'s claim is surprising, because throughout the performance of the Agreement the entity with whom Little Tikes interacted never identified itself as a Hong Kong corporation or gave any indication to Little Tikes that it was incorporated in Hong Kong.  Oakes Decl. at ¶ 13.  In fact, business correspondence received by Little Tikes identified a Florida address, not a Hong Kong address, and the payments received under the Agreement did not identify Kids Station (HK), but rather a bank located in Bermuda with no mention of Kids Station (HK).  *Id.*

Furthermore, the company description on the website located at the domain name <www.kidsstationtoys.com/homepage.php> states, "Kids Station Toys International, Ltd, which started in 1999…has forged relationships with some of the biggest companies in the toy industry, Lttle Tikes…," which does not suggest that Kids Station (HK) is the party entering agreements with companies in the toy industry like Little Tikes, but, rather, Kids Station Toys International,

Ltd -- a completely different entity than either Kids Station (HK) or Kid Station (Florida). Frey Decl. at ¶ 2. This entity is also identified on the current packaging used for the products manufactured and sold under the Agreement, which states "Designed and Licensed by Kids Station Toys International Ltd." Oakes Decl. at ¶ 14. It is unclear whether the website and packaging refer to a Swiss company or a Bermuda company of this same name that are also owned by Mr. Newman. But, it is clear that Kids Station (HK) is one of several corporate entities scattered across the globe under the "Kid(s) Station" umbrella, including an existing Florida corporation named Kids Station (U.S.) Incorporated. *See* Answer to Complaint, ¶¶ 3-6. It appears that Mr. Newman may have created these various entities for tax or liability purposes. For purposes of this Motion, Little Tikes believes this Court must rely on the designated Florida corporation in the Agreement and ratified in a 2006 Amendment to the Agreement, and, thus, deem the contracting party to the Agreement to be Kid Station (Florida).

Both prior to and after the sale of Little Tikes from Newell Rubbermaid Inc. to MGA in 2006, Little Tikes was made aware on numerous occasions of consumer complaints over the quality and safety of the goods manufactured and sold by Kid Station (Florida) under the LITTLE TIKES trademark[2]. Oakes Decl. at ¶¶ 7-8. To that end, Little Tikes received multiple reports in 2007 from the Consumer Product Safety Commission ("CPSC") regarding possible hazards associated with the licensed products manufactured and sold by one or more of the Defendants. *Id.* at ¶ 8. As a result, Little Tikes repeatedly contacted Kid Station (Florida) regarding these quality and product safety issues. Id. at ¶ 10. It also raised Kid Station (Florida)'s non-compliance with other provisions of the Agreement. *Id.* Kid Station (Florida)

---

[2] A complete history of the relationship between Little Tikes and Kid Station (Florida) under the Agreement is set forth in Little Tikes' Complaint (see ¶¶ [cite]) as well as Little Tikes Memorandum of Law in Support of its Motion for Temporary Restraining Order (see pp. [cite]). However, because many of these facts are not relevant to this Motion, here, Little Tikes has summarized this long and detailed history.

either never responded to Little Tikes' letters or denied that there were any problems. *Id*. Finally, because of the threat of irreparable damage to its reputation and goodwill by the continuing sale of products that created a potential safety hazard, on February 5, 2008, MGA sent on behalf of Little Tikes a letter to Mr. Newman, terminating the Agreement immediately and providing thirty days notice of termination based on the other breaches. *Id*. at ¶¶ 11-12.

Rather than responding to Little Tikes' February 5 letter, on February 14, 2008, Kids Station (HK) filed a lawsuit against Little Tikes and MGA in the Southern District of Florida. It was only after Kids Station (HK) filed that lawsuit that Little Tikes discovered, to its dismay, that the entity Kid Station (Florida) – who it believed it was conducting business with for over four years under the Agreement – does not and never did exist. Oakes Decl. at ¶ 6. Shortly thereafter, on Little Tikes' Motion, the case in the Southern District of Florida was dismissed. *Id*.

Although Little Tikes had terminated the Agreement and Kids Station (HK)'s case in Florida was dismissed, one or more of the Defendants continued to manufacture and sell products under the LITTLE TIKES mark. *See* Answer to Compl. at ¶ 39. Moreover, none of the Defendants took any actions to cure the other breaches of the Agreement that were identified by Little Tikes in the February 5, 2008 letter. Oakes Decl. at ¶ 10. As a result, Little Tikes filed this lawsuit on April 4, 2008 against Defendants for piercing the corporate veil (Count I), federal trademark infringement (Count II), federal unfair competition (Count III), violation of Illinois Deceptive Trade Practices Act (Count IV), federal trademark dilution (Count V), common law unfair competition (Count VI), and breach of contract (Count VII). See Complaint at ¶¶ 44-89. On May 22, 2008, Kids Station (HK), speaking only on its behalf, answered the Complaint and asserted a Counterclaim that contained seven counts. See Answer to Compl. Specifically, the

Counterclaim asserts Count I against Little Tikes for breach of contract, Count II against Little Tikes for breach of the implied covenant of good faith and fair dealing; Count III against Little Tikes for a declaratory judgment that there is no basis for Little Tikes' termination of the Agreement, Count IV against Little Tikes and MGA for a declaratory judgment that there is no basis for Little Tikes' and MGA's demands under the Agreement, Count V against MGA for Tortious Interference with Contract, Count VI against Little Tikes and MGA for Civil Conspiracy, and, in the alternative, Count VII against Little Tikes and MGA for unjust enrichment. *See id.* at ¶¶ 49-88.

## II. ARGUMENT

### A. As a Non-Party To the Agreement, Kids Station (HK) Lacks Standing To Bring Its Counterclaim

Under the case-or-controversy requirement of Article III of the Constitution, a party must demonstrate standing to sue in federal court by establishing (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *see also Allen v. Wright*, 468 U.S. 737, 750-51, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). In addition to constitutional-standing requirements, there is a prudential limitation on a federal court's power to hear cases that a litigant cannot sue in federal court to enforce the rights of third parties and must be the "real party in interest" – as set forth in Rule 17 of the Federal Rules of Civil Procedure. *See Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 757 (7th Cir. 2008) (citations omitted); *Lee v. Deloitte & Touche LLP*, 428 F.Supp.2d 825, 829 (N.D. Ill. 2006). In fact, Rule 17(a) is a procedural rule requiring that the complaint be brought in the name of the party to whom that claim "belongs" or the party who "according to the governing substantive law, is entitled to enforce the right." *Rawoof*, 521 F.3d

at 757 (quoting 6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 1543, at 334 (2d ed.1990)). *See also* FRCP 17(a) ("An action must be prosecuted in the name of the real party in interest.")

Kids Station (HK)'s Counterclaims I through VI (collectively, "Contract Claims") all rest on the faulty premise that Kids Station (HK) is a party to the Agreement, which give it standing to assert these claims. Indeed, the Agreement specifically states that it is between Little Tikes and an entity named "Kid Station Toys Ltd., a Florida corporation." Ex. A to Compl. at § 1. Kids Station (HK) was not the intended party, the actual party, or an intended third-party beneficiary to the Agreement. Thus, Kids Station (HK) has no right to enforce any rights under the Agreement. Moreover, Kids Station (HK) could not suffer an injury relating to the Agreement, nor could it receive redress for any such injury. As a result, Kids Station (HK) is not a real party in interest and lacks standing to bring the Contract Claims, which should consequently be dismissed.

Kids Station (HK) attempts to side-step the fact that it is not a party to the Agreement by alleging that Little Tikes, or someone acting on its behalf, prepared the Agreement and erroneously named a Florida corporation rather than Kids Station (HK). This is neither true nor relevant. First, the Agreement was executed by sophisticated business people who never indicated that the wrong entity was named in 2003 in connection with the Agreement or in 2006 in connection with the Addendum. Oakes Decl. at ¶¶ 5-6. Indeed, Kids Station (HK)'s President Elliot Newman executed the Agreement in 2003 and the Addendum in 2006, which both clearly identified the company as "Kid Station Toys Ltd., a Florida Corporation." If the entity was wrong, certainly the President should have recognized that fact.

Second, it was essential to Little Tikes, which was licensing its valuable trademark, that a domestic corporation be named as a party to the Agreement for liability and jurisdictional purposes. Little Tikes needed to be able to have a domestic partner to respond to exactly the type of issues the CPSC has raised with respect to products manufactured and sold under the Agreement. It needed to have someone it could reach by domestic legal process if the need arose. Therefore, it is not plausible that the parties - at least Little Tikes - would have neglected to include a domestic entity in the Agreement or that a Florida corporation was mistakenly included. Ironically, only now, after exactly such issues of product quality and breach have arisen, does Kids Station (HK) – a Hong Kong corporation – for the first time assert that it is the party to the Agreement.

Clearly, Kids Station (HK) is playing a shell game to avoid ultimate liability. The Agreement and the Addendum identify a "Florida corporation," the toys manufactured under the LITTLE TIKES mark and the company website identify "Kids Station Toys International Ltd." – either a Bermuda or a Swiss corporation also owned by Mr. Newman (Oakes Decl. at ¶ 14; Frey Decl. at ¶ 4), and the Counterclaim identifies a Hong Kong corporation. The website of www.kidstationtoys.com asserts that Kids Station Toys is experienced in musical instruments and youth electronics and has several toy company licenses, including Mattel. Frey Decl. at ¶ 4. Thus, Defendant's chief operating officer, Mr. Newman, has represented to consumers purchasing the toys and the U.S. government, including, the CPSC, that his company is Kids Station Toys International Ltd. *See id*. at ¶¶ 3-4. Curiously, Mr. Newman chose instead to file the Counterclaim on behalf of a different entity – Kids Station (HK) – and not to file the Counterclaim on behalf of any of the other Defendants. Regardless, a party cannot arbitrarily choose between its various corporate entities depending on its business or legal objectives or to

attempt to avoid its obligations. Kids Station (HK) cannot unilaterally change the parties to the Agreement and Addendum to establish standing.

Moreover, Little Tikes could not possibly have known that Kids Station (HK) – a Hong Kong corporation, not a Florida corporation – was the entity with whom it supposedly conducted business under the Agreement or that it was the party purportedly performing the obligations under the Agreement. In addition to the fact that the Agreement and the Addendum clearly state that a Florida Corporation is the contracting party, Little Tikes was only aware that: (i) the contracting party was located in Florida, (ii) the contracting party's owners and managers were located in Florida, (iii) all manufacturing-related correspondence Little Tikes received in connection with the Agreement clearly stated a Florida address with no mention of a Hong Kong corporation (although Little Tikes was aware that the toys themselves were engineered and made in Hong Kong or China), and (iv) Little Tikes received payments under the Agreement from a bank in Bermuda. *See* Oakes Decl. at ¶ 13. Moreover, in the four years since the parties first entered into the Agreement, no one acting on behalf of Kids Station (HK) ever corrected the Agreement or the Addendum, or gave Little Tikes any indication that it was dealing with a Hong Kong corporation. *Id.* at ¶ 5. Thus, Little Tikes never questioned the identity of Little Tikes' licensee or believed a Hong Kong corporation had any right to use its valuable LITTLE TIKES mark because it never had any reason to do so until February, 2008, when Kids Station (HK) filed the lawsuit in the Southern District of Florida claiming to be the party to the Agreement and informing Little Tikes that Kid Station (Florida) does not exist. *Id.* at ¶ 6. Surely, the burden of correcting the identity of the licensee in the Agreement and the Addendum did not fall upon Little Tikes, but, rather, upon Kids Station (HK), the party who possessed the requisite information and knowledge to do so.

As an issue of fact, Kids Station (HK) is not a party to the Agreement that it alleges was breached by Little Tikes.  Kids Station (HK) cannot suffer an injury related to the Agreement, receive redress for any injury related to the Agreement, or enforce any rights under the Agreement.  As a result, as a matter of law, Kids Station (HK) lacks standing to bring the Contract Claims and is not the real party in interest to bring such Contract Claims.  Accordingly, the Counterclaim should be dismissed for lack of standing and noncompliance with Rule 17(a), Fed. R. Civ. P.  *See Marina Management Services, Inc. v. Vessel My Girls*, 202 F.3d 315, 318 (C.A.D.C. 2000).

### B.    Count II for Breach of the Implied Covenant of Good Faith and Fair Dealing Should be Dismissed Because Kids Station (HK) Asserted a Separate Count for Breach of Contract

Kids Station (HK) has asserted a claim against Little Tikes for breaching the implied covenant of good faith and fair dealing.  Counterclaim, Count II at ¶¶ 57-65.  Illinois does not recognize an independent cause of action in tort for breach of the implied covenant of good faith and fair dealing.  *Puthusserill v. Shell Oil Co.*, 2003 WL 22494790 *2-3 (N.D.Ill. Nov.4, 2003) (citing *Voyles v. Sandia Mortgage Corporation*, 196 Ill.2d 288, 297 (Ill. 2001)).  And while a contractually-based claim for breach of the implied covenant may legally be alleged, such claim would merely amount to breach of contract: "the obligation to deal in good faith is implied by Illinois law into every contract and breach of that duty is simply a breach of the underlying contract." *Batteast Constr. Co. v. Public Bldg. Comm'n*, 195 F.Supp.2d 1045, 1051 (N.D.Ill.2001).  Thus, when a plaintiff asserts a separate breach of contract claim in addition to its claim for breach of the implied covenant of good faith and fair dealing, it is superfluous and should be dismissed. *In re Wireless Telephone 911 Calls Litigation*, 2005 WL 1564978 (N.D.Ill. June 03, 2005); *see also National Serv. Ass'n, Inc. v. Capitol Bankers Life Ins. Co., Inc.*, 832 F.Supp. 227, 232 (N.D.Ill.1993) (breach of implied covenant of good faith and fair dealing is not

a cause of action independent of breach of contract).  Here, Kids Station (HK) has asserted a separate breach of contract claim against Little Tikes in Count I of its Counterclaim.  *See* Counterclaim, Count I at ¶¶ 49-56.  That claim subsumes Count II.  Accordingly, the Court should dismiss Count II – that Little Tikes breached the implied covenant of good faith and fair dealing – as superfluous.

**C.    Count VI for Civil Conspiracy Should Be Dismissed Because There Can Be No Conspiracy Between Little Tikes and Its Parent MGA**

Kids Station (HK)'s claim of civil conspiracy must be dismissed under Rule 12(b)(6) because Little Tikes is the subsidiary to MGA.  Under Illinois law, "civil conspiracy arises where two or more persons combine to accomplish by concerted action either a lawful purpose through unlawful means or an unlawful purpose through lawful means."  *Belkow v. Celotex Corp.*, 722 F. Supp. 1547, 1550 (N.D.Ill. 1989).  However, a conspiracy cannot exist where the two or more persons involved in the alleged conspiracy are merely interchangeable entities or are essentially conducting a single act as a single entity.  *See Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir. 1972); *Thomas v. Rohner-Gehrig & Co.*, 582 F. Supp. 669, 673 (N.D. Ill. 1984).  For example, a conspiracy cannot exist between a principal and an agent or a parent and a subsidiary. *See Salaymeh v. Interqual, Inc.*, 155 Ill. App. 3d 1040, 1044 (5th Dist. 1987); *Nissan Motor Acceptance Corporation v. Schaumburg Nissan, Inc.*, 1993 WL 360426 *8-9 (N.D. Ill. Sept. 15, 1993).  Therefore, conspiracy claims involving the same entity, such as a parent and its subsidiary, must be dismissed.  *Israeli Aircraft Industries, Ltd. v. Sanwa Business Credit Corporation et al.*, 850 F. Supp. 686, 692-693 (N.D. Ill. 1993) (dismissing plaintiff's claim for civil conspiracy because it incorporated an allegation that the defendant Sanwa Bank controlled the other defendant Sanwa, and, thus were deemed to be the same entity for purposes of the claim.); *Nissan Motor,* 1993 WL 360426 at *8-9 (dismissing conspiracy claim against parent and

subsidiary because a parent and a wholly owned subsidiary are one entity for purposes of conspiracy and thus incapable of conspiring as a matter of law.); *East St. Louis School District 189 v. Aramack Corporation*, 2001 WL 1803663 *2 (S.D. Ill. Nov. 20, 2001) (dismissing conspiracy claim against Aramark Education Services, Inc. and Aramark Corporation because claim included allegations that they have a relationship of parent and subsidiary.)

In this case, Little Tikes is a wholly owned subsidiary of MGA, and, therefore, as in *Nissan*, Kids Station (HK)'s conspiracy claim must be dismissed as a matter of law. It must also be dismissed because, like in *Israeli Aircraft*, Kids Station (HK) alleged that Little Tikes and MGA are the same entity by calling Little Tikes a "captive subsidiary" of MGA – in other words, Little Tikes is under the control of MGA. Counterclaim at ¶ 4. Because a conspiracy must involve two or more entities and Kids Station (HK) only implicated MGA and Little Tikes – deemed for these purposes to be the same entity – in its conspiracy claim, Count VI for civil conspiracy must be dismissed for failure to state a claim.

### D.    Count VII Should be Dismissed for Failure to State a Claim for Unjust Enrichment

Kids Station (HK)'s claim of unjust enrichment must be dismissed because Kids Station (HK) fails to properly allege the elements of such a claim, including the benefit MGA and Little Tikes retained to Kids Station (HK)'s detriment.

Unjust enrichment is an equitable claim based upon a contract implied in law, and, thus, if a specific contract governs the relationship of the parties, there can be no unjust enrichment claim. *Noah v. Enesco Corp.*, 911 F. Supp. 305, 307 (N.D. Ill. 1995) (citing *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)); *People v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992) (quoting *Brooks v. Valley National Bank*, 548 P.2d 1166, 1171 (Ariz. 1976)). To properly plead an unjust enrichment claim in accordance with

Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must allege that a defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of that benefit offends the traditional notions of justice, equity and good conscience.  *Noah*, 911 F. Supp. at 307 (citations omitted).  In setting forth the unjust enrichment claim, the claimant must set forth the specific benefit that the defendant received to its detriment.  *Folsom v. Continental Illinois National Bank and Trust Company of Chicago*, 633 F. Supp. 178, 187 (N.D. Ill. 1986). While the claim does not need detailed factual allegations, it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Bell Atlantic Corporation v. William Twombly*, 127 S. Ct. 1955, 1965 (2007) (citations omitted).  "It must possess enough heft to 'sho[w] that the pleader is entitled to relief.'"  *Id*. at 1966.

In *Folsom*, the plaintiff brought claims of unjust enrichment against the defendants, but because the plaintiff failed to identify the specific benefits the defendants received at the expense of the plaintiff, the claim was dismissed.  633 F. Supp. at 187.  The court stated that it could speculate on the benefits the plaintiff had in mind, but "that is not the purpose of the federal pleading rules."  *Id*.; *see also Bell Atlantic*, 127 S. Ct. at 1969 (quoting *O'Brien v. Di Grazia*, 544 F.2d 543, 546 n.3 (1st Cir. 1976) ("[W]hen a plaintiff … supplies facts to support his claim, we do not think that *Conley* imposes a duty on the courts to conjure up unpleaded facts that might turn a frivolous claim of unconstitutional … action into a substantial one.").  Rather, a complaint should give the defendants fair notice of a claim which will entitle the plaintiff to relief – and in *Folsom* the plaintiff failed to give such notice by failing to identify the specific benefit.  633 F. Supp. at 187; *see also Bell Atlantic,* 127 S. Ct. at 1966*; Leatherman v. Tarrant County Narcotics and Intelligence Coordination Unit*, 507 U.S. 163, 168 (1993); *accord Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir.1999) ("the [Federal] Rules [of Civil Procedure]

require … a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."). Therefore, the claim for unjust enrichment was found to be fatally defective. *See Folsom*, 633 F. Supp. at 187.

Likewise, Kids Station (HK)'s unjust enrichment claim is totally devoid of any facts to indicate what benefit it believes Little Tikes and MGA received to its detriment. Rather, it consists of conclusory allegations that "Little Tikes and MGA received benefits in amounts greater than they would otherwise be entitled to the detriment of Kids Station" and that "Little Tikes and MGA's retention of these benefits is improper and unjust." Counterclaim at ¶¶ 88, 89. From that, Little Tikes and MGA could have no idea what benefit Kids Station (HK) alleges Little Tikes and MGA received to its detriment. For that matter, as the Supreme Court made clear in *Bell Atlantic*, a claim must show that the pleader is entitled to relief, and, here, there is no factual support to indicate that Kids Station (HK) is even entitled to any relief in the first place. 127 S. Ct. at 1966. Thus, MGA and Little Tikes have clearly not received fair notice as to what Kids Station (HK)'s unjust enrichment claim consists of, and, as a result, under *Folsom* and *Bell Atlantic*, the unjust enrichment claim is fatally defective and does not comply with Rule 8, Fed. R. Civ. P.

Accordingly, Kids Station (HK)'s unjust enrichment claim set forth in Count VII must be dismissed under Rule 12(b)(6) for failure to state a claim.

## III.    CONCLUSION

For the foregoing reasons, Little Tikes and MGA respectfully request that this Court dismiss the Counterclaim for lack of standing, failure to comply with the requirements of Rule 17(a) and failure to state a claim under Rule 12(b)(6) of the Federal Rules of Procedure.

Dated: June 11, 2008.                    Respectfully submitted,

By: _____

One of the Attorneys for Plaintiff, The Little
Tikes Company, and Counter-Defendant, MGA
Entertainment Inc.

Robert E. Browne (ARDC# 032 1761)
Michael G. Kelber (ARDC# 623 1033)
Lara V. Hirshfeld (ARDC# 627 7477)
Maurice E. Finnegan, III (ARDC# 628 1387)
**NEAL, GERBER & EISENBERG LLP**
Two North LaSalle Street, Suite 2200
Chicago, IL  60602-3801
Telephone:  (312) 269-8000
Facsimile:  (312) 269-1747

*Of counsel:*
Jeanine Pisoni
General Counsel
MGA Entertainment, Inc.
16300 Roscoe Blvd., Suite 150
Van Nuys, California 91406

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that a copy of the foregoing MEMORANDUM IN SUPPORT OF THE LITTLE TIKES COMPANY'S MOTION TO DISMISS and DECLARATION OF DAVID OAKES and DECLARATION OF CHARLES FREY have been served upon the individuals listed below via the CM/ECF electronic filing service system on this 11th day of June 2008:

> Paul T. Fox, Esq.
> Charles B. Leuin, Esq.
> Paul J. Ferak, Esq.
> Jason B. Elster, Esq.
> Greenberg Traurig LLP
> 77 W. Wacker Drive, Suite 2500
> Chicago, Il 60601

By: _/s/ Lara V. Hirshfeld_____

NGEDOCS: 1535850.5

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE LITTLE TIKES COMPANY,<br>an Ohio corporation, | ) | |
| | ) | |
| | ) | Case No. 1:08-cv-1935 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KID STATION TOYS, LTD.,<br>a Florida corporation, | ) | Hon. Joan B. Gottschall |
| | ) | |
| KIDS STATION TOYS, LTD.,<br>a Hong Kong corporation, | ) | |
| | ) | |
| KIDS STATION (U.S.) INCORPORATED,<br>a Florida corporation, | ) | |
| | ) | |
| KIDS STATION TOYS<br>    INTERNATIONAL, LTD.,<br>a Bermuda corporation, | ) | |
| | ) | |
| KIDS STATION TOYS INTERNATIONAL<br>    HOLDING, GmbH<br>a Switzerland corporation, and | ) | |
| | ) | |
| MR. ELLIOT S. NEWMAN<br>an individual, | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF DAVID OAKES

Pursuant to 28 U.S.C. Section 1746, the undersigned declares, under penalty of perjury, as follows:

1.    My name is David Oakes, and I am senior counsel of MGA Entertainment, Inc. ("MGA") and its wholly-owned subsidiary, The Little Tikes Company ("Little Tikes"), which was purchased by MGA in November, 2006 from Newell Rubbermaid, Inc. ("Newell"). I have served as senior counsel of MGA and have been involved in the negotiation, finalization, and enforcement of license agreements for MGA for 4 3/4 years, and for Little Tikes since its

acquisition by MGA. I make this declaration based on my position with the corporation, my personal knowledge of matters, my review of pertinent files and information provided to me by others on whom I rely.

2.      On or about December 8, 2003, Little Tikes (then wholly-owned by Newell Rubbermaid, Inc.) entered into an exclusive license agreement ("Agreement") with a party representing itself in the Agreement to be a Florida corporation by the name Kid Station Toys Ltd. ("Kid Station (Florida)"). See Ex. A attached to Compl., §2.1.

3.      Based on a review of the prior files maintained by Little Tikes, as well as prior files MGA obtained in connection with its acquisition of Little Tikes that were maintained by Newell Rubbermaid, Inc. Little Tikes has never given any consent to Kid Station (Florida) to sell, transfer, lease or assign the Agreement or the rights granted under the Agreement, nor has Little Tikes received any such request from Kid Station (Florida).

4.      Based on a review of the prior files maintained by Little Tikes, it is my understanding that experienced people on behalf of Kid Station (Florida) and Little Tikes fairly and freely negotiated the terms prior to entering into the Agreement.

5.      Based on my review of prior files, it is my understanding that experienced people on behalf of Kid Station (Florida) and Little Tikes also fairly and freely negotiated the terms prior to entering into the Addendum. There are no records, correspondence or other forms of communication to indicate that at any time during the negotiation and execution of the Addendum that anyone indicated to Little Tikes that Kid Station (Florida) was not the correct party to the Agreement or Addendum, and there is no record that anyone at Kid Station (Florida) or any other Kids Station entity, including Defendant Elliot S. Newman who signed the Agreement and Addendum, ever called to anyone's attention that the Agreement and Addendum should be amended to indicate that Kids Station (HK) was the real party.

2

6.    It was not until Kids Station (HK) filed a lawsuit in the Southern District of Florida against Little Tikes and MGA on February 19, 2008 that Little Tikes discovered, to its dismay that the entity Kid Station (Florida) does not and never did exist.  The case in the Southern District of Florida was dismissed on April 2, 2008.  See Ex. G to Compl.

7.    Based on a review of the prior files maintained by Little Tikes, prior to the sale of Little Tikes to MGA in November of 2006, there were significant quality problems with the goods manufactured and sold by Kid Station (Florida) under the LITTLE TIKES trademarks.  In fact, Little Tikes and Kid Station (Florida) had been made aware of numerous consumer complaints over the quality of toys sold under the LITTLE TIKES trademarks that were being sold by Kid Station (Florida).  For example, within the files I reviewed was a Report dated February 2, 2005 that was prepared by a third-party, the Beanstalk Group, which is a licensing agency and consultancy company that was hired by Newell and Little Tikes.  I have attached a true and correct copy of the Report as Ex. 1.  The Report identifies an unprecedented number of complaints about Kids Station products and states "*if quality assurance issues are not corrected, Kids Station's performance constitutes a breach of contract.*"  See Ex. 1 at p. 7.

8.    After MGA acquired Little Tikes, Little Tikes continued to receive numerous customer and government complaints about broken or defective Little Tikes products made by Kid Station (Florida), including complaints claiming that certain products posed potential injury hazards to small children.  For example, in 2007 Little Tikes received multiple reports from the Consumer Product Safety Commission ("CPSC") regarding possible hazards associated with products bearing the LITTLE TIKES mark that were manufactured and sold by the Defendants.  For example, the CPSC sent Little Tikes a letter on April 30, 2007 (see Ex. B attached to complaint) and a report on June 14, 2007.  I have attached a true and correct copy of the June 14, 2007 report as Ex. 2.

3

9.    In addition, Little Tikes found that Kid Station (Florida) was not fulfilling certain critical contractual obligations required under the Agreement.

10.    As a result, Little Tikes contacted Kid Station (Florida) in 2007 and early 2008 on numerous occasions regarding the quality and product safety issues, as well as Kid Station (Florida)'s non-compliance with provisions of the Agreement.  Kid Station (Florida) either never responded to Little Tikes' letters or denied that there were any problems.

11.    Consequently, because of the threat of irreparable damage to Little Tikes reputation and goodwill, on February 5, 2008, and in accordance with the terms and conditions of the Agreement, I, on behalf of Little Tikes, sent a termination letter to Kid Station (Florida), terminating the Agreement because, among other reasons, Defendants had continued to sell unapproved products, including the unapproved cell phone, KSL8033.

12.    The February 5, 2008 letter also served as Little Tikes' written notice of a material breach of the Agreement pursuant to paragraph 14.1 of the Agreement.  Kid Station (Florida) never responded to the February 5, 2008 letter and to this date has not cured the breaches.

13.    It was and has always been Little Tikes' understanding that the party with whom it entered the Agreement and who performed the obligations under the Agreement was Kid Station (Florida), not Kids Station (HK).  The entity with whom Little Tikes contracted under the Agreement never identified itself as a Hong Kong corporation or gave any indication to Little Tikes that it was incorporated in Hong Kong.  Moreover, correspondence received by Little Tikes identified only a Florida address.  For example, correspondence received by Little Tikes that was kept in the ordinary course of business in its files only used the names "Kids Station, Inc." or "Kids Station Toys International," not the name Kids Station (HK), and did not identify it as a Hong Kong corporation or list a Hong Kong address or phone number.  For example, I have attached true and correct copies of a July 13, 2005 letter from Oscar Radillo to Ann

4

DeTemple reflecting the name "Kids Station, Inc." as Ex. 3 and an April 16, 2007 letter from Edwin A. Cabrera to Spencer Woods reflecting the name "Kids Station Toys International" as Ex. 4. Furthermore, all royalty payments received by Little Tikes under the Agreement were sent via wire transfer from a bank located in Bermuda, not by Kids Station (HK) or a bank located in Hong Kong.

14.    I obtained through my colleagues samples of the packaging used on the toys manufactured and sold under the LITTLE TIKES trademark by Defendants, and I took photographs of the packaging. Attached as Exhibit 5 to this Declaration is a true and correct copy of a photograph of the packaging. The packaging includes a notice stating, "Designed and Licensed by Kids Station Toys International Ltd."

Executed in Van Nuys, California this _10th_ day of June, 2008.

David Oakes

# Exhibit 1



# THE BEANSTALK GROUP

## Kids Station Quality Assurance

Date: February 2, 2005

*Confidential*



# Kids Station: Licensee Overview

- Kids Station's product grant includes youth electronic audio and video, clocks, telephones and musical instruments

  - Contract expires 6/30/2007

- Products are placed at Toys 'R Us (17 SKUs, and 80%+ of licensee sales volume), Wal-Mart Canada, Sam's Canada, Costco Canada, Sears Canada, and Lablaws

- Product launched at retail in October 2004 and had excellent sell-through at Toys 'R Us for Holiday 2004, selling out of many SKUs

  - The licensee forecasts a 15% increase in business at TRU in 2005

- With retail sales of more than $8 million, Kids Station is the largest Little Tikes licensee in terms of both sales and royalty revenues

  - $387,651 in gross royalty revenue generated in 2004

  - Given the licensee's ubiquity, it is especially capable of tarnishing brand reputation in both customer service and product quality

- Beanstalk's first priority is protecting Little Tikes' brand reputation, but will lead discussions with Kids Stations as a partner if quality standards can be met

Confidential

2





# Numerous Complaints Raise Concerns About Product Quality and Customer Service Performance

- Little Tikes Consumer Service received an unprecedented number of complaints about Kids Station products

  - 124 complaints received about product quality since its October 2004 launch

    - Other licensed products prompted only 48 calls in 2004

  - The nature of the electronics category and the volume of sales suggest that Kids Station should be a source of more customer service volume than other licensees

    - Return rates in the electronics industry are as high as 15%*

- Amazon.com ratings for the products have been disappointing

  - Most customer reviews gave average or below average ratings (three our of five stars or under); many bad reviews cited customer service experience

    - *"Like so many of the reviews written I have the same problem. The mic piece broke right away and trying to get a replacement was a NIGHTMARE! Kids Station was very unhelpful and rude. Customer service ... did not care ... I actually called Little Tikes to complain about them."* – Customer review on Amazon.com

- Kids Station was recently the subject of a product recall

  - A non-electronic drum set (not Little Tikes) was recalled in January by the CPSC for small parts that could be a choking hazard

Source: IBM/Transform Magazine, 2004

Confidential

3

THE BEANSTALK GROUP



# Kids Station Customer Service Policies Cause Dissatisfaction

- Information supplied by Kids Station does not show significantly high complaint or return rates

  - Kids Station outsources its customer service to VAC, which does not track inquiries by product line or model

    - VAC received 4,828 Kids Station calls, also including licensed Barbie, Spiderman, and Power Play products, and Kids Station branded product

      - Even if all calls were for Little Tikes, this would represent a 0.71% inquiry rate for the 678,094 units sold

  - Retailer returns for defective product have not been excessive

    - The Toys 'R Us order provides that 5% of sales will be discounted to allow for product returns; the retailer will notify Kids Station if the amount exceeds 5%, which has not been the case

- Kids Station processes for remedying customer concerns are inadequate

  - Current Kids Station policy asks customers to ship the defective product to the manufacturer at their own expense, and include a check for shipping of the replacement product

    - This is likely the cause of high spillover to Little Tikes' call center

    - The most frequent complaint was Kids Station's process for returning defective product

THE BEANSTALK GROUP

# Contractual Quality Assurance Protections

- Little Tikes' contract with Kids Station includes provisions mandating standards of quality for products and customer service
  - Sec. 8.1: Customer support service should match the level of Little Tikes' own customer support
  - Sec. 6.8: Licensee may use the trademarks only on products with quality which is in all respects at least equal to Little Tikes' core product
  - Sec. 12.4: Licensee must notify Little Tikes if more than 3% of product is returned by consumers as defective, and provide a plan outlining steps to reduce incidence of defects
- Licensee must submit QA reports from a third-party auditor in order to gain product approval
  - Little Tikes allowed Kids Station to submit reports after shipment in 2004 to meet timing of a retail purchase order
- Retailer quality controls provide a secondary protection
  - Toys 'R Us requires quality and safety testing for all products placed in its stores

Confidential

5



# Immediate Steps to Protect the Brand

■ Customer services practices can be immediately remedied

- The licensee has verbally agreed to modify its customer service practices
  - Offer free shipping for return of defective product and replacement product
  - Provide only new product in replacement of defective product

■ LT can immediately apply more stringent standards for product approval to ensure product quality

- Internal QA: additional durability testing as required
- Design team: check color palette to match LT core product
- Licensing: Approve product only after all QA reports received

6



THE
BEANSTALK
GROUP



# Long-Term Quality Assurance Can Be Contractually Demanded

- If quality assurance issues are not corrected, Kids Station's performance constitutes a breach of contract

  - Practices do not satisfy the obligations listed in Sec. 8.1, mentioned previously

  - Kids Station did not provide a quarterly report on consumer service activities within 30 days following Q4 2004, as required by Sec. 8.2

- Little Tikes can threaten termination if licensee does not take steps to resolve QA problems

  - Contract allows 30 days for the licensee to remedy any breach of contract after first notice

- Little Tikes and Beanstalk should guide the process for addressing concerns and set deadlines for remedy

  - Licensee is more likely to comply if Little Tikes provides quantifiable standards and processes for quality assurance

  - Little Tikes can leverage the situation to demand additional reporting and testing that will prevent future QA problems

Confidential

7

**THE
BEANSTALK
GROUP**



# Documentation of Steps to Cure Breach Will Ensure Future Licensee Compliance

■ A contract amendment or letter of agreement with stronger and more specific language on product quality and customer service performance will provide:

- A shared, written understanding of baseline quality requirements
- Quantifiable criteria for gauging licensee performance
- A timeline for when product quality and customer service improvements must be achieved
- Legal recourse for Little Tikes if licensee does not comply
- A demonstration of licensee's good faith in resolving concerns

■ Little Tikes can encourage Kids Station to sign an agreement in order to cure its breach of contract

Confidential

8

# Stronger Standards for Customer Service Performance

- Contract provisions for Kids Station's customer service performance can be strengthened to include:

  - Calls answered within a minimal wait time

  - Response to written inquiries to within a certain period

  - Provision of specific remedies for common customer issues (i.e., paid shipping, product replacement upon first complaint)

  - Little Tikes-approved scripting for representatives responding to common customer issues

  - Quarterly reporting of customer complaints *including their resolution*

- Licensee can be required to meet these standards within one quarter, and tested each subsequent quarter

  - Performance can be confirmed through written reports submitted by the licensee, "secret shopper" testing, and/or a third-party auditor

- If performance is not within Little Tike's quality threshold, a 1% royalty penalty can be assessed

Confidential

9



# Stronger Standards for Product Quality

- Contract provisions for Kids Station's product quality can be strengthened to include:

  - Mandating a specific third-party auditor with experience in electronics for QA testing

    – Little Tikes and Beanstalk can partner with this auditor to establish standards specific to electronic audio/video and musical instrument products and the age range for these toys

  - Requiring a longer time window for Little Tikes' internal quality testing between pre-production samples and approval to ship to retail, providing time for additional durability testing

  - Requiring copies of all retailer quality testing (i.e., TRU) that may show problem areas for Little Tikes to test more thoroughly

  - Stricter standards for product operating manual clarity, reducing customer inquiries on how to operate the product

- Little Tikes can aggressively withhold product approval if these requirements are not met in a timely manner



# Exhibit 2

*7-9-07*

| 1. Task Number | | 2. Investigator's ID | | **EPIDEMIOLOGIC** |
|---|---|---|---|---|
| 070523CWE5930 | | 2157 | | **INVESTIGATION** |
| 3. Office Code | 4. Date of Accident<br>YR MO DAY | 5. Date Initiated<br>YR MO DAY | | **REPORT** |
| 840 | 2007 05 01 | 2007 06 14 | | |

**6. Synopsis of Accident or Complaint**        UPC 050743

An 18-month-old male toddler was plying with a toy, flip-phone-style, cellular phone when a plastic component covering part of the hinge became dislodged. The toddler child had been playing with the toy regularly for two months. The child's mother became concerned about a choking hazard and purchased a replacement toy. The same part came off the replacement toy after approximately one week of use. The company that designed the toy told the complainant to take the problematic part off of the phone and return it to her child for play.

| 7. Location (Home, School, etc) | 8. City | 9. State |
|---|---|---|
| 1 - HOME | SAN LEANDRO | CA |

| 10A. First Product | 10B. Trade/Brand Name | 10C. Model Number |
|---|---|---|
| 5004 - Toys, Not Elsewhere Classifi | LITTLE TIKES PLAY CELL PHONE AND | KSL8033 |

**10D. Manufacturer Name and Address**
THE LITTLE TIKES COMPANY
2180 Barlow Road
Hudson, OH  44236                    *MGA*

| 11A. Second Product | 11B. Trade/Brand Name | 11C. Model Number |
|---|---|---|
| 0 | NONE | NONE |

**11D. Manufacturer Name and Address**
NONE

| 12. Age of Victim<br>218 | 13. Sex<br>1 - Male | 14. Disposition<br>0 - No Injury | 15. Injury Diagnosis<br>70 - No Injury |
|---|---|---|---|
| **16. Body Part(s) Involved**<br>99 - NO INJURY | **17. Respondent**<br>1 - Victim/Complainant | **18. Type of Investigation**<br>1 - On-Site | **19. Time Spent**<br>(Operational / Travel)<br>24 / 2 |
| **20. Attachment(s)**<br>9 - Multiple Attachments | **21. Case Source**<br>07 - Consumer Complaint | | **22. Sample Collection Number**<br>078407133 |

**23. Permission to Disclose Name (Non NEISS Cases Only)**

⦿ Yes        ◯ No        ◯ Verbal

| 24. Review Date<br>07/05/2007 | 25. Reviewed By<br>9021 | 26. Regional Office Director<br>Frank J. Nava |
|---|---|---|
| **27. Distribution**<br>Watson, Keysha | | **28. Source Document Number**<br>I0750374A |

CPSC FORM 182 (12/96) Approved for use through 01/31/2010 OMB NO. 30410029

070523CWE5930

This In Depth Investigation (IDI) was initiated in response to a consumer complaint received via the CPSC website on 05/21/2007. In the initial complaint the consumer wrote that a small piece had fallen off a toy cell phone, recommended for children 18 months and older that her son had been playing with. The consumer reported that she exchanged the toy for a new one and the same part fell off. The complainant opined that the piece was "definitely small enough to cause a choking hazard."

### Incident Information

The complainant is a 32 year old female who lives in a single family home in a residential neighborhood of a small city that is part of a larger metropolitan area. She lives with her husband, age 36. The child who played with the incident toy was a boy born on 09/29/2005. The complainant had a second child on 06/05/2007 that did not interact with the incident product. There are no other members of the household. The family had lived in the residence for approximately 3 ½ years at the time of the investigation. An onsite interview was conducted on 06/18/2007.

The incident product is a toy cellular phone, made to resemble a functional "flip phone" style cellular phone. It is sold as part of a set along with a second toy, a key ring with an oversized fob attached to three blank plastic keys with a plastic ring. Both components of the set emit noises when various buttons are pressed by the user. The set's packaging indicates that is intended for children "+1 ½" years of age. The complainant purchased one of the products approximately three months before the time of the interview, at a store in a large national retail chain, just after her child turned 18 months old.

The 18 month old boy played with the product on a very regular basis. The complainant stated that he played with the cell phone almost every time he rode in the family vehicle and that he went out in the vehicle at least five times a week. At this time, the complainant was babysitting a 3 ½ year old female who also played with the phone occasionally. According the complainant, the phone was never subjected to any significant abuse or damage. However her son did play with it with a roughness and lack of dexterity which she described as normal for a child of about 2 years of age. The phone also did experience some non-negligible heat as it was left locked in the passenger compartment of the family vehicle on multiple occasions. However, this heat is unlikely to have been extreme as temperatures in the area where the family lives were relatively moderate during the time period in question. After the complainant's son had had the toy for approximately 2 months, the complainant noticed that a small part had detached from the cell phone component of toy. This piece covers part of the inside of the phone's hinge. (See Exhibit 1, Photograph 1). The complainant found the piece in her son's car seat and concluded that it presented a choking hazard. She then took the toy away from her son and placed it out of his reach.

1

070523CWE5930

Shortly thereafter, she purchased an identical toy set from the same retail store and gave it to her son, now approximately 20 months old. The complainant stated that approximately a week later she noticed that the same piece had detached from the cell phone component of the toy set. To the best of the complainant's knowledge, the second phone did not experience any particular abuse or damage during the week her child had access to it. No other children had access to the toy during this week.

The complainant stated that her son had a regular medical checkup at about the time he turned 18 months old. No problems were detected at that time and complainant stated that her son has never been diagnosed with any chronic medical conditions or developmental abnormalities. He walked unassisted at 11 months, began to say single words between 8 and 12 months, and began to use recognizable sentences at 18 months.

Within several days of the time when the second, identical piece popped out of the second cell phone toy, the complainant contacted the manufacturer/importer of the toy set. She does not remember the name of the individual with whom she spoke. The manufacturer advised her to contact the toy's designer, which apparently licensed the design of the toy to the manufacturer/importer. (See Exhibit 1, Photograph 10) The complainant contacted the firm that designed the toy through a toll-free customer service number. The individual that she spoke with offered to send her a free replacement toy. The complainant told the designer company's representative that a free replacement did not appear to be an appropriate response to the situation as two identical toys had failed in identical ways within a period of approximately 3 months. The designer's representative then told the complainant to simply remove the problematic part (See Exhibit 1, Photographs 1 and 5) from the toy and return the toy to her son. The complainant stated that she manipulated the toy set with the problematic hinge cover removed and could not identify any other small parts which seemed likely to detach during normal play at the hands of a 2 year old child, or other hazards. She then returned the second toy set to her son for continued play. The phone calls to the manufacturer and designer occurred on 05/21/2007, the same day the complainant contacted CPSC. No further incidents had occurred with the second toy set as of the time of the interview.

The first toy set, the one purchased shortly after the incident child turned 18 months old, was collected by the Investigator as Sample number 07-840-7133, along with the hinge cover from the toy set that was purchased later. The Investigator notes that the complainant had "popped" the problematic piece into "place" on the first incident phone before the interview. The first toy set had been stored by the complainant from the time of the product failure to the time of the interview. The complainant did not have purchase receipts, or any original packaging, from either toy set.

2

070523CWE5930

Product Information

The incident product is a **LITTLE TIKES** Play Cell Phone and Electronic Light N'
Sounds Key Ring, Model No. KSL8033. The toy set was apparently designed by
**Kids Station Toys International Ltd.**, which licensed the design to Little Tikes.
(Exhibit 1, Photograph 10) The cell phone resembles a "flip phone" style
functional cellular phone and has a ten key numeric pad and three buttons with
pictures of animals on them. All these buttons emit sounds when pressed by the
user. The key fob on the key ring is disc shaped, approximately 3" in diameter,
and has a speaker in the center of its front face. The speaker is surrounded by
five buttons which emit travel-related sounds, such as a starting engine and a car
horn, when pressed. A sixth button turns on a very small flashlight. Both devices
are powered by 2 AAA batteries.

Kids Station's address is:

P.O. Box 694660
Miami, FL 33269
1-888-321-7191

LITTLE TIKES customer service is located at:

2180 Barlow Road
Hudson, OH 44236
1-800-321-0183

Both toy sets bought by the complainant were purchased at the Wal-Mart store
located in San Leandro, California:

1919 Davis Street
San Leandro, CA 94577
510-569-0200

A sticker on the top of the collected incident phone reads: Manufactured: Nov.,
06 KTS061000541962. A sticker on the back of the collected incident key fob
bears model number KSL8033. Below this is labeling regarding the use of AAA
batteries in the product.

The Investigator purchased 14 exemplar products for testing and evaluation from
Wal-Mart stores located in Mountain View and Union City, California.

Labeling on the back of the packaging of the exemplar products is as follow:

[an ovoid logo reading "little tikes"]

[a "tab" at the upper right corner reads "+1 ½ years"]

3

070523CWE5930

Play Cell Phone and Electronic Light N' Sounds Key Ring

Play Cell Phone
- 3 animal sound effects with 3 melodies
- Pretend Stylin' mirror
- Number pad features realistic sounds and play functions.
- Belt Clip Included

Batteries Included
Replace with 2 AAA (3 Volts) alkaline batteries (not included)

[an oval logo states "2-in-1 combo set"]

Electronic Light N' Sounds Key Ring
- Realistic, easy to handle car keys with five cool sound effects
- Flashlight

Batteries Included
Replace with 2 "AAA" (3 Volts) alkaline batteries (not included)

[At the bottom right corner of the package is a white square barcode. Above the barcode is the notation: "Model KSL8033"]

[The barcode number reads: 3139808033]

[Below the barcode is the notation: "Printed in China"]

The following labeling appears next to the barcode:

© 2006 The Little Tikes Company
LITTLE TIKES is a trademark of
The Little Tikes Company,
used with permission.

Designed and Licensed by
Kids Station International Ltd
P.O. Box 694660
Miami, FL 33269-4660

Kids Station Toys International
All Rights Reserved
Made in China

**To Obtain Service on your Product**
Please call: 1-888-321-7191 or
Email: service@kidsstationtoys.com

4

070523CWE5930

The following labeling appears to the right of the labeling about the manufacturer:

Product and Colors may vary

Do not mix different types of batteries together (e.g. alkaline and carbon-zinc) or old batteries with fresh ones. Do not dispose of batteries in fire. Batteries may explode or leak.

The batteries included in this toy are for in-store demonstration purposes only.

[Labeling on other portions of the box is completely duplicative of the above.]

070523CWE5930

Attachments:

Exhibit 1, Photographs of the incident product and the packaging of an exemplar product, all taken by the Investigator, 10 pages.

Exhibit 2, CPSC form No. 163, Receipt for Samples, signed by complainant, 1 page.

Exhibit 3, CPSC form 322, Authorization for Release of Name, signed by complainant, 1 page.

Exhibit 4, Affidavit of Store Manager of retail location where 9 of 14 exemplar samples were purchased, 2 pages.

Exhibit 5, CPSC form No. 163, Receipt for Samples, signed by Store Manager of retail location where 9 of 14 exemplar samples were purchased, 1 page.

Exhibit 6, Affidavit of Store Manager of retail location where 5 of 14 exemplar samples were purchased, 2 pages.

Exhibit 7, CPSC form No. 163, Receipt for Samples, signed by Store Manager of retail location where 5 of 14 exemplar samples were purchased, 1 page.

Exhibit 8, Government Purchase Card receipts for exemplar samples from two different retail stores on 06/27/2007 and 06/28/2007.

Exhibit 9, CPSC Sample Collection Report Number 07-840-7133, 2 pages.

Exhibit 10, CPSC Sample Collection Report Number 07-840-7134, 2 pages.

6

070523CWE5930

Contact Information:

The complainant contacted The Little Tikes Company and Kids Station by telephone on 05/21/2007. She did not have the names of the persons with whom she spoke available at the time of the interview.

The complainant, Julia Kary, was interviewed by CPSC in her home on 06/18/2006.

2172 Buena Vista Ave.
San Leandro, CA
510-352-0509

The Investigator purchased samples at a Wal-Mart in Redwood City, California on 06/27/2007. The Investigator dealt with Store Manager Casey Wiseman.

600 Showers Drive
Mountain View, CA 94040
650-917-0796

The Investigator purchased samples at a Wal-Mart in Union City, California on 06/28/2007. The investigator dealt with Store Manager Jody Stowers.

30600 Dyer Street
Union City, CA 94587
510-475-5915

7

Exhibit 1 – Page 1 of 10 – 070523CWE5930



Photograph 1: The incident product, including both the "key ring" and the "flip phone." The small plastic piece in between the two, indicated by the green arrow, is the small part which detached from an identical toy set used by the consumer's child. This piece covers part of the inside of the hinge of the cell phone; the location of the identical piece on the sample cell phone is indicated by the red arrow.

Exhibit 1 – Page 2 of 10 – 070523CWE5930



Photograph 2: A sticker located on the "upper" end, directly under the hinge, of the cell phone component of the incident toy sample.

Exhibit 1 – Page 3 of 10 – 070523CWE5930



Photograph 3: Text located on the bottom of the fob of the incident sample toy's key ring.  It reads: © 2006 THE LITTLE TIKES COMPANY DESIGNED AND LICENSED BY KIDS STATION TOYS INTERNATIONAL LIMITED LTD. MADE IN CHINA

Exhibit 1 – Page 4 of 10 – 070523CWE5930



Photograph 4:  A close up of the red label visible at the bottom of photograph 3 above.  The label is located on the outside of the unit's battery compartment. The text on the plastic below reads in part "DC 3V...2X1.5 ... AAA" and appears to describe the toy's battery requirements in several different regional formats.

Exhibit 1 – Page 5 of 10 – 070523CWE5930



Photograph 5: A close up of the underside of the small part which came off the cell phone of an identical toy set used by the complainant's child. The top side of the analogue of this component, in place on the incident toy, is indicated by the red arrow in photograph 1. The piece is approximately 21 mm long and 9 mm wide.

Exhibit 1 – Page 6 of 10 – 070523CWE5930



Photograph 6: The front of the packaging of an exemplar product collected for testing purposes at a Wal-Mart store in either Mountain View or Union City, California. Note that the "age recommendation" in the upper right corner indicates "+1 ½ years."

Exhibit 1 – Page 7 of 10 – 070523CWE5930



Photograph 7: The top of the same sample shown in Photograph 6 above. Note again the age recommendation on the right.

Exhibit 1 – Page 8 of 10 – 070523CWE5930



Photograph 8: The back of the package of the exemplar sample shown above.

Exhibit 1 -- Page 9 of 10 -- 070523CWE5930



Photograph 9: A close-up of the bar code in the lower left corner of photograph 8 above. Note the model number KSL8033.

Exhibit 1 – Page 10 of 10 – 070523CWE5930



Photograph 10: A detailed view of the labeling located immediately to the right of the barcode seen in photograph 8 and 9 above.

| U.S. CONSUMER PRODUCT SAFETY COMMISSION | 1. AREA OFFICE ADDRESS 12 12 H ST OVENUINO RD! San Bruno, CA 94066 | |
|---|---|---|
| 2. NAME OF INDIVIDUAL Julie Bary | 3. TITLE OF INDIVIDUAL | 4. DATE 6/18/07 |
| 5. FIRM NAME N/A | | 6. SAMPLE NUMBER |
| 7. NUMBER AND STREET 2172 Buena Vista Ave San Leandre, CA 94577 | 8. CITY AND STATE (include Zip Code) | |

9. SAMPLES COLLECTED (Describe fully, List lot, serial, model numbers and other positive identification)

The following samples were collected by the Consumer Product Safety Commission pursuant to Section 27(f) of the Consumer Product Safety Act (15 U.S.C. 2076(f)) and/or Section 11(b) of the Federal Hazardous Substances Act (15 U.S.C. 1270(b)) and/or Sections 5(e) and (d) of the Flammable Fabrics Act (15 U.S.C. 1194(c)) and (d) and/or Section 704(e) of the Federal Food Drug and Cosmetic Act (21 U.S.C. 374(c)) [Authority for sample collections made in connection with the Poison Prevention Packaging Act of 1970 (15 U.S.C. 1471 et seq.)], and receipt for said samples is hereby acknowledged. Sections cited are quoted on the reverse side of

1) little tykes plat cell phone and

Electronic lishe and sounds new

Ring, Model # HST06100054132,

and 1 small plastic perr from a

similar or identical unit.

I understand that these Items

will become the property of the

U.S. Government and that they will

not be returned to me.

| 10. SAMPLES | 11. SAMPLES WERE | 12. COLLECTOR |
|---|---|---|
| a. AMOUNT RECEIVED FOR SAMPLE $.00 | ☐ PURCHASED | a. NAME (Print or type) PATRECK L. BOYLE |
| b. SIGNATURE (Person from whom sample received) | ☐ BORROWED (to be returned) | b. SIGNATURE |

CPSC FORM NO. 103

RECEIPT FOR SAMPLES

U.S. Consumer Product Safety Commission

## AUTHORIZATION FOR RELEASE OF NAME

Thank you for assisting us in collecting information on a potential product safety problem. The Consumer Product Safety Commission depends on concerned people to share product safety information with us. We maintain a record of this information, and use it to assist us in identifying and resolving product safety concerns.

We routinely forward this information to manufacturers and private labelers to inform them of the involvement of their product in an accident situation. We also give the information to others requesting information about specific products. Manufacturers need the individual's name so that they can obtain additional information on the product or accident situation.

Would you please indicate on the bottom of this page whether you will allow us to disclose your name. If you request that your name remain confidential, we will of course, honor that request. After you have indicated your preference, please sign your name and date the document on the lines provided.

_____ You are hereby authorized to disclose my name and address with the information collected on this case

_____ My identity is to remain confidential

_____          6/18/07
(Signature)                                  (Date)

CPSC Form 322 (7/83)

Page 1 of 2

| AFFIDAVIT | | SAMPLE NO. 07-840-2134 |
|---|---|---|

STATE OF California    COUNTY OF Santa Clara

Before me, PATRICY L. BOYLE, a duly authorized employee of the Consumer Product Safety Commission, appropriately designated by the Chairman of said Commission pursuant to provisions of the Consumer Product Safety Act (sec. 27 (b)(2), 86 Stat. 1228; 15 U.S.C. 2076 (b)(2), to administer or take oaths, affirmations, and affidavits, personally appeared Casey Wiseman in the county and State aforesaid, who being first duly sworn, deposes and says:

6/23/2005 Patrick Boyle showed w/al Mart Store # 2280 at 600 Showers Drive In Mountain View, California and presented credentials identifying himself as an Investigator with the U.S. CPSC, Mr. Boyle requested that we provide him with all available units of the "little tikes" play cell phone Electronic Light N' Sounds Key Ring Model: HS18033. As store manager I sold Mr. Boyle 9 available units at a cost of $3.84 Each. This Price is 10% above our wholesale cost.

**AFFIANT'S SIGNATURE & TITLE**

Casey CW

**FIRM:**

Wal-Mart #2280

Subscribed and sworn to before me at PATRICK [signature] Mountain View, CA
(CITY AND STATE)

this 27th day of June 2006 2007

[signature]
(Employee's Signature)

**EMPLOYEE OF THE CONSUMER PRODUCT SAFETY COMMISSION ACTING IN ACCORDANCE WITH AUTHORITY GRANTED IN THE ABOVE STATED DECLARATION**

CPSC FORM NO 158

Page 2 of 2

| AFFIDAVIT | | SAMPLE NO. 07-840-2134 |

STATE OF CALIFORNIA

COUNTY OF Santa Clara

Before me, PATRICIA BARTH , a duly authorized employee of the Consumer Product Safety Commission, appropriately designated by the Chairman of said Commission pursuant to provisions of the Consumer Product Safety Act (sec. 27 (b)(2), 86 Stat. 1228, 15 U.S.C. 2076 (b)(2), to administer or take oaths, affirmations, and affidavits, personally appeared Casey Wiseman in the county and State aforesaid, who being first duly sworn, deposes and says:

To the best of my knowledge Wal mart purchases these toys from Drapart-Kids Stanton Toys International. My store obtained these toy from the wal-mart distribution center located in Red Bluff, California

**AFFIANT'S SIGNATURE & TITLE**

Casey Wise

FIRM:

Wal-Mart #2280

Subscribed and sworn to before me at Mountain View, California
(CITY AND STATE)

this 27th day of June 2007 PLB
2006

(Employee's Signature)

EMPLOYEE OF THE CONSUMER PRODUCT SAFETY
COMMISSION ACTING IN ACCORDANCE WITH AUTHORITY
GRANTED IN THE ABOVE STATED DECLARATION
CPSC FORM NO 158

**U.S. CONSUMER PRODUCT
SAFETY COMMISSION**

| 1. AREA OFFICE ADDRESS |
|---|
| 1221 W E 1 cambino, #4 517 |
| San Bruno, CA 94066 |

| 2. NAME OF INDIVIDUAL | 3. TITLE OF INDIVIDUAL | 4. DATE |
|---|---|---|
| ssot W/Scman | Starr Manager | 5/27 2002 |

| 5. FIRM NAME | 6. SAMPLE NUMBER |
|---|---|
| Wal-Mart | 07-440-7134 |

| 7. NUMBER AND STREET | 8. CITY AND STATE (Include Zip Code) |
|---|---|
| 600 Showers Drive | Mountain View, CA 4040 |

9. SAMPLES COLLECTED *(Describe fully. List lot, serial, model numbers and other positive identification)*

The following samples were collected by the Consumer Product Safety Commission pursuant to Section 27(f) of the Consumer Product Safety Act (15 U.S.C. 2076(f) and/or Section 11(b) of the Federal Hazardous Substances Act (15 U.S.C. 1270(b) and/or Sections 5(c) and (d) of the Flammable Fabrics Act (15 U.S.C. 1194(c) and (d) and/or Section 704(c) of the Federal Food Drug and Cosmetic Act (21 U.S.C. 374(c)) [Authority for sample collections made in connection with the Poison Prevention Packaging Act of 1970 (15 U.S.C. 1474 et seq.)], and receipt for said sample is hereby acknowledged. Sections cited are quoted on the reverse side of this form.

1) 9 (NINE) "little tikes"

flor cell Phone and Blecmovic Light

N/ Sounds. keY Ring toYs in their

retail Pachasins.

| 10. | SAMPLES | 11. SAMPLES WERE | 12. | COLLECTOR |
|---|---|---|---|---|
| a. AMOUNT RECEIVED FOR SAMPLE | | ☒ PURCHASED | a. NAME *(Print or type)* | |
| $ 34.56 | | | FAT-RECH BoYIe | |
| b. SIGNATURE *(Person from whom sample received)* | | ☐ BORROWED *(to be returned)* | b. SIGNATURE | |

CPSC FORM NO. 185

RECEIPT FOR SAMPLES

Page 1 of 2

## AFFIDAVIT

SAMPLE NO. 07-840-7134

**STATE OF** CALIFORNIA

**COUNTY OF** Alameda

Before me, PATRICK BOYLE , a duly authorized employee of the Consumer Product Safety Commission, appropriately designated by the Chairman of said Commission pursuant to provisions of the Consumer Product Safety Act (sec. 27 (b)(2), 86 Stat. 1228; 15 U.S.C. 2076 (b)(2), to administer or take oaths, affirmations, and affidavits, personally appeared JODY STOWERS in the county and State aforesaid, who being first duly sworn, deposes and says:

I am the manager of Wal Mart store
# 2031 in Union City, California. On 6/28/07
PATRICK BOYLE entered the store
and I dentified Himself as an Investigator
with the U.S. CPSC. Mr. Boyle requsted
that we provide him with 5 (five)
"little tikes" Play cell phone and Electronic
Light N' Sounds toy Ring toys at
10% above our whole sale cost. Mr. Boyle
selected five toys from our shelves.

**AFFIANT'S SIGNATURE & TITLE**

Jody Stowers / Store Manager

**FIRM:**

WAL-MART Stores, Inc.

Subscribed and sworn to before me at Union City, CALifornia
(CITY AND STATE)

this 28th day of June ~~2006~~ 2007 PB

~~Patrick Boyle~~
(Employee's Signature)

**EMPLOYEE OF THE CONSUMER PRODUCT SAFETY COMMISSION ACTING IN ACCORDANCE WITH AUTHORITY GRANTED IN THE ABOVE STATED DECLARATION**

CPSC FORM NO 158

Page 2 of 2

**AFFIDAVIT**

SAMPLE NO. 07-840-7134

STATE OF California

COUNTY OF Alameda

Before me, PATRICK BOYLE, a duly authorized employee of the Consumer Product Safety Commission, appropriately designated by the Chairman of said Commission pursuant to provisions of the Consumer Product Safety Act (sec. 27 (b)(2), 86 Stat. 1228; 15 U.S.C. 2076 (b)(2), to administer or take oaths, affirmations, and affidavits, personally appeared Jody Stowers in the county and State aforesaid, who being first duly sworn, deposes and says:

I directed that the five knives be sold

to Mr. Boyle at a cost $ 3.75 each.

These units were supplied to my store

by the Wal Mart distribution center

in Red Bluff, California. To the best

of my knowledge Wal Mart purchased these

toys from Kid's Station Toys International

**AFFIANT'S SIGNATURE & TITLE**

Jody Stowers / Store Mgr

FIRM:

WAL-MART Stores, Inc.

Subscribed and sworn to before me at Union City, California
(CITY AND STATE)

this 28th day of June 2008 200 LB

(Employee's Signature)

EMPLOYEE OF THE CONSUMER PRODUCT SAFETY
COMMISSION ACTING IN ACCORDANCE WITH AUTHORITY
GRANTED IN THE ABOVE STATED DECLARATION

CPSC FORM NO 158

05/21/2007 17:51:31

Name = Julia
Address = Kary
City = San Leandro
State = California
Zip = 94577
Email = booliajulia@hotmail.com
Telephone = 5103520509
Name of Victim =
Victim's Address =
Victim's City =
Victim's State =
Victim's Zip =
Victim's Telephone =

Incident Description = My 1 1/2 year old son was playing with the Little Tikes Play Cell Phone (for 18 months and older) and a small piece fell off of the inside of the cell phone (a covering for the center part of the phone), I luckily found the piece and I exchanged the phone for a new one and the same thing happened. Piece is definitely small enough to cause a choking hazard.

Victim's age at time of incident =
Victim's sex =
Date of incident = 05/04/2007
Product involved = Little Tikes Play Cell Phone
Product brand name/manufacturer = Little Tikes/ Kidsstation
Manufacturer street address =
Place where manufactured (City and State or Country) =
Product involved still available = yes
Product model and serial number, manufacture date = Model # KSL8033
Date product purchased = 05/01/2007
Name Release = Release name to the manufacturer and public

# Exhibit 3



**EXPERIENCE THE FUTURE**

July 13,2005

Ann DeTemple
U.S Consumer Product Safety Commission
4330 East West Highway
Bethesta,Maryland 20814

RE:Freedom of Information Act-I0530609A
    Our Model number KSL2004

Dear Ms. DeTemple:

I have contacted Ann Pogson regarding this incident and she informed me
That the unit in question has been discarded.

We have sent this information to our Hong Kong office for future reference.

Our Model number KSL2004 has been discontinued.

Sincerely;

Oscar Radillo
Vice President Engineering

CC: David Cordea
Little Tikes
2180 Barlow Road
Hudson,OH 44236

KIDS STATION, INC.

**Exhibit 4**



**VIA EMAIL**

April 16, 2007

Mr. Spencer Woodman, Director of Royalties
MGA Entertainment, Inc
16380 Roscoe Blvd.
Van Nuys, CA 91406

Dear Spencer,

Thank you for your recent email regarding the July 2006 royalty audit report that was first brought to Kids Station's attention in March of 2007. We know that the audit was conducted and the report prepared prior to MGA's ownership of Little Tikes and we are pleased that MGA has recognized that the vast majority of the claims set forth in that report are incorrect. The recent "Summary of Audit Findings" you forwarded indicates that MGA considers one category from the original report still open and would like additional information in connection with one other category. I look forward to speaking with you to hopefully resolve these final matters so that the parties can move forward and focus on future sales and royalties rather than past events.

With respect to the claimed deductions in excess of the 12% flat deduction provided in the Agreement, Kids Station stands by the position set forth in my letter to you of March 23, 2007. The royalties that were paid to Little Tikes by Kids Station were based on the "Net Sales Price" as provided for in the Agreement. That Net Sales Price was calculated in every instance using the actual invoice price billed to each customer for goods sold. This is precisely the "gross selling price" expressly provided for under the Agreement. The idea that royalties are not to be based on the actual price at which goods are sold but on some hypothetical "list" price based on other sales of the product is contrary to the plain language of the Agreement, the intent of the parties, the course of dealing under the Agreement, and the realities of the market. As MGA was not involved in the negotiation of the Agreement, please let us know specifically who has taken the position that the parties intended the 12% deduction to relate to a minimum selling price to which Kids Station had to adhere.

The Summary of Audit Findings also requests that Kids Station provide documentation for items that the audit report claims were sold with no approval. Kids Station has not been

provided with a list of the specific products that are claimed to have been sold without approval. Please provide us with a list of the products on which the $2 million claim is based so that Kids Station knows what approvals MGA is seeking to confirm. Also, our understanding is that Little Tikes' records do not contain approval documents with respect to any of the products at issue in this claim. Please confirm that is the case.

I look forward to speaking with you to discuss these issues further.

Cordially,


Edwin A. Cabrera
CFO


cc: File

# Exhibit 5



GB-E0OG3-D0WU

Model : KSL8033

7 31398 08033 5

To Obtain Service on your Product
Please call: 1-888-321-7191 or
email: service@kidsstationtoys.com

Designed and Licensed by
Kids Station Toys International Ltd.
All Rights Reserved
P.O. Box 694660
Miami, Florida 33269-4660

 

**www.littletikes.com**

TM & © 2007 The Little Tikes Company,
an MGA Entertainment company
All Rights Reserved. Used under license
by Kids Station Toys International Ltd.

Product and Colors may vary.

Do not mix different types of batteries together (e.g. Alkaline and Carbon-zinc) or old
batteries with fresh ones.Do not dispose of batteries in fire. Batteries may explode or leak.

The batteries included in this toy are intend for in-store demonstration purpose only.

Made in China / Printed in China

2-in-1
Combo
Set

**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THE LITTLE TIKES COMPANY,<br>an Ohio corporation, | ) <br> ) <br> ) | Case No. 1:08-cv-1935 |
| Plaintiff, | ) <br> ) | |
| v. | ) <br> ) | |
| KID STATION TOYS, LTD.,<br>a Florida corporation, | ) <br> ) <br> ) | Hon. Joan B. Gottschall |
| KIDS STATION TOYS, LTD.,<br>a Hong Kong corporation, | ) <br> ) <br> ) | |
| KIDS STATION (U.S.) INCORPORATED,<br>a Florida corporation, | ) <br> ) <br> ) | |
| KIDS STATION TOYS<br>    INTERNATIONAL, LTD.,<br>a Bermuda corporation, | ) <br> ) <br> ) <br> ) | |
| KIDS STATION TOYS INTERNATIONAL<br>    HOLDING, GmbH<br>a Switzerland corporation, and | ) <br> ) <br> ) <br> ) | |
| MR. ELLIOT S. NEWMAN<br>an individual, | ) <br> ) <br> ) | |
| Defendants. | ) <br> ) | |

## DECLARATION OF CHARLES H. FREY

Pursuant to 28 U.S.C. Section 1746, the undersigned declares, under penalty of perjury, as follows:

1.     My name is Charles H. Frey.  I am a citizen of the United States and a resident of the State of Illinois.  I am a research librarian at the law firm, Neal Gerber Eisenberg LLP.  I have worked as a research librarian for approximately 7 years.

2.      I performed an investigation regarding the entity Kids Station Toys Ltd.  My investigation focused on identifying its place of incorporation, business address, officers and directors.

3.      I found the Dun & Bradstreet ("D&B") report for Kids Station Toys Ltd. Attached as Exhibit 1 to this Declaration is a true and correct copy of the D&B report for Kids Station Toys Ltd.  The report indicates that it is a Hong Kong Corporation located at RM 804 8/F Empire Ctr, 68 Mody Rd. Tsim Sha Tsui East, Kowloon, Hong Kong, and that its chief executive is Elliot Newman.  The D&B report for Kids Station Toys Ltd. states that its parent is a Bermuda corporation named Kids Station Toys International, Ltd.

4.      As part of my investigation, I also visited the company's website at <kidsstationtoys.com/homepage.php>, and on June 10, 2008 I printed a copy of the Web Page found at the domain name <kidsstationtoys.com/homepage.php>.  Attached as Exhibit 2 to this Declaration is a true and correct copy of the Web Page.    The company description on the Web Page states, "Kids Station Toys International, Ltd, which started in 1999…has forged relationships with some of the biggest companies in the toy industry, Little Tikes and Mattel."

Executed in Chicago, Illinois this ___/ O___ day of June 2008.

Charles H. Frey
Manager of Reference Services
Neal Gerber Eisenberg LLP

NGEDOCS: 1538699.1

- 2 -

# Exhibit 1

**Dun & Bradstreet**

# Business Information Report™

Page 1 of 7

For: **CHARLES FREY**
**NEAL, GERBER & EISENBERG LLP**

February 29, 2008
6:10 pm

## BUSINESS SUMMARY

**KIDS STATION TOYS LIMITED**

Subsidiary of KIDS STATION TOYS INTERNATIONAL LIMITED, BERMUDA

| | |
|---|---|
| D-U-N-S | 66-793-8414 |
| Incorporation No. | 730577 |
| BRC No. | 31236737 |
| Legal Status | Private Limited Company |

| | |
|---|---|
| Address | RM 804 8/F EMPIRE CTR |
| | 68 MODY RD |
| | TSIM SHA TSUI EAST, KOWLOON |
| | HONG KONG |

| | | | |
|---|---|---|---|
| Tel | 852 - 27233308 | Started | 2000 |
| Fax | 852 - 27238110 | Registered | 2000 |
| URL | WWW.KIDSSTATION.CC | Import | Yes |
| E-Mail Address | KATHY@KIDSSTATIONTOYS.COM | Export | Yes |
| Chief Executive | NEWMAN, ELLIOT SETH | Employs | 30 |
| | DIRECTOR | History | CLEAR |
| | | Reg Charge | NO |
| | | Court | No |
| Parent Company | KIDS STATION TOYS INTERNATIONAL LIMITED | | |
| | BERMUDA | | |

| | | | |
|---|---|---|---|
| Line of Business | WHOL OF TOYS | | |
| SIC | 5092-0000 | | |
| | | D&B Rating | - - |
| Paid Up Capital | 100,000 | Prev Rating | - - |

CURRENCY: All monetary amounts shown in HONG KONG DOLLARS unless otherwise stated.

Provided under contract for the exclusive use of NEAL, GERBER & EISENBERG LLP.    Copyright 2002 D&B Inc. VIR1.2

For: **CHARLES FREY**
    **NEAL, GERBER & EISENBERG LLP**

February 29, 2008
6:10 pm

## EXECUTIVE SUMMARY

\* The Risk Predictor for the company is 5.00 which indicates below average risk. The likelihood of a company having financial distress over the next 12 months is 0.38%.

\* Company has been established for 7 year(s)

\* Nothing detrimental found against D&B Hong Kong court files in past five years.

\* No record found against the company in D&B Small Claim Tribunal file on/after 19/7/2004

\* Nothing detrimental found in our Debt Collection Database.

\* Subject company rents captioned premises.

\* Kids Station Toys International Limited (D-U-N-S 87-566-2483) based in Bermuda is the parent company of subject.

## RISK PREDICTOR SCORE

As of MAR 1,

Risk Predictor uses a statistically valid model derived from D&B database to predict the likelihood of a company having financial distress over the next 12 months period.

The Company
------------
Predictor Score     : 5.00
Financial Stress
Score Equivalent    : 1,421

The Industry
------------
Industry Median    : 5.00
Based On         : 2943 firms
Industry         : WHOL TOYS/HOBBY GOODS

Key Influencing Factors: 1. No record of High Court litigation within 2 years is found against the subject in D&B database.<P> 2. No record of District Court litigation within 2 years is found against the subject in D&B database.<p> 3. No registered charge is reported for the subject.<P>

Notes: 1. The Risk Predictor indicates that this company shares some

Provided under contract for the exclusive use of NEAL, GERBER & EISENBERG LLP.    Copyright 2002 D&B Inc. VIR1.2

For: **CHARLES FREY**
NEAL, GERBER & EISENBERG LLP

February 29, 2008
6:10 pm

### RISK PREDICTOR SCORE

As of MAR 1,

> of the same business and financial characteristics of other
> companies with this classification.  It does not mean the firm
> will necessarily experience financial distress.
> 2. Risk Predictors are updated the day new information enters
> the company's file.
> 3. Both Risk Predictors and Financial Stress Scores are derived
> from D&B's new Failure Scoring System.  Each of them cater differ
> needs in risk assessment.  Please visit http://www.dnbasia.com/hk
> /english/services/credit/prod_cr.asp#score to learn more about
> the new D&B Failure Scoring System and the applications of differ
> measurements.

### COURT ACTIONS

A search of the Court File did not show any record of civil suit against the
company from High Court, District Court and Government Gazette for the past
five years and Small Claim Tribunal since 19/7/2004.

This section of the report was compiled after a search was conducted on the
D&B Court File which contains commercial cases filed in the High Court,
District Court and Government Gazette (for bankruptcy orders, petitions for
winding-up, compulsory and voluntary liquidation orders) or heard in Small
Claim Tribunal. It is for information purposes only and is not the official
record. Certified copies can only be obtained from the official source.

### COLLECTION

A search revealed that the company maintains no record in the Debt Collection
database.

This section of the report was compiled after a search was conducted on the
D&B Collection Record Database. The Collections items contained may have been
paid, terminated, vacated, settled or released prior to the date this report
was printed.

### CURRENT INVESTIGATION

On 29/2/2008, Ms. Leung, Kendy, Accountant, confirmed operational and
historical information but declined financial information in this report.

Fiscal year end date of subject is 31 Dec.

Ms. Leung declined to provide financial information as the source of inquiry
was not made known.

Subject has no name change since establishment.

Provided under contract for the exclusive use of NEAL, GERBER & EISENBERG LLP.     Copyright 2002 D&B Inc. VIR1.2

Case 1:08-cv-01935   Document 51-6   Filed 06/11/2008   Page 7 of 13

02/29/08 18:11 ET      2-DNHQ3309      FR:DUN AND BRADSTREET 9086656079 TO: 3127506538      Pg 4/7
D&B Business Information Report 7                                                           Page 4 of 7

For: **CHARLES FREY**                                         February 29, 2008
     **NEAL, GERBER & EISENBERG LLP**                                 6:10 pm

### BANK

Banking relations are maintained principally with :-

  HANG SENG BANK LTD

Comment : Subject maintains no credit facility from its banker.

### HISTORY

This section was compiled after a company search from the

Companies Registry on 27/2/2008, and includes capital structure,
shareholdings, registered charges and director details.

As of the date of the search, the latest annual return filed by the company
was dated 8/9/2007.

| | |
|---|---|
| Legal Status | Private Limited Company |
| Date of Registration | 8 Sep 2000 |
| Incorporation No. | 730577 |
| Business Registration No. | 31236737 |

Authorized Capital                     100,000
Divided into:-

| Type of Shares | No. of Shares | Par Value |
|---|---|---|
| Ordinary Shares | 100,000 | 1.000 |

Fully Paid Up Capital                           100,000
(as of 8 Sep 2007)

Shares are shown to be held by:-

Ordinary Shares

| Name of Shareholder | Location | Shares Held | % |
|---|---|---|---|
| Kids Station Toys International Limit | Bermuda | 100,000 | 100.00 |
| | | 100,000.00 | 100.00 |

Registered Charges
-------------------

Total Indebtedness: Nil

The above charges do not represent the full history of all transactions
relating to the registered charges of the company. Some of the charges may

02/29/08 18:11 ET     2-DNHQ3309     FR:DUN AND BRADSTREET 9086656079 TO: 3127506538     Pg 5/7
D&B Business Information Report 7                                          Page 5 of 7

For:  CHARLES FREY                                          February 29, 2008
      NEAL, GERBER & EISENBERG LLP                                   6:10 pm

## HISTORY                                    (continued)

have been released or there could be mortgages charges not reflected in this
report.

For complete mortgage details, please subscribe to our Full Mortgage Search
Copy.

Registered Address
------------------

Address        Rm 804 8/F Empire Ctr
               68 Mody Rd
               Tsim Sha Tsui East, Kowloon
               Hong Kong

Company Secretary
-----------------

Name           B C S Limited
Address        8/F The Landmark Gloucester Twr
               15 Queen's Rd C
               Hong Kong Island
               Hong Kong

Search conducted on 27/2/2008 confirmed the above details. As of the date of
the search, latest Annual Return filed by the company was dated 8/9/2007.

Principals
----------

| Name/Address | ID/PP NO. | Nationality |
| ------------ | --------- | ----------- |
| NEWMAN, Elliot Seth<br>1160 NW 163 Drive<br>Miami Fla 33169<br>USA | PP: 045691170 | American |

Principals' Background
----------------------

Name                 :  NEWMAN, Elliot Seth
Title                :  Director
Nationality          :  American
Other Directorship   :   Kids Station (Hong Kong) Limited
NOTHING DETRIMENTAL AGAINST THE ABOVE STATED PRINCIPAL.

## OPERATION

Subject is engaged in:-

Provided under contract for the exclusive use of NEAL, GERBER & EISENBERG LLP.     Copyright 2002 D&B Inc. VIR1.2

| For: CHARLES FREY | February 29, 2008 |
|---|---|
| NEAL, GERBER & EISENBERG LLP | 6:10 pm |

## OPERATION

| Wholesaling of Toys | 100.00% |
|---|---|

Major Customer(s)
------------------
1) Walt Mart
2) Toys R Us
3) Family Dollars
4) COVS

Sales Territory & Terms
-----------------------
International          100%
    USA
    Europe

Selling Terms
-------------
L/C (Letter of Credit) at sight days

Number of Customer Accounts: 4

Purchase Territory & Terms - Raw Materials
------------------------------------------
International:         100%
    PR China           100%

Purchasing Terms
----------------
T/T (Telegraph Transfer)
Net Terms 30 days

Employees
---------
Total: 30

Location
--------
Premises are located in a commercial area. Subject rents 4,000.00 square feet
on the 8/F of a multi-storey building.

Previous Address : RM315, Mirror Twr, 61 Mody Rd, Tsim Sha Tsui, Hong Kong
    Date of relocation: 2001

## PARENT

```
DUNS                    87-566-2483
Name                    KIDS STATION TOYS INTERNATIONAL LIMITED
Address                 Corner Hse
```

Provided under contract for the exclusive use of NEAL, GERBER & EISENBERG LLP.    Copyright 2002 D&B Inc. VIR1.2

Case 1:08-cv-01935   Document 51-6   Filed 06/11/2008   Page 10 of 13

02/29/08 18:11 ET      2-DNMQ3309    FR:DUN AND BRADSTREET 9086656079 TO: 3127506538                    Pg 7/7
D&B Business Information Report 7                                                         Page 7 of 7

| For: **CHARLES FREY** | February 29, 2008 |
| **NEAL, GERBER & EISENBERG LLP** | 6:10 pm |

### PARENT                    *(continued)*

|  | 20 Parliament St Hamilton HM 12 |
|  | Bermuda |
| % Shares Held | 100% |

### AFFILIATED COMPANY

| DUNS | 66-793-5282 |
| Name | KIDS STATION (HONG KONG) LIMITED |
| Location | Hong Kong |
| Line of Business | Whol of Toys |
| Relationship with Subject | Common director(s) |

(--/PS2/CL2)

This report, which is licensed under contract solely for use by D&B's customer
as one factor in its business decisions, contains information compiled from
sources D&B does not control and which, unless otherwise indicated in this
report, has not been verified. D&B does not assume any of user's business
risk; does not guarantee the accuracy, completeness, and timeliness of the
information; and shall not be liable in tort, contract or otherwise for any
loss, damage, and injury resulting from use of this information, even if
caused by D&B's negligence.

Copyright 2008 Dun & Bradstreet
All Rights Reserved

-- END OF REPORT --

Provided under contract for the exclusive use of NEAL, GERBER & EISENBERG LLP.      Copyright 2002 D&B Inc. VIR1.2

# Exhibit 2

Welcome To KidsStationToys.com

About Us | Products |

Tuesday, June 10, 2008



ABOUT US | PRODUCTS |



EXPERIENCE THE FUTURE

PRODUCT SEARCH

[ Search ]

OUR PRODUCTS

**Table Alarm Clock Radio**
More Info ▶
KSL-2012

**Spider-Man Hot Rock Guitar**
More Info ▶
KSS-9005

**Designer Grand Piano with bench**
More Info ▶
KSB-3006



Kids Station Toys International Ltd, which started in 1999, is one of the fastest growing companies in the toy industry. Specializing in the Musical Instruments and Youth Electronics categories, in 2003, the company signed its first license, the Reality TV Phenomenon, American Idol, to produce a wide range of Musical Instruments and accessories. In the End of 2003, the company continued to rise and has forged relationships with some of the biggest companies in the toy industry, Little Tikes and Mattel. For Fall 04, the company will be producing and distributing a line of Little Tikes branded Youth Electronics and Musical Instruments as well as a line of Barbie branded Musical Instruments for girls. Our final license agreement in 04, with Sony Consumer Products, will be bringing Spiderman 2, electronics and musical instruments to boys.

Through our expertise in our industry, we are able to offer a complete line of Youth Electronic and Musical Instrument products featuring a brand portfolio which combines Hit Shows, Movies and Evergreen Brands for todays children.

Welcome To KidsStationToys.com

☞ **Address: 1160 NW 163rd Drive**

**Miami, Florida 33169**

☎ **Ph: (305) 628-0900**

We will not receive any merchandise and please do not send us any merchandise before speaking to a representative.

© 2003 kidsstationtoys.com. All rights reserved.

6/10/2008

http://www.kidsstationtoys.com/homepage.php